C. Brooks Cutter, SBN 121407
Wesley M. Griffith, SBN 286390
Jennifer S. Domer, SBN 305822
**CUTTER LAW P.C.**
401 Watt Avenue
Sacramento, CA 95864
Telephone:     (916) 290-9400
Facsimile:     (916) 588-9330
E-mail:        bcutter@cutterlaw.com
E-mail:        wgriffith@cutterlaw.com
E-mail:        jdomer@cutterlaw.com

Reza Torkzadeh, SBN 249550
Scott King, SBN 321218
**TORKLAW**
18650 MacArthur Blvd., Ste 300
Irvine, CA 92612
Telephone:     (949) 313-7733
Facsimile:     (800) 979-0262
E-mail:        reza@torklaw.com
E-mail:        scott@torklaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
San Francisco and Oakland Division

| | |
|---|---|
| ELIZABETH SILVESTRI, TONY AIRES, TRICIA AIRES, ZAHRA ALIZADA, TAMARA ALJADA, MARK ANDERSON, MARISELA ARGENAL, NICOLLE AYERS, SICILY BAUGHMAN, JOSEPH BAUTISTA, MARIELENA BENAVIDES, DARREN BOBROSKY, EUGENE BROCK, SHARI BRYCE, AVEDIS BUYUKER, SYLVIA CARMONA, ALI CEPEDA, SUNNIE CRADER, DAVID DAHME, CARLOS DE LEON, ELENITA DE LUCCA, JULIE DE SMET, ERIN DEMERRITT, STEPHEN DOCKERTY, AMBER DUNCAN, MARK FIERNER, RICHARD GAHR, FRANCISCO GARCIA, GLORIA GARCIA, JOSE A GONZALEZ, NIKOLA GRCIC, MICHELLE GRIFFTH, AMY GUTHRIE, MICHELLE GUTHRIE, BRENDA HALL, KELLY HALLMAN, BARTON HAMILTON, EMMA HAWKSWORTH, ERIC HOGAN, JAMES JOACHIM, JOSEPH JOHANSEN, DEBRA JONES, KATIE JONES, BENNIE KENNEDY, RONALD KNOPOFF, RICK KRUTILLA, JOSE LIMON, JOHANNA MADEROS, JESS MARKHAM, VIRGINIA MATTHEWS, DEBORAH MIKESELL, STEVIN MIKESELL, | Case No. <br><br> **COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** <br><br> **1. Negligence** <br><br> **2. Public and Private Nuisance** <br><br> **3. Premises Liability** <br><br> **4. Trespass** <br><br> **5. Strict Liability Ultrahazardous Activities** |

-1-

MANUEL NEWTON, ROSA NEWTON, NANCY NOONAN, KERRY O'HARE, JANICE OLIVER, SARA ORRICK, ELISA OVRAHIM, RYAN OXFORD, NANCY PARISI, LAINE PEARSON, RIHANNA PEREZ, CHARLES PERRY, MARTINA PERRY, BRANDI LYNN PIXTON, CHRISTOPHER PIXTON, LAURA REDFERN, KEVIN REYNA, JACK ROBINSON, SANDRA ROGERS, AURORA RUBALCAVA, FELIX SANCHEZ, PATRICIA SANCHEZ, JAY SCHNEIDER, DOUG SCHRAMM, KELLIE SCHRAMM, ELVIN, SEIDENSPINNER, MINA SHAHAB, PATSY SILVERFOOTE, NICOLE SMALLY, RODRICK SMALLY, MILES SMITH, TITAN SMITH, GINA SOBRERO, BETTY STEELE, JENNY STEWARD, SUSAN STEWART, MEI LIA STORELEE, JONATHAN STROHL, SAMUEL SWEELEY, TOLUPENE TAVAI, LINDA TELLSWORTH, PAUL TRZEBIATOWSKI, EILEEN TUMLIN, BARBARA TURCIOS, LUIS URIARTE, LARRY VASQUEZ, DANIELLE WHITE, HARRY WILSON, LINDE YOEONO, CONNIE ZAGORSKY, LARA ZANZUCCHI, SHERRY ANDROYNA, MEGAN ARCIGA, CONNIE ARIETA SORIA, SAMUEL BETHELL, RENA BLAKE, NYASHA BOYETTE, BILLIE BRELAND, BLANCHE BREWER, TYRONNE BREWER, BRIAN BRODIE, BRYCE CALDWELL, ERICA CALLOWAY, AJANI CAMPBELL, SADEY CARDENAS, CHRISTINA CARTER HODGES, CHRISTINA CASTLE-BARBER, JOSE CONCHA-ROBLES, CURTIS CONRAD, LYNDSEY COOPER, VICKI DIMAGGIO, MATTHEW DOYLE, MARC DUDLEY, STEVE ERIKSEN, TONI ERNY, RYAN FIERNER, BRIEN FRAZIER, CANDACE GARCIA, AARON GINKENS, ELAINE GLOVER HARRINGTON, YESENIA GONZALEZ, BLAKE GRAY, JUAN GUERRA, ALICIA HAMILTON, MOHAMAD HAMMOUDEH, SEAN HARRISON, LACY HENRY, KEVIN HILL, JR., MARNIQUE INGRAM, JOSE JACINTO, SHELNIKA JACKSON, AMIE JAMES, CARRYE JOE, SHARHONDA JOHNSON, YOHANA KAHASSAI, MARKEASHA KEETON, MARY RENEE KEETON, LEAH KEYES, DARIUSZ KNIECIK, JAMES LANCASTER, CHRISTOPHER LOPEZ, KIMBERLY LOPEZ, ROBERTO LOPEZ, MANUEL MALDONADO-HERNANDEZ, MOHMOD MANGAL, ELIAS MARTINEZ, JOSE MARTINEZ, JAMES MATTHEWS, JAMES MAXWELL, RICHARD

-2-

MCDONALD, JR., MONICA MOORE,
LUCIANA MORRIS, ANDREE
NATTKEMPER, ANTHONY NEAL,
ELIZABETH OLSON, ANNETTE OREJUELA,
BARBARA PENNEY, MARVA PERCY,
FRANK PEREZ, DAVION PHILLIPS,
VANESSA PIPKINS, CRYSTAL QUARLES,
ARIYA QUINTERO, VIVIAN RAMIREZ,
OSCAR RAMOS, NIKA RAMSEY,
MARCHEAL REED, ERICK ROACH, ISABEL
RODRIQUEZ, DELIA RUBALCAVA, MARIA
RUBALCAVA, ADRIAN SCOTT, KERRY
SMITH, TIFFANY TAYLOR, ERICA
THOMAS, TYISHA TILLIS, BRETT TURNER,
KEVIN TYSON, DAMARIZ VARGAS,
TIMOTHY VEITE, ANNY WAHEED,
TIFFANY WASHINGTON, DARLA
WINTERMANTEL,

Plaintiffs,

vs.

MARTINEZ REFINING COMPANY LLC, AND
DOES 1 THROUGH 100, INCLUSIVE

Defendants.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

## I.     INTRODUCTION

1.     Since November 2022, the 100-year-old Martinez oil refinery that is owned and operated by Defendant Martinez Refining Company LLC (hereafter "PBF Martinez") has had at least 21 documented safety failures. As Congressman John Garamendi put it, PBF Martinez has "a very, very bad record. . . . [T]hey've got an operational problem. They've got a safety problem. And they absolutely have to address it."[1]

2.     Despite Congressman Garamendi's warning, PBF Martinez has not fixed the problems, and PBF Martinez's ongoing safety failures have caused toxic chemicals to be repeatedly released into the local communities surrounding the refinery, poisoning residents, contaminating homes, and violating federal, state, and local law.

3.     For example, on Thanksgiving Day 2022, PBF Martinez released approximately 24 tons—about 48,000 pounds—of hazardous materials into the air from the refinery, primarily consisting of "spent catalyst." Spent catalyst is a toxic biproduct from PBF Martinez's refining process and is known to cause significant health issues, including breathing problems, cardiovascular and pulmonary diseases, genetic defects, cancer, fertility issues, and pregnancy complications, among other health problems. The Thanksgiving release took an ash-like form, and the toxic ash rained down on the communities surrounding the refinery, covering people, pets, homes, yards, and gardens.

4.     As subsequent investigations found, the Thanksgiving release was caused by PBF Martinez's own internal equipment failures and its own employees' errors. But PBF Martinez did not learn from its mistakes.

5.     In July and October 2023, PBF Martinez had additional unauthorized, unlawful, and dangerous releases of toxic materials from the refinery, primarily in the form of "coke dust." Coke dust is a toxic biproduct of the refining process, and coke dust has significant effects on the heart and lungs and causes other serious health problems, including damage to the lungs, exacerbation

---

[1] https://abc7news.com/martinez-refining-company-petroleum-coke-release-air-quality-east-bay/13490104/ (last visited July 23, 2024).

of chronic conditions like bronchitis and asthma, increased cardiovascular issues like heart attacks and strokes, and can cause cancer, among other health problems.

6.    The repeated 2023 coke dust releases prompted the San Jose Mercury News to publish an article titled "A disturbing new normal: Why have the chemical releases at the Martinez refinery continued? Last week's black dust merely the latest in a year-long series of incidents."[2] As detailed in the article, residents around the refinery have been leaving home to find toxic dust on "property, animals, cars" with one mother even finding her child's stroller covered in "black dust."

7.    Like the Thanksgiving release, the 2023 coke dust releases were caused by PBF Martinez's own internal failures. But once again, PBF Martinez still did not correct course.

8.    In December 2023, PBF Martinez experienced yet another major safety failure, this time resulting in the refinery releasing over seven tons—about 14,000 pounds—of sulfur dioxide gas into the local communities through a "level 2 flaring event." Flaring events occur when excessive gas builds up during the refining process, and the December 2023 event was one of 46 such flaring incidents documented that year. Exposure to the burn-off from the flaring event causes irritation to the eyes, nose, and throat, and heavy exposure can severely and permanently damage the lungs, cause brain fog, unconsciousness, and even death, among other health problems. Residents of Martinez reported their homes shaking violently for much of the day from the burn off and described the smell of sulfur gas permeating the air miles away from the refinery.

9.    Like the 2022 Thanksgiving event and the 2023 coke dusts releases, the December 2023 flaring incident was caused by PBF Martinez's own internal failures.

10.    Indeed, PBF Martinez's systemic safety lapses have been so severe that it has led to investigations by the FBI, the United States Department of Justice, the EPA, and local law enforcement. It has also led to repeated citations by the Bay Area Air Quality Management District, with over 100 citations between June 2021 and July 2023.

11.    PBF Martinez's willingness to poison the local communities around its refinery perhaps should not be surprising. Despite "Martinez" appearing in the company's name, PBF

---

[2] https://www.mercurynews.com/2023/10/09/a-disturbing-new-normal-why-have-chemical-releases-at-martinez-refinery-continued/ (last visited July 23, 2024).

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Martinez—like the rest of PBF Energy—is actually headquartered in New Jersey, where its executives are kept far away from the toxic conditions that PBF creates in Martinez, California.

12. PBF Martinez's repeated safety violations have had devastating consequences for the residents of the City of Martinez, and other local communities.

13. Plaintiff Elizabeth Silvestri's experience is instructive. Ms. Silvestri lives about three and a half miles from the refinery, and was present at her home for the November 2022 spent catalyst discharge. She inhaled particulates from the discharge, and her health rapidly declined. She promptly sought medical treatment, and she was put on steroids and other medication to assist with breathing. However, even with the steroids, Ms. Silvestri continued to have breathing issues, and repeatedly sought medical attention in 2023, eventually leading to her hospitalization. The damage is permanent, and Ms. Silvestri was forced to give up her career as a nurse as a result of her injuries.

14. Unfortunately, Ms. Silvestri's experience is not isolated, and the other 194 Plaintiffs'[3] exposures and injuries are included in Paragraphs 131 to 3066.

15. Put simply, what PBF Martinez has done to the people living and working near the refinery is wrong.

16. PBF Martinez needs to be held accountable. PBF Martinez needs to compensate Plaintiffs for the harm it has caused them. And PBF Martinez needs to be stopped from continuing to poison the communities around its refinery. This lawsuit seeks to do just that.

## II.    JURISDICTION AND VENUE

17. The District Court of the Northern District of California has personal jurisdiction over the parties in this matter because Plaintiffs are each residents of the State of California whose injuries arose in Contra Costa County and PBF Martinez regularly conducts business in California, including by operating the Martinez oil refinery within Contra Costa County.

18. This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1332(a) because Plaintiffs are all citizens of California and PBF Martinez is a Limited Liability Company who, on information and belief, is a citizen of Delaware and New Jersey. Accordingly,

---

[3] Plaintiffs refers collectively to the 195 individuals who are identified in Paragraphs 131 to 3066.

there is complete diversity amongst the parties. Further, the amount in controversy exceeds $75,000 as to each Plaintiff's claims in this action.

19.   Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Plaintiffs reside in California and were harmed in Contra Costa County and PBF Martinez's illegal and wrongful actions, which are the subject of this action, occurred in Contra Costa County, where PBF Martinez operates the Martinez refinery and routinely conducts business.

20.   Pursuant to Local Rule 3.5(b), Plaintiffs further state that assignment to the San Francisco or Oakland Division of this Court is proper because the events at issue occurred in Contra Costa County, which pursuant to Local Rule 3-2(d) provides for assignment to this Division.[4]

## III.    THE PARTIES

### A.    Plaintiffs

21.   Plaintiffs are each residents of the State of California whose injuries arose in Contra Costa County.

22.   Further details regarding each of the 195 Plaintiff are included in Section V of this Complaint at Paragraphs 131 to 3066, which are appended to the end of this Complaint for ease of reading.

### B.    Defendants

23.   Defendant PBF Martinez is a Delaware Limited Liability Company headquartered in Parsippany, New Jersey and registered to do business in California. On information and belief, PBF Martinez's sole member is PBF Energy Western Region LLC, which is a wholly owned subsidiary of PBF Energy, Inc. The refinery operated by PBF Martinez is located at 3495 Pacheco Boulevard, Martinez, California.

---

[4] Plaintiffs' counsel are also counsel of record in two additional actions pending in the Northern District where they represent another 303 individuals who suffered substantially similar injuries arising from the same sets of toxic discharges from the Martinez refinery. *Frye, et al. v. Martinez Refining Company, LLC,* Northern District Case No. 3:24-cv-04506-RFL and *Saliba, et al., vs. Martinez Oil Refining Company LLC, et al.,* Northern District Case No. 3:24-cv-08153. Plaintiffs in this action intend to promptly move for relation to the *Frye* and *Saliba* actions. As of the time of filing this Complaint, a motion to relate the *Frye* action to an earlier filed class action, *Cruz v. PBF Energy Inc.*, Northern District Case No. 3:23-cv-06142-JD, was also pending.

24.   The names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants Does 1-100, inclusive, are unknown to Plaintiffs, who therefore sues the Doe Defendants by such fictitious names, and Plaintiffs will amend this complaint to show their true names and capacities when the same have been ascertained. Plaintiffs are informed and believe, and thereon alleges that each of the Doe Defendants, 1 through 100, inclusive, are responsible under law in some manner, negligently, strictly, or otherwise, for the events and happening herein referred to, and proximately thereby caused injuries and damages to Plaintiffs as herein alleged.

## IV.    FACTUAL ALLEGATIONS

### A.    PBF Purchases the Martinez Oil Refinery.

25.   On or about January 31, 2020, PBF Energy, Inc. bought the 100-year-old oil refinery in Martinez California from Shell Oil for $1.2 billion.

26.   The refinery is located next to significant residential developments:



COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

27. Indeed, many homes are quite literally right across the street from the refinery:



28. Despite its proximity to residential communities, the Martinez refinery had a series well documented safety and environmental violations under its prior ownership, which included: (a) failing to adequately plan for and mitigate the potential releases of toxins from a "worse case scenario" event; (b) failing to give timely notice of hazardous releases from the refinery; (c) "fail[ing] to operate the Facility to minimize the possibility of a release of hazardous waste;" (d) improper storage, handling, and disposal of hazardous waste; and (e) in its "worse case discharge" plan, representing that certain storage tanks had a capacity of 320,460 gallons when in fact the capacity was more than 45 times larger, at 14,700,000 gallons.[5]

29. The safety incidents were publicly documented by the EPA, and PBF Energy knew (or should have known) about the prior safety incidents at the time of the acquisition.

30. PBF Energy created a subsidiary, defendant PBF Martinez, to operate the refinery, and, on information and belief, PBF Energy did so to attempt to insulate itself from liability given the high likelihood of continued safety violations at the Martinez refinery.[6]

---

[5] https://www.epa.gov/sites/default/files/2018-05/documents/mm-09-2018-0001-opa-09-2018-0003shell_martinez_refinery-cafo-2018-05-23.pdf (last visited July 23, 2024).

[6] Plaintiffs expressly reserve their right to take discovery regarding the corporate structure of the PBF entities, expressly reserve their right to take discovery regarding the specific actions taken by each PBF entity, and expressly reserve their right to amend these pleadings to add additional PBF entities and allegations based on information learned in discovery.

31.  Despite "Martinez" appearing in the company's name, PBF Martinez—like the rest of PBF Energy—is headquartered in New Jersey, where its executives are kept far away from the toxic conditions that PBF creates in Martinez California.

**B.     PBF's Martinez Refining Process Creates Significant Amounts of Toxic Materials that Pose Health Risks to the Communities Around the Refinery.**

32.  The PBF Martinez refinery is a high-conversion, dual-coking refinery that produces over one hundred thousand barrels of gasoline, diesel, jet fuel, and other similar products each day.

33.  PBF Martinez's refining process also creates significant toxic waste. Pursuant to statute, regulation, and the common law, PBF Martinez has a duty to safely and properly capture, control, mitigate, and dispose of those toxic waste products as part of its operation of the refinery.

34.  Three of the most common toxic and harmful byproducts from the refining process relevant to this action are "spent catalyst," "coke dust," and noxious gases, such as sulfur dioxide and hydrogen sulfide.

35.  If not properly captured, managed, processed, and/or disposed of, spent catalyst, coke dust, and noxious gases—among many other toxic substances created through the refining process—can be released into the environment and impact people and properties miles away from the refinery, creating significant health and safety risks, including, without limitation, in the City of Martinez.

36.  Common symptoms that can arise from exposure to these materials include, without limitation, breathing difficulties, congestion, upper respiratory tract issues, respiratory infections, congestion, sinus issues, sinus pain, sinus pressure, sinus infection, coughing, coughing up blood, ear aches, ear infections, phlegm, sneezing, itchy eyes, watery eyes, burning eyes, sore throat, bloody nose, swelling, rash, hives, skin irritation, headaches, memory issues, brain fog, cognitive impairment, neurological issues, fatigue, nausea, dizziness, vertigo, fainting, loss of balance, stomach problems, digestive trouble, vomiting, diarrhea, difficulty sleeping, body aches, stomach pain, abdominal pain, chest pain, asthma, asthma flare-up, heartburn, dehydration, fever, chills, organ damage (including, without limitation, liver damage, kidney damage, lung damage, and heart damage), anemia, cardiovascular diseases, pulmonary diseases, heart attack, stroke, high blood

-10-

pressure, increased cancer risk, cancer, genetic defects, pregnancy complications, premature birth, miscarriage, and birth defects, as well as exacerbation of existing medical conditions, such as bronchitis and asthma.

## 1.    Spent Catalyst.

37.   During the oil refining process, there are chemical catalysts that are used to increase the efficiency of the refining process. Catalysts contain compounds that are hazardous to human health, including heavy metals, and as the catalysts are used, they absorb additional contaminants, including sulfur and additional heavy metals. After catalyst is used, it is referred to as "spent catalyst."

38.   Under EPA regulations, spent catalyst is "hazardous waste."

39.   Spent catalyst needs to be removed from the refining process by the refinery operator to avoid discharge into the surrounding environment.

40.   Spent catalyst is known to cause significant health issues when it is discharged into the environment, including, without limitation, breathing difficulties, congestion, upper respiratory tract issues, respiratory infections, congestion, sinus issues, sinus pain, sinus pressure, sinus infection, coughing, coughing up blood, ear aches, ear infections, phlegm, sneezing, itchy eyes, watery eyes, burning eyes, sore throat, bloody nose, swelling, rash, hives, skin irritation, headaches, memory issues, brain fog, cognitive impairment, neurological issues, fatigue, nausea, dizziness, vertigo, fainting, loss of balance, stomach problems, digestive trouble, vomiting, diarrhea, difficulty sleeping, body aches, stomach pain, abdominal pain, chest pain, asthma, asthma flare-up, heartburn, dehydration, fever, chills, organ damage (including, without limitation, liver damage, kidney damage, lung damage, and heart damage), anemia, cardiovascular diseases, pulmonary diseases, heart attack, stroke, high blood pressure, increased cancer risk, cancer, genetic defects, pregnancy complications, premature birth, miscarriage, and birth defects, as well as exacerbation of existing medical conditions, such as bronchitis and asthma.

41.   Because spent catalyst is generally released in an airborne, ash-like form, the spent catalyst particulates can be inhaled and lodge in the nose, throats, sinuses, and lungs of people who

are within several miles of refinery, creating significant medical symptoms and complications, even in the absence of heavy metals and other toxins.

42. Further, contact with the skin and eyes can lead to irritation, rashes, and burning, among other symptoms, even in the absence of heavy metals and other toxins.

43. Spent catalyst can remain in homes, yards, and other surfaces for weeks, months, and in some instances years, and can become airborne again, including from vacuuming, through the fans in home air-conditioning and heating systems, by leaf blowers, wind and other similar circumstance, causing new and/or repeated exposure even after the initial discharge date.

44. The PBF Martinez refinery creates large quantities of spent catalyst each year.

### 2. Coke Dust.

45. "Coke dust," which is also known as "petroleum coke" and "petcoke," is a material created as a byproduct of the oil refining process. It has dust-like properties, and can be released into the air during the refining process and/or when not properly stored.

46. Coke dust contains high levels of heavy metals, sulfur, and other toxins, and oftentimes contains polycyclic aromatic hydrocarbon, a known carcinogen.

47. Coke dust has significant impacts on the heart and lungs and causes serious health effects, including, without limitation, breathing difficulties, congestion, upper respiratory tract issues, respiratory infections, congestion, sinus issues, sinus pain, sinus pressure, sinus infection, coughing, coughing up blood, ear aches, ear infections, phlegm, sneezing, itchy eyes, watery eyes, burning eyes, sore throat, bloody nose, swelling, rash, hives, skin irritation, headaches, memory issues, brain fog, cognitive impairment, neurological issues, fatigue, nausea, dizziness, vertigo, fainting, loss of balance, stomach problems, digestive trouble, vomiting, diarrhea, difficulty sleeping, body aches, stomach pain, abdominal pain, chest pain, asthma, asthma flare-up, heartburn, dehydration, fever, chills, organ damage (including, without limitation, liver damage, kidney damage, lung damage, and heart damage), anemia, cardiovascular diseases, pulmonary diseases, heart attack, stroke, high blood pressure, increased cancer risk, cancer, genetic defects, pregnancy complications, premature birth, miscarriage, and birth defects, as well as exacerbation of existing medical conditions, such as bronchitis and asthma.

48.   When coke dust becomes airborne, the coke dust particulates can be inhaled and lodge in the nose, throats, sinuses, and lungs of people who are within several miles of refinery, creating significant medical symptoms and complications, even in the absence of heavy metals and other toxins.

49.   Further, contact with the skin and eyes can lead to irritation, rashes, and burning, among other symptoms, even in the absence of heavy metals and other toxins.

50.   Coke dust can remain in homes, yards, and other surfaces for weeks, months, and in some instances years, and can become airborne again, including from vacuuming, through the fans in home air-conditioning and heating systems, by leaf blowers, wind and other similar circumstance, causing new and/or repeated exposure even after the initial discharge date.

51.   Coke dust is highly flammable and explosive, posing a hazard anywhere it lands. In addition, it is abrasive and can easily scratch surfaces including home and vehicle paint.

52.   The PBF Martinez refinery creates large quantities of coke dust each year.

### 3.    Noxious Gases.

53.   Noxious gases, such as sulfur dioxide and hydrogen sulfide, are another common, toxic output from the refining process. Large amounts can be released during "flare ups" or "flaring events," which occur when excessive gasses build up during the refining process.

54.   Flare ups present health risks to the surrounding communities because of the presence of sulfur dioxide and hydrogen sulfide, among other toxic chemicals.

55.   According to the Center for Disease Control, among other symptoms, "inhaling high levels [of sulfur dioxide] can cause swollen lungs and difficulty breathing. . . . Persons who have inhaled large amounts of sulfur dioxide might need to be hospitalized [and] damage to the lungs can occur, causing asthma, pneumonia, and bronchitis. Permanent damage to the lungs is possible."[7] Sulfur dioxide can also cause throat irritation, shortness of breath, and burning in the nose and throat. Sulfur Dioxide is an irritant to the mucous membranes causing inflammation and

---

[7] https://wwwn.cdc.gov/TSP/MMG/MMGDetails.aspx?mmgid=249&toxid=46#:~:text=Inhaling%20sulfur%20dioxide%20causes%20irritation,can%20cause%20irritation%20or%20burns    (last visited July 23, 2024).

swelling in the respiratory system as well as redness, tearing, and burning in the eyes. The muscles in the airway can constrict when exposed to sulfur dioxide, which can cause chest pain and difficulty breathing especially in those with asthma or pre-existing conditions. Heavy exposure can lead to a lasting cough, higher risk of respiratory infections, asthma, and decreased lung function. Particularly at risk are children and the elderly since children have developing respiratory systems and higher breathing rates while the elderly have weaker respiratory and cardiovascular strength.

56.  Hydrogen sulfide presents similar health concerns. For example, according to the Occupational Health and Safety Administration exposure can cause "fatigue, loss of appetite, headache, irritability, poor memory, dizziness" and "respiratory tract irritation," and higher levels of exposure can cause "serious damage to the eyes," "pulmonary edema," "unconsciousness" and even death.[8]

57.  The PBF Martinez refinery creates large quantities of noxious gases each year, including sulfur dioxide and hydrogen sulfide, including during flaring events.

**C.      PBF Martinez's Operation of the Refinery Results in Repeated, Significant Hazardous Events.**

58.  Between November 2022 and December 2023,[9] PBF Martinez's operation of the refinery has resulted in at least 21 documented safety incidents, and dozens of air quality citations by the Bay Area Air Quality Management District.

59.  These incidents have had widespread effects on the communities around the Martinez refinery, with at least the November 2022, July 2023, October 2023, and December 2023 incidents (collectively, the "Primary Toxic Releases") each causing widespread exposure to toxic chemicals.

---

[8] https://www.osha.gov/hydrogen-sulfide/hazards#:~:text=Prolonged%20exposure%20may%20cause%20nausea,constriction)%20in%20some%20asthma%20patients.&text=Possible%20fatigue%2C%20loss%20of%20appetite,irritability%2C%20poor%20memory%2C%20dizziness.&text=Slight%20conjunctivitis%20(%22gas%20as%20eye%22,tract%20irritation%20after%201%20hour (last visited July 23, 2024).

[9] As further detailed below, PBF Martinez' dangerous and unlawful conduct has continued into 2024.

1.      **The Thanksgiving 2022 Event.**

60.   On November 24 and 25, 2022, PBF Martinez released approximately twenty-four tons of spent catalyst into the communities surrounding the Martinez refinery. As the post incident reports have confirmed, the Thanksgiving release was the direct result of systemic safety failures by PBF Martinez.

61.   Many of the facts alleged in **Subsection IV.C.1.a-d** of this Complaint are based on the findings of the *Independent Investigation of the Catalyst Release from Martinez Refining Company on November 24-25, 2022* that was prepared for the Martinez Refining Company Oversight Committee and published on March 27, 2024. A true and correct copy of the report is attached to this Complaint as **Exhibit A.**

a)      **The Safety Failures Leading up to the Thanksgiving Release.**

62.   Beginning on November 21, 2022, PBF Martinez experienced a series of safety failures in its Catalyst Cracking Unit that would ultimately lead to approximately twenty-four tons of spent catalyst being released into the communities surrounding the refinery on November 24 and 25, 2022.

63.   "Catalyst cracking" involves a multistep process for combining oils and catalysts at high temperatures to promote the formation of certain petroleum products, but the process also generates numerous other toxic gases and chemicals that must be closely monitored and controlled to avoid catastrophic results.

64.   At approximately 1:06 AM on **November 21, 2022**, an equipment failure in the Catalyst Cracking Unit triggered a safety shutdown of certain components of refinery operations while other operations continued.

65.   Repairs were made in the Catalyst Cracking Unit, but in order to resume operations, a portion of the Catalyst Cracking Unit needed to be re-heated to approximately 1,000 degrees Fahrenheit.

66.   The refinery attempted to reheat the Catalyst Cracking Unit at approximately 10:40 AM, but the pre-heating process did not work due to another equipment failure. A specialist working for PBF Martinez was called in to make repairs to the pre-heating equipment, and "[f]rom

-15-

the time this Specialist began working [on November 21 through at least November 25, 2022] this individual followed a pattern of working 22–25 hours, resting at home for a few hours, and then returning to work another similarly long period[s]." Ex. A at 8.

67.  While repairs were being made to the pre-heating process, the delay led to unstable operating conditions developing within the Wet Gas Compressors that caused discharge and flaring events from the refinery.

68.  By 9:00 AM on **November 22**, the pre-heating issues were claimed to be fixed, and PBF Martinez began the complicated, multi-day process of resuming complete operation of the Catalyst Cracking Unit.

69.  "Normally, the feed reintroduction procedure [for the Catalyst Cracking Unit] would be conducted by two Console Operators [but instead the] fatigued Production Specialist took charge of some . . . console operations." Ex. A at 9.

70.  The next known significant safety failure occurred on **November 24**, at approximately 6:29 AM, when the Stripper Slide Valve—a valve involved in the restart process—was switched to manual mode. "Operating procedures call for the Stripper SV to be placed in Auto before introduction of feed . . . [and the valve] should have been placed back in Auto," but was not. Ex. A at 12. As a result, when pressure surges occurred on November 24, the system could not automatically adjust to the increased pressure, resulting in flaring.

71.  The valve remained open throughout the day on November 24 despite the flaring and despite shift changes that identified—but failed to correct—the deviation from the correct operating procedures.

72.  By the evening of November 24, the open valve caused an increase flow of catalyst and the "high catalyst level overwhelmed the [system]." *Id.*

**b)  The Spent Catalyst Release.**

73.  At approximately 8:32 PM on November 24, 2022, a high-pressure alarm sounded, and spent catalyst was released from the refinery into the surrounding communities through the refinery's smokestacks.

74.  While the largest release of catalyst occurred between approximately 8:32 and 8:56 PM, "[o]ther than for a ten-minute period after midnight around 02:45 [on November 25], the [system] remained at high-high dP until shortly after 04:00 on November 25. During this period, catalyst passed . . . out the stack." Ex. A at 9.

75.  In total, approximately twenty-four tons of toxic spent catalyst were released into the surrounding communities by PBF Martinez.

76.  Here is a map showing the approximate spread of the spent catalyst:



77.  Here's an example of spent catalyst accumultaing on a car in Martinez:



Figure 1: White, ash-like material deposited on a car near the corner of Berrellesa and Main Streets in Martinez.

-17-

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

78.    Sampling of the spent catalyst discharge reflected significant concentrations of heavy metals and other toxins, including lead, mercury, aluminum, antimony, barium, chromium, cobalt, molybdenum, nickel, selenium, vanadium, and zinc.

79.    Rather than warn residents of the harmful properties of the spent catalyst, PBF Martinez issued public statements, including though Facebook, claiming that the discharge was non-toxic and could simply be washed away with water.

80.    In reality, the discharge was highly toxic, and remained present in the environment. Indeed, months after the discharge, local authorities warned residents against eating fruit and vegetables grown in their yards due to the contamination.

### c)    Failure to Report.

81.    Despite the multiple alarms and warnings that were triggered at the refinery during the November 24 and 25 incident, during a subsequent investigation, Contra Costa County Health found that PBF Matinez was unaware that any release occurred and did not notify any emergency responders of the release. It further found that PBF Martinez did not use the County's Community Warning System (CWS) or other means to notify any emergency responders or the public of the incident on November 24 or on November 25.

82.    According to Contra Costa County Deputy Health Director Matt Kaufman, PBF Martinez' "failure to follow notification procedure cost us critical time we could have used to warn the public and reduce health risks in the community. It's unacceptable."[10]

83.    Board of Supervisor Chair John Gioia agreed: "It is unacceptable that the refinery did not notify County Health Services of their chemical release and that the County learned about it through the media. By failing to notify the County in a timely manner, the refinery delayed an emergency response that could have reduced harm to the surrounding community."[11]

---

[10]https://sfist.com/2022/12/10/dramatic-flaring-and-smoke-plumes-at-martinez-oil-refinery-alarm-community/ (last visited July 23, 2024).

[11]https://www.cbsnews.com/sanfrancisco/news/martinez-thanksgiving-refinery-release-coco-health-department-urges-da-to-pursue-legal-action/ (last visited July 23, 2024).

84.   As PBF Martinez noted in its post incident *Root Causes Analysis Report*, "[t]here was (and currently is) no mechanism to alert [PBF Martinez] personnel to the potential that an opacity event might result in a release of catalyst into the community. As a result, there is a lack of awareness among [PBF Martinez] personnel that a high differential pressure in the [system] could result in catalyst carryover that could be released into the community." At p. 3.

85.   Said differently, PBF Martinez did not have an adequate process or procedure in place to identify and timely report the large-scale discharge of spent catalyst into residential areas surrounding the refinery.

**d)      The Post Incident Reports and Root Cause Analysis.**

86.   Multiple organizations conducted investigations after the November 24 and 25 spent catalyst discharge, including local law enforcement, the FBI, the EPA, the Bay Area Air Quality Management District, the Contra Costa Health Service Hazardous Material Program, and PBF Martinez itself.

87.   One of the most comprehensive and publicly available reports prepared from the post incident investigations was the *Independent Investigation of the Catalyst Release from Martinez Refining Company on November 24-25, 2022* that was prepared for the Martinez Refining Company Oversight Committee and published on March 27, 2024. A copy of the *Independent Investigation* is attached as Exhibit A.

88.   The *Independent Investigation* found multiple root causes for the November 24 and 25 incident, including:

- PBF Martinez's emergency preparedness plans did not adequately identify the scope of the potential community impact from a spent catalyst discharge.
- PBF Martinez had inadequate internal policies and procedures to address the November 24 and 25 incident.
- PBF Martinez had established practices by employees that "deviat[ed] from written procedures." Ex. A at p. 18.
- PBF Martinez had significant "[g]aps in [its] training program," including that the "operator training system did not include rationale for process alarms which

-19-

could lead to a process safety event without proper operator response" and that "[t]he operator training system did not include the information needed to understand how instruments fail, simple troubleshooting methods, and when to call an instrument technician." *Id.* at 19-20.

- PBF Martinez's "policy for managing fatigue" did not apply to "salaried personnel performing safety sensitive work." *Id.* at 20.

89.  Put simply, PBF Martinez failed to take adequate steps to ensure that toxic spent catalyst would not be discharged into the communities around the refinery, and once that discharge did occur, PBF Martinez failed to take appropriate steps to mitigate the harm from the release.

### 2.  The December 2022 Event.

90.  On December 9, 2022, the refinery experienced a larger than usual flaring event, which was unsettling to many people who live in the area.

91.  Here is an image reflecting the flaring:



92.  Contra Costa County investigated this incident and noted that it was "taking these events very seriously, and we're investigating the events to the fullest of our ability to completely

understand the impacts that have happened to the community and taking all the steps necessary to be able to hold the refinery accountable for any regulatory statutes they've violated."[12]

93.  Defendant PBF Energy Martinez reported to officials on the scene that the flaring was likely caused by "the failure of a compressor."[13]

94.  Noxious gasses were reported to Contra County Health, which "received complaints from residents in the greater Martinez area about a strong odor and deployed its hazmat response team to investigate, later calling for the incident to be elevated" in severity.[14]

### 3.    The July 2023 Coke Dust Releases.

95.  On July 11, 2023, PBF Martinez once again released toxic chemicals into the residential communities near the refinery; this time the releases consisted primarily of coke dust.

96.  According to PBF Martinez, the July 11 release was caused by employees moving "hot coke . . . from a drum into a coke pit where it contacted water, creating steam with petroleum coke dust which was *carried by wind into the residential area east of the refinery*." (Emphasis added.)[15]

97.  Despite the release into "the residential area east of the refinery" occurring approximately 8:52 AM, PBF Martinz did not activate the County's Community Warning System until approximately 10:20 AM.[16]

98.  This delay meant that residents had no warning to take preventative measures to avoid exposure while the coke dust was still largely airborne. For residents who were outside during the release, this delay was devastating.

---

[12]https://www.nbcbayarea.com/news/local/east-bay/contra-costa-county-investigates-martinez-refinery/3108846/#:~:text=%22We%20are%20taking%20these%20events,'ve%20violated%2C%22%20said%20Nicole (last visited July 23, 2024).

[13]  https://www.cityofmartinez.org/Home/Components/News/News/152/ (last visited July 23, 2024).

[14]  https://www.cbsnews.com/sanfrancisco/news/flaring-incident-underway-at-martinez-refining-company-strong-odor-felt-for-miles/ (last visited July 23, 2024).

[15] PBF Martinez's July 14, 2023 Incident Report Regarding July 11, 2023 Release.

[16] *Id.*

99.  After the July 11, 2023, release Congressman John Garamendi warned that PBF Martinez has "a very, very bad record. . . . [T]hey've got an operational problem. They've got a safety problem. And they absolutely have to address it."[17]

100. PBF Martinez, however, did not heed Congressman Garamendi's warning, and on July 22, 2023, less than two weeks later, the Contra Costa County Health Department reported another release of coke dust by PBF Martinez.

101. Sampling of the July 2023 discharges reflected that the coke dust contained lead, mercury, antimony, barium, chromium, cobalt, nickel, vanadium, and zinc, among other toxins.

102. PBF Martinez did not take any steps to warn residents of the harmful properties of the coke dust to help them avoid harm.

### 4.    The October 2023 Event.

103. On October 6, 2023, PBF Martinez once again released toxic chemicals into the surrounding residential communities, again primarily consisting of coke dust.

104. In its post incident report to Contra Costa Health Services, PBF Martinez claimed that the release was caused during a maintenance event.

105. The October 6 release—the third known significant coke dust release in 2023 by PBF Martinez—lead the San Jose Mercury News to publish an article titled "A disturbing new normal: Why have the chemical releases at the Martinez refinery continued? Last week's black dust merely the latest in a year-long series of incidents."  As detailed in the article, residents have been leaving home to find toxic dust on "property, animals, cars" with one mother even finding her child's stroller covered in "black dust."[18]

106. The consequences of the October 6 release were once again severe for the surrounding communities.

---

[17] https://abc7news.com/martinez-refining-company-petroleum-coke-release-air-quality-east-bay/13490104/ (last visited July 23, 2024).

[18] https://www.mercurynews.com/2023/10/09/a-disturbing-new-normal-why-have-chemical-releases-at-martinez-refinery-continued/ (last visited July 23, 2024).

107. The coke dust contained lead, mercury, antimony, barium, chromium, cobalt, nickel, vanadium, and zinc, among other toxins.

108. Once again, PBF Martinez did not take any steps to warn residents of the harmful properties of the coke dust to help them avoid harm.

### 5. The December 2023 Event.

109. On December 15, 2023, the PBF Martinez refinery once again experienced another safety event that exposed the surrounding communities to toxic chemicals. This time the safety event took the form of a "level 2 flaring" incident, one of at least 46 documented "flaring incidents" since November 2022.[19]

110. The Governor's Office of Emergency Services stated that the release was caused by a failed "steam generator" which caused a system upset.[20] Contra Costa County issued a health advisory advising the community to stay indoors due to the health effects of the gasses.

111. The release could be smelled as far as 11 miles away, with visible dust in the surrounding area and, small rumbling akin to a small earthquake.

112. According to Contra Costa Health, this sulfurous rotten-egg smell which was reported at length, is a tell-tale sign of the "Hazardous Substances," including sulfur dioxide, which are stored and produced at PBF Martinez's refinery.[21]

113. Exposure to sulfur dioxide causes irritation to the eye, nose, and throat, and heavy exposure, such as the type that occurred on December 15, 2023, can severely and permanently damage lungs.

---

[19] https://localnewsmatters.org/2023/12/29/contra-costa-supes-deliver-letter-outlining-demands-ultimatum-to-martinez-refinery/ (last visited July 23, 2024).

[20] https://sfist.com/2023/12/15/martinez-refinery-flaring-again-town-currently-reeks-of-sulfur/ (last visited July 23, 2024).

[21] https://www.cchealth.org/home/showpublisheddocument/365/638237434198470000 (last visited July 23, 2024).

**D.      PBF Martinez's Conduct Has Resulted in Ongoing Federal, State, and Local Government Investigations and Repeated Citations.**

114. The issues came to such a head that the FBI, DOJ, EPA, state, and local governments have all brought investigations into PBF Martinez's conduct.

115. For example, news sources have reported that the Contra Costa District Attorney's office opened a case against PBF Martinez regarding PBF's failure to notify officials about the hazardous release of contaminants.

116. As one resident living near the PBF Martinez refinery put it: "We know our D.A. is pursuing criminal charges, but we've been told that's going to be months down the road. So, to see the feds show up, oh my God! Hallelujah!"[22]

117. The investigations have also resulted in repeated citations. For example, the Bay Area Air Quality Management District has issued PBF Martinez over 100 citations between June 2021 and July 2023.

**E.      PBF Martinez's Operation of the Refinery Presents an Ongoing Safety Risk.**

118. Despite repeated promises by PBF Martinez in 2022 and 2023 that it was correcting the safety issues at its refinery, the safety violations have continued in 2024.

119. For example, in February 2024, PBF Martinez had additional flaring incidents and coke dust releases.

120. In March 2024, Congressman Mark DeSaulnier held a town hall, where one resident reported that "[o]n any given day, I could walk out of my door and I smell gasoline or I smell rotten eggs. And we're constantly left wondering, what is that?"[23]

121. In May 2024, PBF Martinez stated that it expected to have flaring events throughout the month.

122. And in September 2024, PBF Martinez had additional unplanned flaring events.

---

[22] https://www.yahoo.com/news/fbi-investigating-hazardous-fallout-bay-202517559.html (last visited July 23, 2024).

[23] https://abc7news.com/martinez-refining-company-mark-desaulnier-reinfery-flaring-events-town-hall-meeting/14571427/ (last visited July 23, 2024).

123. Put simply, PBF Martinez's problematic, toxic, and dangerous practices are ongoing and present a continued threat to Plaintiffs and others in the areas around the refinery.

**F.      PBF Martinez Acted with Malice, Oppression, and Fraud.**

124. As detailed in this Complaint, PBF Martinez has acted with malice, oppression and fraud.

125. PBF Martinez acted with malice, because, among other reasons and as otherwise detailed in this Complaint, PBF Martiez's conduct was despicable and was done with a willful and knowing disregard of the rights and safety of the communities surrounding the refinery, the public, and each of the Plaintiffs. PBF Martinez acted with knowing disregard of the probable and dangerous consequences of its conduct in operating the refinery without adequate safety measures to protect the communities surrounding the refinery, the public, and each of the Plaintiffs, and deliberately failing to address the safety problems even after repeated safety lapses that injured thousands and that led to federal, state, and local government investigations of the refinery.

126. PBF Martinez's conduct was oppressive because, among other reasons and as otherwise detailed in this Complaint, it was despicable and subjected Plaintiffs to cruel and unjust hardship in knowing disregard of their rights, including by repeatedly discharging spent catalyst, coke dust, and noxious gases onto their properties and causing Plaintiffs to individually be exposed to those toxins, resulting in significant injuries.

127. PBF Martinez's conduct was fraudulent, because, among other reasons and as otherwise detailed in this Complaint, PBF Martinez intentionally concealed its lack of adequate safety precautions from the public, the communities surrounding the refinery, the government, and Plaintiffs, and intentionally misled the public by claiming that the Primary Toxic Discharges were not harmful and/or otherwise intentionally concealed the true nature of the Primary Toxic Discharges.

**G.      The Impact on the Refinery's Toxic Discharges on Plaintiffs.**

128. As a direct and legal result of the Primary Toxic Discharges, Plaintiffs have each suffered damages and actual injury, including but not limited to exposure to harmful and hazardous

substances such as spent catalyst, coke dust, and noxious gases, which has resulted in present medical injuries and can result in the future development of diseases.

129. Further, Plaintiffs have each suffered an unauthorized intrusion into their homes and real properties by PBF Martinez in the form of spent catalyst, coke dust, noxious gases, and/or other materials discharged by the refinery.

130. Details regarding each Plaintiff's exposure to the Primary Toxic Discharges and resulting injuries are included in Paragraphs 131 to 3066, which are appended in Section V to the end of this Complaint for ease of reading.

## VI.    CAUSES OF ACTION

### A.    FIRST CAUSE OF ACTION: NEGLIGENCE.

3067.    Plaintiffs incorporate by reference Paragraphs 1 to 3066 of this Complaint as though fully set forth herein.

3068.    At all relevant times, PBF Martinez owned, operated, inspected, controlled, managed, and/or maintained the refinery.

3069.    At all relevant times prior to the incidents described in this Complaint, PBF Martinez had the duty to exercise the utmost care and diligence in the ownership, design, operation, management, supervision, inspection, maintenance, repair, and/or control of the refinery in compliance with federal, state and local law, federal, state and local regulations, and industry standards, so as not to cause harm to individuals or property.

3070.    As described above, PBF Martinez negligently, carelessly, recklessly, and/or unlawfully operated, managed, supervised, maintained, repaired, and/or controlled the refinery, including but not limited to failing to properly store materials containing highly hazardous and toxic chemicals and metallic substances.

3071.    PBF Martinez also knew, or should have known, that failure to maintain, inspect, and/or repair the refinery facilities would reasonably increase the probability of a catastrophic event, such as an uncontrollable harmful release of spent catalyst, coke dust, and/or noxious gases which foreseeably would lead to injuries to the health and safety of Plaintiffs and damage to personal and real property.

3072.    Further, PBF Martinez knew, or should have known, that failure to have established plans, processes, and/or protocols to address such an event and the subsequent clean up would reasonably increase the probability of a sustained catastrophic event, which foreseeably would lead to and/or increase injuries to the health and safety of Plaintiffs and increase damage to personal and real property.

3073.    PBF Martinez also knew, or should have known, that failure to immediately notify government officials, the media, the public, and Plaintiffs of each release foreseeably would lead to and/or increase injuries to the health and safety of Plaintiffs and increase damage to personal and real property.

3074.    In failing to take protective measures to safeguard against the danger, PBF Martinez created a substantial risk of injury to Plaintiffs and the individuals living, working, and/or otherwise in close proximity to the refinery.

3075.    As a direct and legal result of the wrongful acts and/or omissions of PBF Martinez, Plaintiffs have suffered damages and actual injury, including but not limited to exposure to harmful and hazardous substances such as spent catalyst, coke dust, and noxious gases, which has resulted in present medical injuries and can result in the future development of diseases in the exposed population. Those diseases can be mitigated through medical monitoring to provide early diagnosis and treatment.

3076.    As a direct and legal result of the wrongful acts and/or omissions of PBF Martinez, Plaintiffs have incurred, and will continue to incur, medical and incidental expenses for such examination, treatment, rehabilitation, care and medical monitoring.

3077.    Plaintiffs are entitled to compensatory damages, including but not limited to general damages for pain, suffering, fear, worry, annoyance, discomfort, disturbance, inconvenience, mental anguish, and emotional distress.

3078.    In failing to take protective measures to safeguard against the danger, the officers, directors and/or managing agents of PBF Martinez acted with a willful and/or knowing disregard of the probable dangerous consequences, and/or acted with an awareness of the probable dangerous

consequences of their conduct and deliberately failed to avoid those consequences, thereby creating a substantial risk of injury to Plaintiffs.

3079.   Plaintiffs are entitled to punitive and exemplary damages in an amount to be ascertained which is appropriate to punish or set an example of PBF Martinez and deter such behavior by PBF Martinez and others in the future.

**B.      SECOND CAUSE OF ACTION: PUBLIC AND PRIVATE NUISANCE**

3080.   Plaintiffs incorporate by reference Paragraphs 1 to 3066 of this Complaint as though fully set forth herein.

3081.   PBF Martinez has created and continues to create a public and private nuisance in violation of California Civil Code §§ 3479 and 3480.

3082.   PBF Martinez, through its acts and failures to act, has created a condition and allowed a condition to exist that harms the health of residents and workers in the community, including Plaintiffs. PBF Martinez's operations have exposed Plaintiffs to excessive levels of spent catalyst, coke dust, noxious gases, as well as other chemicals and toxins that are hazardous to human health.

3083.   PBF Martinez through its acts and failures to act, have also created a condition or allowed a condition to exist that has obstructed free use of property, so as to interfere with its comfortable enjoyment. When Plaintiffs find property covered with ash and soot from PBF Martinez's operations, they are alarmed and concerned that they had been exposed to toxic substances that were not only noxious but could increase the risk of cancer, among other conditions. Their concerns have only been confirmed by subsequent testing by the County which established that PBF Martinez's discharges are contaminated with heavy metals. This interference is both significant and unreasonable.

3084.   PBF Martinez's toxic emissions have affected a substantial number of people at the same time.

3085.   Ordinary people are reasonably disturbed by exposure to the refinery's toxic emissions.

3086.   Plaintiffs are suffering harm that is greater and significantly different from the type suffered by the general public. For example, PBF Martinez's toxic emissions are localized and do not affect all Bay Area residents equally. Moreover, those living closer to the refinery are affected the most.

3087.   The seriousness of PBF Martinez's toxic emissions and the harm suffered by Plaintiffs outweigh the social utility of PBF Martinez's conduct.

3088.   At no point have Plaintiffs consented to PBF Martinez's harmful conduct.

3089.   PBF Martinez's conduct is a substantial factor in causing Plaintiffs special harm in direct relation to proximity to the refinery.

3090.   PBF Martinez owed and continues to owe a duty to Plaintiffs to take reasonable steps to prevent and/or abate the interference with common public rights and/or the invasion of the private interests of Plaintiffs.

3091.   Plaintiffs therefore seek a judicial declaration that PBF Martinez has been and continue to be a public nuisance, in violation of California Civil Code §§ 3479 and 3480, and seeks all available monetary remedies and all other remedies available.

**C.      THIRD CAUSE OF ACTION: PREMISES LIABILITY**

3092.   Plaintiffs incorporate by reference Paragraphs 1 to 3066 of this Complaint as though fully set forth herein.

3093.   PBF Martinez is the owner of the real property from which spent catalyst, coke dust, noxious gases, and /or our other contaminants originated.

3094.   PBF Martinez acted wantonly, unlawfully, carelessly, recklessly, and/or negligently in failing to properly inspect, manage, maintain, and/or control the industrial equipment/activities on the real property and easement(s), allowing an unsafe condition presenting a foreseeable risk of contamination spreading danger to exist on said property.

3095.   As a direct and legal result of the wrongful acts and/or omissions of PBF Martinez, Plaintiffs suffered, and continue to suffer, the injuries and damages as set forth herein.

3096.   PBF Martinez's conduct was willful and wanton, and done with a conscious contempt and disdain for the disastrous consequences that PBF Martinez knew could occur as a

-29-

result of its dangerous conduct. Accordingly, PBF Martinez acted with malice towards Plaintiffs, and therefore, Plaintiffs seek the recovery of punitive and exemplary damages against PBF Martinez, as set forth herein.

**D.     FOURTH CAUSE OF ACTION: TRESPASS**

3097.   Plaintiffs incorporate by reference Paragraphs 1 to 3066 of this Complaint as though fully set forth herein.

3098.   Plaintiffs were the owners, tenants, and/or lawful occupants of their real property, and exercise exclusive ownership and/or control over their property.

3099.   PBF Martinez's intentional, reckless, and/or negligent conduct, as described above in this Complaint, has caused Plaintiffs' properties to be invaded by spent catalyst, coke dust, noxious gases, and /or our other contaminants that originated at the refinery, and has interfered with Plaintiffs' right of exclusive possession of their property.

3100.   Plaintiffs did not grant permission for PBF Martinez's conduct and did not consent to allowing spent catalyst, coke dust, noxious gases, and /or our other contaminants that originated at the refinery onto their properties.

3101.   As a direct and legal result of the wrongful conduct of PBF Martinez, Plaintiffs have suffered and will continue to suffer damages as set forth above, including, without limitation by: (a) causing Plaintiffs to remain inside their homes and forego use of their yards; (b) causing Plaintiffs to keep doors and windows closed when weather conditions otherwise would not so require (c) causing Plaintiffs annoyance, discomfort, embarrassment, and reluctance to invite guests to their homes; (d) blanketing Plaintiffs' homes, yards and personal property with dust and other toxic contaminants which requires unnecessary and repetitive cleaning and associated costs; (e) causing physical damage to Plaintiffs' real and personal property, including but not limited to through chipping, pitting, sedimentation, corrosion, destruction, and waste to gardens, lawns, soil, and other flora, among others; and (f) adverse impacts on the value of their property.

3102.   PBF Martinez's conduct was willful and wanton, and done with a conscious contempt and disdain for the disastrous consequences that PBF Martinez knew could occur as a result of its dangerous conduct. Accordingly, PBF Martinez acted with malice towards Plaintiffs,

-30-

and therefore, Plaintiffs seek the recovery of punitive and exemplary damages against PBF Matinez, as set forth herein.

**E.    FIFTH CAUSE OF ACTION: STRICT LIABILITY FOR ULTRA HAZARDOUS ACTIVITIES[24]**

3103.    Plaintiffs incorporate by reference Paragraphs 1 to 3066 of this Complaint as though fully set forth herein.

3104.    At all times herein, the PBF Martinez was the owner and operator of the refinery.

3105.    At all times relevant to this action, the PBF Martinez had supervision, custody, and control of the refinery. The refinery is within close proximity to several residential communities in Martinez, Benicia, and Richmond, and is in a densely populated area with thousands of residents.

3106.    PBF Martinez was and continues to be engaged in an ultrahazardous activity by producing, handling, transporting, housing, and distributing products that contain hazardous chemicals, including but not limited to aluminum, barium, chromium, nickel, vanadium, and zinc at the refinery. PBF Martinez actively engaged in an ultrahazardous activity by coupling a refining process technology that is prone to internal leaks of flammable gas mixtures with emissions technology prone to igniting flammable gases. This activity is perilous and likely to cause injury regardless of the utmost care used. Petroleum refining involves risks of serious harm, including exposing residents to harmful chemicals, which cannot be mitigated by the exercise of due care.

3107.    The events of November 24 and 25, 2022, and the repeated chemical release events since then, demonstrate that PBF Martinez is incapable of exercising due care to mitigate the refinery's incidents thereby mitigating the risk of toxic exposure to Plaintiffs. PBF Martinez contends that its equipment failure was not reasonably preventable. PBF Matinez further contends that it was incapable of controlling the releases between November 21 to November 25, 2022. No amount of due care allowed PBF Martinez to mitigate.

---

[24] To the extent there is any inconsistency between Plaintiffs' allegations under this cause of action, and Plaintiffs' other causes of action, Plaintiffs expressly note that they are entitled to plead their claims in the alternative pursuant to Federal Rule of Civil Procedure, Rule 8(d)(2)-(3).

3108.  Nearby residents, those working in the area, and others passing through a high degree of risk of serious harm to their person due to potential exposure to chemicals from the refinery. Petroleum refining is not a matter of common usage and is not carried on by the great mass of mankind. Petroleum refining is neither commonplace nor customary.

3109.  Refineries are not pervasive in California and have not become commonplace in the State. Currently, there are only fifteen petroleum refineries in operation. Seven are in Los Angeles County, four are in Contra Costa County, three are in Kern County and one is in Solano County. In California, petroleum refineries are relatively few in number and are engaged in a specialized activity not carried out generally by the public. Petroleum refining is not a matter of common usage. PBF Martinez's historical lack of maintenance and history of catastrophic and repeated flaring have all contributed to the ultrahazardous nature of the refinery's activity.

3110.  Industrial facilities such as the PBF Martinez refinery are required by state and county law to immediately report the release or suspected release of hazardous materials to emergency response authorities, including the county's Community Warning System, which sends text and telephone messages with emergency instructions to affected parts of the county.

3111.  It is very likely that the harm resulting from a hazardous release in a high consequence area near a major population center would be hazardous because airborne toxic gases or powders can travel quickly and great distances, making total containment impossible. The risk in such a setting cannot be eliminated by the exercise of reasonable care.

3112.  Petroleum refining adjacent to a major population center is completely inappropriate and inherently dangerous. Any value to the community of the processes involved in petroleum refining is far outweighed by the inherent danger of such an activity to the surrounding populace.

3113.  It was not merely the sensitive geographic area that elevated the hazardousness of the PBF Martinez's activities, but also PBF Martinez's numerous failures to follow the notification procedure and to maintain pollution control and warning equipment in operational  condition at all times. As a result, PBF Martinez's ultrahazardous activities did exactly what should have been expected—caused substantial harm to the Plaintiffs.

3114.   PBF Martinez's operation of the refinery was a substantial factor in causing the harms suffered by Plaintiffs.

3115.   The harm to Plaintiffs was and is the kind of harm that would be reasonably anticipated as a result of the risks created by PBF Martinez engaging in the process of petroleum refining near a large population center and commuter zone.

3116.   As a direct and legal result of the wrongful acts and/or omissions of PBF Martinez, Plaintiffs have suffered damages, including but not limited to exposure to harmful and hazardous substances such as spent catalyst which can result in the future development of disease, including cancers, in the exposed population.

3117.   As a direct and legal result of the wrongful acts and/or omissions of PBF Martinez, Plaintiffs have incurred, and will continue to incur, medical and incidental expenses for such examination, treatment, rehabilitation, and care, all in an amount according to proof.

3118.   Plaintiffs are entitled to compensatory damages, including but not limited to general damages for pain, suffering, fear, worry, annoyance, discomfort, disturbance, inconvenience, mental anguish, and emotional distress.

3119.   In failing to take protective measures to safeguard against the danger, the officers, directors and/or managing agents of PBF Martinez acted with a willful and/or knowing disregard of the probable dangerous consequences, and/or acted with an awareness of the probable dangerous consequences of its conduct and deliberately failed to avoid those consequences, thereby creating a substantial risk of injury to Plaintiffs.

3120.   Plaintiffs are also entitled to punitive and exemplary damages in an amount to be ascertained, which is appropriate to punish or set an example of PBF Martinez and deter such behavior by PBF Martinez and others in the future.

## VII.    PRAYER FOR RELIEF

1.      A judgment in favor of Plaintiffs on all claims;

2.   For compensatory and general damages;

3.   An award to Plaintiffs for the amount of damages, including personal injuries;

4.   Past and future medical expenses and incidental expenses;

-33-

1    5.    Medical monitoring;

2    6.    Loss of wages, earning capacity, and/or business profits or proceeds;

3    7.    General damages for fear, worry, annoyance, discomfort, disturbance, inconvenience,

4    mental anguish, and emotional distress;

5    8.    An award to Plaintiffs of punitive and exemplary damages;

6    9.    All costs of suit, including attorneys' fees and related costs;

7    10.   For pre- and post-judgment interest at the legal rate on all amounts awarded; and

8    11.   An injunction barring PBF Martinez's unlawful and unsafe operation of the refinery.

9    12.   For all other relief as this Court may deem just and proper.

10

11   Dated: November 21, 2024                         Respectfully submitted,

12                                                     /s/ C. Brooks Cutter
13   Reza Torkzadeh, SBN 249550                       C. Brooks Cutter, SBN 121407
     Scott King,  SBN 321218                          Wesley M. Griffith, SBN 286390
14   **TORKLAW**                                       Jennifer S. Domer, SBN 305822
     18650 MacArthur Blvd., Ste 300                    **CUTTER LAW P.C.**
15   Irvine, CA 92612                                  401 Watt Avenue
     Telephone:    (949) 313-7733                      Sacramento, CA 95864
16   Facsimile:    (800) 979-0262                      Telephone:    (916) 290-9400
     E-mail:       reza@torklaw.com                    Facsimile:    (916) 588-9330
17   E-mail:       scott@torklaw.com                   E-mail:       bcutter@cutterlaw.com
                                                       E-mail:       wgriffith@cutterlaw.com
18                                                     E-mail:       jdomer@cutterlaw.com
     *Attorneys for Plaintiffs*
19

20

21

22

23

24

25

26

27

28

-34-

1

**DEMAND FOR JURY TRIAL**

2

Plaintiffs hereby demand a trial by jury on all of the triable issues within this Complaint.

3

4      Dated: November 21, 2024                    Respectfully submitted,

5                                                  /s/ C. Brooks Cutter
6      Reza Torkzadeh, SBN 249550                  C. Brooks Cutter, SBN 121407
       Scott King,  SBN 321218                     Wesley M. Griffith, SBN 286390
7      **TORKLAW**                                 Jennifer S. Domer, SBN 305822
       18650 MacArthur Blvd., Ste 300              **CUTTER LAW P.C.**
8      Irvine, CA 92612                            401 Watt Avenue
       Telephone:     (949) 313-7733               Sacramento, CA 95864
9      Facsimile:     (800) 979-0262               Telephone:     (916) 290-9400
       E-mail:        reza@torklaw.com             Facsimile:     (916) 588-9330
10     E-mail:        scott@torklaw.com            E-mail:        bcutter@cutterlaw.com
                                                   E-mail:        wgriffith@cutterlaw.com
11                                                 E-mail:        jdomer@cutterlaw.com

12     *Attorneys for Plaintiffs*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

**V.      PLAINTIFF SPECIFIC ALLEGATIONS**

    **A.      Homeowner Plaintiffs.**

    131. Plaintiffs Tony Aires, Tricia Aires, Zahra Alizada, Tamara AlJada, Mark Anderson, Marisela Argenal, Nicolle Ayers, Sicily Baughman, Joseph Bautista, Marielena Benavides, Darren Bobrosky, Eugene Brock, Shari Bryce, Avedis Buyuker, Sylvia Carmona, Ali Cepeda, Sunnie Crader, David Dahme, Carlos De Leon, Elenita De Lucca, Julie De Smet, Erin DeMerritt, Stephen Dockerty, Amber Duncan, Mark Fierner, Richard Gahr, Francisco Garcia, Gloria Garcia, Jose A Gonzalez, Nikola Grcic, Michelle Griffth, Amy Guthrie, Michelle Guthrie, Brenda Hall, Kelly Hallman, Barton Hamilton, Emma Hawksworth, Eric Hogan, James Joachim, Joseph Johansen, Debra Jones, Katie Jones, Bennie Kennedy, Ronald Knopoff, Rick Krutilla, Jose Limon, Johanna Maderos, Jess Markham, Virginia Matthews, Deborah Mikesell, Stevin Mikesell, Manuel Newton, Rosa Newton, Nancy Noonan, Kerry O'Hare, Janice Oliver, Sara Orrick, Elisa Ovrahim, Ryan Oxford, Nancy Parisi, Laine Pearson, Rihanna Perez, Charles Perry, Martina Perry, Brandi Lynn Pixton, Christopher Pixton, Laura Redfern, Kevin Reyna, Jack Robinson, Sandra Rogers, Aurora Rubalcava, Felix Sanchez, Patricia Sanchez, Jay Schneider, Doug Schramm, Kellie Schramm, Elvin, Seidenspinner, Mina Shahab, Patsy Silverfoote, Nicole Smally, Rodrick Smally, Miles Smith, Titan Smith, Gina Sobrero, Betty Steele, Jenny Steward, Susan Stewart, Mei Lia Storelee, Jonathan Strohl, Samuel Sweeley, Tolupene Tavai, Linda Tellsworth, Paul Trzebiatowski, Eileen Tumlin, Barbara Turcios, Luis Uriarte, Larry Vasquez, Danielle White, Harry Wilson, Linde Yoeono, Connie Zagorsky, and Lara Zanzucchi are referred to collectively as the "Homeowner Plaintiffs."

    **1.      Plaintiff Tony Aires.**

    132. At all times relevant to this action, Plaintiff Tony Aires was over the age of 18 and was a resident of Martinez, California.

    133. Plaintiff Tony Aires owned a residence, which was approximately 1/2 mile from the refinery.

    134. Aires was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

135. Among other things, he recalls seeing dust on his property and other vehicles around him.

136. As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Aires was physically harmed.

137. Among other things, Aires began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties and headaches.

138. The November 24 and 25, 2022, discharge also entered Aires' residence, including dust.

139. The trespass by PBF Martinez interfered with Aires' ability to use and enjoy the residence and caused injury to Aires and damage to the property including by decreasing the value of the property as a result of contamination.

140. Needless to say, the trespass by PBF Martinez to Aires' real property was unauthorized.

141. Aires was also present at his residence for the July 2023, October 2023, and December 2023 releases.

142. In each instance, he was exposed to toxins from the refinery's discharges.

143. As a result of his exposure to the 2023 discharges from the refinery, Aires was physically harmed, including developing and/or worsening symptoms of headaches and breathing difficulties that were directly caused by the reoccurring discharges in 2023.

144. The 2023 discharges also entered Aires' residence, including dust.

145. The trespasses by PBF Martinez interfered with Aires' ability to use and enjoy the residence and caused injury to Aires and damage to the property including by decreasing the value of the property as a result of contamination.

146. Needless to say, the trespasses by PBF Martinez to Aires' real property was unauthorized in each instance.

## 2. Plaintiff Tricia Aires.

147. At all times relevant to this action, Plaintiff Tricia Aires was over the age of 18 and was a resident of Martinez, California.

-37-

148. Plaintiff Tricia Aires owned a residence, which was approximately 1/2 mile from the refinery.

149. Aires was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

150. Among other things, she recalls seeing dust on her property and other vehicles around her.

151. As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Aires was physically harmed.

152. Among other things, Aires began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties.

153. The November 24 and 25, 2022, discharge also entered Aires' residence, including dust.

154. The trespass by PBF Martinez interfered with Aires' ability to use and enjoy the residence and caused injury to Aires and damage to the property including by decreasing the value of the property as a result of contamination.

155. Needless to say, the trespass by PBF Martinez to Aires' real property was unauthorized.

156. Aires was also present at her residence for the July 2023, October 2023, and December 2023 releases.

157. In each instance, she was exposed to toxins from the refinery's discharges.

158. As a result of her exposure to the 2023 discharges from the refinery, Aires was physically harmed, including developing and/or worsening symptoms of breathing difficulties that were directly caused by the reoccurring discharges in 2023.

159. The 2023 discharges also entered Aires' residence, including dust.

160. The trespasses by PBF Martinez interfered with Aires' ability to use and enjoy the residence and caused injury to Aires and damage to the property including by decreasing the value of the property as a result of contamination.

161. Needless to say, the trespasses by PBF Martinez to Aires' real property was unauthorized in each instance.

-38-

1

                **3.**      **Plaintiff Zahra Alizada.**

162. At all times relevant to this action, Plaintiff Zahra Alizada was over the age of 18 and was a resident of Martinez, California.

163. Plaintiff Zahra Alizada owned a residence, which was approximately 1 1/2 miles from the refinery.

164. Alizada was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

165. Among other things, she remembered a lot of white dust on top of everything, that looked like ashes.

166. As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Alizada was physically harmed.

167. Among other things, Alizada began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including memory issues, brain fog, dizziness, vertigo, sore throat, coughing, itchy, watery, burning eyes, rash, hives, headaches, sinus pain, pressure, fatigue, bloody nose, difficulty sleeping, body aches, phlegm, stomach pain, asthma flare-up, dehydration, fever, and loss of balance.

168. The November 24 and 25, 2022, discharge also entered Alizada's residence, including the white dust.

169. The trespass by PBF Martinez interfered with Alizada's ability to use and enjoy the residence and caused injury to Alizada and damage to the property including by decreasing the value of the property as a result of contamination.

170. Needless to say, the trespass by PBF Martinez to Alizada's real property was unauthorized.

171. Alizada was also present at her residence for the July 2023, October 2023, and December 2023 releases.

172. In each instance, she was exposed to toxins from the refinery's discharges.

-39-

173. As a result of her exposure to the 2023 discharges from the refinery, Alizada was physically harmed, including developing and/or worsening symptoms of eye irritation that looks like ashes that were directly caused by the reoccurring discharges in 2023.

174. The 2023 discharges also entered Alizada's residence, including the dust.

175. The trespasses by PBF Martinez interfered with Alizada's ability to use and enjoy the residence and caused injury to Alizada and damage to the property including by decreasing the value of the property as a result of contamination.

176. Needless to say, the trespasses by PBF Martinez to Alizada's real property were unauthorized in each instance.

177. Additionally, the health effects on Alizada from the discharges have caused her to suffer lost wages, income, and/or business opportunities.

### 4.    Plaintiff Tamara AlJada.

178. At all times relevant to this action, Plaintiff Tamara AlJada was over the age of 18 and was a resident of Martinez, California.

179. Plaintiff Tamara AlJada owned a residence, which was approximately 1/2 mile from the refinery.

180. AlJada was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

181. Among other things, she saw black smoke rising from the refinery and smelled strong hydrocarbons in the air.

182. As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, AlJada was physically harmed.

183. Among other things, AlJada began experiencing illness and symptoms that were directly caused by the toxic exposure within a few weeks after the release, including sore throat, coughing, fatigue, and fever.

184. The November 24 and 25, 2022, discharge also entered AlJada's residence, including the smoke and dust.

-40-

185. The trespass by PBF Martinez interfered with AlJada's ability to use and enjoy the residence and caused injury to AlJada and damage to the property including by decreasing the value of the property as a result of contamination.

186. Needless to say, the trespass by PBF Martinez to AlJada's real property was unauthorized.

187. AlJada was also present at her residence for the July 2023, October 2023, and December 2023 releases.

188. In each instance, she was exposed to toxins from the refinery's discharges.

189. As a result of her exposure to the 2023 discharges from the refinery, AlJada was physically harmed, including developing and/or worsening symptoms of itchy throat and nose that were directly caused by the reoccurring discharges in 2023.

190. The 2023 discharges also entered AlJada's residence, including a strong chemical smell.

191. The trespasses by PBF Martinez interfered with AlJada's ability to use and enjoy the residence and caused injury to AlJada and damage to the property including by decreasing the value of the property as a result of contamination.

192. Needless to say, the trespasses by PBF Martinez to AlJada's real property were unauthorized in each instance.

**5.  Plaintiff Mark Anderson.**

193. At all times relevant to this action, Plaintiff Mark Anderson was over the age of 18 and was a resident of Martinez, California.

194. Plaintiff Mark Anderson owned a residence, which was approximately 1/2 mile from the refinery.

195. Anderson was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

196. Among other things, he recalled the dust particles and the effect on his vehicle. He had to throw out his vegetable garden.

197. As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Anderson was physically harmed.

198. Among other things, Anderson began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, chest pain, sore throat, coughing, itchy, watery, burning eyes, headaches, phlegm, stomach pain, fainting, and loss of balance.

199. The November 24 and 25, 2022, discharge also entered Anderson's residence, including bad smell, headache, trouble breathing, and burning eyes.

200. The trespass by PBF Martinez interfered with Anderson's ability to use and enjoy the residence and caused injury to Anderson and damage to the property including by decreasing the value of the property as a result of contamination.

201. Needless to say, the trespass by PBF Martinez to Anderson's real property was unauthorized.

202. Anderson was also present at his residence for the July 2023, October 2023, and December 2023 releases.

203. In each instance, he was exposed to toxins from the refinery's discharges.

204. As a result of his exposure to the 2023 discharges from the refinery, Anderson was physically harmed, including developing and/or worsening symptoms of headache, trouble breathing, runny nose, loss of appetite, burning eyes, coughing, and nausea that were directly caused by the reoccurring discharges in 2023.

205. The 2023 discharges also entered Anderson's residence, including soot and bad smell.

206. The trespasses by PBF Martinez interfered with Anderson's ability to use and enjoy the residence and caused injury to Anderson and damage to the property including by decreasing the value of the property as a result of contamination.

207. Needless to say, the trespasses by PBF Martinez to Anderson's real property were unauthorized in each instance.

208. Additionally, the health effects on Anderson from the discharges have caused him to suffer lost wages, income, and/or business opportunities.

1          **6.      Plaintiff Marisela Argenal.**

2          209. At all times relevant to this action, Plaintiff Marisela Argenal was over the age of 18

3   and was a resident of Martinez, California.

4          210. Plaintiff Marisela Argenal owned a residence, which was approximately 1 1/2 miles

5   from the refinery.

6          211. Argenal was present at their residence for the November 24 and 25, 2022 release from

7   the refinery, and was exposed to the toxic discharge from the refinery.

8          212. Among other things, she recalls a white dust on her car.

9          213. As a result of her exposure to the toxic discharges from the refinery on November 24

10  and 25, 2022, Argenal was physically harmed.

11         214. Among other things, Argenal began experiencing illness and symptoms that were

12  directly caused by the toxic exposure within days after the release, including breathing difficulties,

13  memory issues, brain fog, sore throat, coughing, itchy, watery, burning eyes, headaches, sinus pain,

14  pressure, fatigue, congestion, and dehydration.

15         215. The November 24 and 25, 2022, discharge also entered Argenal's residence, including

16  dust.

17         216. The trespass by PBF Martinez interfered with Argenal's ability to use and enjoy the

18  residence and caused injury to Argenal and damage to the property, including by decreasing the

19  value of the property as a result of contamination.

20         217. Needless to say, the trespass by PBF Martinez to Argenal's real property was

21  unauthorized.

22         218. Argenal was also present at her residence for the July 2023, October 2023, and

23  December 2023 releases.

24         219. In each instance, she was exposed to toxins from the refinery's discharges.

25         220. As a result of her exposure to the 2023 discharges from the refinery, Argenal was

26  physically harmed, including developing and/or worsening symptoms of coughing, headaches,

27  runny nose, irritation to throat, and difficulty sleeping that were directly caused by the reoccurring

28  discharges in 2023.

221. The 2023 discharges also entered Argenal's residence.

222. The trespasses by PBF Martinez interfered with Argenal's ability to use and enjoy the residence and caused injury to Argenal and damage to the property including by decreasing the value of the property as a result of contamination.

223. Needless to say, the trespasses by PBF Martinez to Argenal's real property were unauthorized in each instance.

**7.    Plaintiff Nicolle Ayers.**

224. At all times relevant to this action, Plaintiff Nicolle Ayers was over the age of 18 and was a resident of Martinez, California.

225. Plaintiff Nicolle Ayers owned a residence, which was approximately 1/4 mile from the refinery.

226. Ayers was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

227. Among other things, she recalled seeing the particles in her house since she has the windows down as she does not have centralized air.

228. As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Ayers was physically harmed.

229. Among other things, Ayers began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, dizziness, vertigo, sore throat, coughing, itchy, watery, burning eyes, headaches, and difficulty sleeping.

230. The November 24 and 25, 2022, discharge also entered Ayers' residence, including dust particles.

231. The trespass by PBF Martinez interfered with Ayers' ability to use and enjoy the residence and caused injury to Ayers and damage to the property including by decreasing the value of the property as a result of contamination.

232. Needless to say, the trespass by PBF Martinez to Ayers' real property was unauthorized.

-44-

233. Ayers was also present at her residence for the July 2023, October 2023, and December 2023 releases.

234. In each instance, she was exposed to toxins from the refinery's discharges.

235. As a result of her exposure to the 2023 discharges from the refinery, Ayers was physically harmed, including developing and/or worsening symptoms of shortness of breath, headaches, and congestion that were directly caused by the reoccurring discharges in 2023.

236. The 2023 discharges also entered Ayers' residence.

237. The trespasses by PBF Martinez interfered with Ayers' ability to use and enjoy the residence and caused injury to Ayers and damage to the property including by decreasing the value of the property as a result of contamination.

238. Needless to say, the trespasses by PBF Martinez to Ayers' real property were unauthorized in each instance.

239. Additionally, the health effects on Ayers from the discharges have caused her to suffer lost wages, income, and/or business opportunities.

### 8. Plaintiff Sicily Baughman.

240. At all times relevant to this action, Plaintiff Sicily Baughman was over the age of 18 and was a resident of Martinez, California.

241. Plaintiff Sicily Baughman owned a residence, which was approximately 1/4 mile from the refinery.

242. Baughman was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

243. The November 24 and 25, 2022, discharge also entered Baughman's residence.

244. The trespass by PBF Martinez interfered with Baughman's ability to use and enjoy the residence and caused injury to Baughman and damage to the property including by decreasing the value of the property as a result of contamination.

245. Needless to say, the trespass by PBF Martinez to Baughman's real property was unauthorized.

246. Baughman was also present at her residence for the July 2023, October 2023, and December 2023 releases.

247. In each instance, she was exposed to toxins from the refinery's discharges.

248. As a result of her exposure to the toxic discharges from the refinery on October 6, 2023, Baughman was physically harmed.

249. Among other things, Baughman began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, chest pain, memory issues, and brain fog.

250. Additional developing and/or worsening symptoms of difficulty breathing, congestion, headaches, sore throat, coughing, and sinus pain and pressure were directly caused by the reoccurring discharges in 2023.

251. The 2023 discharges also entered Baughman's residence.

252. The trespasses by PBF Martinez interfered with Baughman's ability to use and enjoy the residence and caused injury to Baughman and damage to the property including by decreasing the value of the property as a result of contamination.

253. Needless to say, the trespasses by PBF Martinez to Baughman's real property were unauthorized in each instance.

254. Additionally, the health effects on Baughman from the discharges have caused her to suffer lost wages, income, and/or business opportunities.

### 9.    Plaintiff Joseph Bautista.

255. At all times relevant to this action, Plaintiff Joseph Bautista was over the age of 18 and was a resident of Martinez, California.

256. Plaintiff Joseph Bautista owned a residence, which was approximately 2 miles from the refinery.

257. Bautista was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

258. As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Bautista was physically harmed.

259. Among other things, Bautista began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including sore throat, coughing, sinus pain, pressure, congestion, and phlegm.

260. The November 24 and 25, 2022, discharge also entered Bautista's residence.

261. The trespass by PBF Martinez interfered with Bautista's ability to use and enjoy the residence and caused injury to Bautista and damage to the property including by decreasing the value of the property as a result of contamination.

262. Needless to say, the trespass by PBF Martinez to Bautista's real property was unauthorized.

263. Bautista was also present at his residence for the July 2023, October 2023, and December 2023 releases.

264. In each instance, he was exposed to toxins from the refinery's discharges.

265. As a result of his exposure to the 2023 discharges from the refinery, Bautista was physically harmed, including developing and/or worsening symptoms of coughing, wheezing, and difficulty breathing that were directly caused by the reoccurring discharges in 2023.

266. The 2023 discharges also entered Bautista's residence.

267. The trespasses by PBF Martinez interfered with Bautista's ability to use and enjoy the residence and caused injury to Bautista and damage to the property including by decreasing the value of the property as a result of contamination.

268. Needless to say, the trespasses by PBF Martinez to Bautista's real property were unauthorized in each instance.

269. Additionally, the health effects on Bautista from the discharges have caused him to suffer lost wages, income, and/or business opportunities.

**10.    Plaintiff Marielena Benavides.**

270. At all times relevant to this action, Plaintiff Marielena Benavides was over the age of 18 and was a resident of Martinez, California.

271. Plaintiff Marielena Benavides owned a residence, which was approximately 2 miles from the refinery.

272. Benavides was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

273. As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Benavides was physically harmed.

274. Among other things, Benavides began experiencing illness and symptoms that were directly caused by the toxic exposure within a few weeks after the release, including memory issues, brain fog, fatigue, and headaches.

275. The November 24 and 25, 2022, discharge also entered Benavides' residence.

276. The trespass by PBF Martinez interfered with Benavides' ability to use and enjoy the residence and caused injury to Benavides and damage to the property including by decreasing the value of the property as a result of contamination.

277. Needless to say, the trespass by PBF Martinez to Benavides' real property was unauthorized.

278. Benavides was also present at her residence for the July 2023, October 2023, and December 2023 releases.

279. In each instance, she was exposed to toxins from the refinery's discharges.

280. As a result of her exposure to the 2023 discharges from the refinery, Benavides was physically harmed, including developing and/or worsening symptoms of memory issues, brain fog, headaches, and fatigue that were directly caused by the reoccurring discharges in 2023.

281. The 2023 discharges also entered Benavides' residence, including a strong smell.

282. The trespasses by PBF Martinez interfered with Benavides' ability to use and enjoy the residence and caused injury to Benavides and damage to the property including by decreasing the value of the property as a result of contamination.

283. Needless to say, the trespasses by PBF Martinez to Benavides' real property was unauthorized in each instance.

**11.    Plaintiff Darren Bobrosky.**

284. At all times relevant to this action, Plaintiff Darren Bobrosky was over the age of 18 and was a resident of Martinez, California.

sdf

298. Needless to say, the trespasses by PBF Martinez to Bobrosky's real property were unauthorized in each instance.

**12.    Plaintiff Eugene Brock.**

299. At all times relevant to this action, Plaintiff Eugene Brock was over the age of 18 and was a resident of Martinez, California.

300. Plaintiff Eugene Brock owned a residence, which was approximately 2 miles from the refinery.

301. Brock was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

302. As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Brock was physically harmed.

303. Among other things, Brock began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, chest pain, sore throat, coughing, itchy, watery, burning eyes, and headaches.

304. The November 24 and 25, 2022, discharge also entered Brock's residence.

305. The trespass by PBF Martinez interfered with Brock's ability to use and enjoy the residence and caused injury to Brock and damage to the property including by decreasing the value of the property as a result of contamination.

306. Needless to say, the trespass by PBF Martinez to Brock's real property was unauthorized.

307. Brock was also present at his residence for the July 2023, October 2023, and December 2023 releases.

308. In each instance, he was exposed to toxins from the refinery's discharges.

309. As a result of his exposure to the 2023 discharges from the refinery, Brock was physically harmed, including developing and/or worsening symptoms of breathing difficulties, chest pain, sore throat, coughing, itchy, watery, burning eyes, sinus pain, pressure, congestion, and difficulty sleeping that were directly caused by the reoccurring discharges in 2023.

310. The 2023 discharges also entered Brock's residence.

311. The trespasses by PBF Martinez interfered with Brock's ability to use and enjoy the residence and caused injury to Brock and damage to the property including by decreasing the value of the property as a result of contamination.

312. Needless to say, the trespasses by PBF Martinez to Brock's real property were unauthorized in each instance.

### 13.    Plaintiff Shari Bryce.

313. At all times relevant to this action, Plaintiff Shari Bryce was over the age of 18 and was a resident of Martinez, California.

314. Plaintiff Shari Bryce owned a residence, which was approximately 1/4 mile from the refinery.

315. Bryce was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

316. Among other things, she recalls seeing dust all over her car and garden.

317. As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Bryce was physically harmed.

318. Among other things, Bryce began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, chest pain, memory issues, brain fog, dizziness, vertigo, sore throat, coughing, headaches, sinus pain, and pressure.

319. The November 24 and 25, 2022, discharge also entered Bryce's residence, including dust.

320. The trespass by PBF Martinez interfered with Bryce's ability to use and enjoy the residence and caused injury to Bryce and damage to the property including by decreasing the value of the property as a result of contamination.

321. Needless to say, the trespass by PBF Martinez to Bryce's real property was unauthorized.

322. Bryce was also present at her residence for the July 2023, October 2023, and December 2023 releases.

323. In each instance, she was exposed to toxins from the refinery's discharges.

324. As a result of her exposure to the 2023 discharges from the refinery, Bryce was physically harmed, including developing and/or worsening symptoms of breathing difficulties, memory issues, brain fog, sore throat, coughing, headaches, congestion, and asthma flare-ups that were directly caused by the reoccurring discharges in 2023.

325. The 2023 discharges also entered Bryce's residence, including dust.

326. The trespasses by PBF Martinez interfered with Bryce's ability to use and enjoy the residence and caused injury to Bryce and damage to the property including by decreasing the value of the property as a result of contamination.

327. Needless to say, the trespasses by PBF Martinez to Bryce's real property were unauthorized in each instance.

328. Additionally, the health effects on Bryce from the discharges have caused her to suffer lost wages, income, and/or business opportunities.

### 14.    Plaintiff Avedis Buyuker.

329. At all times relevant to this action, Plaintiff Avedis Buyuker was over the age of 18 and was a resident of Martinez, California.

330. Plaintiff Avedis Buyuker owned a residence, which was approximately 1 mile from the refinery.

331. Buyuker was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

332. Among other things, he recalls a chemical smell.

333. As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Buyuker was physically harmed.

334. Among other things, Buyuker began experiencing illness and symptoms that were directly caused by the toxic exposure within a few months after the release, including breathing difficulties, memory issues, brain fog, sore throat, coughing, itchy, watery, burning eyes, fatigue, and stomach pain.

335. The November 24 and 25, 2022, discharge also entered Buyuker's residence, including the smell.

336. The trespass by PBF Martinez interfered with Buyuker's ability to use and enjoy the residence and caused injury to Buyuker and damage to the property including by decreasing the value of the property as a result of contamination.

337. Needless to say, the trespass by PBF Martinez to Buyuker's real property was unauthorized.

338. Buyuker was also present at his residence for the July 2023, October 2023, and December 2023 releases.

339. In each instance, he was exposed to toxins from the refinery's discharges.

340. As a result of his exposure to the 2023 discharges from the refinery, Buyuker was physically harmed, including developing and/or worsening symptoms of difficulty breathing, chest pain, sore throat, eye irritation, skin irritation, fatigue, congestion, and headaches that were directly caused by the reoccurring discharges in 2023.

341. The 2023 discharges also entered Buyuker's residence, including a chemical smell.

342. The trespasses by PBF Martinez interfered with Buyuker's ability to use and enjoy the residence and caused injury to Buyuker and damage to the property including by decreasing the value of the property as a result of contamination.

343. Needless to say, the trespasses by PBF Martinez to Buyuker's real property were unauthorized in each instance.

**15.    Plaintiff Sylvia Carmona.**

344. At all times relevant to this action, Plaintiff Sylvia Carmona was over the age of 18 and was a resident of Martinez, California.

345. Plaintiff Sylvia Carmona owned a residence, which was approximately 1/2 mile from the refinery.

346. Carmona was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

347. Among other things, she recalls her backyard was covered in dust.

348. As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Carmona was physically harmed.

349. Among other things, Carmona began experiencing illness and symptoms that were directly caused by the toxic exposure within a few weeks after the release, including breathing difficulties, sore throat, and coughing.

350. The November 24 and 25, 2022, discharge also entered Carmona's residence, including the dust.

351. The trespass by PBF Martinez interfered with Carmona's ability to use and enjoy the residence and caused injury to Carmona and damage to the property including by decreasing the value of the property as a result of contamination.

352. Needless to say, the trespass by PBF Martinez to Carmona's real property was unauthorized.

353. Carmona was also present at her residence for the July 2023, October 2023, and December 2023 releases.

354. In each instance, she was exposed to toxins from the refinery's discharges.

355. As a result of her exposure to the 2023 discharges from the refinery, Carmona was physically harmed, including developing and/or worsening symptoms wheezing, headaches, brain fog, fatigue, dizziness, and difficulty sleeping that were directly caused by the reoccurring discharges in 2023.

356. The 2023 discharges also entered Carmona's residence, including a bad odor.

357. The trespasses by PBF Martinez interfered with Carmona's ability to use and enjoy the residence and caused injury to Carmona and damage to the property including by decreasing the value of the property as a result of contamination.

358. Needless to say, the trespasses by PBF Martinez to Carmona's real property were unauthorized in each instance.

### 16.    Plaintiff Ali Cepeda.

359. At all times relevant to this action, Plaintiff Ali Cepeda was over the age of 18 and was a resident of Martinez, California.

-54-

360. Plaintiff Ali Cepeda owned a residence, which was approximately 1/4 mile from the refinery.

361. Cepeda was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

362. As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Cepeda was physically harmed.

363. Among other things, Cepeda began experiencing illness and symptoms that were directly caused by the toxic exposure within a few weeks after the release, including memory issues, brain fog.

364. The November 24 and 25, 2022, discharge also entered Cepeda's residence

365. The trespass by PBF Martinez interfered with Cepeda's ability to use and enjoy the residence and caused injury to Cepeda and damage to the property including by decreasing the value of the property as a result of contamination.

366. Needless to say, the trespass by PBF Martinez to Cepeda's real property was unauthorized.

367. Cepeda was also present at his residence for the July 2023, October 2023, and December 2023 releases.

368. In each instance, he was exposed to toxins from the refinery's discharges.

369. As a result of his exposure to the 2023 discharges from the refinery, Cepeda was physically harmed, including developing and/or worsening symptoms of difficulty breathing, chest pain, brain fog, sore throat, coughing, eye irritation, headaches, sinus pressure and pain, congestion, difficulty sleeping and fatigue that were directly caused by the reoccurring discharges in 2023.

370. The 2023 discharges also entered Cepeda's residence, including loud noises and smell.

371. The trespasses by PBF Martinez interfered with Cepeda's ability to use and enjoy the residence and caused injury to Cepeda and damage to the property including by decreasing the value of the property as a result of contamination.

372. Needless to say, the trespasses by PBF Martinez to Cepeda's real property was unauthorized in each instance.

373. Additionally, the health effects on Cepeda from the discharges have caused him to suffer lost wages, income, and/or business opportunities.

**17.    Plaintiff Sunnie Crader.**

374. At all times relevant to this action, Plaintiff Sunnie Crader was over the age of 18 and was a resident of Martinez, California.

375. Plaintiff Sunnie Crader owned a residence, which was approximately 1 mile from the refinery.

376. Crader was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

377. Among other things, she recalls seeing dust on nearby vehicles.

378. As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Crader was physically harmed.

379. Among other things, Crader began experiencing illness and symptoms that were directly caused by the toxic exposure within a few weeks after the release, including breathing difficulties, headaches, and fatigue.

380. The November 24 and 25, 2022, discharge also entered Crader's residence, including dust.

381. The trespass by PBF Martinez interfered with Crader's ability to use and enjoy the residence and caused injury to Crader and damage to the property including by decreasing the value of the property as a result of contamination.

382. Needless to say, the trespass by PBF Martinez to Crader's real property was unauthorized.

383. Crader was also present at her residence for the July 2023, October 2023, and December 2023 releases.

384. In each instance, she was exposed to toxins from the refinery's discharges.

385. As a result of her exposure to the 2023 discharges from the refinery, Crader was physically harmed, including developing and/or worsening symptoms headaches, fatigue, and breathing difficulties that were directly caused by the reoccurring discharges in 2023.

386. The 2023 discharges also entered Crader's residence, including dust.

387. The trespasses by PBF Martinez interfered with Crader's ability to use and enjoy the residence and caused injury to Crader and damage to the property, including by decreasing the value of the property as a result of contamination.

388. Needless to say, the trespasses by PBF Martinez to Crader's real property was unauthorized in each instance.

### 18.    Plaintiff David Dahme.

389. At all times relevant to this action, Plaintiff David Dahme was over the age of 18 and was a resident of Martinez, California.

390. Plaintiff David Dahme owned a residence, which was approximately 1/4 mile from the refinery.

391. Dahme was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

392. Among other things, he saw fire coming from a smokestack and felt a rumbling. He also saw dust on his cars.

393. As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Dahme was physically harmed.

394. Among other things, Dahme began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, itchy, watery, burning eyes, and fatigue.

395. The November 24 and 25, 2022, discharge also entered Dahme's residence, including dust.

396. The trespass by PBF Martinez interfered with Dahme's ability to use and enjoy the residence and caused injury to Dahme and damage to the property including by decreasing the value of the property as a result of contamination.

397. Needless to say, the trespass by PBF Martinez to Dahme's real property was unauthorized.

398. Dahme was also present at his residence for the October 2023 and December 2023 releases.

399. In each instance, he was exposed to toxins from the refinery's discharges.

400. As a result of his exposure to the 2023 discharges from the refinery, Dahme was physically harmed, including developing and/or worsening symptoms of coughing and headaches that were directly caused by the reoccurring discharges in 2023.

401. The 2023 discharges also entered Dahme's residence, including dust.

402. The trespasses by PBF Martinez interfered with Dahme's ability to use and enjoy the residence and caused injury to Dahme and damage to the property, including by decreasing the value of the property as a result of contamination.

403. Needless to say, the trespasses by PBF Martinez to Dahme's real property were unauthorized in each instance.

### 19.    Plaintiff Carlos De Leon.

404. At all times relevant to this action, Plaintiff Carlos De Leon was over the age of 18 and was a resident of Martinez, California.

405. Plaintiff Carlos De Leon owned a residence, which was approximately 2 miles from the refinery.

406. De Leon was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

407. Among other things, he recalled the smell.

408. As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, De Leon was physically harmed.

409. Among other things, De Leon began experiencing illness and symptoms that were directly caused by the toxic exposure within a week after the release, including breathing difficulties, dizziness, vertigo, sore throat, coughing, itchy, watery, burning eyes, headaches, sinus pain, pressure, and congestion.

410. The November 24 and 25, 2022, discharge also entered De Leon's residence, including the smell.

411. The trespass by PBF Martinez interfered with De Leon's ability to use and enjoy the residence and caused injury to De Leon and damage to the property including by decreasing the value of the property as a result of contamination.

412. Needless to say, the trespass by PBF Martinez to De Leon's real property was unauthorized.

413. De Leon was also present at his residence for the July 2023 and December 2023 releases.

414. In each instance, he was exposed to toxins from the refinery's discharges.

415. As a result of his exposure to the 2023 discharges from the refinery, De Leon was physically harmed, including developing and/or worsening symptoms of difficulty breathing, congestion, headaches, coughing, and difficulty sleeping that were directly caused by the reoccurring discharges in 2023.

416. The 2023 discharges also entered De Leon's residence, including the smell.

417. The trespasses by PBF Martinez interfered with De Leon's ability to use and enjoy the residence and caused injury to De Leon and damage to the property including by decreasing the value of the property as a result of contamination.

418. Needless to say, the trespasses by PBF Martinez to De Leon's real property were unauthorized in each instance.

419. Additionally, the health effects on De Leon from the discharges have caused him to suffer lost wages, income, and/or business opportunities.

### 20. Plaintiff Elenita De Lucca.

420. At all times relevant to this action, Plaintiff Elenita De Lucca was over the age of 18 and was a resident of Martinez, California.

421. Plaintiff Elenita De Lucca owned a residence, which was approximately 1/2 mile from the refinery.

422. De Lucca was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

423. Among other things, she saw black soot on cars, smelled a sulfur-like smell, and the air was smoggy.

424. As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, De Lucca was physically harmed.

425. Among other things, De Lucca began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, memory issues, brain fog, dizziness, vertigo, sore throat, coughing, itchy, watery, burning eyes, headaches, fatigue, congestion, difficulty sleeping, body aches, phlegm, and dehydration.

426. The November 24 and 25, 2022, discharge also entered De Lucca's residence, including soot and smell.

427. The trespass by PBF Martinez interfered with De Lucca's ability to use and enjoy the residence and caused injury to De Lucca and damage to the property including by decreasing the value of the property as a result of contamination.

428. Needless to say, the trespass by PBF Martinez to De Lucca's real property was unauthorized.

429. De Lucca was also present at her residence for the July 2023, October 2023, and December 2023 releases.

430. In each instance, she was exposed to toxins from the refinery's discharges.

431. As a result of her exposure to the 2023 discharges from the refinery, De Lucca was physically harmed, including developing and/or worsening symptoms of congestion and fatigue that were directly caused by the reoccurring discharges in 2023.

432. The 2023 discharges also entered De Lucca's residence, including smell and soot.

433. The trespasses by PBF Martinez interfered with De Lucca's ability to use and enjoy the residence and caused injury to De Lucca and damage to the property including by decreasing the value of the property as a result of contamination.

434. Needless to say, the trespasses by PBF Martinez to De Lucca's real property was unauthorized in each instance.

435. Additionally, the health effects on De Lucca from the discharges have caused her to suffer lost wages, income, and/or business opportunities.

### 21.    Plaintiff Julie De Smet.

436. At all times relevant to this action, Plaintiff Julie De Smet was over the age of 18 and was a resident of Martinez, California.

437. Plaintiff Julie De Smet owned a residence, which was approximately 1 1/2 miles from the refinery.

438. De Smet was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

439. Among other things, she recalls her garden being affected.

440. As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, De Smet was physically harmed.

441. Among other things, De Smet began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including chest pain, memory issues, brain fog, nausea, vomiting, headaches, and fatigue.

442. The November 24 and 25, 2022, discharge also entered De Smet's residence, including dust.

443. The trespass by PBF Martinez interfered with De Smet's ability to use and enjoy the residence and caused injury to De Smet and damage to the property including by decreasing the value of the property as a result of contamination.

444. Needless to say, the trespass by PBF Martinez to De Smet's real property was unauthorized.

445. De Smet was also present at her residence for the July 2023, October 2023, and December 2023 releases.

446. In each instance, she was exposed to toxins from the refinery's discharges.

447. As a result of her exposure to the 2023 discharges from the refinery, De Smet was physically harmed, including developing and/or worsening symptoms of chest pain, headaches, nausea, fatigue, and brain fog that were directly caused by the reoccurring discharges in 2023.

448. The 2023 discharges also entered De Smet's residence, including the strong smell.

449. The trespasses by PBF Martinez interfered with De Smet's ability to use and enjoy the residence and caused injury to De Smet and damage to the property including by decreasing the value of the property as a result of contamination.

450. Needless to say, the trespasses by PBF Martinez to De Smet's real property were unauthorized in each instance.

### 22.    Plaintiff Erin DeMerritt.

451. At all times relevant to this action, Plaintiff Erin DeMerritt was over the age of 18 and was a resident of Martinez, California.

452. Plaintiff Erin DeMerritt owned a residence, which was approximately 1/4 mile from the refinery.

453. DeMerritt was present at their residence for the July 11 and 22, 2023 release from the refinery, and was exposed to the toxic discharge from the refinery.

454. Among other things, she recalls seeing dust on vehicles and other houses.

455. As a result of her exposure to the toxic discharges from the refinery on July 11 and 22, 2023 DeMerritt was physically harmed.

456. Among other things, DeMerritt began experiencing illness and symptoms that were directly caused by the toxic exposure within a few weeks after the release, including memory issues, brain fog, headaches, fatigue, and dehydration.

457. The July 11 and 22, 2023, discharge also entered DeMerritt's residence, including dust.

458. The trespass by PBF Martinez interfered with DeMerritt's ability to use and enjoy the residence and caused injury to DeMerritt and damage to the property including by decreasing the value of the property as a result of contamination.

459. Needless to say, the trespass by PBF Martinez to DeMerritt's real property was unauthorized.

460. DeMerritt was also present at her residence for the October 2023 release.

461. In each instance, she was exposed to toxins from the refinery's discharges.

462. As a result of her exposure to the 2023 discharges from the refinery, DeMerritt was physically harmed, including developing and/or worsening symptoms of memory issues, brain fog, and headaches that were directly caused by the reoccurring discharges in 2023.

463. The 2023 discharges also entered DeMerritt's residence, including dust.

464. The trespasses by PBF Martinez interfered with DeMerritt's ability to use and enjoy the residence and caused injury to DeMerritt and damage to the property including by decreasing the value of the property as a result of contamination.

465. Needless to say, the trespasses by PBF Martinez to DeMerritt's real property were unauthorized in each instance.

### 23.    Plaintiff Stephen Dockerty.

466. At all times relevant to this action, Plaintiff Stephen Dockerty was over the age of 18 and was a resident of Martinez, California.

467. Plaintiff Stephen Dockerty owned a residence, which was approximately 2 miles from the refinery.

468. Dockerty was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

469. Among other things, he recalls a smell and seeing dust.

470. As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Dockerty was physically harmed.

471. Among other things, Dockerty began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties and chest pain.

472. The November 24 and 25, 2022, discharge also entered Dockerty's residence, including dust and a smell.

473. The trespass by PBF Martinez interfered with Dockerty's ability to use and enjoy the residence and caused injury to Dockerty and damage to the property including by decreasing the value of the property as a result of contamination.

474. Needless to say, the trespass by PBF Martinez to Dockerty's real property was unauthorized.

475. Dockerty was also present at his residence for the July 2023, October 2023, and December 2023 releases.

476. In each instance, he was exposed to toxins from the refinery's discharges.

477. As a result of his exposure to the 2023 discharges from the refinery, Dockerty was physically harmed, including developing and/or worsening symptoms of chest pain and breathing difficulties that were directly caused by the reoccurring discharges in 2023.

478. The 2023 discharges also entered Dockerty's residence, including dust and a strong smell.

479. The trespasses by PBF Martinez interfered with Dockerty's ability to use and enjoy the residence and caused injury to Dockerty and damage to the property including by decreasing the value of the property as a result of contamination.

480. Needless to say, the trespasses by PBF Martinez to Dockerty's real property were unauthorized in each instance.

### 24.    Plaintiff Amber Duncan.

481. At all times relevant to this action, Plaintiff Amber Duncan was over the age of 18 and was a resident of Martinez, California.

482. Plaintiff Amber Duncan owned a residence, which was approximately 1/4 mile from the refinery.

483. Duncan was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

484. Among other things, she saw the flaring from her house, with her doors and windows shaking. She found ash on her car after.

485. As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Duncan was physically harmed.

486. Among other things, Duncan began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, sore throat, coughing, headaches, and asthma flare-up.

487. The November 24 and 25, 2022, discharge also entered Duncan's residence, including shaking and ash.

488. The trespass by PBF Martinez interfered with Duncan's ability to use and enjoy the residence and caused injury to Duncan and damage to the property including by decreasing the value of the property as a result of contamination.

489. Needless to say, the trespass by PBF Martinez to Duncan's real property was unauthorized.

490. Duncan was also present at her residence for the October 2023 and December 2023 releases.

491. In each instance, she was exposed to toxins from the refinery's discharges.

492. As a result of her exposure to the 2023 discharges from the refinery, Duncan was physically harmed, including developing and/or worsening symptoms of difficulty breathing, asthma flare up, headaches, coughing, and vomiting that were directly caused by the reoccurring discharges in 2023.

493. The 2023 discharges also entered Duncan's residence, including ash.

494. The trespasses by PBF Martinez interfered with Duncan's ability to use and enjoy the residence and caused injury to Duncan and damage to the property including by decreasing the value of the property as a result of contamination.

495. Needless to say, the trespasses by PBF Martinez to Duncan's real property was unauthorized in each instance.

### 25.   Plaintiff Mark Fierner.

496. At all times relevant to this action, Plaintiff Mark Fierner was over the age of 18 and was a resident of Martinez, California.

497. Plaintiff Mark Fierner owned a residence, which was approximately 2 miles from the refinery.

498. Fierner was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

499. Among other things, he recalls seeing dust on his vehicles.

500. As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Fierner was physically harmed.

501. Among other things, Fierner began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including dizziness, vertigo, and loss of balance.

502. The November 24 and 25, 2022, discharge also entered Fierner's residence, including dust.

503. The trespass by PBF Martinez interfered with Fierner's ability to use and enjoy the residence and caused injury to Fierner and damage to the property including by decreasing the value of the property as a result of contamination.

504. Needless to say, the trespass by PBF Martinez to Fierner's real property was unauthorized.

505. Fierner was also present at his residence for the July 2023, October 2023, and December 2023 releases.

506. In each instance, he was exposed to toxins from the refinery's discharges.

507. As a result of his exposure to the 2023 discharges from the refinery, Fierner was physically harmed, including developing and/or worsening symptoms of dizziness, vertigo, and loss of balance that were directly caused by the reoccurring discharges in 2023.

508. The 2023 discharges also entered Fierner's residence, including dust.

509. The trespasses by PBF Martinez interfered with Fierner's ability to use and enjoy the residence and caused injury to Fierner and damage to the property including by decreasing the value of the property as a result of contamination.

510. Needless to say, the trespasses by PBF Martinez to Fierner's real property were unauthorized in each instance.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1

### 26.    Plaintiff Richard Gahr.

2      511. At all times relevant to this action, Plaintiff Richard Gahr was over the age of 18 and

3   was a resident of Martinez, California.

4      512. Plaintiff Richard Gahr owned a residence, which was approximately 1 mile from the

5   refinery.

6      513. Gahr was present at their residence for the November 24 and 25, 2022 release from the

7   refinery, and was exposed to the toxic discharge from the refinery.

8      514. As a result of his exposure to the toxic discharges from the refinery on November 24

9   and 25, 2022, Gahr was physically harmed.

10      515. Among other things, Gahr began experiencing illness and symptoms that were directly

11   caused by the toxic exposure immediately after the release, including breathing difficulties, sore

12   throat, coughing, nausea, vomiting, headaches, sinus pain, pressure, fatigue, congestion, difficulty

13   sleeping, body aches, and heartburn.

14      516. The November 24 and 25, 2022, discharge also entered Gahr's residence.

15      517. The trespass by PBF Martinez interfered with Gahr's ability to use and enjoy the

16   residence and caused injury to Gahr and damage to the property including by decreasing the value

17   of the property as a result of contamination.

18      518. Needless to say, the trespass by PBF Martinez to Gahr's real property was

19   unauthorized.

20      519. Gahr was also present at his residence for the July 2023, October 2023, and December

21   2023 releases.

22      520. In each instance, he was exposed to toxins from the refinery's discharges.

23      521. As a result of his exposure to the 2023 discharges from the refinery, Gahr was

24   physically harmed, including developing and/or worsening symptoms of coughing, watering eyes,

25   chest pain, congestion, and fatigue that were directly caused by the reoccurring discharges in 2023.

26      522. The 2023 discharges also entered Gahr's residence.

27

28

523. The trespasses by PBF Martinez interfered with Gahr's ability to use and enjoy the residence and caused injury to Gahr and damage to the property including by decreasing the value of the property as a result of contamination.

524. Needless to say, the trespasses by PBF Martinez to Gahr's real property were unauthorized in each instance.

### 27.    Plaintiff Francisco Garcia.

525. At all times relevant to this action, Plaintiff Francisco Garcia was over the age of 18 and was a resident of Martinez, California.

526. Plaintiff Francisco Garcia owned a residence, which was approximately 1/2 mile from the refinery.

527. Garcia was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

528. Among other things, he recalls the smell.

529. As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Garcia was physically harmed.

530. Among other things, Garcia began experiencing illness and symptoms that were directly caused by the toxic exposure within a week after the release, including breathing difficulties, chest pain, sore throat, coughing, itchy, watery, burning eyes, sinus pain, pressure, bloody nose, congestion, phlegm, and asthma flare-ups.

531. The November 24 and 25, 2022, discharge also entered Garcia's residence, including smell.

532. The trespass by PBF Martinez interfered with Garcia's ability to use and enjoy the residence and caused injury to Garcia and damage to the property including by decreasing the value of the property as a result of contamination.

533. Needless to say, the trespass by PBF Martinez to Garcia's real property was unauthorized.

534. Garcia was also present at his residence for the July 2023, October 2023, and December 2023 releases.

535. In each instance, he was exposed to toxins from the refinery's discharges.

536. As a result of his exposure to the 2023 discharges from the refinery, Garcia was physically harmed, including developing and/or worsening symptoms of difficulty breathing, bloody noses, eye irritation, and headaches that were directly caused by the reoccurring discharges in 2023.

537. The 2023 discharges also entered Garcia's residence, including the dust and smell.

538. The trespasses by PBF Martinez interfered with Garcia's ability to use and enjoy the residence and caused injury to Garcia and damage to the property including by decreasing the value of the property as a result of contamination.

539. Needless to say, the trespasses by PBF Martinez to Garcia's real property were unauthorized in each instance.

540. Additionally, the health effects on Garcia from the discharges have caused him to suffer lost wages, income, and/or business opportunities.

### 28.    Plaintiff Gloria Garcia.

541. At all times relevant to this action, Plaintiff Gloria Garcia was over the age of 18 and was a resident of Martinez, California.

542. Plaintiff Gloria Garcia owned a residence, which was approximately 1 mile from the refinery.

543. Garcia was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

544. Among other things, she recalls a strong smell.

545. As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Garcia was physically harmed.

546. Among other things, Garcia began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, sore throat, coughing, itchy, watery, burning eyes, fatigue, congestion, difficulty sleeping, phlegm, asthma flare-up, heartburn, diarrhea, loss of balance, and light headedness.

547. The November 24 and 25, 2022, discharge also entered Garcia's residence, including a strong smell.

548. The trespass by PBF Martinez interfered with Garcia's ability to use and enjoy the residence and caused injury to Garcia and damage to the property including by decreasing the value of the property as a result of contamination.

549. Needless to say, the trespass by PBF Martinez to Garcia's real property was unauthorized.

550. Garcia was also present at her residence for the July 2023, October 2023, and December 2023 releases.

551. In each instance, she was exposed to toxins from the refinery's discharges.

552. As a result of her exposure to the 2023 discharges from the refinery, Garcia was physically harmed, including developing and/or worsening symptoms of breathing difficulties, dizziness, vertigo, sore throat, and coughing that were directly caused by the reoccurring discharges in 2023.

553. The 2023 discharges also entered Garcia's residence, including a strong smell.

554. The trespasses by PBF Martinez interfered with Garcia's ability to use and enjoy the residence and caused injury to Garcia and damage to the property including by decreasing the value of the property as a result of contamination.

555. Needless to say, the trespasses by PBF Martinez to Garcia's real property were unauthorized in each instance.

### 29.    Plaintiff Jose A Gonzalez.

556. At all times relevant to this action, Plaintiff Jose A Gonzalez was over the age of 18 and was a resident of Martinez, California.

557. Plaintiff Jose A Gonzalez owned a residence, which was approximately 1/4 mile from the refinery.

558. Gonzalez was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

559. Among other things, he recalls the smells and sounds from the refinery.

560. As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Gonzalez was physically harmed.

561. Among other things, Gonzalez began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including sore throat, coughing, itchy, watery, burning eyes, sinus pain, pressure, and congestion.

562. The November 24 and 25, 2022, discharge also entered Gonzalez's residence, including smell and sound.

563. The trespass by PBF Martinez interfered with Gonzalez's ability to use and enjoy the residence and caused injury to Gonzalez and damage to the property including by decreasing the value of the property as a result of contamination.

564. Needless to say, the trespass by PBF Martinez to Gonzalez's real property was unauthorized.

565. Gonzalez was also present at his residence for the July 2023, October 2023, and December 2023 releases.

566. In each instance, he was exposed to toxins from the refinery's discharges.

567. As a result of his exposure to the 2023 discharges from the refinery, Gonzalez was physically harmed, including developing and/or worsening symptoms of sinus pressure and pain, congestion, brain fog, sore throat, coughing, difficulty sleeping, body aches, and dry nose that were directly caused by the reoccurring discharges in 2023.

568. The 2023 discharges also entered Gonzalez's residence, including the sounds and smell.

569. The trespasses by PBF Martinez interfered with Gonzalez's ability to use and enjoy the residence and caused injury to Gonzalez and damage to the property including by decreasing the value of the property as a result of contamination.

570. Needless to say, the trespasses by PBF Martinez to Gonzalez's real property was unauthorized in each instance.

571. Additionally, the health effects on Gonzalez from the discharges have caused him to suffer lost wages, income, and/or business opportunities.

### 30. Plaintiff Nikola Grcic.

572. At all times relevant to this action, Plaintiff Nikola Grcic was over the age of 18 and was a resident of Martinez, California.

573. Plaintiff Nikola Grcic owned a residence, which was approximately 1/2 mile from the refinery.

574. Grcic was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

575. As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Grcic was physically harmed.

576. Among other things, Grcic began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, chest pain, headaches, congestion, phlegm, and heartburn.

577. The November 24 and 25, 2022, discharge also entered Grcic's residence.

578. The trespass by PBF Martinez interfered with Grcic's ability to use and enjoy the residence and caused injury to Grcic and damage to the property including by decreasing the value of the property as a result of contamination.

579. Needless to say, the trespass by PBF Martinez to Grcic's real property was unauthorized.

580. Grcic was also present at his residence for the July 2023, October 2023, and December 2023 releases.

581. In each instance, he was exposed to toxins from the refinery's discharges.

582. As a result of his exposure to the 2023 discharges from the refinery, Grcic was physically harmed, including developing and/or worsening symptoms of headaches, congestion, stomach issues, and sinus issues that were directly caused by the reoccurring discharges in 2023.

583. The 2023 discharges also entered Grcic's residence.

584. The trespasses by PBF Martinez interfered with Grcic's ability to use and enjoy the residence and caused injury to Grcic and damage to the property including by decreasing the value of the property as a result of contamination.

585. Needless to say, the trespasses by PBF Martinez to Grcic's real property were unauthorized in each instance.

### 31. Plaintiff Michelle Griffth.

586. At all times relevant to this action, Plaintiff Michelle Griffth was over the age of 18 and was a resident of Martinez, California.

587. Plaintiff Michelle Griffth owned a residence, which was approximately 1/2 mile from the refinery.

588. Griffth was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

589. Among other things, she recalls seeing dust.

590. As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Griffth was physically harmed.

591. Among other things, Griffth began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release , including breathing difficulties, memory issues, brain fog, dizziness, vertigo, sore throat, coughing, nausea, vomiting, itchy, watery, burning eyes, headaches, sinus pain, pressure, fatigue, congestion, difficulty sleeping, body aches, ear aches, ear infections, phlegm, asthma flare-up, loss of balance, and sinus infections.

592. The November 24 and 25, 2022, discharge also entered Griffth's residence, including dust.

593. The trespass by PBF Martinez interfered with Griffth's ability to use and enjoy the residence and caused injury to Griffth and damage to the property including by decreasing the value of the property as a result of contamination.

594. Needless to say, the trespass by PBF Martinez to Griffth's real property was unauthorized.

595. Griffth was also present at her residence for the July 2023, October 2023, and December 2023 releases.

596. In each instance, she was exposed to toxins from the refinery's discharges.

597. As a result of her exposure to the 2023 discharges from the refinery, Griffth was physically harmed, including developing and/or worsening symptoms of breathing difficulties, sinus pain, pressure, congestion, earaches, ear infections, phlegm that were directly caused by the reoccurring discharges in 2023.

598. The 2023 discharges also entered Griffth's residence, including dust.

599. The trespasses by PBF Martinez interfered with Griffth's ability to use and enjoy the residence and caused injury to Griffth and damage to the property including by decreasing the value of the property as a result of contamination.

600. Needless to say, the trespasses by PBF Martinez to Griffth's real property was unauthorized in each instance.

### 32.    Plaintiff Amy Guthrie.

601. At all times relevant to this action, Plaintiff Amy Guthrie was over the age of 18 and was a resident of Martinez, California.

602. Plaintiff Amy Guthrie owned a residence, which was approximately 1/2 mile from the refinery.

603. Guthrie was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

604. Among other things, she recalls debris on her house and the bad smell.

605. As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Guthrie was physically harmed.

606. Among other things, Guthrie began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, sore throat, coughing, headaches, fatigue, congestion, and dehydration.

607. The November 24 and 25, 2022, discharge also entered Guthrie's residence, including debris and bad smell.

608. The trespass by PBF Martinez interfered with Guthrie's ability to use and enjoy the residence and caused injury to Guthrie and damage to the property including by decreasing the value of the property as a result of contamination.

609. Needless to say, the trespass by PBF Martinez to Guthrie's real property was unauthorized.

610. Guthrie was also present at her residence for the July 2023, October 2023, and December 2023 releases.

611. In each instance, she was exposed to toxins from the refinery's discharges.

612. As a result of her exposure to the 2023 discharges from the refinery, Guthrie was physically harmed, including developing and/or worsening symptoms of shortness of breath, trouble breathing, redness in my eyes, coughing, brain fog, sinus pressure, headaches, and coughing that were directly caused by the reoccurring discharges in 2023.

613. The 2023 discharges also entered Guthrie's residence, including debris and bad smell.

614. The trespasses by PBF Martinez interfered with Guthrie's ability to use and enjoy the residence and caused injury to Guthrie and damage to the property including by decreasing the value of the property as a result of contamination.

615. Needless to say, the trespasses by PBF Martinez to Guthrie's real property were unauthorized in each instance.

### 33.    Plaintiff Michelle Guthrie.

616. At all times relevant to this action, Plaintiff Michelle Guthrie was over the age of 18 and was a resident of Martinez, California.

617. Plaintiff Michelle Guthrie owned a residence, which was approximately 1 mile from the refinery.

618. Guthrie was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

619. Among other things, she recalls black dust and weird smell.

620. As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Guthrie was physically harmed.

621. Among other things, Guthrie began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, sore throat, coughing, itchy, watery, burning eyes, congestion, and asthma flare-ups.

622. The November 24 and 25, 2022, discharge also entered Guthrie's residence, including dust and smell.

623. The trespass by PBF Martinez interfered with Guthrie's ability to use and enjoy the residence and caused injury to Guthrie and damage to the property including by decreasing the value of the property as a result of contamination.

624. Needless to say, the trespass by PBF Martinez to Guthrie's real property was unauthorized.

625. Guthrie was also present at her residence for the July 2023, October 2023, and December 2023 releases.

626. In each instance, she was exposed to toxins from the refinery's discharges.

627. As a result of her exposure to the 2023 discharges from the refinery, Guthrie was physically harmed, including developing and/or worsening symptoms of asthma, bronchitis, pneumonia, headaches, and wheezing that were directly caused by the reoccurring discharges in 2023.

628. The 2023 discharges also entered Guthrie's residence, including dust and weird smell.

629. The trespasses by PBF Martinez interfered with Guthrie's ability to use and enjoy the residence and caused injury to Guthrie and damage to the property including by decreasing the value of the property as a result of contamination.

630. Needless to say, the trespasses by PBF Martinez to Guthrie's real property were unauthorized in each instance.

### 34.    Plaintiff Brenda Hall.

631. At all times relevant to this action, Plaintiff Brenda Hall was over the age of 18 and was a resident of Martinez, California.

632. Plaintiff Brenda Hall owned a residence, which was approximately 1/4 mile from the refinery.

633. Hall was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

634. Among other things, she recalls black smoke and dust everywhere.

635. As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Hall was physically harmed.

636. Among other things, Hall began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, dizziness, vertigo, sore throat, coughing, and headaches.

637. The November 24 and 25, 2022, discharge also entered Hall's residence, including smoke and dust.

638. The trespass by PBF Martinez interfered with Hall's ability to use and enjoy the residence and caused injury to Hall and damage to the property including by decreasing the value of the property as a result of contamination.

639. Needless to say, the trespass by PBF Martinez to Hall's real property was unauthorized.

640. Hall was also present at her residence for the July 2023, October 2023, and December 2023 releases.

641. In each instance, she was exposed to toxins from the refinery's discharges.

642. As a result of her exposure to the 2023 discharges from the refinery, Hall was physically harmed, including developing and/or worsening symptoms of difficulty breathing, coughing, eye irritation, and headaches that were directly caused by the reoccurring discharges in 2023.

643. The 2023 discharges also entered Hall's residence, including dust.

644. The trespasses by PBF Martinez interfered with Hall's ability to use and enjoy the residence and caused injury to Hall and damage to the property including by decreasing the value of the property as a result of contamination.

645. Needless to say, the trespasses by PBF Martinez to Hall's real property were unauthorized in each instance.

### 35.    Plaintiff Kelly Hallman.

646. At all times relevant to this action, Plaintiff Kelly Hallman was over the age of 18 and was a resident of Martinez, California.

647. Plaintiff Kelly Hallman owned a residence, which was approximately 1 mile from the refinery.

648. Hallman was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

649. Among other things, she heard a loud noise and saw the refinery was very bright and there seemed to be some sort of haze.

650. As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Hallman was physically harmed.

651. Among other things, Hallman began experiencing illness and symptoms that were directly caused by the toxic exposure within a week after the release, including breathing difficulties, chest pain, memory issues, brain fog, dizziness, vertigo, sore throat, coughing, nausea, vomiting, itchy, watery, burning eyes, headaches, sinus pain, pressure, and fatigue.

652. The November 24 and 25, 2022, discharge also entered Hallman's residence, including the noise and haze.

653. The trespass by PBF Martinez interfered with Hallman's ability to use and enjoy the residence and caused injury to Hallman and damage to the property including by decreasing the value of the property as a result of contamination.

654. Needless to say, the trespass by PBF Martinez to Hallman's real property was unauthorized.

655. Hallman was also present at her residence for the July 2023, October 2023, and December 2023 releases.

656. In each instance, she was exposed to toxins from the refinery's discharges.

657. As a result of her exposure to the 2023 discharges from the refinery, Hallman was physically harmed, including developing and/or worsening symptoms of difficulty breathing coughing, and skin irritation that were directly caused by the reoccurring discharges in 2023.

658. The 2023 discharges also entered Hallman's residence.

659. The trespasses by PBF Martinez interfered with Hallman's ability to use and enjoy the residence and caused injury to Hallman and damage to the property including by decreasing the value of the property as a result of contamination.

660. Needless to say, the trespasses by PBF Martinez to Hallman's real property were unauthorized in each instance.

### 36.   Plaintiff Barton Hamilton.

661. At all times relevant to this action, Plaintiff Barton Hamilton was over the age of 18 and was a resident of Martinez, California.

662. Plaintiff Barton Hamilton owned a residence, which was approximately 1/4 mile from the refinery.

663. Hamilton was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

664. Among other things, he recalls smelling an odor.

665. As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Hamilton was physically harmed.

666. Among other things, Hamilton began experiencing illness and symptoms that were directly caused by the toxic exposure within a month after the release, including breathing difficulties, memory issues, brain fog, dizziness, vertigo, sore throat, coughing, nausea, vomiting, itchy, watery, burning eyes, rash, hives, headaches, sinus pain, pressure, fatigue, bloody nose, congestion, difficulty sleeping, body aches, ear aches, ear infections, phlegm, fever, diarrhea, and loss of balance.

667. The November 24 and 25, 2022, discharge also entered Hamilton's residence, including a strong odor.

668. The trespass by PBF Martinez interfered with Hamilton's ability to use and enjoy the residence and caused injury to Hamilton and damage to the property including by decreasing the value of the property as a result of contamination.

669. Needless to say, the trespass by PBF Martinez to Hamilton's real property was unauthorized.

670. Hamilton was also present at his residence for the July 2023, October 2023, and December 2023 releases.

671. In each instance, he was exposed to toxins from the refinery's discharges.

672. As a result of his exposure to the 2023 discharges from the refinery, Hamilton was physically harmed, including developing and/or worsening symptoms of breathing difficulties, memory issues, brain fog, sore throat, coughing, rash, hives, headaches, congestion, body aches, heartburn, and dehydration that were directly caused by the reoccurring discharges in 2023.

673. The 2023 discharges also entered Hamilton's residence, including a strong smell.

674. The trespasses by PBF Martinez interfered with Hamilton's ability to use and enjoy the residence and caused injury to Hamilton and damage to the property including by decreasing the value of the property as a result of contamination.

675. Needless to say, the trespasses by PBF Martinez to Hamilton's real property were unauthorized in each instance.

### 37.    Plaintiff Emma Hawksworth.

676. At all times relevant to this action, Plaintiff Emma Hawksworth was over the age of 18 and was a resident of Martinez, California.

677. Plaintiff Emma Hawksworth owned a residence, which was approximately 1 1/2 miles from the refinery.

678. Hawksworth was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

679. Among other things, she recalls seeing dust in the air and on her car.

680. As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Hawksworth was physically harmed.

681. Among other things, Hawksworth began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, sore throat, coughing, asthma flare-ups, memory issues, brain fog, itchy watery, burning eyes, rash, hives, pressure, phlegm, and stomach pain.

682. The November 24 and 25, 2022, discharge also entered Hawksworth's residence, including dust.

683. The trespass by PBF Martinez interfered with Hawksworth's ability to use and enjoy the residence and caused injury to Hawksworth and damage to the property including by decreasing the value of the property as a result of contamination.

684. Needless to say, the trespass by PBF Martinez to Hawksworth's real property was unauthorized.

685. Hawksworth was also present at her residence for the July 2023, October 2023, and December 2023 releases.

686. In each instance, she was exposed to toxins from the refinery's discharges.

687. As a result of her exposure to the 2023 discharges from the refinery, Hawksworth was physically harmed, including developing and/or worsening symptoms of breathing difficulties, sore throat, coughing, asthma flare-ups, memory issues, brain fog, itchy watery, burning eyes, rash, hives, pressure, phlegm, and stomach pain that were directly caused by the reoccurring discharges in 2023.

688. The 2023 discharges also entered Hawksworth's residence, including dust.

689. The trespasses by PBF Martinez interfered with Hawksworth's ability to use and enjoy the residence and caused injury to Hawksworth and damage to the property including by decreasing the value of the property as a result of contamination.

690. Needless to say, the trespasses by PBF Martinez to Hawksworth's real property was unauthorized in each instance.

### 38.    Plaintiff Eric Hogan.

691. At all times relevant to this action, Plaintiff Eric Hogan was over the age of 18 and was a resident of Martinez, California.

692. Plaintiff Eric Hogan owned a residence, which was approximately 2 miles from the refinery.

693. Hogan was present at his residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1    694. Among other things, he recalls an abnormal smell.

2    695. As a result of his exposure to the toxic discharges from the refinery on November 24

3    and 25, 2022, Hogan was physically harmed.

4    696. Among other things, Hogan began experiencing illness and symptoms that were

5    directly caused by the toxic exposure, including breathing difficulties, sore throat, coughing,

6    headaches, sinus pain, pressure, fatigue, congestion, difficulty sleeping, body aches, phlegm,

7    asthma flare-up, and heartburn.

8    697. The November 24 and 25, 2022, discharge also entered Hogan's residence.

9    698. The trespass by PBF Martinez interfered with Bolding's ability to use and enjoy the

10   residence and caused injury to Hogan and damage to the property including by decreasing the value

11   of the property as a result of contamination.

12   699. Needless to say, the trespass by PBF Martinez to Hogan's real property was

13   unauthorized.

14   700. Hogan was also present at his residence for the July 2023, October 2023, and December

15   2023 releases.

16   701. In each instance, he was exposed to toxins from the refinery's discharges.

17   702. As a result of his exposure to the 2023 discharges from the refinery, Hogan was

18   physically harmed, including developing and/or worsening symptoms of breathing difficulties, sore

19   throat, coughing, headaches, sinus pain, pressure, fatigue, congestions, difficulty sleeping, body

20   aches, phlegm, asthma flare up, and heartburn that were directly caused by the reoccurring

21   discharges in 2023.

22   703. The 2023 discharges also entered Hogan's residence.

23   704. The trespasses by PBF Martinez interfered with Hogan's ability to use and enjoy the

24   residence and caused injury to Hogan and damage to the property including by decreasing the value

25   of the property as a result of contamination.

26   705. Needless to say, the trespasses by PBF Martinez to Hogan's real property were

27   unauthorized in each instance.

28

### 39.    Plaintiff James Joachim.

706. At all times relevant to this action, Plaintiff James Joachim was over the age of 18 and was a resident of Martinez, California.

707. Plaintiff James Joachim owned a residence, which was approximately 2 miles from the refinery.

708. Joachim was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

709. Among other things, he saw grey dust on cars.

710. As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Joachim was physically harmed.

711. Among other things, Joachim began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including sore throat, coughing, sinus pain, pressure, and phlegm.

712. The November 24 and 25, 2022, discharge also entered Joachim's residence, including dust.

713. The trespass by PBF Martinez interfered with Joachim's ability to use and enjoy the residence and caused injury to Joachim and damage to the property including by decreasing the value of the property as a result of contamination.

714. Needless to say, the trespass by PBF Martinez to Joachim's real property was unauthorized.

715. Joachim was also present at his residence for the July 2023, October 2023, and December 2023 releases.

716. In each instance, he was exposed to toxins from the refinery's discharges.

717. As a result of his exposure to the 2023 discharges from the refinery, Joachim was physically harmed, including developing and/or worsening symptoms of coughing that were directly caused by the reoccurring discharges in 2023.

718. The 2023 discharges also entered Joachim's residence, including dust.

719. The trespasses by PBF Martinez interfered with Joachim's ability to use and enjoy the residence and caused injury to Joachim and damage to the property including by decreasing the value of the property as a result of contamination.

720. Needless to say, the trespasses by PBF Martinez to Joachim's real property was unauthorized in each instance.

**40.    Plaintiff Joseph Johansen.**

721. At all times relevant to this action, Plaintiff Joseph Johansen was over the age of 18 and was a resident of Martinez, California.

722. Plaintiff Joseph Johansen owned a residence, which was approximately 1/4 mile from the refinery.

723. Johansen was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

724. Among other things, he recalls a bad smell in the air and his car was covered with some kind of residue.

725. As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Johansen was physically harmed.

726. Among other things, Johansen began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, sore throat, coughing, itchy, watery, burning eyes, sinus pain, and pressure.

727. The November 24 and 25, 2022, discharge also entered Johansen's residence, including smell and residue.

728. The trespass by PBF Martinez interfered with Johansen's ability to use and enjoy the residence and caused injury to Johansen and damage to the property including by decreasing the value of the property as a result of contamination.

729. Needless to say, the trespass by PBF Martinez to Johansen's real property was unauthorized.

730. Johansen was also present at his residence for the July 2023, October 2023, and December 2023 releases.

-84-

731. In each instance, he was exposed to toxins from the refinery's discharges.

732. As a result of his exposure to the 2023 discharges from the refinery, Johansen was physically harmed, including developing and/or worsening symptoms of difficulty breathing, difficulty sleeping, congestion, and coughing that were directly caused by the reoccurring discharges in 2023.

733. The 2023 discharges also entered Johansen's residence, including chemical smell and residue.

734. The trespasses by PBF Martinez interfered with Johansen's ability to use and enjoy the residence and caused injury to Johansen and damage to the property including by decreasing the value of the property as a result of contamination.

735. Needless to say, the trespasses by PBF Martinez to Johansen's real property were unauthorized in each instance.

### 41.    Plaintiff Debra Jones.

736. At all times relevant to this action, Plaintiff Debra Jones was over the age of 18 and was a resident of Martinez, California.

737. Plaintiff Debra Jones owned a residence, which was approximately 1/4 mile from the refinery.

738. Jones was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

739. Among other things, she heard a big boom and smelled a nasty burning smell. She also noticed lots of ash on cars and in her yard. There also appeared to be some kind of substance in her yard. She was unable to eat anything from the garden.

740. As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Jones was physically harmed.

741. Among other things, Jones began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including sore throat, coughing, itchy, watery, burning eyes, headaches, sinus pain, pressure, and phlegm,

742. The November 24 and 25, 2022, discharge also entered Jones' residence, including the loud noise, smell, and ash.

743. The trespass by PBF Martinez interfered with Jones' ability to use and enjoy the residence and caused injury to Jones and damage to the property including by decreasing the value of the property as a result of contamination.

744. Needless to say, the trespass by PBF Martinez to Jones' real property was unauthorized.

745. Jones was also present at her residence for the July 2023, October 2023, and December 2023 releases.

746. In each instance, she was exposed to toxins from the refinery's discharges.

747. As a result of her exposure to the 2023 discharges from the refinery, Jones was physically harmed, including developing and/or worsening symptoms that were directly caused by the reoccurring discharges in 2023.

748. The 2023 discharges also entered Jones' residence, including the bad smell and ash.

749. The trespasses by PBF Martinez interfered with Jones' ability to use and enjoy the residence and caused injury to Jones and damage to the property including by decreasing the value of the property as a result of contamination.

750. Needless to say, the trespasses by PBF Martinez to Jones' real property were unauthorized in each instance.

### 42.    Plaintiff Katie Jones.

751. At all times relevant to this action, Plaintiff Katie Jones was over the age of 18 and was a resident of Martinez, California.

752. Plaintiff Katie Jones owned a residence, which was approximately 1/2 mile from the refinery.

753. Jones was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

754. Among other things, she recalls a strong odor and seeing dust on vehicles.

755. As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Jones was physically harmed.

756. Among other things, Jones began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including congestion, coughing, and a sore throat.

757. The November 24 and 25, 2022, discharge also entered Jones' residence, including a strong odor and dust.

758. The trespass by PBF Martinez interfered with Jones' ability to use and enjoy the residence and caused injury to Jones and damage to the property including by decreasing the value of the property as a result of contamination.

759. Needless to say, the trespass by PBF Martinez to Jones' real property was unauthorized.

760. Jones was also present at her residence for the July 2023, October 2023, and December 2023 releases.

761. In each instance, she was exposed to toxins from the refinery's discharges.

762. As a result of her exposure to the 2023 discharges from the refinery, Jones was physically harmed, including developing and/or worsening symptoms of sore throat, coughing, and congestion that were directly caused by the reoccurring discharges in 2023.

763. The 2023 discharges also entered Jones' residence, a strong odor and dust.

764. The trespasses by PBF Martinez interfered with Jones' ability to use and enjoy the residence and caused injury to Jones and damage to the property including by decreasing the value of the property as a result of contamination.

765. Needless to say, the trespasses by PBF Martinez to Jones' real property were unauthorized in each instance.

### 43.    Plaintiff Bennie Kennedy.

766. At all times relevant to this action, Plaintiff Bennie Kennedy was over the age of 18 and was a resident of Martinez, California.

767. Plaintiff Bennie Kennedy owned a residence, which was approximately 1/2 mile from the refinery.

768. Kennedy was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

769. Among other things, he recalls seeing ash on cars and a strong smell.

770. As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Kennedy was physically harmed.

771. Among other things, Kennedy began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including sore throat, coughing, itchy, watery, burning eyes, headaches, sinus pain, pressure, congestion, phlegm, asthma flare-up, and loss of balance.

772. The November 24 and 25, 2022, discharge also entered Kennedy's residence, including ash and the strong smell.

773. The trespass by PBF Martinez interfered with Kennedy's ability to use and enjoy the residence and caused injury to Kennedy and damage to the property including by decreasing the value of the property as a result of contamination.

774. Needless to say, the trespass by PBF Martinez to Kennedy's real property was unauthorized.

775. Kennedy was also present at his residence for the July 2023, October 2023, and December 2023 releases.

776. In each instance, he was exposed to toxins from the refinery's discharges.

777. As a result of his exposure to the 2023 discharges from the refinery, Kennedy was physically harmed, including developing and/or worsening symptoms of breathing difficulties, sore throat, and coughing that were directly caused by the reoccurring discharges in 2023.

778. The 2023 discharges also entered Kennedy's residence, including ash and the strong smell.

779. The trespasses by PBF Martinez interfered with Kennedy's ability to use and enjoy the residence and caused injury to Kennedy and damage to the property including by decreasing the value of the property as a result of contamination.

780. Needless to say, the trespasses by PBF Martinez to Kennedy's real property were unauthorized in each instance.

### 44.   Plaintiff Ronald Knopoff.

781. At all times relevant to this action, Plaintiff Ronald Knopoff was over the age of 18 and was a resident of Martinez, California.

782. Plaintiff Ronald Knopoff owned a residence, which was approximately 1/4 mile from the refinery.

783. Knopoff was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

784. Among other things, he recalled a powdery substance on his back deck and vegetation.

785. As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Knopoff was physically harmed.

786. Among other things, Knopoff began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, memory issues, brain fog, nausea, vomiting, headaches, body aches, and loss of balance.

787. The November 24 and 25, 2022, discharge also entered Knopoff's residence, including powdery substance.

788. The trespass by PBF Martinez interfered with Knopoff's ability to use and enjoy the residence and caused injury to Knopoff and damage to the property including by decreasing the value of the property as a result of contamination.

789. Needless to say, the trespass by PBF Martinez to Knopoff's real property was unauthorized.

790. Knopoff was also present at his residence for the July 2023, October 2023, and December 2023 releases.

791. In each instance, he was exposed to toxins from the refinery's discharges.

-89-

792. As a result of his exposure to the 2023 discharges from the refinery, Knopoff was physically harmed, including developing and/or worsening symptoms of nausea, difficulty breathing, body aches, headaches, and difficulty sleeping that were directly caused by the reoccurring discharges in 2023.

793. The 2023 discharges also entered Knopoff's residence, including bad smell and dust.

794. The trespasses by PBF Martinez interfered with Knopoff's ability to use and enjoy the residence and caused injury to Knopoff and damage to the property including by decreasing the value of the property as a result of contamination.

795. Needless to say, the trespasses by PBF Martinez to Knopoff's real property were unauthorized in each instance.

### 45.    Plaintiff Rick Krutilla.

796. At all times relevant to this action, Plaintiff Rick Krutilla was over the age of 18 and was a resident of Martinez, California.

797. Plaintiff Rick Krutilla owned a residence, which was approximately 1/2 mile from the refinery.

798. Krutilla was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

799. Among other things, he recalls seeing the dust.

800. As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Krutilla was physically harmed.

801. Among other things, Krutilla began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, sore throat, coughing, itchy, watery, burning eyes, headaches, sinus pain, pressure, fatigue, congestion, and phlegm.

802. The November 24 and 25, 2022, discharge also entered Krutilla's residence, including dust.

803. The trespass by PBF Martinez interfered with Krutilla's ability to use and enjoy the residence and caused injury to Krutilla and damage to the property including by decreasing the value of the property as a result of contamination.

804. Needless to say, the trespass by PBF Martinez to Krutilla's real property was unauthorized.

805. Krutilla was also present at his residence for the July 2023, October 2023, and December 2023 releases.

806. In each instance, he was exposed to toxins from the refinery's discharges.

807. As a result of his exposure to the 2023 discharges from the refinery, Krutilla was physically harmed, including developing and/or worsening symptoms of coughing, headaches, breathing difficulties, sore throat, nausea, vomiting, hives, sinus pain, pressure, congestion, body aches, phlegm, heartburn, and diarrhea that were directly caused by the reoccurring discharges in 2023.

808. The 2023 discharges also entered Krutilla's residence, including dust.

809. The trespasses by PBF Martinez interfered with Krutilla's ability to use and enjoy the residence and caused injury to Krutilla and damage to the property including by decreasing the value of the property as a result of contamination.

810. Needless to say, the trespasses by PBF Martinez to Krutilla's real property were unauthorized in each instance.

811. Additionally, the health effects on Krutilla from the discharges have caused him to suffer lost wages, income, and/or business opportunities.

### 46.    Plaintiff Jose Limon.

812. At all times relevant to this action, Plaintiff Jose Limon was over the age of 18 and was a resident of Martinez, California.

813. Plaintiff Jose Limon owned a residence, which was approximately 1/4 mile from the refinery.

814. Limon was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

815. Among other things, he recalls seeing dust on nearby cars.

816. As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Limon was physically harmed.

817. Among other things, Limon began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, memory issues, brain fog, sore throat, coughing, headaches, sinus pain, pressure, congestion, difficulty sleeping, body aches, phlegm, stomach pain, heartburn, fever, diarrhea, and loss of balance.

818. The November 24 and 25, 2022, discharge also entered Limon's residence, including dust.

819. The trespass by PBF Martinez interfered with Limon's ability to use and enjoy the residence and caused injury to Limon and damage to the property including by decreasing the value of the property as a result of contamination.

820. Needless to say, the trespass by PBF Martinez to Limon's real property was unauthorized.

821. Limon was also present at his residence for the July 2023, October 2023, and December 2023 releases.

822. In each instance, he was exposed to toxins from the refinery's discharges.

823. As a result of his exposure to the 2023 discharges from the refinery, Limon was physically harmed, including developing and/or worsening symptoms of memory issues, breathing difficulties, sore throat, headaches, sinus pain, congestion, body aches, stomach pain, heart burn, fever, and diarrhea that were directly caused by the reoccurring discharges in 2023.

824. The 2023 discharges also entered Limon's residence, including dust.

825. The trespasses by PBF Martinez interfered with Limon's ability to use and enjoy the residence and caused injury to Limon and damage to the property including by decreasing the value of the property as a result of contamination.

826. Needless to say, the trespasses by PBF Martinez to Limon's real property were unauthorized in each instance.

### 47. Plaintiff Johanna Maderos.

827. At all times relevant to this action, Plaintiff Johanna Maderos was over the age of 18 and was a resident of Martinez, California.

828. Plaintiff Johanna Maderos owned a residence, which was approximately more than 2 miles from the refinery.

829. Maderos was present at their residence, for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

830. Among other things, she recalls seeing a white substance on all vehicles and the very strong chemical smell.

831. Maderos was also present in Martinez for the July 2023 and October 2023 releases.

832. In each instance, she was exposed to toxins from the refinery's discharges.

833. As a result of her exposure to the toxic discharges from the refinery on July 11, 2023, Maderos was physically harmed.

834. Among other things, Maderos began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, memory issues, brain fog, dizziness, vertigo, sore throat, and coughing.

835. Additional developing and/or worsening symptoms of coughing, congestion, and headaches were directly caused by the reoccurring discharges in 2023.

836. The 2023 discharges also entered Maderos' residence, including the dust.

837. The trespasses by PBF Martinez interfered with Maderos' ability to use and enjoy the residence and caused injury to Maderos and damage to the property including by decreasing the value of the property as a result of contamination.

838. Needless to say, the trespasses by PBF Martinez to Matthews' real property were unauthorized in each instance.

839. Additionally, the health effects on Maderos from the discharges have caused her to suffer lost wages, income, and/or business opportunities.

### 48.    Plaintiff Jess Markham.

840. At all times relevant to this action, Plaintiff Jess Markham was over the age of 18 and was a resident of Martinez, California.

841. Plaintiff Jess Markham owned a residence, which was approximately 1 mile from the refinery.

842. Markham was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

843. Among other things, he recalls seeing dust.

844. As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Markham was physically harmed.

845. Among other things, Markham began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, headaches, and difficulty sleeping.

846. The November 24 and 25, 2022, discharge also entered Markham's residence, including dust.

847. The trespass by PBF Martinez interfered with Markham's ability to use and enjoy the residence and caused injury to Markham and damage to the property, including by decreasing the value of the property as a result of contamination.

848. Needless to say, the trespass by PBF Martinez to Markham's real property was unauthorized.

849. Markham was also present at his residence for the July 2023, October 2023, and December 2023 releases.

850. In each instance, he was exposed to toxins from the refinery's discharges.

851. As a result of his exposure to the 2023 discharges from the refinery, Markham was physically harmed, including developing and/or worsening symptoms of coughing, headaches, breathing difficulties, sore throat, and difficulty sleeping that were directly caused by the reoccurring discharges in 2023.

852. The 2023 discharges also entered Markham's residence, including dust.

853. The trespasses by PBF Martinez interfered with Markham's ability to use and enjoy the residence and caused injury to Markham and damage to the property, including by decreasing the value of the property as a result of contamination.

854. Needless to say, the trespasses by PBF Martinez to Markham's real property were unauthorized in each instance.

**49.    Plaintiff Virginia Matthews.**

855. At all times relevant to this action, Plaintiff Virginia Matthews was over the age of 18 and was a resident of Martinez, California.

856. Plaintiff Virginia Matthews owned a residence, which was approximately 1/4 mile from the refinery.

857. Matthews was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

858. Among other things, she recalls smelling the flaring odor and dust on her house.

859. As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Matthews was physically harmed.

860. Among other things, Matthews began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, itchy, watery, burning eyes, headaches, and difficulty sleeping.

861. The November 24 and 25, 2022, discharge also entered Matthews' residence, including odor and dust.

862. The trespass by PBF Martinez interfered with Matthews' ability to use and enjoy the residence and caused injury to Matthews and damage to the property including by decreasing the value of the property as a result of contamination.

863. Needless to say, the trespass by PBF Martinez to Matthews' real property was unauthorized.

864. Matthews was also present at her residence for the July 2023, October 2023, and December 2023 releases.

865. In each instance, she was exposed to toxins from the refinery's discharges.

866. As a result of her exposure to the 2023 discharges from the refinery, Matthews was physically harmed, including developing and/or worsening symptoms of shortness of breath, eye irritation, and increase of blood pressure that were directly caused by the reoccurring discharges in 2023.

867. The 2023 discharges also entered Matthews' residence, including odor and dust.

868. The trespasses by PBF Martinez interfered with Matthews' ability to use and enjoy the residence and caused injury to Matthews and damage to the property including by decreasing the value of the property as a result of contamination.

869. Needless to say, the trespasses by PBF Martinez to Matthews' real property were unauthorized in each instance.

**50.    Plaintiff Deborah Mikesell.**

870. At all times relevant to this action, Plaintiff Deborah Mikesell was over the age of 18 and was a resident of Martinez, California.

871. Plaintiff Deborah Mikesell owned a residence, which was approximately 1/4 mile from the refinery.

872. Mikesell was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

873. Among other things, she saw an extreme amount of ash, along with the flaring, and the smells and smoke.

874. As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Mikesell was physically harmed.

875. Among other things, Mikesell began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, sore throat, coughing, itchy, watery, burning eyes, headaches, sinus pain, pressure, congestion, body aches, phlegm, and liver count elevated.

876. The November 24 and 25, 2022, discharge also entered Mikesell's residence, including ash and smell.

877. The trespass by PBF Martinez interfered with Mikesell's ability to use and enjoy the residence and caused injury to Mikesell and damage to the property, including by decreasing the value of the property as a result of contamination.

878. Needless to say, the trespass by PBF Martinez to Mikesell's real property was unauthorized.

879. Mikesell was also present at her residence for the July 2023, October 2023, and December 2023 releases.

880. In each instance, she was exposed to toxins from the refinery's discharges.

881. As a result of her exposure to the 2023 discharges from the refinery, Mikesell was physically harmed, including developing and/or worsening symptoms of coughing, headaches, and difficulty sleeping that were directly caused by the reoccurring discharges in 2023.

882. The 2023 discharges also entered Mikesell's residence, including ash and the smell.

883. The trespasses by PBF Martinez interfered with Mikesell's ability to use and enjoy the residence and caused injury to Mikesell and damage to the property, including by decreasing the value of the property as a result of contamination.

884. Needless to say, the trespasses by PBF Martinez to Mikesell's real property were unauthorized in each instance.

### 51.    Plaintiff Stevin Mikesell.

885. At all times relevant to this action, Plaintiff Stevin Mikesell was over the age of 18 and was a resident of Martinez, California.

886. Plaintiff Stevin Mikesell owned a residence, which was approximately 1/4 mile from the refinery.

887. Mikesell was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

888. Among other things, he recalled the smells, excessive ash on his property. He also saw flaring and heard the sirens going off while ash was falling.

889. As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Mikesell was physically harmed.

890. Among other things, Mikesell began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, sore throat, headaches, coughing, itchy, watery, burning eyes, and sinus pain, and pressure.

891. The November 24 and 25, 2022, discharge also entered Mikesell's residence, including the smell and ash.

892. The trespass by PBF Martinez interfered with Mikesell's ability to use and enjoy the residence and caused injury to Mikesell and damage to the property, including by decreasing the value of the property as a result of contamination.

893. Needless to say, the trespass by PBF Martinez to Mikesell's real property was unauthorized.

894. Mikesell was also present at his residence for the July 2023, October 2023, and December 2023 releases.

895. In each instance, he was exposed to toxins from the refinery's discharges.

896. As a result of his exposure to the 2023 discharges from the refinery, Mikesell was physically harmed, including developing and/or worsening symptoms of headaches that were directly caused by the reoccurring discharges in 2023.

897. The 2023 discharges also entered Mikesell's residence, including the smell and ash.

898. The trespasses by PBF Martinez interfered with Mikesell's ability to use and enjoy the residence and caused injury to Mikesell and damage to the property, including by decreasing the value of the property as a result of contamination.

899. Needless to say, the trespasses by PBF Martinez to Mikesell's real property were unauthorized in each instance.

900. Additionally, the health effects on Mikesell from the discharges have caused him to suffer lost wages, income, and/or business opportunities.

**52.    Plaintiff Manuel Newton.**

901. At all times relevant to this action, Plaintiff Manuel Newton was over the age of 18 and was a resident of Martinez, California.

902. Plaintiff Manuel Newton owned a residence, which was approximately 1/2 mile from the refinery.

903. Newton was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

904. Among other things, he recalls a bad smell.

905. As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Newton was physically harmed.

906. Among other things, Newton began experiencing illness and symptoms that were directly caused by the toxic exposure Immediately after the release, including dizziness, vertigo, sore throat, coughing, itchy, watery, burning eyes, congestion, and loss of balance.

907. The November 24 and 25, 2022, discharge also entered Newton's residence, including the smell.

908. The trespass by PBF Martinez interfered with Newton's ability to use and enjoy the residence and caused injury to Newton and damage to the property including by decreasing the value of the property as a result of contamination.

909. Needless to say, the trespass by PBF Martinez to Newton's real property was unauthorized.

910. Newton was also present at his residence for the October 2023 and December 2023 releases.

911. In each instance, he was exposed to toxins from the refinery's discharges.

912. As a result of his exposure to the 2023 discharges from the refinery, Newton was physically harmed, including developing and/or worsening symptoms of dizziness and headaches that were directly caused by the reoccurring discharges in 2023.

913. The 2023 discharges also entered Newton's residence, including dust.

914. The trespasses by PBF Martinez interfered with Newton's ability to use and enjoy the residence and caused injury to Newton and damage to the property including by decreasing the value of the property as a result of contamination.

915. Needless to say, the trespasses by PBF Martinez to Newton's real property were unauthorized in each instance.

### 53.    Plaintiff Rosa Newton.

916. At all times relevant to this action, Plaintiff Rosa Newton was over the age of 18 and was a resident of Martinez, California.

917. Plaintiff Rosa Newton owned a residence, which was approximately 1 mile from the refinery.

918. Newton was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

919. As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Newton was physically harmed.

920. Among other things, Newton began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, chest pain, sore throat, coughing, nausea, vomiting, itchy, watery, burning eyes, headaches, sinus pain, and pressure.

921. The November 24 and 25, 2022, discharge also entered Newton's residence.

922. The trespass by PBF Martinez interfered with Newton's ability to use and enjoy the residence and caused injury to Newton and damage to the property including by decreasing the value of the property as a result of contamination.

923. Needless to say, the trespass by PBF Martinez to Newton's real property was unauthorized.

924. Newton was also present at her residence for the July 2023, October 2023, and December 2023 releases.

925. In each instance, she was exposed to toxins from the refinery's discharges.

926. As a result of her exposure to the 2023 discharges from the refinery, Newton was physically harmed, including developing and/or worsening symptoms of difficulty breathing, coughing, congestion, and headaches that were directly caused by the reoccurring discharges in 2023.

927. The 2023 discharges also entered Newton's residence.

928. The trespasses by PBF Martinez interfered with Newton's ability to use and enjoy the residence and caused injury to Newton and damage to the property including by decreasing the value of the property as a result of contamination.

929. Needless to say, the trespasses by PBF Martinez to Newton's real property were unauthorized in each instance.

### 54.    Plaintiff Nancy Noonan.

930. At all times relevant to this action, Plaintiff Nancy Noonan was over the age of 18 and was a resident of Martinez, California.

931. Plaintiff Nancy Noonan owned a residence, which was approximately 1 mile from the refinery.

932. Noonan was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

933. Among other things, she recalls the air smelled rancid and there was dust on the car.

934. As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Noonan was physically harmed.

935. Among other things, Noonan began experiencing illness and symptoms that were directly caused by the toxic exposure within a few weeks after the release, including breathing difficulties, chest pain, memory issues, brain fog, dizziness, vertigo, sore throat, coughing, nausea, vomiting, headaches, fatigue, difficulty sleeping, body aches, earaches, ear infections, and loss of balance.

936. The November 24 and 25, 2022, discharge also entered Noonan's residence, including the smell and dust.

937. The trespass by PBF Martinez interfered with Noonan's ability to use and enjoy the residence and caused injury to Noonan and damage to the property including by decreasing the value of the property as a result of contamination.

938. Needless to say, the trespass by PBF Martinez to Noonan's real property was unauthorized.

939. Noonan was also present at her residence for the July 2023, October 2023, and December 2023 releases.

940. In each instance, she was exposed to toxins from the refinery's discharges.

941. As a result of her exposure to the 2023 discharges from the refinery, Noonan was physically harmed, including developing and/or worsening symptoms of coughing that were directly caused by the reoccurring discharges in 2023.

942. The 2023 discharges also entered Noonan's residence, including the smell.

943. The trespasses by PBF Martinez interfered with Noonan's ability to use and enjoy the residence and caused injury to Noonan and damage to the property including by decreasing the value of the property as a result of contamination.

944. Needless to say, the trespasses by PBF Martinez to Noonan's real property were unauthorized in each instance.

### 55.    Plaintiff Kerry O'Hare.

945. At all times relevant to this action, Plaintiff Kerry O'Hare was over the age of 18 and was a resident of Martinez, California.

946. Plaintiff Kerry O'Hare owned a residence, which was approximately 1/2 mile from the refinery.

947. O'Hare was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

948. Among other things, he recalled a chemical smell and ash and dust falling on to vehicle.

949. As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, O'Hare was physically harmed.

950. Among other things, O'Hare began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including dizziness, vertigo, sore throat, coughing, itchy, watery, and burning eyes.

951. The November 24 and 25, 2022, discharge also entered O'Hare's residence, including smell and ash and dust.

952. The trespass by PBF Martinez O'Hare and with O'Hare's ability to use and enjoy the residence and caused injury to O'Hare and damage to the property including by decreasing the value of the property as a result of contamination.

953. Needless to say, the trespass by PBF Martinez to O'Hare's real property was unauthorized.

954. O'Hare was also present at his residence for the July 2023, October 2023, and December 2023 releases.

955. In each instance, he was exposed to toxins from the refinery's discharges.

956. As a result of his exposure to the 2023 discharges from the refinery, O'Hare was physically harmed, including developing and/or worsening symptoms coughing and sneezing that were directly caused by the reoccurring discharges in 2023.

957. The 2023 discharges also entered O'Hare's residence, including chemical smell and ash and dust.

958. The trespasses by PBF Martinez interfered with O'Hare's ability to use and enjoy the residence and caused injury to O'Hare and damage to the property including by decreasing the value of the property as a result of contamination.

959. Needless to say, the trespasses by PBF Martinez to O'Hare's real property were unauthorized in each instance.

**56.    Plaintiff Janice Oliver.**

960. At all times relevant to this action, Plaintiff Janice Oliver was over the age of 18 and was a resident of Martinez, California.

961. Plaintiff Janice Oliver owned a residence, which was approximately 1/4 mile from the refinery.

962. Oliver was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

963. Among other things, she recalls a chemical smell and dust on top of nearby vehicles.

964. As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Oliver was physically harmed.

965. Among other things, Oliver began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, chest pain, sore throat, coughing, rash, hives, congestion, and phlegm.

966. The November 24 and 25, 2022, discharge also entered Oliver's residence, including dust and a strong smell.

967. The trespass by PBF Martinez interfered with Oliver's ability to use and enjoy the residence and caused injury to Oliver and damage to the property including by decreasing the value of the property as a result of contamination.

968. Needless to say, the trespass by PBF Martinez to Oliver's real property was unauthorized.

969. Oliver was also present at her residence for the July 2023 and October 2023 releases.

970. In each instance, she was exposed to toxins from the refinery's discharges.

971. As a result of her exposure to the 2023 discharges from the refinery, Oliver was physically harmed, including developing and/or worsening symptoms of coughing, sore throat, rash, hives, headaches, sinus pain, pressure, congestion, body aches, and phlegm that were directly caused by the reoccurring discharges in 2023.

972. The 2023 discharges also entered Oliver's residence, including dusting and a strong smell.

973. The trespasses by PBF Martinez interfered with Oliver's ability to use and enjoy the residence and caused injury to Oliver and damage to the property including by decreasing the value of the property as a result of contamination.

974. Needless to say, the trespasses by PBF Martinez to Oliver's real property were unauthorized in each instance.

975. Additionally, the health effects on Oliver from the discharges have caused her to suffer lost wages, income, and/or business opportunities.

### 57.    Plaintiff Sara Orrick.

976. At all times relevant to this action, Plaintiff Sara Orrick was over the age of 18 and was a resident of Martinez, California.

977. Plaintiff Sara Orrick owned a residence, which was approximately 1 mile from the refinery.

978. Orrick was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

979. Among other things, she recalls seeing white dust.

980. As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Orrick was physically harmed.

981. Among other things, Orrick began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including memory issues, brain fog, sore throat, coughing, nausea, vomiting, headaches, difficulty sleeping, body aches, stomach pain, and diarrhea.

982. The November 24 and 25, 2022, discharge also entered Orrick's residence, including white dust.

983. The trespass by PBF Martinez interfered with Orrick's ability to use and enjoy the residence and caused injury to Orrick and damage to the property including by decreasing the value of the property as a result of contamination.

984. Needless to say, the trespass by PBF Martinez to Orrick's real property was unauthorized.

985. Orrick was also present at her residence for the July 2023 and October 2023 releases.

986. In each instance, she was exposed to toxins from the refinery's discharges.

987. As a result of her exposure to the 2023 discharges from the refinery, Orrick was physically harmed, including developing and/or worsening symptoms of brain fog, headaches, difficulty sleeping, body aches, coughing, nausea, stomach pain, and diarrhea that were directly caused by the reoccurring discharges in 2023.

988. The 2023 discharges also entered Orrick's residence, including white dust.

989. The trespasses by PBF Martinez interfered with Orrick's ability to use and enjoy the residence and caused injury to Orrick and damage to the property including by decreasing the value of the property as a result of contamination.

990. Needless to say, the trespasses by PBF Martinez to Orrick's real property were unauthorized in each instance.

**58.    Plaintiff Elisa Ovrahim.**

991. At all times relevant to this action, Plaintiff Elisa Ovrahim was over the age of 18 and was a resident of Martinez, California.

992. Plaintiff Elisa Ovrahim owned a residence, which was approximately 1/4 mile from the refinery.

993. Ovrahim was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

994. Among other things, she saw a thin layer of white dust everywhere on her property, including cars, driveway, and soil in the garden.

995. As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Ovrahim was physically harmed.

996. Among other things, Ovrahim began experiencing illness and symptoms that were directly caused by the toxic exposure within a week after the release, including breathing difficulties, itchy, watery, burning eyes, headaches, sinus pain, pressure, fatigue, and loss of balance.

997. The November 24 and 25, 2022, discharge also entered Ovrahim's residence, including dust.

998. The trespass by PBF Martinez interfered with Ovrahim's ability to use and enjoy the residence and caused injury to Ovrahim and damage to the property including by decreasing the value of the property as a result of contamination.

999. Needless to say, the trespass by PBF Martinez to Ovrahim's real property was unauthorized.

1000.   Ovrahim was also present at her residence for the July 2023, October 2023, and December 2023 releases.

1001.   In each instance, she was exposed to toxins from the refinery's discharges.

1002.   As a result of her exposure to the 2023 discharges from the refinery, Ovrahim was physically harmed, including developing and/or worsening symptoms of shortness of breath that were directly caused by the reoccurring discharges in 2023.

1003.   The 2023 discharges also entered Ovrahim's residence.

1004.   The trespasses by PBF Martinez interfered with Ovrahim's ability to use and enjoy the residence and caused injury to Ovrahim and damage to the property including by decreasing the value of the property as a result of contamination.

1005.   Needless to say, the trespasses by PBF Martinez to Ovrahim's real property were unauthorized in each instance.

1006.   Additionally, the health effects on Ovrahim from the discharges have caused her to suffer lost wages, income, and/or business opportunities.

### 59.    Plaintiff Ryan Oxford.

1007.   At all times relevant to this action, Plaintiff Ryan Oxford was over the age of 18 and was a resident of Martinez, California.

1008.   Plaintiff Ryan Oxford owned a residence, which was approximately 1 mile from the refinery.

1009.   Oxford was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1010.   Among other things, he recalls hearing loud roaring sounds, and seeing fire, ash, and sediment spewing out. He remembers there was also a weird sulfur smell.

1011.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Oxford was physically harmed.

1012.   Among other things, Oxford began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including chest pain, memory issues, brain fog, dizziness, vertigo, sore throat, coughing, nausea, vomiting, headaches, sinus pain, pressure, fatigue, difficulty sleeping, body aches, stomach pain, heartburn, and diarrhea.

1013.   The November 24 and 25, 2022, discharge also entered Oxford's residence, including the loud sounds, smell, and ash.

1014.    The trespass by PBF Martinez interfered with Oxford's ability to use and enjoy the residence and caused injury to Oxford and damage to the property including by decreasing the value of the property as a result of contamination.

1015.    Needless to say, the trespass by PBF Martinez to Oxford's real property was unauthorized.

1016.    Oxford was also present at his residence for the July 2023, October 2023, and December 2023 releases.

1017.    In each instance, he was exposed to toxins from the refinery's discharges.

1018.    As a result of his exposure to the 2023 discharges from the refinery, Oxford was physically harmed, including developing and/or worsening symptoms of difficulty breathing, chest pain, brain fog, dizziness, sore throat, coughing, nausea, sinus pressure and pain, stomach pain, headaches, and fatigue were directly caused by the reoccurring discharges in 2023.

1019.    The 2023 discharges also entered Oxford's residence, including loud sounds, sulfur smell, and ash.

1020.    The trespasses by PBF Martinez interfered with Oxford's ability to use and enjoy the residence and caused injury to Oxford and damage to the property including by decreasing the value of the property as a result of contamination.

1021.    Needless to say, the trespasses by PBF Martinez to Oxford's real property were unauthorized in each instance.

### 60.    Plaintiff Nancy Parisi.

1022.    At all times relevant to this action, Plaintiff Nancy Parisi was over the age of 18 and was a resident of Martinez, California.

1023.    Plaintiff Nancy Parisi owned a residence, which was approximately 1 mile from the refinery.

1024.    Parisi was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1025.    Among other things, she recalled the strong smell.

1026.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Parisi was physically harmed.

1027.   Among other things, Parisi began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including sore throat, coughing, itchy, watery, burning eyes, rash, hives, and headaches.

1028.   The November 24 and 25, 2022, discharge also entered Parisi's residence, including the smell.

1029.   The trespass by PBF Martinez interfered with Parisi's ability to use and enjoy the residence and caused injury to Parisi and damage to the property including by decreasing the value of the property as a result of contamination.

1030.   Needless to say, the trespass by PBF Martinez to Parisi's real property was unauthorized.

1031.   Parisi was also present at her residence for the July 2023, October 2023, and December 2023 releases.

1032.   In each instance, she was exposed to toxins from the refinery's discharges.

1033.   As a result of her exposure to the 2023 discharges from the refinery, Parisi was physically harmed, including developing and/or worsening symptoms of dry skin, eye irritation, headaches, difficulty breathing, coughing, chest pain, dizziness, congestion, body aches, earaches, and sinus pressure and pain were directly caused by the reoccurring discharges in 2023.

1034.   The 2023 discharges also entered Parisi's residence, including the smell.

1035.   The trespasses by PBF Martinez interfered with Parisi's ability to use and enjoy the residence and caused injury to Parisi and damage to the property including by decreasing the value of the property as a result of contamination.

1036.   Needless to say, the trespasses by PBF Martinez to Parisi's real property was unauthorized in each instance.

1037.   Additionally, the health effects on Parisi from the discharges have caused her to suffer lost wages, income, and/or business opportunities.

1

61.    **Plaintiff Laine Pearson.**

2      1038.   At all times relevant to this action, Plaintiff Laine Pearson was over the age of 18

3  and was a resident of Martinez, California.

4      1039.   Plaintiff Laine Pearson owned a residence, which was approximately 2 miles from

5  the refinery.

6      1040.   Pearson was present at their residence for the November 24 and 25, 2022 release

7  from the refinery, and was exposed to the toxic discharge from the refinery.

8      1041.   Among other things, she recalled the smell and dust all over the cars and house.

9      1042.   As a result of her exposure to the toxic discharges from the refinery on November

10  24 and 25, 2022, Pearson was physically harmed.

11      1043.   Among other things, Pearson began experiencing illness and symptoms that were

12  directly caused by the toxic exposure Immediately after the release, including memory issues, brain

13  fog, itchy, watery, burning eyes, rash, hives, sinus pain, pressure, fatigue, body aches, earaches,

14  and ear infections.

15      1044.   The November 24 and 25, 2022, discharge also entered Pearson's residence,

16  including the smell and dust.

17      1045.   The trespass by PBF Martinez interfered with Pearson's ability to use and enjoy the

18  residence and caused injury to Pearson and damage to the property including by decreasing the

19  value of the property as a result of contamination.

20      1046.   Needless to say, the trespass by PBF Martinez to Pearson's real property was

21  unauthorized.

22      1047.   Pearson was also present at her residence for the July 2023, October 2023, and

23  December 2023 releases.

24      1048.   In each instance, she was exposed to toxins from the refinery's discharges.

25      1049.   As a result of her exposure to the 2023 discharges from the refinery, Pearson was

26  physically harmed, including developing and/or worsening symptoms of burning eyes, brain fog,

27  dizziness, sore throat, coughing, eye irritation, sinus pressure and pain, body ages, and fatigue that

28  were directly caused by the reoccurring discharges in 2023.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1050.   The 2023 discharges also entered Pearson's residence, including the smell and dust.

1051.   The trespasses by PBF Martinez interfered with Pearson's ability to use and enjoy the residence and caused injury to Pearson and damage to the property, including by decreasing the value of the property as a result of contamination.

1052.   Needless to say, the trespasses by PBF Martinez to Pearson's real property were unauthorized in each instance.

**62.    Plaintiff Rihanna Perez.**

1053.   At all times relevant to this action, Plaintiff Rihanna Perez was over the age of 18 and was a resident of Martinez, California.

1054.   Plaintiff Rihanna Perez owned a residence, which was approximately 2 miles from the refinery.

1055.   Perez was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1056.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Perez was physically harmed.

1057.   Among other things, Perez began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, chest pain, dizziness, vertigo, sore throat, coughing, itchy, watery, burning eyes, fatigue, stomach pain, dehydration, and fainting.

1058.   The November 24 and 25, 2022, discharge also entered Perez's residence.

1059.   The trespass by PBF Martinez interfered with Perez's ability to use and enjoy the residence and caused injury to Perez and damage to the property including by decreasing the value of the property as a result of contamination.

1060.   Needless to say, the trespass by PBF Martinez to Perez's real property was unauthorized.

1061.   Perez was also present at her residence for the July 2023, October 2023, and December 2023 releases.

1062.   In each instance, she was exposed to toxins from the refinery's discharges.

1063.   As a result of her exposure to the 2023 discharges from the refinery, Perez was physically harmed, including developing and/or worsening symptoms of breathing difficulties, bloody nose, diarrhea, and fainting that were directly caused by the reoccurring discharges in 2023.

1064.   The 2023 discharges also entered Perez's residence.

1065.   The trespasses by PBF Martinez interfered with Perez's ability to use and enjoy the residence and caused injury to Perez and damage to the property including by decreasing the value of the property as a result of contamination.

1066.   Needless to say, the trespasses by PBF Martinez to Perez's real property were unauthorized in each instance.

### 63.    Plaintiff Charles Perry.

1067.   At all times relevant to this action, Plaintiff Charles Perry was over the age of 18 and was a resident of Martinez, California.

1068.   Plaintiff Charles Perry owned a residence, which was approximately 1/2 mile from the refinery.

1069.   Perry was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1070.   Among other things, he recalls seeing white dust on vehicles.

1071.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Perry was physically harmed.

1072.   Among other things, Perry began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, memory issues, brain fog, sore throat, coughing, nausea, vomiting, itchy, watery, burning eyes, headaches, sinus pain, pressure, fatigue, congestion, difficulty sleeping, body aches, phlegm, asthma flare ups, heartburn, dehydration, diarrhea, and loss of balance.

1073.   The November 24 and 25, 2022, discharge also entered Perry's residence, including white dust.

1074.   The trespass by PBF Martinez interfered with Perry's ability to use and enjoy the residence and caused injury to Perry and damage to the property including by decreasing the value of the property as a result of contamination.

1075.   Needless to say, the trespass by PBF Martinez to Perry's real property was unauthorized.

1076.   Perry was also present at his residence for the July 2023, October 2023, and December 2023 releases.

1077.   In each instance, he was exposed to toxins from the refinery's discharges.

1078.   As a result of his exposure to the 2023 discharges from the refinery, Perry was physically harmed, including developing and/or worsening symptoms of breathing difficulties, memory issues, brain fog, sore throat, coughing, nausea, vomiting, itchy, watery, burning eyes, headaches, sinus pain, pressure, fatigue, congestion, difficulty sleeping, body aches, phlegm, asthma flare ups, heartburn, dehydration, diarrhea, and loss of balance that were directly caused by the reoccurring discharges in 2023.

1079.   The 2023 discharges also entered Perry's residence, including white dust.

1080.   The trespasses by PBF Martinez interfered with Perry's ability to use and enjoy the residence and caused injury to Perry and damage to the property including by decreasing the value of the property as a result of contamination.

1081.   Needless to say, the trespasses by PBF Martinez to Perry's real property were unauthorized in each instance.

### 64.   Plaintiff Martina Perry.

1082.   At all times relevant to this action, Plaintiff Martina Perry was over the age of 18 and was a resident of Martinez, California.

1083.   Plaintiff Martina Perry owned a residence, which was approximately 1/2 mile from the refinery.

1084.   Perry was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1085.   Among other things, she recalls seeing dust on cars.

1086.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Perry was physically harmed.

1087.   Among other things, Perry began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, memory issues, brain fog, dizziness, vertigo, sore throat, coughing, itchy, watery, burning eyes, headaches, sinus pain, pressure, fatigue, congestion, body aches, heartburn, dehydration, fever diarrhea, and liver count.

1088.   The November 24 and 25, 2022, discharge also entered Perry's residence, including dust.

1089.   The trespass by PBF Martinez interfered with Perry's ability to use and enjoy the residence and caused injury to Perry and damage to the property including by decreasing the value of the property as a result of contamination.

1090.   Needless to say, the trespass by PBF Martinez to Perry's real property was unauthorized.

1091.   Perry was also present at her residence for the July 2023, October 2023, and December 2023 releases.

1092.   In each instance, she was exposed to toxins from the refinery's discharges.

1093.   As a result of her exposure to the 2023 discharges from the refinery, Perry was physically harmed, including developing and/or worsening symptoms of coughing, brain fog, vertigo, headaches, pressure, fatigue, diarrhea, loss of balance, and body aches that were directly caused by the reoccurring discharges in 2023.

1094.   The 2023 discharges also entered Perry's residence, including dust.

1095.   The trespasses by PBF Martinez interfered with Perry's ability to use and enjoy the residence and caused injury to Perry and damage to the property including by decreasing the value of the property as a result of contamination.

1096.   Needless to say, the trespasses by PBF Martinez to Perry's real property were unauthorized in each instance.

### 65.   Plaintiff Brandi Lynn Pixton.

1097.   At all times relevant to this action, Plaintiff Brandi Lynn Pixton was over the age of 18 and was a resident of Martinez, California.

1098.   Plaintiff Brandi Lynn Pixton owned a residence, which was approximately 1/4 mile from the refinery.

1099.   Pixton was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1100.   Among other things, she saw, smelled, and had dust on her car and all over her house and yard.

1101.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Pixton was physically harmed.

1102.   Among other things, Pixton began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including dizziness, vertigo, sore throat, coughing, nausea, vomiting, headaches, sinus pain, pressure, and congestion.

1103.   The November 24 and 25, 2022, discharge also entered Pixton's residence, including the dust and smell.

1104.   The trespass by PBF Martinez interfered with Pixton's ability to use and enjoy the residence and caused injury to Pixton and damage to the property including by decreasing the value of the property as a result of contamination.

1105.   Needless to say, the trespass by PBF Martinez to Pixton's real property was unauthorized.

1106.   Pixton was also present at her residence for the July 2023, October 2023, and December 2023 releases.

1107.   In each instance, she was exposed to toxins from the refinery's discharges.

1108.   As a result of her exposure to the 2023 discharges from the refinery, Pixton was physically harmed, including developing and/or worsening symptoms of headaches that were directly caused by the reoccurring discharges in 2023.

1109.   The 2023 discharges also entered Pixton's residence, including the smell and dust

-115-

1110.   The trespasses by PBF Martinez interfered with Pixton's ability to use and enjoy the residence and caused injury to Pixton and damage to the property, including by decreasing the value of the property as a result of contamination.

1111.   Needless to say, the trespasses by PBF Martinez to Pixton's real property were unauthorized in each instance.

**66.    Plaintiff Christopher Pixton.**

1112.   At all times relevant to this action, Plaintiff Christopher Pixton was over the age of 18 and was a resident of Martinez, California.

1113.   Plaintiff Christopher Pixton owned a residence, which was approximately 1/4 mile from the refinery.

1114.   Pixton was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1115.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Pixton was physically harmed.

1116.   Among other things, Pixton began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, sore throat, coughing, itchy, watery, burning eyes, headaches, sinus pain, and pressure.

1117.   The November 24 and 25, 2022, discharge also entered Pixton's residence.

1118.   The trespass by PBF Martinez interfered with Pixton's ability to use and enjoy the residence and caused injury to Pixton and damage to the property including by decreasing the value of the property as a result of contamination.

1119.   Needless to say, the trespass by PBF Martinez to Pixton's real property was unauthorized.

1120.   Pixton was also present at his residence for the July 2023, October 2023, and December 2023 releases.

1121.   In each instance, he was exposed to toxins from the refinery's discharges.

1122.   As a result of his exposure to the 2023 discharges from the refinery, Pixton was physically harmed, including developing and/or worsening symptoms of breathing issues that were directly caused by the reoccurring discharges in 2023.

1123.   The 2023 discharges also entered Pixton's residence.

1124.   The trespasses by PBF Martinez interfered with Pixton's ability to use and enjoy the residence and caused injury to Pixton and damage to the property, including by decreasing the value of the property as a result of contamination.

1125.   Needless to say, the trespasses by PBF Martinez to Pixton's real property were unauthorized in each instance.

### 67.   Plaintiff Laura Redfern.

1126.   At all times relevant to this action, Plaintiff Laura Redfern was over the age of 18 and was a resident of Martinez, California.

1127.   Plaintiff Laura Redfern owned a residence, which was approximately 1 1/2 miles from the refinery.

1128.   Redfern was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1129.   Among other things, she recalls seeing dust.

1130.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Redfern was physically harmed.

1131.   Among other things, Redfern began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, memory issues, brain fog, sore throat, coughing, nausea, vomiting, itchy, watery, burning eyes, headaches, fatigue, bloody nose, congestion, difficulty sleeping, and body aches.

1132.   The November 24 and 25, 2022, discharge also entered Redfern's residence, including dust and a strong smell.

1133.   The trespass by PBF Martinez interfered with Redfern's ability to use and enjoy the residence and caused injury to Redfern and damage to the property including by decreasing the value of the property as a result of contamination.

1134.   Needless to say, the trespass by PBF Martinez to Redfern's real property was unauthorized.

1135.   Redfern was also present at her residence for the July 2023, October 2023, and December 2023 releases.

1136.   In each instance, she was exposed to toxins from the refinery's discharges.

1137.   As a result of her exposure to the 2023 discharges from the refinery, Redfern was physically harmed, including developing and/or worsening symptoms of breathing difficulties, chest pain, itchy, watery, burning eyes, congestion, and difficulty sleeping that were directly caused by the reoccurring discharges in 2023.

1138.   The 2023 discharges also entered Redfern's residence, including dust and a strong smell.

1139.   The trespasses by PBF Martinez interfered with Redfern's ability to use and enjoy the residence and caused injury to Redfern and damage to the property, including by decreasing the value of the property as a result of contamination.

1140.   Needless to say, the trespasses by PBF Martinez to Redfern's real property were unauthorized in each instance.

1141.   Additionally, the health effects on Redfern from the discharges have caused her to suffer lost wages, income, and/or business opportunities.

**68.    Plaintiff Kevin Reyna.**

1142.   At all times relevant to this action, Plaintiff Kevin Reyna was over the age of 18 and was a resident of Martinez, California.

1143.   Plaintiff Kevin Reyna owned a residence, which was approximately 2 miles from the refinery.

1144.   Reyna was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1145.   Among other things, he recalls a strong odor.

1146.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Reyna was physically harmed.

-118-

1147.    Among other things, Reyna began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, chest pain, sore throat, coughing, phlegm, coughing up blood, stomach pain, and diarrhea.

1148.    The November 24 and 25, 2022, discharge also entered Reyna's residence, including a strong odor.

1149.    The trespass by PBF Martinez interfered with Reyna's ability to use and enjoy the residence and caused injury to Reyna and damage to the property including by decreasing the value of the property as a result of contamination.

1150.    Needless to say, the trespass by PBF Martinez to Reyna's real property was unauthorized.

1151.    Reyna was also present at his residence for the July 2023, October 2023, and December 2023 releases.

1152.    In each instance, he was exposed to toxins from the refinery's discharges.

1153.    As a result of his exposure to the 2023 discharges from the refinery, Reyna was physically harmed, including developing and/or worsening symptoms of chest pain, phlegm, and coughing that were directly caused by the reoccurring discharges in 2023.

1154.    The 2023 discharges also entered Reyna's residence including a strong odor.

1155.    The trespasses by PBF Martinez interfered with Reyna's ability to use and enjoy the residence and caused injury to Reyna and damage to the property including by decreasing the value of the property as a result of contamination.

1156.    Needless to say, the trespasses by PBF Martinez to Reyna's real property was unauthorized in each instance.

**69.    Plaintiff Jack Robinson.**

1157.    At all times relevant to this action, Plaintiff Jack Robinson was over the age of 18 and was a resident of Martinez, California.

1158.    Plaintiff Jack Robinson owned a residence, which was approximately 1/2 mile from the refinery.

1159.   Robinson was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1160.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Robinson was physically harmed.

1161.   Among other things, Robinson began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties and headaches.

1162.   The November 24 and 25, 2022, discharge also entered Robinson's residence.

1163.   The trespass by PBF Martinez interfered with Robinson's ability to use and enjoy the residence and caused injury to Robinson and damage to the property including by decreasing the value of the property as a result of contamination.

1164.   Needless to say, the trespass by PBF Martinez to Robinson's real property was unauthorized.

1165.   Robinson was also present at his residence for the July 2023, October 2023, and December 2023 releases.

1166.   In each instance, he was exposed to toxins from the refinery's discharges.

1167.   As a result of his exposure to the 2023 discharges from the refinery, Robinson was physically harmed, including developing and/or worsening symptoms of dizziness, breathing difficulties, vertigo, sore throat coughing, itchy, watery, burning eyes, headaches, congestion, earaches, ear infection, loss of balance, and diarrhea that were directly caused by the reoccurring discharges in 2023.

1168.   The 2023 discharges also entered Robinson's residence, including a strong smell and ashes.

1169.   The trespasses by PBF Martinez interfered with Robinson's ability to use and enjoy the residence and caused injury to Robinson and damage to the property including by decreasing the value of the property as a result of contamination.

1170.   Needless to say, the trespasses by PBF Martinez to Robinson's real property were unauthorized in each instance.

### 70. Plaintiff Sandra Rogers.

1171.  At all times relevant to this action, Plaintiff Sandra Rogers was over the age of 18 and was a resident of Martinez, California.

1172.  Plaintiff Sandra Rogers owned a residence, which was approximately 1/4 mile from the refinery.

1173.  Rogers was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1174.  Among other things, she recalls seeing dust fall as she walked outside.

1175.  As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Rogers was physically harmed.

1176.  Among other things, Rogers began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, dizziness, vertigo, sore throat, coughing, itchy, watery, burning eyes, headaches, and fatigue.

1177.  The November 24 and 25, 2022, discharge also entered Rogers' residence, including dust.

1178.  The trespass by PBF Martinez interfered with Rogers' ability to use and enjoy the residence and caused injury to Rogers and damage to the property including by decreasing the value of the property as a result of contamination.

1179.  Needless to say, the trespass by PBF Martinez to Rogers' real property was unauthorized.

1180.  Rogers was also present at her residence for the July 2023, October 2023, and December 2023 releases.

1181.  In each instance, she was exposed to toxins from the refinery's discharges.

1182.  As a result of her exposure to the 2023 discharges from the refinery, Rogers was physically harmed, including developing and/or worsening symptoms of breathing difficulties, sore throat, coughing, headaches, and fatigue that were directly caused by the reoccurring discharges in 2023.

1183.   The 2023 discharges also entered Rogers' residence, including a strong smell and dust.

1184.   The trespasses by PBF Martinez interfered with Rogers' ability to use and enjoy the residence and caused injury to Rogers and damage to the property including by decreasing the value of the property as a result of contamination.

1185.   Needless to say, the trespasses by PBF Martinez to Rogers' real property were unauthorized in each instance.

**71.    Plaintiff Aurora Rubalcava.**

1186.   At all times relevant to this action, Plaintiff Aurora Rubalcava was over the age of 18 and was a resident of Martinez, California.

1187.   Plaintiff Aurora Rubalcava owned a residence, which was approximately 1/4 mile from the refinery.

1188.   Rubalcava was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1189.   Among other things, she recalled the ash, bad smell, smoke, and some kind of other substance.

1190.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Rubalcava was physically harmed.

1191.   Among other things, Rubalcava began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, dizziness, vertigo, sore throat, coughing, nausea, vomiting, itchy, watery, burning eyes, sinus pain, pressure, fatigue, congestion, difficulty sleeping, body aches, phlegm, stomach pain, heartburn, and dehydration.

1192.   The November 24 and 25, 2022, discharge also entered Rubalcava's residence, including ashes, bad smell, substance, and smoke.

1193.   The trespass by PBF Martinez interfered with Rubalcava's ability to use and enjoy the residence and caused injury to Rubalcava and damage to the property including by decreasing the value of the property as a result of contamination.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1194.  Needless to say, the trespass by PBF Martinez to Rubalcava's real property was unauthorized.

1195.  Rubalcava was also present at her residence for the July 2023, October 2023, and December 2023 releases.

1196.  In each instance, she was exposed to toxins from the refinery's discharges.

1197.  As a result of her exposure to the 2023 discharges from the refinery, Rubalcava was physically harmed, including developing and/or worsening symptoms of difficulty breathing, and congestion that were directly caused by the reoccurring discharges in 2023.

1198.  The 2023 discharges also entered Rubalcava's residence, including ash and smell.

1199.  The trespasses by PBF Martinez interfered with Rubalcava's ability to use and enjoy the residence and caused injury to Rubalcava and damage to the property including by decreasing the value of the property as a result of contamination.

1200.  Needless to say, the trespasses by PBF Martinez to Rubalcava's real property was unauthorized in each instance.

### 72.    Plaintiff Felix Sanchez.

1201.  At all times relevant to this action, Plaintiff Felix Sanchez was over the age of 18 and was a resident of Martinez, California.

1202.  Plaintiff Felix Sanchez owned a residence, which was approximately 1 mile from the refinery.

1203.  Sanchez was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1204.  Among other things, he recalls seeing dust on vehicles and a strong smell.

1205.  As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Sanchez was physically harmed.

1206.  Among other things, Sanchez began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, chest pain, sore throat, coughing, itchy, watery, burning eyes, headaches, fatigue, body aches, earaches, ear infections, heartburn, dehydration, and diarrhea.

-123-

1207.    The November 24 and 25, 2022, discharge also entered Sanchez's residence, including a strong smell and dust.

1208.    The trespass by PBF Martinez interfered with Sanchez's ability to use and enjoy the residence and caused injury to Sanchez and damage to the property including by decreasing the value of the property as a result of contamination.

1209.    Needless to say, the trespass by PBF Martinez to Sanchez's real property was unauthorized.

1210.    Sanchez was also present at his residence for the July 2023, October 2023, and December 2023 releases.

1211.    In each instance, he was exposed to toxins from the refinery's discharges.

1212.    As a result of his exposure to the 2023 discharges from the refinery, Sanchez was physically harmed, including developing and/or worsening symptoms of breathing difficulties, chest pain, sore throat, coughing, itchy, watery, burning eyes, headaches, fatigue, body aches, earaches, ear infections, heartburn, dehydration, and diarrhea that were directly caused by the reoccurring discharges in 2023.

1213.    The 2023 discharges also entered Sanchez's residence, including a strong smell and dust.

1214.    The trespasses by PBF Martinez interfered with Sanchez's ability to use and enjoy the residence and caused injury to Sanchez and damage to the property including by decreasing the value of the property as a result of contamination.

1215.    Needless to say, the trespasses by PBF Martinez to Sanchez's real property was unauthorized in each instance.

**73.    Plaintiff Patricia Sanchez.**

1216.    At all times relevant to this action, Plaintiff Patricia Sanchez was over the age of 18 and was a resident of Martinez, California.

1217.    Plaintiff Patricia Sanchez owned a residence, which was approximately 1/4 mile from the refinery.

1218.   Sanchez was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1219.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Sanchez was physically harmed.

1220.   Among other things, Sanchez began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, chest pain, sore throat, coughing, bloody nose, congestion, and phlegm

1221.   The November 24 and 25, 2022, discharge also entered Sanchez's residence.

1222.   The trespass by PBF Martinez interfered with Sanchez's ability to use and enjoy the residence and caused injury to Sanchez and damage to the property including by decreasing the value of the property as a result of contamination.

1223.   Needless to say, the trespass by PBF Martinez to Sanchez's real property was unauthorized.

1224.   Sanchez was also present at her residence for the October 2023 and December 2023 releases.

1225.   In each instance, she was exposed to toxins from the refinery's discharges.

1226.   As a result of her exposure to the 2023 discharges from the refinery, Sanchez was physically harmed, including developing and/or worsening symptoms of chest pain, headaches, coughing, congestion, and breathing difficulties that were directly caused by the reoccurring discharges in 2023.

1227.   The 2023 discharges also entered Sanchez's residence.

1228.   The trespasses by PBF Martinez interfered with Sanchez's ability to use and enjoy the residence and caused injury to Sanchez and damage to the property including by decreasing the value of the property as a result of contamination.

1229.   Needless to say, the trespasses by PBF Martinez to Sanchez's real property were unauthorized in each instance.

74.    **Plaintiff Jay Schneider.**

1230.    At all times relevant to this action, Plaintiff Jay Schneider was over the age of 18 and was a resident of Martinez, California.

1231.    Plaintiff Jay Schneider owned a residence, which was approximately 1/4 mile from the refinery.

1232.    Schneider was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1233.    Among other things, he recalls seeing ashes fall onto his cars.

1234.    As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Schneider was physically harmed.

1235.    Among other things, Schneider began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, sore throat, coughing, itchy, watery, and burning eyes.

1236.    The November 24 and 25, 2022, discharge also entered Schneider's residence, including ashes.

1237.    The trespass by PBF Martinez interfered with Schneider's ability to use and enjoy the residence and caused injury to Schneider and damage to the property including by decreasing the value of the property as a result of contamination.

1238.    Needless to say, the trespass by PBF Martinez to Schneider's real property was unauthorized.

1239.    Schneider was also present at his residence for the July 2023, October 2023, and December 2023 releases.

1240.    In each instance, he was exposed to toxins from the refinery's discharges.

1241.    As a result of his exposure to the 2023 discharges from the refinery, Schneider was physically harmed, including developing and/or worsening symptoms of sore throat, coughing, and phlegm that were directly caused by the reoccurring discharges in 2023.

1242.    The 2023 discharges also entered Schneider's residence, including ashes.

-126-

1243.   The trespasses by PBF Martinez interfered with Schneider's ability to use and enjoy the residence and caused injury to Schneider and damage to the property including by decreasing the value of the property as a result of contamination.

1244.   Needless to say, the trespasses by PBF Martinez to Schneider's real property were unauthorized in each instance.

### 75.    Plaintiff Doug Schramm.

1245.   At all times relevant to this action, Plaintiff Doug Schramm was over the age of 18 and was a resident of Martinez, California.

1246.   Plaintiff Doug Schramm owned a residence, which was approximately 1/2 mile from the refinery.

1247.   Schramm was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1248.   Among other things, he recalls the strong smell and dust on his car.

1249.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Schramm was physically harmed.

1250.   Among other things, Schramm began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including sore throat, coughing, itchy, watery, burning eyes, headaches, and fatigue.

1251.   The November 24 and 25, 2022, discharge also entered Schramm's residence, including dust and the strong smell.

1252.   The trespass by PBF Martinez interfered with Schramm's ability to use and enjoy the residence and caused injury to Schramm and damage to the property including by decreasing the value of the property as a result of contamination.

1253.   Needless to say, the trespass by PBF Martinez to Schramm's real property was unauthorized.

1254.   Schramm was also present at his residence for the July 2023, October 2023, and December 2023 releases.

1255.   In each instance, he was exposed to toxins from the refinery's discharges.

1256.   As a result of his exposure to the 2023 discharges from the refinery, Schramm was physically harmed, including developing and/or worsening symptoms of breathing difficulties, sore throat, coughing, and congestion that were directly caused by the reoccurring discharges in 2023.

1257.   The 2023 discharges also entered Schramm's residence, including dust and a strong smell.

1258.   The trespasses by PBF Martinez interfered with Schramm's ability to use and enjoy the residence and caused injury to Schramm and damage to the property including by decreasing the value of the property as a result of contamination.

1259.   Needless to say, the trespasses by PBF Martinez to Schramm's real property were unauthorized in each instance.

**76.    Plaintiff Kellie Schramm.**

1260.   At all times relevant to this action, Plaintiff Kellie Schramm was over the age of 18 and was a resident of Martinez, California.

1261.   Plaintiff Kellie Schramm owned a residence, which was approximately 1 mile from the refinery.

1262.   Schramm was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1263.   Among other things, she recalls seeing dust.

1264.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Schramm was physically harmed.

1265.   Among other things, Schramm began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including sore throat, headaches, congestion, and coughing.

1266.   The November 24 and 25, 2022, discharge also entered Schramm's residence, including dust.

1267.   The trespass by PBF Martinez interfered with Schramm's ability to use and enjoy the residence and caused injury to Schramm and damage to the property including by decreasing the value of the property as a result of contamination.

1268.  Needless to say, the trespass by PBF Martinez to Schramm's real property was unauthorized.

1269.  Schramm was also present at her residence for the July 2023, October 2023, and December 2023 releases.

1270.  In each instance, she was exposed to toxins from the refinery's discharges.

1271.  As a result of her exposure to the 2023 discharges from the refinery, Schramm was physically harmed, including developing and/or worsening symptoms of congestion, coughing, and sore throat that were directly caused by the reoccurring discharges in 2023.

1272.  The 2023 discharges also entered Schramm's residence, including a strong smell and dust

1273.  The trespasses by PBF Martinez interfered with Schramm's ability to use and enjoy the residence and caused injury to Schramm and damage to the property including by decreasing the value of the property as a result of contamination.

1274.  Needless to say, the trespasses by PBF Martinez to Schramm's real property were unauthorized in each instance.

**77.    Plaintiff Elvin Seidenspinner.**

1275.  At all times relevant to this action, Plaintiff Elvin Seidenspinner was over the age of 18 and was a resident of Martinez, California.

1276.  Plaintiff Elvin Seidenspinner owned a residence, which was approximately 1/4 mile from the refinery.

1277.  Seidenspinner was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1278.  Among other things, he remembers seeing smoke coming from the refinery.

1279.  As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Seidenspinner was physically harmed.

1280.  Among other things, Seidenspinner began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, chest pain, and headaches.

-129-

1281. The November 24 and 25, 2022, discharge also entered Seidenspinner's residence.

1282. The trespass by PBF Martinez interfered with Seidenspinner's ability to use and enjoy the residence and caused injury to Seidenspinner and damage to the property including by decreasing the value of the property as a result of contamination.

1283. Needless to say, the trespass by PBF Martinez to Seidenspinner's real property was unauthorized.

1284. Seidenspinner was also present at his residence for the July 2023, October 2023, and December 2023 releases.

1285. In each instance, he was exposed to toxins from the refinery's discharges.

1286. As a result of his exposure to the 2023 discharges from the refinery, Seidenspinner was physically harmed, including developing and/or worsening symptoms of eye irritation, skin irritation, and headaches that were directly caused by the reoccurring discharges in 2023.

1287. The 2023 discharges also entered Seidenspinner's residence.

1288. The trespasses by PBF Martinez interfered with Seidenspinner's ability to use and enjoy the residence and caused injury to Seidenspinner and damage to the property including by decreasing the value of the property as a result of contamination.

1289. Needless to say, the trespasses by PBF Martinez to Seidenspinner's real property were unauthorized in each instance.

1290. Additionally, the health effects on Seidenspinner from the discharges have caused him to suffer lost wages, income, and/or business opportunities.

**78.    Plaintiff Mina Shahab.**

1291. At all times relevant to this action, Plaintiff Mina Shahab was over the age of 18 and was a resident of Martinez, California.

1292. Plaintiff Mina Shahab owned a residence, which was approximately 2 miles from the refinery.

1293. Shahab was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1294. Among other things, she recalls seeing ash all over her backyard and resident area.

-130-

1295.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Shahab was physically harmed.

1296.   Among other things, Shahab began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, memory issues, brain fog, nausea, vomiting, itchy, watery, burning eyes, headaches, congestion, difficulty sleeping, body aches, heartburn, and fainting.

1297.   The November 24 and 25, 2022, discharge also entered Shahab's residence, including ashes.

1298.   The trespass by PBF Martinez interfered with Shahab's ability to use and enjoy the residence and caused injury to Shahab and damage to the property including by decreasing the value of the property as a result of contamination.

1299.   Needless to say, the trespass by PBF Martinez to Shahab's real property was unauthorized.

1300.   Shahab was also present at her residence for the July 2023, October 2023, and December 2023 releases.

1301.   In each instance, she was exposed to toxins from the refinery's discharges.

1302.   As a result of her exposure to the 2023 discharges from the refinery, Shahab was physically harmed, including developing and/or worsening symptoms of coughing, headaches, sore throat, itchy, watery, and burning eyes that were directly caused by the reoccurring discharges in 2023.

1303.   The 2023 discharges also entered Shahab's residence, including ashes.

1304.   The trespasses by PBF Martinez interfered with Shahab's ability to use and enjoy the residence and caused injury to Shahab and damage to the property including by decreasing the value of the property as a result of contamination.

1305.   Needless to say, the trespasses by PBF Martinez to Shahab's real property were unauthorized in each instance.

**79.    Plaintiff Patsy Silverfoote.**

1306.    At all times relevant to this action, Plaintiff Patsy Silverfoote was over the age of 18 and was a resident of Martinez, California.

1307.    Plaintiff Patsy Silverfoote owned a residence, which was approximately 2 miles from the refinery.

1308.    Silverfoote was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1309.    Among other things, she recalls seeing vehicles covered in dust.

1310.    As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Silverfoote was physically harmed.

1311.    Among other things, Silverfoote began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, memory issues, brain fog, dizziness, vertigo, sore throat, coughing, headaches, fatigue, bloody nose, phlegm, and loss of balance.

1312.    The November 24 and 25, 2022, discharge also entered Silverfoote's residence, including dust.

1313.    The trespass by PBF Martinez interfered with Silverfoote's ability to use and enjoy the residence and caused injury to Silverfoote and damage to the property including by decreasing the value of the property as a result of contamination.

1314.    Needless to say, the trespass by PBF Martinez to Silverfoote's real property was unauthorized.

1315.    Silverfoote was also present at her residence for the July 2023, October 2023, and December 2023 releases.

1316.    In each instance, she was exposed to toxins from the refinery's discharges.

1317.    As a result of her exposure to the 2023 discharges from the refinery, Silverfoote was physically harmed, including developing and/or worsening symptoms of coughing, sore throat, phlegm, and headaches that were directly caused by the reoccurring discharges in 2023.

1318.    The 2023 discharges also entered Silverfoote's residence, including dust.

1319.    The trespasses by PBF Martinez interfered with Silverfoote's ability to use and enjoy the residence and caused injury to Silverfoote and damage to the property including by decreasing the value of the property as a result of contamination.

1320.    Needless to say, the trespasses by PBF Martinez to Silverfoote's real property were unauthorized in each instance.

### 80.    Plaintiff Nicole Smally.

1321.    At all times relevant to this action, Plaintiff Nicole Smally was over the age of 18 and was a resident of Martinez, California.

1322.    Plaintiff Nicole Smally owned a residence, which was approximately 1 1/2 miles from the refinery.

1323.    Smally was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1324.    Among other things, she recalls smelling a strong odor and seeing dust falling from the sky.

1325.    As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Smally was physically harmed.

1326.    Among other things, Smally began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, chest pain, memory issues, brain fog, dizziness, vertigo, sore throat, coughing, nausea, vomiting, itchy, watery, burning eyes, headaches, sinus pain, pressure, fatigue, congestion, difficulty sleeping, stomach pain, asthma flare-ups, and heartburn.

1327.    The November 24 and 25, 2022, discharge also entered Smally's residence, including dust and a strong smell.

1328.    The trespass by PBF Martinez interfered with Smally's ability to use and enjoy the residence and caused injury to Smally and damage to the property including by decreasing the value of the property as a result of contamination.

1329.    Needless to say, the trespass by PBF Martinez to Smally's real property was unauthorized.

1330.   Smally was also present at her residence for the July 2023, October 2023, and December 2023 releases.

1331.   In each instance, she was exposed to toxins from the refinery's discharges.

1332.   As a result of her exposure to the 2023 discharges from the refinery, Smally was physically harmed, including developing and/or worsening symptoms of sore throat, coughing, congestion, and headaches that were directly caused by the reoccurring discharges in 2023.

1333.   The 2023 discharges also entered Smally's residence, dust and a strong smell.

1334.   The trespasses by PBF Martinez interfered with Smally's ability to use and enjoy the residence and caused injury to Smally and damage to the property, including by decreasing the value of the property as a result of contamination.

1335.   Needless to say, the trespasses by PBF Martinez to Smally's real property were unauthorized in each instance.

**81.    Plaintiff Rodrick Smally.**

1336.   At all times relevant to this action, Plaintiff Rodrick Smally was over the age of 18 and was a resident of Martinez, California.

1337.   Plaintiff Rodrick Smally owned a residence, which was approximately 1 1/2 miles from the refinery.

1338.   Smally was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1339.   Among other things, he saw dust or ashes falling from the sky and it was all over his cars, house, and garden.

1340.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Smally was physically harmed.

1341.   Among other things, Smally began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, chest pain, memory issues, brain fog, dizziness, vertigo, sore throat, coughing, nausea, vomiting, itchy, watery, burning eyes, headaches, sinus pain, pressure, fatigue, congestion, difficulty sleeping, stomach pain, asthma flare-up, and heartburn.

1342.   The November 24 and 25, 2022, discharge also entered Smally's residence, including dust or ashes.

1343.   The trespass by PBF Martinez interfered with Smally's ability to use and enjoy the residence and caused injury to Smally and damage to the property including by decreasing the value of the property as a result of contamination.

1344.   Needless to say, the trespass by PBF Martinez to Smally's real property was unauthorized.

1345.   Smally was also present at his residence for the July 2023, October 2023, and December 2023 releases.

1346.   In each instance, he was exposed to toxins from the refinery's discharges.

1347.   As a result of his exposure to the 2023 discharges from the refinery, Smally was physically harmed, including developing and/or worsening symptoms of coughing, headaches, and congestion that were directly caused by the reoccurring discharges in 2023.

1348.   The 2023 discharges also entered Smally's residence, including foul odor and dust.

1349.   The trespasses by PBF Martinez interfered with Smally's ability to use and enjoy the residence and caused injury to Smally and damage to the property, including by decreasing the value of the property as a result of contamination.

1350.   Needless to say, the trespasses by PBF Martinez to Smally's real property were unauthorized in each instance.

**82.    Plaintiff Miles Smith.**

1351.   At all times relevant to this action, Plaintiff Miles Smith was a minor and is now over the age of 18 and was a resident of Martinez, California.

1352.   Plaintiff Miles Smith owned a residence, which was approximately 1 1/2 miles from the refinery.

1353.   Smith was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1354.   Among other things, he recalls a strong odor and seeing dust on vehicles and in the air.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1355.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Smith was physically harmed.

1356.   Among other things, Smith began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including sore throat and coughing.

1357.   The November 24 and 25, 2022, discharge also entered Smith's residence, including dust and a strong smell.

1358.   The trespass by PBF Martinez interfered with Smith's ability to use and enjoy the residence and caused injury to Smith and damage to the property including by decreasing the value of the property as a result of contamination.

1359.   Needless to say, the trespass by PBF Martinez to Smith's real property was unauthorized.

1360.   Smith was also present at his residence for the July 2023, October 2023, and December 2023 releases.

1361.   In each instance, he was exposed to toxins from the refinery's discharges.

1362.   As a result of his exposure to the 2023 discharges from the refinery, Smith was physically harmed, including developing and/or worsening symptoms of coughing and sore throat that were directly caused by the reoccurring discharges in 2023.

1363.   The 2023 discharges also entered Smith's residence, including dust and a strong smell.

1364.   The trespasses by PBF Martinez interfered with Smith's ability to use and enjoy the residence and caused injury to Smith and damage to the property including by decreasing the value of the property as a result of contamination.

1365.   Needless to say, the trespasses by PBF Martinez to Smith's real property were unauthorized in each instance.

**83.    Plaintiff Titan Smith.**

1366.   At all times relevant to this action, Plaintiff Titan Smith was over the age of 18 and was a resident of Martinez, California.

1367.   Plaintiff Titan Smith owned a residence, which was approximately 1 1/2 miles from the refinery.

1368.   Smith was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1369.   Among other things, he recalls seeing dust on cars and a strong smell.

1370.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Smith was physically harmed.

1371.   Among other things, Smith began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including coughing and a sore throat.

1372.   The November 24 and 25, 2022, discharge also entered Smith's residence, including smell and soot.

1373.   The trespass by PBF Martinez interfered with Smith's ability to use and enjoy the residence and caused injury to Smith and damage to the property including by decreasing the value of the property as a result of contamination.

1374.   Needless to say, the trespass by PBF Martinez to Smith's real property was unauthorized.

1375.   Smith was also present at his residence for the July 2023, October 2023, and December 2023 releases.

1376.   In each instance, he was exposed to toxins from the refinery's discharges.

1377.   As a result of his exposure to the 2023 discharges from the refinery, Smith was physically harmed, including developing and/or worsening symptoms of coughing and a sore throat that were directly caused by the reoccurring discharges in 2023.

1378.   The 2023 discharges also entered Smith's residence, including dust and a strong smell.

1379.   The trespasses by PBF Martinez interfered with Smith's ability to use and enjoy the residence and caused injury to Smith and damage to the property including by decreasing the value of the property as a result of contamination.

1380.   Needless to say, the trespasses by PBF Martinez to Smith's real property were unauthorized in each instance.

**84.    Plaintiff Gina Sobrero.**

1381.   At all times relevant to this action, Plaintiff Gina Sobrero was over the age of 18 and was a resident of Martinez, California.

1382.   Plaintiff Gina Sobrero owned a residence, which was approximately 1/4 mile from the refinery.

1383.   Sobrero was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1384.   Among other things, she recalls smelling a strong odor and seeing dust on her property.

1385.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Sobrero was physically harmed.

1386.   Among other things, Sobrero began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, memory issues, brain fog, sore throat, coughing, nausea, vomiting, itchy, watery, burning eyes, rash, hives, and headaches.

1387.   The November 24 and 25, 2022, discharge also entered Sobrero's residence, including dust and a strong odor.

1388.   The trespass by PBF Martinez interfered with Sobrero's ability to use and enjoy the residence and caused injury to Sobrero and damage to the property including by decreasing the value of the property as a result of contamination.

1389.   Needless to say, the trespass by PBF Martinez to Sobrero's real property was unauthorized.

1390.   Sobrero was also present at her residence for the July 2023, October 2023, and December 2023 releases.

1391.   In each instance, she was exposed to toxins from the refinery's discharges.

1392.   As a result of her exposure to the 2023 discharges from the refinery, Sobrero was physically harmed, including developing and/or worsening symptoms of memory issues, brain fog, dizziness, vertigo, itchy, watery, burning eyes, fatigue, difficulty sleeping, and diarrhea that were directly caused by the reoccurring discharges in 2023.

1393.   The 2023 discharges also entered Sobrero's residence, including dust and a strong odor.

1394.   The trespasses by PBF Martinez interfered with Sobrero's ability to use and enjoy the residence and caused injury to Sobrero and damage to the property, including by decreasing the value of the property as a result of contamination.

1395.   Needless to say, the trespasses by PBF Martinez to Sobrero's real property was unauthorized in each instance.

**85.    Plaintiff Betty Steele.**

1396.   At all times relevant to this action, Plaintiff Betty Steele was over the age of 18 and was a resident of Martinez, California.

1397.   Plaintiff Betty Steele owned a residence, which was approximately 1/4 mile from the refinery.

1398.   Steele was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1399.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Steele was physically harmed.

1400.   Among other things, Steele began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including itchy, watery, and burning eyes.

1401.   The November 24 and 25, 2022, discharge also entered Steele's residence.

1402.   The trespass by PBF Martinez interfered with Steele's ability to use and enjoy the residence and caused injury to Steele and damage to the property including by decreasing the value of the property as a result of contamination.

1403.   Needless to say, the trespass by PBF Martinez to Steele's real property was unauthorized.

1404.   Steele was also present at her residence for the July 2023, October 2023, and December 2023 releases.

1405.   In each instance, she was exposed to toxins from the refinery's discharges.

1406.   As a result of her exposure to the 2023 discharges from the refinery, Steele was physically harmed, including developing and/or worsening symptoms of congestion, eye irritation, difficulty sleeping, stomach pain, and headaches that so that were directly caused by the reoccurring discharges in 2023.

1407.   The 2023 discharges also entered Steele's residence, including white dust.

1408.   The trespasses by PBF Martinez interfered with Steele's ability to use and enjoy the residence and caused injury to Steele and damage to the property including by decreasing the value of the property as a result of contamination.

1409.   Needless to say, the trespasses by PBF Martinez to Steele's real property were unauthorized in each instance.

### 86.   Plaintiff Jenny Steward.

1410.   At all times relevant to this action, Plaintiff Jenny Steward was over the age of 18 and was a resident of Martinez, California.

1411.   Plaintiff Jenny Steward owned a residence, which was approximately 1/2 mile from the refinery.

1412.   Steward was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1413.   Among other things, she recalls seeing dust on top of vehicles.

1414.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Steward was physically harmed.

1415.   Among other things, Steward began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties,

chest pain, memory issues, brain fog, dizziness, vertigo, sore throat, coughing, nausea, vomiting, itchy, watery, burning eyes, headaches, fatigue, body aches, phlegm, and stomach pain.

1416.   The November 24 and 25, 2022, discharge also entered Steward's residence, including dust.

1417.   The trespass by PBF Martinez interfered with Steward's ability to use and enjoy the residence and caused injury to Steward and damage to the property including by decreasing the value of the property as a result of contamination.

1418.   Needless to say, the trespass by PBF Martinez to Steward's real property was unauthorized.

1419.   Steward was also present at her residence for the July 2023, October 2023, and December 2023 releases.

1420.   In each instance, she was exposed to toxins from the refinery's discharges.

1421.   As a result of her exposure to the 2023 discharges from the refinery, Steward was physically harmed, including developing and/or worsening symptoms of breathing difficulties, chest pain, dizziness, vertigo, sore throat, coughing, nausea, vomiting, itchy, watery, burning eyes, headaches, sinus pain, pressure, fatigue, bloody nose, congestion, difficulty sleeping, body aches, phlegm, stomach pain, heartburn, dehydration, and diarrhea that were directly caused by the reoccurring discharges in 2023.

1422.   The 2023 discharges also entered Steward's residence, including dust.

1423.   The trespasses by PBF Martinez interfered with Steward's ability to use and enjoy the residence and caused injury to Steward and damage to the property including by decreasing the value of the property as a result of contamination.

1424.   Needless to say, the trespasses by PBF Martinez to Steward's real property was unauthorized in each instance.

1425.   Additionally, the health effects on Steward from the discharges have caused her to suffer lost wages, income, and/or business opportunities.

87.    **Plaintiff Susan Stewart.**

1426.    At all times relevant to this action, Plaintiff Susan Stewart was over the age of 18 and was a resident of Martinez, California.

1427.    Plaintiff Susan Stewart owned a residence, which was approximately 1/2 mile from the refinery.

1428.    Stewart was present at their residence for the November 24 and 25, 2022 release from the refinery and was exposed to the toxic discharge from the refinery.

1429.    Among other things, she recalls seeing dust outside.

1430.    As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Stewart was physically harmed.

1431.    Among other things, Stewart began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including sore throat, coughing, and loss of balance.

1432.    The November 24 and 25, 2022, discharge also entered Stewart's residence, including dust.

1433.    The trespass by PBF Martinez interfered with Stewart's ability to use and enjoy the residence and caused injury to Stewart and damage to the property including by decreasing the value of the property as a result of contamination.

1434.    Needless to say, the trespass by PBF Martinez to Stewart's real property was unauthorized.

1435.    Stewart was also present at her residence for the July 2023, October 2023, and December 2023 releases.

1436.    In each instance, she was exposed to toxins from the refinery's discharges.

1437.    As a result of her exposure to the 2023 discharges from the refinery, Stewart was physically harmed, including developing and/or worsening symptoms of sore throat, coughing, and loss of balance that were directly caused by the reoccurring discharges in 2023.

1438.    The 2023 discharges also entered Stewart's residence, including dust.

1439.   The trespasses by PBF Martinez interfered with Stewart's ability to use and enjoy the residence and caused injury to Stewart and damage to the property including by decreasing the value of the property as a result of contamination.

1440.   Needless to say, the trespasses by PBF Martinez to Stewart's real property were unauthorized in each instance.

**88.    Plaintiff Mei Lia Storelee.**

1441.   At all times relevant to this action, Plaintiff Mei Lia Storelee was over the age of 18 and was a resident of Martinez, California.

1442.   Plaintiff Mei Lia Storelee owned a residence, which was approximately 1/4 mile from the refinery.

1443.   Storelee was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1444.   Among other things, she recalls seeing ash falling from the sky and smelling a strong odor.

1445.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Storelee was physically harmed.

1446.   Among other things, Storelee began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, memory issues, brain fog, sore throat, coughing, nausea, vomiting, itchy, watery, burning eyes, headaches, fatigue, congestion, body aches, dehydration, fever, and loss of balance.

1447.   The November 24 and 25, 2022, discharge also entered Storelee's residence, ashes and a strong odor.

1448.   The trespass by PBF Martinez interfered with Storelee's ability to use and enjoy the residence and caused injury to Storelee and damage to the property including by decreasing the value of the property as a result of contamination.

1449.   Needless to say, the trespass by PBF Martinez to Storelee's real property was unauthorized.

1450.   Storelee was also present at her residence for the July 2023, October 2023, and December 2023 releases.

1451.   In each instance, she was exposed to toxins from the refinery's discharges.

1452.   As a result of her exposure to the 2023 discharges from the refinery, Storelee was physically harmed, including developing and/or worsening symptoms of breathing difficulties, itchy, watery, burning eyes, headaches, fatigue, congestion, difficulty sleeping, and phlegm that were directly caused by the reoccurring discharges in 2023.

1453.   The 2023 discharges also entered Storelee's residence, including ashes and a strong smell.

1454.   The trespasses by PBF Martinez interfered with Storelee's ability to use and enjoy the residence and caused injury to Storelee and damage to the property, including by decreasing the value of the property as a result of contamination.

1455.   Needless to say, the trespasses by PBF Martinez to Storelee's real property were unauthorized in each instance.

1456.   Additionally, the health effects on Storelee from the discharges have caused her to suffer lost wages, income, and/or business opportunities.

### 89.   Plaintiff Jonathan Strohl.

1457.   At all times relevant to this action, Plaintiff Jonathan Strohl was over the age of 18 and was a resident of Martinez, California.

1458.   Plaintiff Jonathan Strohl owned a residence, which was approximately 1/4 mile from the refinery.

1459.   Strohl was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1460.   Among other things, he recalls seeing dust on his property and smelling a strong odor.

1461.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Strohl was physically harmed.

-144-

1462.   Among other things, Strohl began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, memory issues, brain fog, sore throat, coughing, itchy, watery, burning eyes, fatigue, earaches, ear infections, phlegm, and asthma flare-ups.

1463.   The November 24 and 25, 2022, discharge also entered Strohl's residence, including dust and a strong smell.

1464.   The trespass by PBF Martinez interfered with Strohl's ability to use and enjoy the residence and caused injury to Strohl and damage to the property including by decreasing the value of the property as a result of contamination.

1465.   Needless to say, the trespass by PBF Martinez to Strohl's real property was unauthorized.

1466.   Strohl was also present at his residence for the July 2023, October 2023, and December 2023 releases.

1467.   In each instance, he was exposed to toxins from the refinery's discharges.

1468.   As a result of his exposure to the 2023 discharges from the refinery, Strohl was physically harmed, including developing and/or worsening symptoms of breathing difficulties, sore throat, coughing, headaches, and fatigue that were directly caused by the reoccurring discharges in 2023.

1469.   The 2023 discharges also entered Strohl's residence, including dust and a strong smell.

1470.   The trespasses by PBF Martinez interfered with Strohl's ability to use and enjoy the residence and caused injury to Strohl and damage to the property, including by decreasing the value of the property as a result of contamination.

1471.   Needless to say, the trespasses by PBF Martinez to Strohl's real property were unauthorized in each instance.

1472.   Additionally, the health effects on Strohl from the discharges have caused him to suffer lost wages, income, and/or business opportunities.

**90.    Plaintiff Samuel Sweeley.**

1473.   At all times relevant to this action, Plaintiff Samuel Sweeley was over the age of 18 and was a resident of Vallejo, California.

1474.   Plaintiff Samuel Sweeley owned a residence near Martinez, which was approximately more than 2 miles from the refinery.

1475.   Sweeley was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1476.   Among other things, he recalls dust on vehicles.

1477.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Sweeley was physically harmed.

1478.   Among other things, Sweeley began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, chest pain, memory issues, brain fog, dizziness, vertigo, sore throat, coughing, itchy, watery, burning eyes, headaches, sinus pain, pressure, fatigue, earaches, ear infections, and loss of balance.

1479.   The November 24 and 25, 2022, discharge also entered Sweeley's residence, including dust.

1480.   The trespass by PBF Vallejo interfered with Sweeley's ability to use and enjoy the residence and caused injury to Sweeley and damage to the property including by decreasing the value of the property as a result of contamination.

1481.   Needless to say, the trespass by PBF Vallejo to Sweeley's real property was unauthorized.

1482.   Sweeley was also present at his residence for the July 2023, October 2023, and December 2023 releases.

1483.   In each instance, he was exposed to toxins from the refinery's discharges.

1484.   As a result of his exposure to the 2023 discharges from the refinery, Sweeley was physically harmed, including developing and/or worsening symptoms of coughing, chest pain, dizziness, vertigo, nausea, vomiting, headaches, congestion, and phlegm that were directly caused by the reoccurring discharges in 2023.

1485.   The 2023 discharges also entered Sweeley's residence, including dust.

1486.   The trespasses by PBF Vallejo interfered with Sweeley's ability to use and enjoy the residence and caused injury to Sweeley and damage to the property including by decreasing the value of the property as a result of contamination.

1487.   Needless to say, the trespasses by PBF Vallejo to Sweeley's real property were unauthorized in each instance.

**91.    Plaintiff Tolupene Tavai.**

1488.   At all times relevant to this action, Plaintiff Tolupene Tavai was over the age of 18 and was a resident of Hercules, California.

1489.   Plaintiff Tolupene Tavai owned a residence near Martinez, which was approximately more than 2 miles from the refinery.

1490.   Tavai was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1491.   Among other things, she recalls the strong smell and the ashes on her property

1492.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Tavai was physically harmed.

1493.   Among other things, Tavai began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, chest pain, dizziness, vertigo, sore throat, coughing, nausea, vomiting, itchy, watery, burning eyes, headaches, sinus pain, pressure, fatigue, congestion, difficulty sleeping, ear aches, ear infections, asthma flare-up, and loss of balance.

1494.   The November 24 and 25, 2022, discharge also entered Tavai's residence, including ashes and the strong smell.

1495.   The trespass by PBF Hercules interfered with Tavai's ability to use and enjoy the residence and caused injury to Tavai and damage to the property including by decreasing the value of the property as a result of contamination.

1496.   Needless to say, the trespass by PBF Hercules to Tavai's real property was unauthorized.

1497.  Tavai was also present at her residence for the July 2023, October 2023, and December 2023 releases.

1498.  In each instance, she was exposed to toxins from the refinery's discharges.

1499.  As a result of her exposure to the 2023 discharges from the refinery, Tavai was physically harmed, including developing and/or worsening symptoms of coughing, sore throat, rash, hives, congestion, fatigue, pressure, vertigo, chest pain, and dizziness that were directly caused by the reoccurring discharges in 2023.

1500.  The 2023 discharges also entered Tavai's residence, including a strong smell and ashes.

1501.  The trespasses by PBF Hercules interfered with Tavai's ability to use and enjoy the residence and caused injury to Tavai and damage to the property including by decreasing the value of the property as a result of contamination.

1502.  Needless to say, the trespasses by PBF Hercules to Tavai's real property was unauthorized in each instance.

1503.  Additionally, the health effects on Tavai from the discharges have caused her to suffer lost wages, income, and/or business opportunities.

### 92.    Plaintiff Linda Tellsworth.

1504.  At all times relevant to this action, Plaintiff Linda Tellsworth was over the age of 18 and was a resident of Martinez, California.

1505.  Plaintiff Linda Tellsworth owned a residence, which was approximately 2 miles from the refinery.

1506.  Tellsworth was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1507.  Among other things, she recalls bad smells and dust on her plants.

1508.  As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Tellsworth was physically harmed.

1509.  Among other things, Tellsworth began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties,

chest pain, memory issues, brain fog, sore throat, coughing, nausea, vomiting, itchy, watery, burning eyes, rash, hives, headaches, sinus pain, pressure, fatigue, congestion, difficulty sleeping, body aches, earaches, ear infections, heartburn, diarrhea, and loss of balance.

1510.   The November 24 and 25, 2022, discharge also entered Tellsworth's residence.

1511.   The trespass by PBF Martinez interfered with Tellsworth's ability to use and enjoy the residence and caused injury to Tellsworth and damage to the property.

1512.   Needless to say, the trespass by PBF Martinez to Tellsworth's real property was unauthorized.

1513.   Tellsworth was also present at her residence for the July 2023, October 2023, and December 2023 releases.

1514.   In each instance, she was exposed to toxins from the refinery's discharges.

1515.   As a result of her exposure to the 2023 discharges from the refinery, Tellsworth was physically harmed, including developing and/or worsening symptoms of nausea, headaches, fatigue, bloody nose, shingles, fever, breathing difficulties, diarrhea and body aches.

1516.   The 2023 discharges also entered Tellsworth's residence.

1517.   The trespasses by PBF Martinez interfered with Tellsworth's ability to use and enjoy the residence and caused injury to Tellsworth and damage to the property.

1518.   Needless to say, the trespasses by PBF Martinez to Tellsworth's real property were unauthorized in each instance.

1519.   Additionally, the health effects on Tellsworth from the discharges have caused her to suffer lost wages, income, and/or business opportunities.

**93.    Plaintiff Paul Trzebiatowski.**

1520.   At all times relevant to this action, Plaintiff Paul Trzebiatowski was over the age of 18 and was a resident of Martinez, California.

1521.   Plaintiff Paul Trzebiatowski owned a residence, which was approximately 1/2 mile from the refinery.

1522.   Trzebiatowski was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1523.   Among other things, he recalls a chemical smell in the air, smoke being emitted from the refinery, and everything covered in grey and black dust.

1524.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Trzebiatowski was physically harmed.

1525.   Among other things, Trzebiatowski began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, chest pain, sore throat, coughing, itchy, watery, burning eyes, headaches, sinus pain, pressure, bloody nose, congestion, difficulty sleeping, and phlegm.

1526.   The November 24 and 25, 2022, discharge also entered Trzebiatowski's residence, including smell, smoke, and dust.

1527.   The trespass by PBF Martinez interfered with Trzebiatowski's ability to use and enjoy the residence and caused injury to Trzebiatowski and damage to the property including by decreasing the value of the property as a result of contamination.

1528.   Needless to say, the trespass by PBF Martinez to Trzebiatowski's real property was unauthorized.

1529.   Trzebiatowski was also present at his residence for the July 2023, October 2023, and December 2023 releases.

1530.   In each instance, he was exposed to toxins from the refinery's discharges.

1531.   As a result of his exposure to the 2023 discharges from the refinery, Trzebiatowski was physically harmed, including developing and/or worsening symptoms of difficulty breathing, bloody nose, congestion, headaches, and sore throat that were directly caused by the reoccurring discharges in 2023.

1532.   The 2023 discharges also entered Trzebiatowski's residence, including chemical smell.

1533.   The trespasses by PBF Martinez interfered with Trzebiatowski's ability to use and enjoy the residence and caused injury to Trzebiatowski and damage to the property including by decreasing the value of the property as a result of contamination.

1534.   Needless to say, the trespasses by PBF Martinez to Trzebiatowski's real property were unauthorized in each instance.

**94.   Plaintiff Eileen Tumlin.**

1535.   At all times relevant to this action, Plaintiff Eileen Tumlin was over the age of 18 and was a resident of Martinez, California.

1536.   Plaintiff Eileen Tumlin owned a residence, which was approximately 2 miles from the refinery.

1537.   Tumlin was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1538.   Among other things, she recalls odors and dust/debris all over her vehicles and on her outside furniture, fruit trees, windowsills, and patio.

1539.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Tumlin was physically harmed.

1540.   Among other things, Tumlin began experiencing illness and symptoms that were directly caused by the toxic exposure within a few weeks after the release, including breathing difficulties, chest pain, memory issues, brain fog, dizziness, vertigo, headaches, fatigue, difficulty sleeping, body aches, earaches, ear infections, asthma flare-up, and diarrhea.

1541.   The November 24 and 25, 2022, discharge also entered Tumlin's residence, including odor and dust.

1542.   The trespass by PBF Martinez interfered with Tumlin's ability to use and enjoy the residence and caused injury to Tumlin and damage to the property including by decreasing the value of the property as a result of contamination.

1543.   Needless to say, the trespass by PBF Martinez to Tumlin's real property was unauthorized.

1544.   Tumlin was also present at her residence for the July 2023, October 2023, and December 2023 releases.

1545.   In each instance, she was exposed to toxins from the refinery's discharges.

-151-

1546.   As a result of her exposure to the 2023 discharges from the refinery, Tumlin was physically harmed, including developing and/or worsening symptoms of asthma, vertigo, nausea, and stomach issues that were directly caused by the reoccurring discharges in 2023.

1547.   The 2023 discharges also entered Tumlin's residence, including odor and dust.

1548.   The trespasses by PBF Martinez interfered with Tumlin's ability to use and enjoy the residence and caused injury to Tumlin and damage to the property including by decreasing the value of the property as a result of contamination.

1549.   Needless to say, the trespasses by PBF Martinez to Tumlin's real property was unauthorized in each instance.

1550.   Additionally, the health effects on Tumlin from the discharges have caused her to suffer lost wages, income, and/or business opportunities.o,

**95.    Plaintiff Barbara Turcios.**

1551.   At all times relevant to this action, Plaintiff Barbara Turcios was over the age of 18 and was a resident of Martinez, California.

1552.   Plaintiff Barbara Turcios owned a residence, which was approximately 2 miles from the refinery.

1553.   Turcios was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1554.   Among other things, she had a layer of dust on her roof and house. Her plants also died, and now has difficulty growing plants in the ground.

1555.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Turcios was physically harmed.

1556.   Among other things, Turcios began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, chest pain, sore throat, coughing, itchy, watery, burning eyes, headaches, sinus pain, pressure, fatigue, congestion, difficulty sleeping, and body aches.

1557.   The November 24 and 25, 2022, discharge also entered Turcios' residence, including dust.

1558.  The trespass by PBF Martinez interfered with Turcios' ability to use and enjoy the residence and caused injury to Turcios and damage to the property including by decreasing the value of the property as a result of contamination.

1559.  Needless to say, the trespass by PBF Martinez to Turcios' real property was unauthorized.

1560.  Turcios was also present at her residence for the July 2023, October 2023, and December 2023 releases.

1561.  In each instance, she was exposed to toxins from the refinery's discharges.

1562.  As a result of her exposure to the 2023 discharges from the refinery, Turcios was physically harmed, including developing and/or worsening symptoms of itchy eyes, coughing, sore throat and congestion that were directly caused by the reoccurring discharges in 2023.

1563.  The 2023 discharges also entered Turcios' residence, including dust.

1564.  The trespasses by PBF Martinez interfered with Turcios' ability to use and enjoy the residence and caused injury to Turcios and damage to the property including by decreasing the value of the property as a result of contamination.

1565.  Needless to say, the trespasses by PBF Martinez to Turcios' real property were unauthorized in each instance.

**96.    Plaintiff Luis Uriarte.**

1566.  At all times relevant to this action, Plaintiff Luis Uriarte was over the age of 18 and was a resident of Martinez, California.

1567.  Plaintiff Luis Uriarte owned a residence, which was approximately 1/4 mile from the refinery.

1568.  Uriarte was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1569.  Among other things, he recalls the smell and the ashes.

1570.  As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Uriarte was physically harmed.

1571.   Among other things, Uriarte began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, chest pain, sore throat, coughing, itchy, watery, and burning eyes.

1572.   The November 24 and 25, 2022, discharge also entered Uriarte's residence, including the smell and ashes.

1573.   The trespass by PBF Martinez interfered with Uriarte's ability to use and enjoy the residence and caused injury to Uriarte and damage to the property including by decreasing the value of the property as a result of contamination.

1574.   Needless to say, the trespass by PBF Martinez to Uriarte's real property was unauthorized.

1575.   Uriarte was also present at his residence for the July 2023, October 2023, and December 2023 releases.

1576.   In each instance, he was exposed to toxins from the refinery's discharges.

1577.   As a result of his exposure to the 2023 discharges from the refinery, Uriarte was physically harmed, including developing and/or worsening symptoms of nausea, stomach issues, difficulty breathing, chest pain, coughing, and headaches that were directly caused by the reoccurring discharges in 2023.

1578.   The 2023 discharges also entered Uriarte's residence, including the smell and ashes.

1579.   The trespasses by PBF Martinez interfered with Uriarte's ability to use and enjoy the residence and caused injury to Uriarte and damage to the property including by decreasing the value of the property as a result of contamination.

1580.   Needless to say, the trespasses by PBF Martinez to Uriarte's real property was unauthorized in each instance.

1581.   Additionally, the health effects on Uriarte from the discharges have caused her to suffer lost wages, income, and/or business opportunities.

**97.    Plaintiff Larry Vasquez.**

1582.   At all times relevant to this action, Plaintiff Larry Vasquez was over the age of 18 and was a resident of Martinez, California.

-154-

1583.   Plaintiff Larry Vasquez owned a residence, which was approximately 2 miles from the refinery.

1584.   Vasquez was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1585.   Among other things, he recalled a foul smell and woke up to white dust all over the ground and on his car.

1586.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Vasquez was physically harmed.

1587.   Among other things, Vasquez began experiencing illness and symptoms that were directly caused by the toxic exposure within a week after the release, including dizziness, vertigo, sore throat, and coughing.

1588.   The November 24 and 25, 2022, discharge also entered Vasquez's residence, including the foul smell and dust.

1589.   The trespass by PBF Martinez interfered with Vasquez's ability to use and enjoy the residence and caused injury to Vasquez and damage to the property including by decreasing the value of the property as a result of contamination.

1590.   Needless to say, the trespass by PBF Martinez to Vasquez's real property was unauthorized.

1591.   Vasquez was also present at his residence for the July 2023, October 2023, and December 2023 releases.

1592.   In each instance, he was exposed to toxins from the refinery's discharges.

1593.   As a result of his exposure to the 2023 discharges from the refinery, Vasquez was physically harmed, including developing and/or worsening symptoms of difficulty breathing, chest pain, dizziness, sore throat, coughing, headaches, difficulty sleeping, and body aches that were directly caused by the reoccurring discharges in 2023.

1594.   The 2023 discharges also entered Vasquez's residence.

1595.   The trespasses by PBF Martinez interfered with Vasquez's ability to use and enjoy the residence and caused injury to Vasquez and damage to the property including by decreasing the value of the property as a result of contamination.

1596.   Needless to say, the trespasses by PBF Martinez to Vasquez's real property were unauthorized in each instance.

**98.    Plaintiff Danielle White.**

1597.   At all times relevant to this action, Plaintiff Danielle White was over the age of 18 and was a resident of Martinez, California.

1598.   Plaintiff Danielle White owned a residence, which was approximately 1/4 mile from the refinery.

1599.   White was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1600.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, White was physically harmed.

1601.   Among other things, White began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, memory issues, brain fog, dizziness, vertigo, sore throat, coughing, nausea, vomiting, headaches, fatigue, congestion, difficulty sleeping, and body aches.

1602.   The November 24 and 25, 2022, discharge also entered White's residence.

1603.   The trespass by PBF Martinez interfered with White's ability to use and enjoy the residence and caused injury to White and damage to the property including by decreasing the value of the property as a result of contamination.

1604.   Needless to say, the trespass by PBF Martinez to White's real property was unauthorized.

1605.   White was also present at her residence for the July 2023, October 2023, and December 2023 releases.

1606.   In each instance, she was exposed to toxins from the refinery's discharges.

1607.   As a result of her exposure to the 2023 discharges from the refinery, White was physically harmed, including developing and/or worsening symptoms of headaches, congestion, eye irritation, skin irritation, and brain fog that were directly caused by the reoccurring discharges in 2023.

1608.   The 2023 discharges also entered White's residence.

1609.   The trespasses by PBF Martinez interfered with White's ability to use and enjoy the residence and caused injury to White and damage to the property including by decreasing the value of the property as a result of contamination.

1610.   Needless to say, the trespasses by PBF Martinez to White's real property were unauthorized in each instance.

### 99.   Plaintiff Harry Wilson.

1611.   At all times relevant to this action, Plaintiff Harry Wilson was over the age of 18 and was a resident of Martinez, California.

1612.   Plaintiff Harry Wilson owned a residence, which was approximately 1 mile from the refinery.

1613.   Wilson was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1614.   Among other things, he recalls a strong odor.

1615.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Wilson was physically harmed.

1616.   Among other things, Wilson began experiencing illness and symptoms that were directly caused by the toxic exposure Within days after the release, including breathing difficulties, dizziness, vertigo, sore throat, coughing, itchy, watery, and burning eyes.

1617.   The November 24 and 25, 2022, discharge also entered Wilson's residence, including a strong smell.

1618.   The trespass by PBF Martinez interfered with Wilson's ability to use and enjoy the residence and caused injury to Wilson and damage to the property including by decreasing the value of the property as a result of contamination.

1619.   Needless to say, the trespass by PBF Martinez to Wilson's real property was unauthorized.

1620.   Wilson was also present at his residence for the July 2023, October 2023, and December 2023 releases.

1621.   In each instance, he was exposed to toxins from the refinery's discharges.

1622.   As a result of his exposure to the 2023 discharges from the refinery, Wilson was physically harmed, including developing and/or worsening symptoms of breathing difficulties, dizziness, vertigo, sore throat, coughing, itchy, watery, and burning eye that were directly caused by the reoccurring discharges in 2023.

1623.   The 2023 discharges also entered Wilson's residence, including a strong smell.

1624.   The trespasses by PBF Martinez interfered with Wilson's ability to use and enjoy the residence and caused injury to Wilson and damage to the property including by decreasing the value of the property as a result of contamination.

1625.   Needless to say, the trespasses by PBF Martinez to Wilson's real property were unauthorized in each instance.

**100.    Plaintiff Linde Yoeono.**

1626.   At all times relevant to this action, Plaintiff Linde Yoeono was over the age of 18 and was a resident of Martinez, California.

1627.   Plaintiff Linde Yoeono owned a residence, which was approximately 1/2 mile from the refinery.

1628.   Yoeono was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1629.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Yoeono was physically harmed.

1630.   Among other things, Yoeono began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, memory issues, brain fog, sore throat, coughing, itchy, watery, burning eyes, sinus pain, pressure, bloody nose, body aches, earaches, ear infections, and asthma flare-ups.

1631.   The November 24 and 25, 2022, discharge also entered Yoeono's residence.

1632.   The trespass by PBF Martinez interfered with Yoeono's ability to use and enjoy the residence and caused injury to Yoeono and damage to the property including by decreasing the value of the property as a result of contamination.

1633.   Needless to say, the trespass by PBF Martinez to Yoeono's real property was unauthorized.

1634.   Yoeono was also present at her residence for the July 2023, October 2023, and December 2023 releases.

1635.   In each instance, she was exposed to toxins from the refinery's discharges.

1636.   As a result of her exposure to the 2023 discharges from the refinery, Yoeono was physically harmed, including developing and/or worsening symptoms of asthma flare up, difficulty breathing, chest pain, dizziness, headaches, eye irritation, and sinus issues that were directly caused by the reoccurring discharges in 2023.

1637.   The 2023 discharges also entered Yoeono's residence.

1638.   The trespasses by PBF Martinez interfered with Yoeono's ability to use and enjoy the residence and caused injury to Yoeono and damage to the property including by decreasing the value of the property as a result of contamination.

1639.   Needless to say, the trespasses by PBF Martinez to Yoeono's real property were unauthorized in each instance.

**101.    Plaintiff Connie Zagorsky.**

1640.   At all times relevant to this action, Plaintiff Connie Zagorsky was over the age of 18 and was a resident of Martinez, California.

1641.   Plaintiff Connie Zagorsky owned a residence, which was approximately 1/2 mile from the refinery.

1642.   Zagorsky was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1643.   Among other things, she recalls the smell in the air.

1644.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Zagorsky was physically harmed.

1645.   Among other things, Zagorsky began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, chest pain, memory issues, brain fog, dizziness, vertigo, sore throat, coughing, itchy, watery, burning eyes, congestion, difficulty sleeping, earaches, ear infections, asthma flare-ups, heartburn, and dehydration,

1646.   The November 24 and 25, 2022, discharge also entered Zagorsky's residence, including the smell.

1647.   The trespass by PBF Martinez interfered with Zagorsky's ability to use and enjoy the residence and caused injury to Zagorsky and damage to the property including by decreasing the value of the property as a result of contamination.

1648.   Needless to say, the trespass by PBF Martinez to Zagorsky's real property was unauthorized.

1649.   Zagorsky was also present at her residence for the July 2023, October 2023, and December 2023 releases.

1650.   In each instance, she was exposed to toxins from the refinery's discharges.

1651.   As a result of her exposure to the 2023 discharges from the refinery, Zagorsky was physically harmed, including developing and/or worsening symptoms of, coughing, breathing difficulties, sore throat, chest pain, brain fog, memory issues, dizziness, ear infections, heart burn, and asthma flare-ups that were directly caused by the reoccurring discharges in 2023.

1652.   The 2023 discharges also entered Zagorsky's residence, including the chemical odor.

1653.   The trespasses by PBF Martinez interfered with Zagorsky's ability to use and enjoy the residence and caused injury to Zagorsky and damage to the property including by decreasing the value of the property as a result of contamination.

1654.   Needless to say, the trespasses by PBF Martinez to Zagorsky's real property were unauthorized in each instance.

**102.    Plaintiff Lara Zanzucchi.**

1655.    At all times relevant to this action, Plaintiff Lara Zanzucchi was over the age of 18 and was a resident of Martinez, California.

1656.    Plaintiff Lara Zanzucchi owned a residence, which was approximately 1/2 mile from the refinery.

1657.    Zanzucchi was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1658.    Among other things, she saw an ashy sky, with ash in her yard and on her house. Her lemon tree also died.

1659.    As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Zanzucchi was physically harmed.

1660.    Among other things, Zanzucchi began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, memory issues, brain fog, dizziness, vertigo, sore throat, coughing, itchy, watery, burning eyes, rash, hives, headaches, and fatigue.

1661.    The November 24 and 25, 2022, discharge also entered Zanzucchi's residence, including ash.

1662.    The trespass by PBF Martinez interfered with Zanzucchi's ability to use and enjoy the residence and caused injury to Zanzucchi and damage to the property including by decreasing the value of the property as a result of contamination.

1663.    Needless to say, the trespass by PBF Martinez to Zanzucchi's real property was unauthorized.

1664.    Zanzucchi was also present at her residence for the July 2023, October 2023, and December 2023 releases.

1665.    In each instance, she was exposed to toxins from the refinery's discharges.

1666.    As a result of her exposure to the 2023 discharges from the refinery, Zanzucchi was physically harmed, including developing and/or worsening symptoms of migraines, fatigue, skin irritation, and difficulty sleeping that were directly caused by the reoccurring discharges in 2023.

1667.    The 2023 discharges also entered Zanzucchi's residence, including ash.

1668.    The trespasses by PBF Martinez interfered with Zanzucchi's ability to use and enjoy the residence and caused injury to Zanzucchi and damage to the property including by decreasing the value of the property as a result of contamination.

1669.    Needless to say, the trespasses by PBF Martinez to Zanzucchi's real property were unauthorized in each instance.

**B.    Renter Plaintiffs.**

1670.    Plaintiffs Sherry Androyna, Megan Arciga, Connie Arieta Soria, Samuel Bethell, Rena Blake, Nyasha Boyette, Billie Breland, Blanche Brewer, Tyronne Brewer, Brian Brodie, Bryce Caldwell, Erica Calloway, Ajani Campbell, Sadey Cardenas, Christina Carter Hodges, Christina Castle-Barber, Jose Concha-Robles, Curtis Conrad, Lyndsey Cooper, Vicki DiMaggio, Matthew Doyle, Marc Dudley, Steve Eriksen, Toni Erny, Ryan Fierner, Brien Frazier, Candace Garcia, Aaron Ginkens, Elaine Glover Harrington, Yesenia Gonzalez, Blake Gray, Juan Guerra, Alicia Hamilton, Mohamad Hammoudeh, Sean Harrison, Lacy Henry, Kevin Hill, Jr., Marnique Ingram, Jose Jacinto, Shelnika Jackson, Amie James, Carrye Joe, ShaRhonda Johnson, Yohana Kahassai, Markeasha Keeton, Mary Renee Keeton, Leah Keyes, Dariusz Kniecik, James Lancaster, Christopher Lopez, Kimberly Lopez, Roberto Lopez, Manuel Maldonado-Hernandez, Mohmod Mangal, Elias Martinez, Jose Martinez, James Matthews, James Maxwell, Richard McDonald, Jr., Monica Moore, Luciana Morris, Andree Nattkemper, Anthony Neal, Elizabeth Olson, Annette Orejuela, Barbara Penney, Marva Percy, Frank Perez, Davion Phillips, Vanessa Pipkins, Crystal Quarles, Ariya Quintero, Vivian Ramirez, Oscar Ramos, Nika Ramsey, Marcheal Reed, Erick Roach, Isabel Rodriquez, Delia Rubalcava, Maria Rubalcava, Adrian Scott, Elizabeth Silvestri, Kerry Smith, Tiffany Taylor, Erica Thomas, Tyisha Tillis, Brett Turner, Kevin Tyson, Damariz Vargas, Timothy Veite, Anny Waheed, Tiffany Washington, and Darla Wintermantel are referred to collectively as the "Renter Plaintiffs."

**1.    Plaintiff Sherry Androyna.**

1671.    At all times relevant to this action, Plaintiff Sherry Androyna was over the age of 18 and was a resident of Martinez, California.

1672.   Plaintiff Sherry Androyna rented a residence, which was approximately 1 1/2 miles from the refinery.

1673.   Androyna was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1674.   Among other things, she recalls hearing a sound and there was a strong bad smell.

1675.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Androyna was physically harmed.

1676.   Among other things, Androyna began experiencing illness and symptoms that were directly caused by the toxic exposure within a few weeks after the release, including breathing difficulties, sore throat, coughing, and headaches.

1677.   The November 24 and 25, 2022, discharge also entered Androyna's residence, including sound and strong, bad smell.

1678.   The trespass by PBF Martinez interfered with Androyna's ability to use and enjoy the residence and caused injury to Androyna and damage to the property.

1679.   Needless to say, the trespass by PBF Martinez to Androyna's real property was unauthorized.

1680.   Androyna was also present at her residence for the July 2023, October 2023, and December 2023 releases.

1681.   In each instance, she was exposed to toxins from the refinery's discharges.

1682.   As a result of her exposure to the 2023 discharges from the refinery, Androyna was physically harmed, including developing and/or worsening symptoms of migraines, dizziness, throat irritation, and dry coughing.

1683.   The 2023 discharges also entered Androyan's residence, including a strong, bad smell.

1684.   The trespasses by PBF Martinez interfered with Androyan's ability to use and enjoy the residence and caused injury to Androyna and damage to the property.

1685.   Needless to say, the trespasses by PBF Martinez to Androyan's real property were unauthorized in each instance.

### 2.    Plaintiff Megan Arciga.

1686.    At all times relevant to this action, Plaintiff Megan Arciga was over the age of 18 and was a resident of Martinez, California.

1687.    Plaintiff Megan Arciga rented a residence, which was approximately 1 1/4 miles from the refinery.

1688.    Arciga was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1689.    Among other things, she recalled dust on vehicles and landscaping.

1690.    As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Arciga was physically harmed.

1691.    Among other things, Arciga began experiencing illness and symptoms that were directly caused by the toxic exposure, including wheezing, asthma flare up, and migraines.

1692.    The November 24 and 25, 2022, discharge also entered Arciga's residence, including dust.

1693.    The trespass by PBF Martinez interfered with Arciga's ability to use and enjoy the residence and caused injury to Arciga and damage to the property.

1694.    Needless to say, the trespass by PBF Martinez to Arciga's real property was unauthorized.

1695.    Arciga was also present at her residence for the July 2023, October 2023, and December 2023 releases.

1696.    In each instance, she was exposed to toxins from the refinery's discharges.

1697.    As a result of her exposure to the 2023 discharges from the refinery, Arciga was physically harmed, including developing and/or worsening symptoms of wheezing, asthma flare ups, and migraines that were directly caused by the reoccurring discharges in 2023.

1698.    The 2023 discharges also entered Arciga's residence, including dust.

1699.    The trespasses by PBF Martinez interfered with Arciga's ability to use and enjoy the residence and caused injury to Arciga and damage to the property.

1700.   Needless to say, the trespasses by PBF Martinez to Arciga's real property were unauthorized in each instance.

### 3.    Plaintiff Connie Arieta Soria.

1701.   At all times relevant to this action Plaintiff Connie Arieta Soria was over the age of 18 and was a resident of Martinez, California.

1702.   Plaintiff Connie Arieta Soria rented a residence, which was approximately 1/4 mile from the refinery.

1703.   Arieta Soria was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1704.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Arieta Soria was physically harmed.

1705.   Among other things, Arieta Soria began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, sore throat, coughing, headaches, congestion, and phlegm.

1706.   The November 24 and 25, 2022, discharge also entered Arieta Soria's residence, including symptoms came during exposure.

1707.   The trespass by PBF Martinez interfered with Arieta Soria's ability to use and enjoy the residence and caused injury to Arieta Soria and damage to the property.

1708.   Needless to say, the trespass by PBF Martinez to Arieta Soria's real property was unauthorized.

1709.   Arieta Soria was also present at her residence for the July 2023, October 2023, and December 2023 releases.

1710.   In each instance, she was exposed to toxins from the refinery's discharges.

1711.   As a result of her exposure to the 2023 discharges from the refinery, Arieta Soria was physically harmed, including developing and/or worsening symptoms of difficulty breathing, headaches, dizziness, brain fog, and asthma that were directly caused by the reoccurring discharges in 2023.

1712.   The 2023 discharges also entered Arieta Soria's residence.

1713.  The trespasses by PBF Martinez interfered with Arieta Soria's ability to use and enjoy the residence and caused injury to Arieta Soria and damage to the property.

1714.  Needless to say, the trespasses by PBF Martinez to Arieta Soria's real property were unauthorized in each instance.

### 4.    Plaintiff Samuel Bethell.

1715.  At all times relevant to this action, Plaintiff Samuel Bethell was over the age of 18 and was a resident of Martinez, California.

1716.  Plaintiff Samuel Bethell rented a residence, which was approximately 1/4 mile from the refinery.

1717.  Bethell was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1718.  Among other things, he recalls dust on interior windows sills and on vehicles.

1719.  As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Bethell was physically harmed.

1720.  Among other things, Bethell began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, sinus pain, and pressure.

1721.  The November 24 and 25, 2022, discharge also entered Bethell's residence, including dust.

1722.  The trespass by PBF Martinez interfered with Bethell's ability to use and enjoy the residence and caused injury to Bethell and damage to the property.

1723.  Needless to say, the trespass by PBF Martinez to Bethell's real property was unauthorized.

1724.  Bethell was also present at his residence for the July 2023, October 2023, and December 2023 releases.

1725.  In each instance, he was exposed to toxins from the refinery's discharges.

1726.   As a result of his exposure to the 2023 discharges from the refinery, Bethell was physically harmed, including developing and/or worsening symptoms of respiratory issues and eye irritation that were directly caused by the reoccurring discharges in 2023.

1727.   The 2023 discharges also entered Bethell's residence, including strong smell and dust.

1728.   The trespasses by PBF Martinez interfered with Bethell's ability to use and enjoy the residence and caused injury to Bethell and damage to the property.

1729.   Needless to say, the trespasses by PBF Martinez to Bethell's real property were unauthorized in each instance.

1730.   Additionally, the health effects on Bethell from the discharges have caused him to suffer lost wages, income, and/or business opportunities.

### 5.    Plaintiff Rena Blake.

1731.   At all times relevant to this action, Plaintiff Rena Blake was over the age of 18 and was a resident of Martinez, California.

1732.   Plaintiff Rena Blake rented a residence, which was approximately 2 miles from the refinery.

1733.   Blake was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1734.   Among other things, she recalls a foul odor and dust on her car.

1735.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Blake was physically harmed.

1736.   Among other things, Blake began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including sore throat, coughing, itchy, watery, burning eyes, headaches, sinus pain, pressure, and bloody nose.

1737.   The November 24 and 25, 2022, discharge also entered Blake's residence, including a foul odor and dust.

1738.   The trespass by PBF Martinez interfered with Blake's ability to use and enjoy the residence and caused injury to Blake and damage to the property.

-167-

1739.   Needless to say, the trespass by PBF Martinez to Blake's real property was unauthorized.

1740.   Blake was also present at her residence for the July 2023, October 2023, and December 2023 releases.

1741.   In each instance, she was exposed to toxins from the refinery's discharges.

1742.   As a result of her exposure to the 2023 discharges from the refinery, Blake was physically harmed, including developing and/or worsening symptoms of an increase of headaches that were directly caused by the reoccurring discharges in 2023.

1743.   The 2023 discharges also entered Blake's residence, including a foul odor in the air and dust.

1744.   The trespasses by PBF Martinez interfered with Blake's ability to use and enjoy the residence and caused injury to Blake and damage to the property.

1745.   Needless to say, the trespasses by PBF Martinez to Blake's real property were unauthorized in each instance.

**6.    Plaintiff Nyasha Boyette.**

1746.   At all times relevant to this action, Plaintiff Nyasha Boyette was over the age of 18 and was a resident of Martinez, California.

1747.   Plaintiff Nyasha Boyette rented a residence, which was approximately 1 mile from the refinery.

1748.   Boyette was present at their residence for the July 11, 2023, release from the refinery, and was exposed to the toxic discharge from the refinery.

1749.   Among other things, she recalls seeing dust on vehicles.

1750.   As a result of her exposure to the toxic discharges from the refinery on July 11, 2023, Boyette was physically harmed.

1751.   Among other things, Boyette began experiencing illness and symptoms that were directly caused by the toxic exposure within a few weeks after the release, including breathing difficulties, chest pain, sore throat, coughing, itchy, watery, burning eyes, headaches, sinus pain, pressure, bloody nose, congestion, coughing up blood, and asthma flare-up.

1752. The July 11, 2023, discharge also entered Boyette's residence, including dust.

1753. The trespass by PBF Martinez interfered with Boyette's ability to use and enjoy the residence and caused injury to Boyette and damage to the property.

1754. Needless to say, the trespass by PBF Martinez to Boyette's real property was unauthorized.

1755. Boyette was also present at her residence for the October 2023 and December 2023 releases.

1756. In each instance, she was exposed to toxins from the refinery's discharges.

1757. As a result of her exposure to the 2023 discharges from the refinery, Boyette was physically harmed, including developing and/or worsening symptoms of wheezing, cough, bloody noses, coughed up blood, difficulty sleeping, headaches, and chest pain that were directly caused by the reoccurring discharges in 2023.

1758. The 2023 discharges also entered Boyette's residence, including dust.

1759. The trespasses by PBF Martinez interfered with Boyette's ability to use and enjoy the residence and caused injury to Boyette and damage to the property.

1760. Needless to say, the trespasses by PBF Martinez to Boyette's real property were unauthorized in each instance.

### 7.    Plaintiff Billie Breland.

1761. At all times relevant to this action, Plaintiff Billie Breland was over the age of 18 and was a resident of Martinez, California.

1762. Plaintiff Billie Breland rented a residence in Martinez which was approximately 1/2 mile from the refinery.

1763. Breland was present at their residence for the July 11 and 22, 2023 release from the refinery and was exposed to the toxic discharge from the refinery.

1764. Among other things, he recalls a strong smell.

1765. As a result of his exposure to the toxic discharges from the refinery on July 11 and 22, 2023, Breland was physically harmed.

-169-

1766.   Among other things, Breland began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, memory issues, brain fog, sore throat, coughing, headaches, sinus pain, pressure, bloody nose, difficulty sleeping, earaches, ear infections, phlegm, coughing up blood, heartburn, and dehydration.

1767.   The July 11 and 22, 2023, discharge also entered Breland's residence, including the strong smell.

1768.   The trespass by PBF Martinez interfered with Breland's ability to use and enjoy the residence and caused injury to Breland and damage to the property, including by decreasing the value of the property as a result of contamination.

1769.   Needless to say, the trespass by PBF Martinez to Breland's real property was unauthorized.

1770.   Breland was also present at his residence for the October 2023 and December 2023 releases.

1771.   In each instance, he was exposed to toxins from the refinery's discharges.

1772.   As a result of his exposure to the 2023 discharges from the refinery, Breland was physically harmed, including developing and/or worsening symptoms of headaches and breathing difficulties that were directly caused by the reoccurring discharges in 2023.

1773.   The 2023 discharges also entered Breland's residence, including the strong smell.

1774.   The trespasses by PBF Martinez interfered with Breland's ability to use and enjoy the residence and caused injury to Breland and damage to the property, including by decreasing the value of the property as a result of contamination.

1775.   Needless to say, the trespasses by PBF Martinez to Breland's real property was unauthorized in each instance.

1776.   Additionally, the health effects on Breland from the discharges have caused him to suffer lost wages, income, and/or business opportunities.

8.    **Plaintiff Blanche Brewer.**

1777.  At all times relevant to this action, Plaintiff Blanche Brewer was over the age of 18 and was a resident of Martinez, California.

1778.  Plaintiff Blanche Brewer rented a residence, which was approximately 2 miles from the refinery.

1779.  Brewer was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1780.  Among other things, she recalls a smell in the air.

1781.  As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Brewer was physically harmed.

1782.  Among other things, Brewer began experiencing illness and symptoms that were directly caused by the toxic exposure after the release, including breathing difficulties, memory issues, brain fog, dizziness, vertigo, sore throat, coughing, itchy, watery, burning eyes, rash, hives, and headaches.

1783.  The November 24 and 25, 2022, discharge also entered Brewer's residence, including an abnormal smell.

1784.  The trespass by PBF Martinez interfered with Brewer's ability to use and enjoy the residence and caused injury to Brewer and damage to the property.

1785.  Needless to say, the trespass by PBF Martinez to Brewer's real property was unauthorized.

1786.  Brewer was also present at her residence for the July 2023, October 2023, and December 2023 releases.

1787.  In each instance, she was exposed to toxins from the refinery's discharges.

1788.  As a result of her exposure to the 2023 discharges from the refinery, Brewer was physically harmed, including developing and/or worsening symptoms of coughing and wheezing that were directly caused by the reoccurring discharges in 2023.

1789.  The 2023 discharges also entered Brewer's residence, including an abnormal smell.

1790.   The trespasses by PBF Martinez interfered with Brewer's ability to use and enjoy the residence and caused injury to Brewer and damage to the property.

1791.   Needless to say, the trespasses by PBF Martinez to Brewer's real property were unauthorized in each instance.

### 9.    Plaintiff Tyrone Brewer.

1792.   At all times relevant to this action, Plaintiff Tyrone Brewer was over the age of 18 and was a resident of Martinez, California.

1793.   Plaintiff Tyrone Brewer rented a residence, which was approximately 1 1/2 miles from the refinery.

1794.   Brewer was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1795.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Brewer was physically harmed.

1796.   Among other things, Brewer began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, sore throat, coughing, headaches, congestion, difficulty sleeping, phlegm, asthma flare-up, and gagging.

1797.   The November 24 and 25, 2022, discharge also entered Brewer's residence.

1798.   The trespass by PBF Martinez interfered with Brewer's ability to use and enjoy the residence and caused injury to Brewer and damage to the property.

1799.   Needless to say, the trespass by PBF Martinez to Brewer's real property was unauthorized.

1800.   Brewer was also present at his residence for the July 2023, October 2023, and December 2023 releases.

1801.   In each instance, he was exposed to toxins from the refinery's discharges.

1802.   As a result of his exposure to the 2023 discharges from the refinery, Brewer was physically harmed, including developing and/or worsening symptoms of severe coughing and wheezing that were directly caused by the reoccurring discharges in 2023.

1    1803.    The 2023 discharges also entered Brewer's residence.

2    1804.    The trespasses by PBF Martinez interfered with Brewer's ability to use and enjoy

3    the residence and caused injury to Brewer and damage to the property.

4    1805.    Needless to say, the trespasses by PBF Martinez to Brewer's real property were

5    unauthorized in each instance.

6          **10.    Plaintiff Brian Brodie.**

7    1806.    At all times relevant to this action, Plaintiff Brian Brodie was over the age of 18 and

8    was a resident of Martinez, California.

9    1807.    Plaintiff Brian Brodie rented a residence, which was approximately 2 miles from the

10   refinery.

11   1808.    Brodie was present at their residence for the July 11, 2023, release from the refinery,

12   and was exposed to the toxic discharge from the refinery.

13   1809.    Among other things, he recalls dust and a bad odor in the air.

14   1810.    As a result of his exposure to the toxic discharges from the refinery on July 11, 2023,

15   Brodie was physically harmed.

16   1811.    Among other things, Brodie began experiencing illness and symptoms that were

17   directly caused by the toxic exposure immediately after the release, including sore throat, coughing,

18   fatigue, and congestion.

19   1812.    The July 11, 2023, discharge also entered Brodie's residence, dust.

20   1813.    The trespass by PBF Martinez interfered with Brodie's ability to use and enjoy the

21   residence and caused injury to Brodie and damage to the property.

22   1814.    Needless to say, the trespass by PBF Martinez to Brodie's real property was

23   unauthorized.

24   1815.    Brodie was also present at his residence for the October 2023 and December 2023

25   releases.

26   1816.    In each instance, he was exposed to toxins from the refinery's discharges.

27   1817.    Additional developing and/or worsening symptoms of fatigue, congestion, and

28   coughing were directly caused by the reoccurring discharges in 2023.

-173-

1818.   The 2023 discharges also entered Brodie's residence, including dust.

1819.   The trespasses by PBF Martinez interfered with Brodie's ability to use and enjoy the residence and caused injury to Brodie and damage to the property.

1820.   Needless to say, the trespasses by PBF Martinez to Brodie's real property were unauthorized in each instance.

**11.     Plaintiff Bryce Caldwell.**

1821.   At all times relevant to this action, Plaintiff Bryce Caldwell was over the age of 18 and was a resident of Martinez, California.

1822.   Plaintiff Bryce Caldwell rented a residence, which was approximately 2 miles from the refinery.

1823.   Caldwell was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1824.   Among other things, he recalls how bad the air quality was.

1825.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Caldwell was physically harmed.

1826.   Among other things, Caldwell began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties.

1827.   The November 24 and 25, 2022, discharge also entered Caldwell's residence, including the bad air.

1828.   The trespass by PBF Martinez interfered with Caldwell's ability to use and enjoy the residence and caused injury to Caldwell and damage to the property.

1829.   Needless to say, the trespass by PBF Martinez to Caldwell's real property was unauthorized.

1830.   Caldwell was also present at his residence for the July 2023, October 2023, and December 2023 releases.

1831.   In each instance, he was exposed to toxins from the refinery's discharges.

1832.   As a result of his exposure to the 2023 discharges from the refinery, Caldwell was physically harmed, including developing and/or worsening symptoms of asthma, nausea, and difficulty breathing that were directly caused by the reoccurring discharges in 2023.

1833.   The 2023 discharges also entered Caldwell's residence.

1834.   The trespasses by PBF Martinez interfered with Caldwell's ability to use and enjoy the residence and caused injury to Caldwell and damage to the property.

1835.   Needless to say, the trespasses by PBF Martinez to Caldwell's real property were unauthorized in each instance.

1836.   Additionally, the health effects on Caldwell from the discharges have caused him to suffer lost wages, income, and/or business opportunities.

### 12.    Plaintiff Erica Calloway.

1837.   At all times relevant to this action, Plaintiff Erica Calloway was over the age of 18 and was a resident of Martinez, California.

1838.   Plaintiff Erica Calloway rented a residence, which was approximately 1 3/4 miles from the refinery.

1839.   Calloway was present at their residence for the December 15, 2023, release from the refinery, and was exposed to the toxic discharge from the refinery.

1840.   As a result of her exposure to the toxic discharges from the refinery on December 15, 2023, Calloway was physically harmed.

1841.   Among other things, Calloway began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, dizziness, vertigo, sore throat, coughing, itchy, watery, burning eyes, asthma flare-up, and fever.

1842.   The trespass by PBF Martinez interfered with Calloway's ability to use and enjoy the residence and caused injury to Calloway and damage to the property.

1843.   Needless to say, the trespass by PBF Martinez to Calloway's real property was unauthorized.

1844.   In each instance, she was exposed to toxins from the refinery's discharges.

### 13.    Plaintiff Ajani Campbell.

1845.    At all times relevant to this action, Plaintiff Ajani Campbell was over the age of 18 and was a resident of Martinez, California.

1846.    Plaintiff Ajani Campbell rented a residence, which was approximately 2 miles from the refinery.

1847.    Campbell was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1848.    Among other things, he recalls a strong smell and seeing dust.

1849.    As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Campbell was physically harmed.

1850.    Among other things, Campbell began experiencing illness and symptoms that were directly caused by the toxic exposure within a few weeks after the release, including memory issues, brain fog, itchy, watery, burning eyes, headaches, sinus pain, pressure, difficulty sleeping, and asthma flare-ups.

1851.    The November 24 and 25, 2022, discharge also entered Campbell's residence, including a strong smell and dust.

1852.    The trespass by PBF Martinez interfered with Campbell's ability to use and enjoy the residence and caused injury to Campbell and damage to the property.

1853.    Needless to say, the trespass by PBF Martinez to Campbell's real property was unauthorized.

1854.    Campbell was also present at his residence for the July 2023, October 2023, and December 2023 releases.

1855.    In each instance, he was exposed to toxins from the refinery's discharges.

1856.    As a result of his exposure to the 2023 discharges from the refinery, Campbell was physically harmed, including developing and/or worsening symptoms of breathing difficulty, itchy, watery, burning eyes, and headaches that were directly caused by the reoccurring discharges in 2023.

1857.   The 2023 discharges also entered Campbell's residence, including a strong smell and dust.

1858.   The trespasses by PBF Martinez interfered with Campbell's ability to use and enjoy the residence and caused injury to Campbell and damage to the property.

1859.   Needless to say, the trespasses by PBF Martinez to Campbell's real property were unauthorized in each instance.

**14.    Plaintiff Sadey Cardenas.**

1860.   At all times relevant to this action, Plaintiff Sadey Cardenas was over the age of 18 and was a resident of Martinez, California.

1861.   Plaintiff Sadey Cardenas rented a residence, which was approximately 2 miles from the refinery.

1862.   Cardenas was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1863.   Among other things, she recalled dust on the lawn and the cars.

1864.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Cardenas was physically harmed.

1865.   Among other things, Cardenas began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, headaches, and difficulty sleeping.

1866.   The November 24 and 25, 2022, discharge also entered Cardenas' residence, including dust.

1867.   The trespass by PBF Martinez interfered with Cardenas' ability to use and enjoy the residence and caused injury to Cardenas and damage to the property.

1868.   Needless to say, the trespass by PBF Martinez to Cardenas' real property was unauthorized.

1869.   Cardenas was also present at her residence for the July 2023, October 2023, and December 2023 releases.

1870.   In each instance, she was exposed to toxins from the refinery's discharges.

1871.   As a result of her exposure to the 2023 discharges from the refinery, Cardenas was physically harmed, including developing and/or worsening symptoms headaches, stomach pain, and difficulty breathing that were directly caused by the reoccurring discharges in 2023.

1872.   The 2023 discharges also entered Cardenas' residence, including dust and smoke.

1873.   The trespasses by PBF Martinez interfered with Cardenas' ability to use and enjoy the residence and caused injury to Cardenas and damage to the property.

1874.   Needless to say, the trespasses by PBF Martinez to Cardenas' real property was unauthorized in each instance.

### 15.    Plaintiff Christina Carter Hodges.

1875.   At all times relevant to this action, Plaintiff Christina Carter Hodges was over the age of 18 and was a resident of Martinez, California.

1876.   Plaintiff Christina Carter Hodges rented a residence, which was approximately 2 miles from the refinery.

1877.   Carter Hodges was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1878.   Among other things, she recalls abnormal smells and dust.

1879.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Carter Hodges was physically harmed.

1880.   Among other things, Carter Hodges began experiencing illness and symptoms that were directly caused by the toxic exposure within a few weeks after the release, including itchy, watery, burning eyes, headaches, sinus pain, pressure, fatigue, difficulty sleeping, body aches, and asthma flare-up.

1881.   The November 24 and 25, 2022, discharge also entered Carter Hodges' residence, including abnormal smells and dust.

1882.   The trespass by PBF Martinez interfered with Carter Hodges' ability to use and enjoy the residence and caused injury to Carter Hodges and damage to the property.

1883.   Needless to say, the trespass by PBF Martinez to Carter Hodges' real property was unauthorized.

-178-

1884.   Carter Hodges was also present at her residence for the July 2023, October 2023, and December 2023 releases.

1885.   In each instance, she was exposed to toxins from the refinery's discharges.

1886.   As a result of her exposure to the 2023 discharges from the refinery, Carter Hodges was physically harmed, including developing and/or worsening symptoms of respiratory problems, watery eyes, headache, coughing, and phlegm that were directly caused by the reoccurring discharges in 2023.

1887.   The 2023 discharges also entered Carter Hodges' residence, including abnormal smells and dust.

1888.   The trespasses by PBF Martinez interfered with Carter Hodges' ability to use and enjoy the residence and caused injury to Carter Hodges and damage to the property.

1889.   Needless to say, the trespasses by PBF Martinez to Carter Hodges' real property was unauthorized in each instance.

1890.   Additionally, the health effects on Carter Hodges from the discharges have caused her to suffer lost wages, income, and/or business opportunities.

**16.    Plaintiff Christina Castle-Barber.**

1891.   At all times relevant to this action, Plaintiff Christina Castle-Barber was over the age of 18 and was a resident of Martinez, California.

1892.   Plaintiff Christina Castle-Barber rented a residence, which was approximately 1 1/2 miles from the refinery.

1893.   Castle-Barber was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1894.   Among other things, she saw ash all over car, garden furniture, and garden, and air smelled bad.

1895.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Castle-Barber was physically harmed.

1896.   Among other things, Castle-Barber began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, itchy, watery, burning eyes, and headaches.

1897.   The November 24 and 25, 2022, discharge also entered Castle-Barber's residence, including the ash and bad smell.

1898.   The trespass by PBF Martinez interfered with Castle-Barber's ability to use and enjoy the residence and caused injury to Castle-Barber and damage to the property.

1899.   Needless to say, the trespass by PBF Martinez to Castle-Barber's real property was unauthorized.

1900.   Castle-Barber was also present at her residence for the July 2023, October 2023, and December 2023 releases.

1901.   In each instance, she was exposed to toxins from the refinery's discharges.

1902.   As a result of her exposure to the 2023 discharges from the refinery, Castle-Barber was physically harmed, including developing and/or worsening symptoms of asthma, difficulty breathing, sore throat, dizziness, coughing, headaches, sinus pressure and pain, congestion, difficulty sleeping, and fatigue that were directly caused by the reoccurring discharges in 2023.

1903.   The 2023 discharges also entered Castle-Barber's residence, including the bad smelling air.

1904.   The trespasses by PBF Martinez interfered with Castle-Barber's ability to use and enjoy the residence and caused injury to Castle-Barber and damage to the property.

1905.   Needless to say, the trespasses by PBF Martinez to Castle-Barber's real property were unauthorized in each instance.

### 17.    Plaintiff Jose Concha-Robles.

1906.   At all times relevant to this action, Plaintiff Jose Concha-Robles was over the age of 18 and was a resident of Martinez, California.

1907.   Plaintiff Jose Concha-Robles rented a residence, which was approximately 1 mile from the refinery.

1908.   Concha-Robles was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1909.   Among other things, he recalled the bad smell.

1910.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Concha-Robles was physically harmed.

1911.   Among other things, Concha-Robles began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, dizziness, vertigo, sore throat, coughing, itchy, watery, burning eyes, headaches, sinus pain, pressure, fatigue, congestion, earaches, ear infections, phlegm, asthma flare-up, and heartburn.

1912.   The November 24 and 25, 2022, discharge also entered Concha-Robles' residence, including the bad smell.

1913.   The trespass by PBF Martinez interfered with Concha-Robles' ability to use and enjoy the residence and caused injury to Concha-Robles and damage to the property.

1914.   Needless to say, the trespass by PBF Martinez to Concha-Robles' real property was unauthorized.

1915.   Concha-Robles was also present at his residence for the July 2023, October 2023, and December 2023 releases.

1916.   In each instance, he was exposed to toxins from the refinery's discharges.

1917.   As a result of his exposure to the 2023 discharges from the refinery, Concha-Robles was physically harmed, including developing and/or worsening symptoms of difficulty breathing, wheezing, chest pain, and headaches that were directly caused by the reoccurring discharges in 2023.

1918.   The 2023 discharges also entered Concha-Robles' residence, including the smell.

1919.   The trespasses by PBF Martinez interfered with Concha-Robles' ability to use and enjoy the residence and caused injury to Concha-Robles and damage to the property.

1920.   Needless to say, the trespasses by PBF Martinez to Concha-Robles' real property were unauthorized in each instance.

### 18.    Plaintiff Curtis Conrad.

1921.    At all times relevant to this action, Plaintiff Curtis Conrad was over the age of 18 and was a resident of Martinez, California.

1922.    Plaintiff Curtis Conrad rented a residence, which was approximately 2 miles from the refinery.

1923.    Conrad was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1924.    Among other things, recalled seeing dust.

1925.    As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Conrad was physically harmed.

1926.    Among other things, Conrad began experiencing illness and symptoms that were directly caused by the toxic exposure no symptoms reported after the release, including difficulty breathing, memory issues, brain fog, sore throat, coughing, skin irritation, hives, sinus pain, pressure, fatigue, bloody nose, congestion, difficulty sleeping body aches, phlegm, stomach aches, and diarrhea.

1927.    The November 24 and 25, 2022, discharge also entered Conrad's residence, including the dust.

1928.    The trespass by PBF Martinez interfered with Conrad's ability to use and enjoy the residence and caused injury to Conrad and damage to the property.

1929.    Needless to say the trespass by PBF Martinez to Conrad's real property was unauthorized.

1930.    Conrad was also present at his residence for the July 2023, October 2023, and December 2023 releases.

1931.    In each instance, he was exposed to toxins from the refinery's discharges.

1932.    As a result of his exposure to the 2023 discharges from the refinery, Conrad was physically harmed, including developing and/or worsening symptoms of burning eyes that were directly caused by the reoccurring discharges in 2023.

1933.    The 2023 discharges also entered Conrad's residence, including the dust.

1934.  The trespasses by PBF Martinez interfered with Conrad's ability to use and enjoy the residence and caused injury to Conrad and damage to the property.

1935.  Needless to say, the trespasses by PBF Martinez to Conrad's real property were unauthorized in each instance.

### 19.    Plaintiff Lyndsey Cooper.

1936.  At all times relevant to this action, Plaintiff Lyndsey Cooper was over the age of 18 and was a resident of Martinez, California.

1937.  Plaintiff Lyndsey Cooper rented a residence, which was approximately 1 mile from the refinery.

1938.  Cooper was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1939.  Among other things, she saw white stuff covered the cars.

1940.  As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Cooper was physically harmed.

1941.  Among other things, Cooper began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, chest pain, memory issues, brain fog, dizziness, vertigo, sore throat, coughing, nausea, vomiting, itchy, watery, burning eyes, headaches, sinus pain, pressure, fatigue, bloody nose, congestion, body aches, phlegm, stomach pain, heartburn, dehydration, fever, and diarrhea.

1942.  The November 24 and 25, 2022, discharge also entered Cooper's residence, including the white stuff.

1943.  The trespass by PBF Martinez interfered with Cooper's ability to use and enjoy the residence and caused injury to Cooper and damage to the property.

1944.  Needless to say, the trespass by PBF Martinez to Cooper's real property was unauthorized.

1945.  Cooper was also present at her residence for the July 2023, October 2023, and December 2023 releases.

1946.  In each instance, she was exposed to toxins from the refinery's discharges.

1947.   As a result of her exposure to the 2023 discharges from the refinery, Cooper was physically harmed, including developing and/or worsening symptoms of sore throat, eye irritation, and coughing that were directly caused by the reoccurring discharges in 2023.

1948.   The 2023 discharges also entered Cooper's residence, including the weird smell.

1949.   The trespasses by PBF Martinez interfered with Cooper's ability to use and enjoy the residence and caused injury to Cooper and damage to the property.

1950.   Needless to say, the trespasses by PBF Martinez to Cooper's real property were unauthorized in each instance.

### 20.    Plaintiff Vicki DiMaggio.

1951.   At all times relevant to this action, Plaintiff Vicki DiMaggio was over the age of 18 and was a resident of Martinez, California.

1952.   Plaintiff Vicki DiMaggio rented a residence, which was approximately 1 1/2 miles from the refinery.

1953.   DiMaggio was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1954.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, DiMaggio was physically harmed.

1955.   Among other things, DiMaggio began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, chest pain, dizziness, vertigo, sore throat, coughing, itchy, watery, burning eyes, headaches, sinus pain, pressure, fatigue, congestion, difficulty sleeping, body aches, phlegm, stomach pain, heartburn, dehydration, and loss of balance.

1956.   The November 24 and 25, 2022, discharge also entered DiMaggio's residence.

1957.   The trespass by PBF Martinez interfered with DiMaggio's ability to use and enjoy the residence and caused injury to DiMaggio and damage to the property.

1958.   Needless to say, the trespass by PBF Martinez to DiMaggio's real property was unauthorized.

1959.  DiMaggio was also present at her residence for the July 2023, October 2023, and December 2023 releases.

1960.  In each instance, she was exposed to toxins from the refinery's discharges.

1961.  As a result of her exposure to the 2023 discharges from the refinery, DiMaggio was physically harmed, including developing and/or worsening symptoms of breathing difficulties, chest pain, sore throat, coughing, and congestion that were directly caused by the reoccurring discharges in 2023.

1962.  The 2023 discharges also entered DiMaggio's residence.

1963.  The trespasses by PBF Martinez interfered with DiMaggio's ability to use and enjoy the residence and caused injury to DiMaggio and damage to the property.

1964.  Needless to say, the trespasses by PBF Martinez to DiMaggio's real property were unauthorized in each instance.

1965.  Additionally, the health effects on DiMaggio from the discharges have caused her to suffer lost wages, income, and/or business opportunities.

### 21.    Plaintiff Matthew Doyle.

1966.  At all times relevant to this action, Plaintiff Matthew Doyle was over the age of 18 and was a resident of Martinez, California.

1967.  Plaintiff Matthew Doyle rented a residence, which was approximately 2 miles from the refinery.

1968.  Doyle was present at their residence for the July 11, 2023, release from the refinery, and was exposed to the toxic discharge from the refinery.

1969.  Among other things, recalled a bad smell.

1970.  As a result of his exposure to the toxic discharges from the refinery on July 11, 2023, Doyle was physically harmed.

1971.  Among other things, Doyle began experiencing illness and symptoms that were directly caused by the toxic exposure, including insomnia, mild migraines, and a mucous cyst.

1972.  The July 11, 2023, discharge also entered Doyle's residence, including a bad smell.

1973.   The trespass by PBF Martinez interfered with Doyle's ability to use and enjoy the residence and caused injury to Doyle and damage to the property.

1974.   Needless to say, the trespass by PBF Martinez to Doyle's real property was unauthorized.

1975.   Doyle was also present at his residence for the December 2023 release.

1976.   In each instance, he was exposed to toxins from the refinery's discharges.

1977.   Additional developing and/or worsening symptoms of insomnia, mild migraines, and an oral mucous cyst were directly caused by the reoccurring discharges in 2023.

1978.   The 2023 discharges also entered Doyle's residence, including a bad smell.

1979.   The trespasses by PBF Martinez interfered with Doyle's ability to use and enjoy the residence and caused injury to Doyle and damage to the property.

1980.   Needless to say, the trespasses by PBF Martinez to Doyle's real property were unauthorized in each instance.

**22.    Plaintiff Marc Dudley.**

1981.   At all times relevant to this action, Plaintiff Marc Dudley was over the age of 18 and was a resident of Martinez, California.

1982.   Plaintiff Marc Dudley rented a residence, which was approximately 1 mile from the refinery.

1983.   Dudley was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1984.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Dudley was physically harmed.

1985.   Among other things, Dudley began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including memory issues, brain fog, sore throat, coughing, nausea, vomiting, itchy, watery, burning eyes, headaches, and diarrhea.

1986.   The November 24 and 25, 2022, discharge also entered Dudley's residence.

1987.   The trespass by PBF Martinez interfered with Dudley's ability to use and enjoy the residence and caused injury to Dudley and damage to the property.

1988.   Needless to say, the trespass by PBF Martinez to Dudley's real property was unauthorized.

1989.   Dudley was also present at his residence for the July 2023 and December 2023 releases.

1990.   In each instance, he was exposed to toxins from the refinery's discharges.

1991.   As a result of his exposure to the 2023 discharges from the refinery, Dudley was physically harmed, including developing and/or worsening symptoms of headaches, irritated eyes, difficulty breathing, itchy throat, and coughing that were directly caused by the reoccurring discharges in 2023.

1992.   The 2023 discharges also entered Dudley's residence, including the foul smell.

1993.   The trespasses by PBF Martinez interfered with Dudley's ability to use and enjoy the residence and caused injury to Dudley and damage to the property.

1994.   Needless to say, the trespasses by PBF Martinez to Dudley's real property were unauthorized in each instance.

### 23.   Plaintiff Steve Eriksen.

1995.   At all times relevant to this action, Plaintiff Steve Eriksen was over the age of 18 and was a resident of Martinez, California.

1996.   Plaintiff Steve Eriksen rented a residence, which was approximately 1/2 mile from the refinery.

1997.   Eriksen was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

1998.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Eriksen was physically harmed.

1999.   Among other things, Eriksen began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, memory issues, brain fog, vertigo, sore throat, coughing, itchy, watery, burning eyes, headaches, sinus pain, pressure, fatigue, bloody nose, congestion, difficulty sleeping, body aches, phlegm, heartburn, diarrhea, and loss of balance.

2000.   The November 24 and 25, 2022, discharge also entered Eriksen's residence.

2001.   The trespass by PBF Martinez interfered with Eriksen's ability to use and enjoy the residence and caused injury to Eriksen and damage to the property.

2002.   Needless to say, the trespass by PBF Martinez to Eriksen's real property was unauthorized.

2003.   Eriksen was also present at his residence for the July 2023, October 2023, and December 2023 releases.

2004.   In each instance, he was exposed to toxins from the refinery's discharges.

2005.   As a result of his exposure to the 2023 discharges from the refinery, Eriksen was physically harmed, including developing and/or worsening symptoms of headaches, bloody nose, eye irritation, dizziness, and coughing that were directly caused by the reoccurring discharges in 2023.

2006.   The 2023 discharges also entered Eriksen's residence.

2007.   The trespasses by PBF Martinez interfered with Eriksen's ability to use and enjoy the residence and caused injury to Eriksen and damage to the property.

2008.   Needless to say, the trespasses by PBF Martinez to Eriksen's real property were unauthorized in each instance.

### 24.   Plaintiff Toni Erny.

2009.   At all times relevant to this action, Plaintiff Toni Erny was over the age of 18 and was a resident of Martinez, California.

2010.   Plaintiff Toni Erny rented a residence, which was approximately 1 1/2 mile from the refinery.

2011.   Erny was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2012.   Among other things, she recalls a smell in the air.

2013.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Erny was physically harmed.

2014.   Among other things, Erny began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, dizziness, vertigo, sore throat, coughing, itchy, watery, burning eyes, headaches, sinus pain, pressure, fatigue, congestion, difficulty sleeping, and body aches.

2015.   The November 24 and 25, 2022, discharge also entered Erny's residence, including smell.

2016.   The trespass by PBF Martinez interfered with Erny's ability to use and enjoy the residence and caused injury to Erny and damage to the property.

2017.   Needless to say, the trespass by PBF Martinez to Erny's real property was unauthorized.

2018.   Erny was also present at her residence for the July 2023, October 2023, and December 2023 releases.

2019.   In each instance, she was exposed to toxins from the refinery's discharges.

2020.   As a result of her exposure to the 2023 discharges from the refinery, Erny was physically harmed, including developing and/or worsening symptoms of itchy nose and eyes, trouble sleeping, skin irritation, difficulty breathing, and cough that were directly caused by the reoccurring discharges in 2023.

2021.   The 2023 discharges also entered Erny's residence.

2022.   The trespasses by PBF Martinez interfered with Erny's ability to use and enjoy the residence and caused injury to Erny and damage to the property.

2023.   Needless to say, the trespasses by PBF Martinez to Erny's real property were unauthorized in each instance.

### 25.    Plaintiff Ryan Fierner.

2024.   At all times relevant to this action, Plaintiff Ryan Fierner was over the age of 18 and was a resident of Martinez, California.

2025.   Plaintiff Ryan Fierner rented a residence, which was approximately 1/2 mile from the refinery.

2026.  Fierner was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2027.  Among other things, he recalls ash covering his car and the surrounding area.

2028.  As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Fierner was physically harmed.

2029.  Among other things, Fierner began experiencing illness and symptoms that were directly caused by the toxic exposure within a week after the release, including sore throat, coughing, and headaches.

2030.  The November 24 and 25, 2022, discharge also entered Fierner's residence, including dust.

2031.  The trespass by PBF Martinez interfered with Fierner's ability to use and enjoy the residence and caused injury to Fierner and damage to the property.

2032.  Needless to say, the trespass by PBF Martinez to Fierner's real property was unauthorized.

2033.  Fierner was also present at his residence for the July 2023, October 2023, and December 2023 releases.

2034.  In each instance, he was exposed to toxins from the refinery's discharges.

2035.  As a result of his exposure to the 2023 discharges from the refinery, Fierner was physically harmed, including developing and/or worsening symptoms of itchy eyes, congestion, and sneezing that were directly caused by the reoccurring discharges in 2023.

2036.  The 2023 discharges also entered Fierner's residence, including dust.

2037.  The trespasses by PBF Martinez interfered with Fierner's ability to use and enjoy the residence and caused injury to Fierner and damage to the property.

2038.  Needless to say, the trespasses by PBF Martinez to Fierner's real property were unauthorized in each instance.

### 26.    Plaintiff Brien Frazier.

2039.  At all times relevant to this action, Plaintiff Brien Frazier was over the age of 18 and was a resident of Martinez, California.

2040.   Plaintiff Brien Frazier rented a residence, which was approximately 2 miles from the refinery.

2041.   Frazier was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2042.   Among other things, he recalls ash like substance falling from the sky covering their cars.

2043.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Frazier was physically harmed.

2044.   Among other things, Frazier began experiencing illness and symptoms that were directly caused by the toxic exposure within a few weeks after the release, including breathing difficulties, dizziness, vertigo, sore throat, coughing, itchy, watery, burning eyes, headaches, sinus pain, pressure, fatigue, congestion, phlegm, and constant coughing.

2045.   The November 24 and 25, 2022, discharge also entered Frazier's residence, including ash like substances.

2046.   The trespass by PBF Martinez interfered with Frazier's ability to use and enjoy the residence and caused injury to Frazier and damage to the property.

2047.   Needless to say, the trespass by PBF Martinez to Frazier's real property was unauthorized.

2048.   Frazier was also present at his residence for the July 2023 release.

2049.   In each instance, he was exposed to toxins from the refinery's discharges.

2050.   As a result of his exposure to the 2023 discharge from the refinery, Frazier was physically harmed, including developing and/or worsening symptoms of coughing, wheezing, and difficulty breathing that were directly caused by the reoccurring discharges in 2023.

2051.   The 2023 discharge also entered Frazier's residence, including ash-like substance.

2052.   The trespasses by PBF Martinez interfered with Frazier's ability to use and enjoy the residence and caused injury to Frazier and damage to the property.

2053.   Needless to say, the trespasses by PBF Martinez to Frazier's real property were unauthorized in each instance.

2054.   Additionally, the health effects on Frazier from the discharges have caused him to suffer lost wages, income, and/or business opportunities.

### 27.    Plaintiff Candace Garcia.

2055.   At all times relevant to this action, Plaintiff Candace Garcia was over the age of 18 and was a resident of Martinez, California.

2056.   Plaintiff Candace Garcia rented a residence, which was approximately 2 miles from the refinery.

2057.   Garcia was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2058.   Among other things, she saw white particles on vehicles and recalled a bad smell.

2059.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Garcia was physically harmed.

2060.   Among other things, Garcia began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, chest pain, nausea, vomiting, itchy, watery, burning eyes, fatigue, body aches, stomach pain, asthma flare-up, heartburn, dehydration, and diarrhea.

2061.   The November 24 and 25, 2022, discharge also entered Garcia's residence, including saw white particles on vehicles and smell.

2062.   The trespass by PBF Martinez interfered with Garcia's ability to use and enjoy the residence and caused injury to Garcia and damage to the property.

2063.   Needless to say, the trespass by PBF Martinez to Garcia's real property was unauthorized.

2064.   Garcia was also present at her residence for the July 2023, October 2023, and December 2023 releases.

2065.   In each instance, she was exposed to toxins from the refinery's discharges.

2066.   As a result of her exposure to the 2023 discharges from the refinery, Garcia was physically harmed, including developing and/or worsening symptoms of asthma, headaches, coughing, and dizziness that were directly caused by the reoccurring discharges in 2023.

2067. The 2023 discharges also entered Garcia's residence, including the particles and smell.

2068. The trespasses by PBF Martinez interfered with Garcia's ability to use and enjoy the residence and caused injury to Garcia and damage to the property.

2069. Needless to say, the trespasses by PBF Martinez to Garcia's real property were unauthorized in each instance.

### 28.    Plaintiff Aaron Ginkens.

2070. At all times relevant to this action, Plaintiff Aaron Ginkens was over the age of 18 and was a resident of Martinez, California.

2071. Plaintiff Aaron Ginkens rented a residence, which was approximately 1/4 mile from the refinery.

2072. Ginkens was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2073. As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Ginkens was physically harmed.

2074. Among other things, Ginkens began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, chest pain, itchy watery burning eyes, and sinus pain pressure.

2075. The November 24 and 25, 2022, discharge also entered Ginkens' residence, including coughing, chest pain, red eyes, sinus issues.

2076. The trespass by PBF Martinez interfered with Ginkens' ability to use and enjoy the residence and caused injury to Ginkens and damage to the property.

2077. Needless to say, the trespass by PBF Martinez to Ginkens' real property was unauthorized.

2078. Ginkens was also present at his residence for the July 2023, October 2023, and December 2023 releases.

2079. In each instance, he was exposed to toxins from the refinery's discharges.

2080.   As a result of his exposure to the 2023 discharges from the refinery, Ginkens was physically harmed, including developing and/or worsening symptoms of sinus issues, coughing, and headaches that were directly caused by the reoccurring discharges in 2023.

2081.   The 2023 discharges also entered Ginkens' residence.

2082.   The trespasses by PBF Martinez interfered with Ginkens' ability to use and enjoy the residence and caused injury to Ginkens and damage to the property.

2083.   Needless to say, the trespasses by PBF Martinez to Ginkens' real property were unauthorized in each instance.

2084.   Additionally, the health effects on Ginkens from the discharges have caused him to suffer lost wages, income, and/or business opportunities.

**29.    Plaintiff Elaine Glover Harrington.**

2085.   At all times relevant to this action, Plaintiff Elaine Glover Harrington was over the age of 18 and was a resident of Martinez, California.

2086.   Plaintiff Elaine Glover Harrington rented a residence, which was approximately 1/2 mile from the refinery.

2087.   Glover Harrington was present at their residence for the December 15, 2023, release from the refinery, and was exposed to the toxic discharge from the refinery.

2088.   As a result of her exposure to the toxic discharges from the refinery on December 15, 2023, Glover Harrington was physically harmed.

2089.   Among other things, Glover Harrington began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, chest pain, memory issues, brain fog, sore throat, and coughing.

2090.   The December 15, 2023, discharge also entered Glover Harrinton's residence.

2091.   The trespass by PBF Martinez interfered with Glover Harrinton's ability to use and enjoy the residence and caused injury to Glover Harrington and damage to the property.

2092.   Needless to say, the trespass by PBF Martinez to Glover Harrinton's real property was unauthorized.

2093.   In that instance, she was exposed to toxins from the refinery's discharges.

2094.  Additionally, the health effects on Glover Harrington from the discharges have caused her to suffer lost wages, income, and/or business opportunities.

### 30.    Plaintiff Yesenia Gonzalez.

2095.  At all times relevant to this action, Plaintiff Yesenia Gonzalez was over the age of 18 and was a resident of Martinez, California.

2096.  Plaintiff Yesenia Gonzalez rented a residence, which was approximately 1 mile from the refinery.

2097.  Gonzalez was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2098.  As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Gonzalez was physically harmed.

2099.  Among other things, Gonzalez began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, chest pain, memory issues, brain fog, sore throat, coughing, nausea, vomiting, itchy, watery, burning eyes, rash, hives, sinus pain, pressure, fatigue, bloody nose, congestion, difficulty sleeping, body aches, ear aches, ear infections, phlegm, stomach pain, heartburn, dehydration, and diarrhea.

2100.  The November 24 and 25, 2022, discharge also entered Gonzalez's residence.

2101.  The trespass by PBF Martinez interfered with Gonzalez's ability to use and enjoy the residence and caused injury to Gonzalez and damage to the property.

2102.  Needless to say, the trespass by PBF Martinez to Gonzalez's real property was unauthorized.

2103.  Gonzalez was also present at her residence for the July 2023, October 2023, and December 2023 releases.

2104.  In each instance, she was exposed to toxins from the refinery's discharges.

2105.  As a result of her exposure to the 2023 discharges from the refinery, Gonzalez was physically harmed, including developing and/or worsening symptoms of coughing, stuffy nose, congestion, chest pains, breathing difficulties, stomach issues, and itchy skin that were directly caused by the reoccurring discharges in 2023.

2106.  The 2023 discharges also entered Gonzalez's residence.

2107.  The trespasses by PBF Martinez interfered with Gonzalez's ability to use and enjoy the residence and caused injury to Gonzalez and damage to the property.

2108.  Needless to say, the trespasses by PBF Martinez to Gonzalez's real property were unauthorized in each instance.

2109.  Additionally, the health effects on Gonzalez from the discharges have caused her to suffer lost wages, income, and/or business opportunities.

### 31.    Plaintiff Blake Gray.

2110.  At all times relevant to this action, Plaintiff Blake Gray was over the age of 18 and was a resident of California.

2111.  Plaintiff Blake Gray was present in Martinez for school approximately 1/4 mile from the refinery.

2112.  Gray was present in Martinez for school for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2113.  Among other things, he recalls a bad smell.

2114.  As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Gray was physically harmed.

2115.  Among other things, Gray began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including sore throat, coughing, itchy, watery, and burning eyes.

2116.  Gray was also present in Martinez for school for the July 2023, October 2023, and December 2023 releases.

2117.  In each instance, he was exposed to toxins from the refinery's discharges.

2118.  As a result of his exposure to the 2023 discharges from the refinery, Gray was physically harmed, including developing and/or worsening symptoms of coughing, nausea, headaches, and congestion that were directly caused by the reoccurring discharges in 2023.

1

**32.    Plaintiff Juan Guerra.**

2    2119.   At all times relevant to this action, Plaintiff Juan Guerra was over the age of 18 and

3    was a resident of Martinez, California.

4    2120.   Plaintiff Juan Guerra rented a residence, which was approximately 1 mile from the

5    refinery.

6    2121.   Guerra was present at their residence for the November 24 and 25, 2022 release

7    from the refinery, and was exposed to the toxic discharge from the refinery.

8    2122.   Among other things, he recalls the smell and the dust.

9    2123.   As a result of his exposure to the toxic discharges from the refinery on November

10   24 and 25, 2022, Guerra was physically harmed.

11   2124.   Among other things, Guerra began experiencing illness and symptoms that were

12   directly caused by the toxic exposure within days after the release, including breathing difficulties,

13   memory issues, brain fog, dizziness, vertigo, sore throat, and coughing.

14   2125.   The November 24 and 25, 2022, discharge also entered Guerra's residence,

15   including smell and dust.

16   2126.   The trespass by PBF Martinez interfered with Guerra's ability to use and enjoy the

17   residence and caused injury to Guerra and damage to the property.

18   2127.   Needless to say, the trespass by PBF Martinez to Guerra's real property was

19   unauthorized.

20   2128.   Guerra was also present at his residence for the July 2023, October 2023, and

21   December 2023 releases.

22   2129.   In each instance, he was exposed to toxins from the refinery's discharges.

23   2130.   As a result of his exposure to the 2023 discharges from the refinery, Guerra was

24   physically harmed, including developing and/or worsening symptoms of difficulty breathing,

25   dizziness, sore throat, coughing, and headaches that were directly caused by the reoccurring

26   discharges in 2023.

27   2131.   The 2023 discharges also entered Guerra's residence, including the smell.

28

2132.  The trespasses by PBF Martinez interfered with Guerra's ability to use and enjoy the residence and caused injury to Guerra and damage to the property.

2133.  Needless to say, the trespasses by PBF Martinez to Guerra's real property were unauthorized in each instance.

2134.  Additionally, the health effects on Guerra from the discharges have caused him to suffer lost wages, income, and/or business opportunities.

### 33.  Plaintiff Alicia Hamilton.

2135.  At all times relevant to this action, Plaintiff Alicia Hamilton was over the age of 18 and was a resident of Martinez, California.

2136.  Plaintiff Alicia Hamilton rented a residence, which was approximately 11 miles from the refinery.

2137.  Hamilton was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2138.  As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Hamilton was physically harmed.

2139.  Among other things, Hamilton began experiencing illness and symptoms that were directly caused by the toxic exposure within a week after the release, including breathing difficulties, chest pain, dizziness, vertigo, nausea, vomiting, itchy, watery, burning eyes, headaches, sinus pain, pressure, fatigue, congestion, asthma flare-up, loss of balance, and triggered asthma.

2140.  The November 24 and 25, 2022, discharge also entered Hamilton's residence, including dust.

2141.  The trespass by PBF Martinez interfered with Hamilton's ability to use and enjoy the residence and caused injury to Hamilton and damage to the property.

2142.  Needless to say, the trespass by PBF Martinez to Hamilton's real property was unauthorized.

2143.  Hamilton was also present at her residence for the July 2023, October 2023, and December 2023 releases.

2144.  In each instance, she was exposed to toxins from the refinery's discharges.

2145.   As a result of her exposure to the 2023 discharges from the refinery, Hamilton was physically harmed, including developing and/or worsening symptoms of asthma, difficulty breathing, eye burning, and coughing that were directly caused by the reoccurring discharges in 2023.

2146.   The 2023 discharges also entered Hamilton's residence, dust.

2147.   The trespasses by PBF Martinez interfered with Hamilton's ability to use and enjoy the residence and caused injury to Hamilton and damage to the property.

2148.   Needless to say, the trespasses by PBF Martinez to Hamilton's real property were unauthorized in each instance.

2149.   Additionally, the health effects on Hamilton from the discharges have caused her to suffer lost wages, income, and/or business opportunities.

### 34.    Mohamad Hammoudeh.

2150.   At all times relevant to this action, Plaintiff Mohamad Hammoudeh was over the age of 18 and was a resident of Martinez, California.

2151.   Plaintiff Mohamad Hammoudeh rented a residence, which was approximately 1/2 mile from the refinery.

2152.   Hammoudeh was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2153.   Among other things, recalled seeing a sticky substance and dust on the vehicle.

2154.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Hammoudeh was physically harmed.

2155.   Among other things, Hammoudeh began experiencing illness and symptoms that were directly caused by the toxic exposure, including headaches.

2156.   The November 24 and 25, 2022, discharge also entered Hammoudeh's residence, including dust.

2157.   The trespass by PBF Martinez interfered with Hammoudeh's ability to use and enjoy the residence and caused injury to Hammoudeh and damage to the property.

2158.   Needless to say, the trespass by PBF Martinez to Hammoudeh's real property was unauthorized.

2159.   Hammoudeh was also present at his residence for the July 2023, October 2023, and December 2023 releases.

2160.   In each instance, he was exposed to toxins from the refinery's discharges.

2161.   As a result of his exposure to the 2023 discharges from the refinery, Hammoudeh was physically harmed, including developing and/or worsening symptoms of coughing and difficulty of breathing that were directly caused by the reoccurring discharges in 2023.

2162.   The 2023 discharges also entered Hammoudeh's residence, including dust.

2163.   The trespasses by PBF Martinez interfered with Hammoudeh's ability to use and enjoy the residence and caused injury to Hammoudeh and damage to the property.

2164.   Needless to say, the trespasses by PBF Martinez to Hammoudeh's real property were unauthorized in each instance.

### 35.    Plaintiff Sean Harrison.

2165.   At all times relevant to this action, Plaintiff Sean Harrison was over the age of 18 and was a resident of Martinez, California.

2166.   Plaintiff Sean Harrison rented a residence, which was approximately 2 miles from the refinery.

2167.   Harrison was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2168.   Among other things, he recalls seeing dust on his vehicle.

2169.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Harrison was physically harmed.

2170.   Among other things, Harrison began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, chest pain, congestion, phlegm, and asthma flare-up.

2171.   The November 24 and 25, 2022, discharge also entered Harrison's residence, including dust.

2172.   The trespass by PBF Martinez interfered with Harrison's ability to use and enjoy the residence and caused injury to Harrison and damage to the property.

2173.   Needless to say, the trespass by PBF Martinez to Harrison's real property was unauthorized.

2174.   Harrison was also present at his residence for the July 2023, October 2023, and December 2023 releases.

2175.   In each instance, he was exposed to toxins from the refinery's discharges.

2176.   As a result of his exposure to the 2023 discharges from the refinery, Harrison was physically harmed, including developing and/or worsening symptoms of difficulty breathing, chest pain, fatigue, and coughing that were directly caused by the reoccurring discharges in 2023.

2177.   The 2023 discharges also entered Harrison's residence, including dust.

2178.   The trespasses by PBF Martinez interfered with Harrison's ability to use and enjoy the residence and caused injury to Harrison and damage to the property.

2179.   Needless to say, the trespasses by PBF Martinez to Harrison's real property were unauthorized in each instance.

### 36.    Plaintiff Lacy Henry.

2180.   At all times relevant to this action, Plaintiff Lacy Henry was over the age of 18 and was a resident of Martinez, California.

2181.   Plaintiff Lacy Henry rented a residence, which was approximately 2 miles from the refinery.

2182.   Henry was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2183.   Among other things, she recalls the smells and the white dust in the air.

2184.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Henry was physically harmed.

2185.   Among other things, Henry began experiencing illness and symptoms that were directly caused by the toxic exposure within a week after the release, including breathing

difficulties, memory issues, brain fog, dizziness, vertigo, sore throat, coughing, itchy, watery, burning eyes, headaches, fatigue, congestion, and asthma flare-ups.

2186.   The November 24 and 25, 2022, discharge also entered Henry's residence, including smells and white dust.

2187.   The trespass by PBF Martinez interfered with Henry's ability to use and enjoy the residence and caused injury to Henry and damage to the property.

2188.   Needless to say, the trespass by PBF Martinez to Henry's real property was unauthorized.

2189.   Henry was also present at her residence for the July 2023, October 2023, and December 2023 releases.

2190.   In each instance, she was exposed to toxins from the refinery's discharges.

2191.   As a result of her exposure to the 2023 discharges from the refinery, Henry was physically harmed, including developing and/or worsening symptoms of respiratory issues and headaches that were directly caused by the reoccurring discharges in 2023.

2192.   The 2023 discharges also entered Henry's residence, including dust and bad smell.

2193.   The trespasses by PBF Martinez interfered with Henry's ability to use and enjoy the residence and caused injury to Henry and damage to the property.

2194.   Needless to say, the trespasses by PBF Martinez to Henry's real property were unauthorized in each instance.

2195.   Additionally, the health effects on Henry from the discharges have caused her to suffer lost wages, income, and/or business opportunities.

### 37.    Plaintiff Kevin Hill Jr.

2196.   At all times relevant to this action, Plaintiff Kevin Hill Jr. was over the age of 18 and was a resident of Martinez, California.

2197.   Plaintiff Kevin Hill Jr. rented a residence, which was approximately 1 1/2 miles from the refinery.

2198.   Hill Jr. was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2199.   Among other things, he recalls seeing ash on his car.

2200.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Hill Jr. was physically harmed.

2201.   Among other things, Hill Jr. began experiencing illness and symptoms that were directly caused by the toxic exposure Immediately after the release, including breathing difficulties, chest pain, dizziness, vertigo, headaches, sore throat, coughing, and asthma flare-ups.

2202.   The November 24 and 25, 2022, discharge also entered Hill Jr.'s residence, including ash.

2203.   The trespass by PBF Martinez interfered with Hill Jr.'s ability to use and enjoy the residence and caused injury to Hill Jr. and damage to the property.

2204.   Needless to say, the trespass by PBF Martinez to Hill Jr.'s real property was unauthorized.

2205.   Hill Jr. was also present at his residence for the July 2023, October 2023, and December 2023 releases.

2206.   In each instance, he was exposed to toxins from the refinery's discharges.

2207.   As a result of his exposure to the 2023 discharges from the refinery, Hill Jr. was physically harmed, including developing and/or worsening symptoms of shortness of breath, wheezing, and coughing that were directly caused by the reoccurring discharges in 2023.

2208.   The 2023 discharges also entered Hill Jr.'s residence.

2209.   The trespasses by PBF Martinez interfered with Hill Jr.'s ability to use and enjoy the residence and caused injury to Hill Jr. and damage to the property.

2210.   Needless to say, the trespasses by PBF Martinez to Hill Jr.'s real property were unauthorized in each instance.

2211.   Additionally, the health effects on Hill Jr. from the discharges have caused him to suffer lost wages, income, and/or business opportunities.

### 38.   Plaintiff Marnique Ingram.

2212.   At all times relevant to this action, Plaintiff Marnique Ingram was over the age of 18 and was a resident of Martinez, California.

-203-

2213.   Plaintiff Marnique Ingram rented a residence, which was approximately 1/4 mile from the refinery.

2214.   Ingram was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2215.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Ingram was physically harmed.

2216.   Among other things, Ingram began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, chest pain, dizziness, vertigo, sore throat, coughing, nausea, vomiting, itchy, watery, burning eyes, rash, hives, headaches, sinus pain, pressure, bloody nose, congestion, difficulty sleeping, asthma flare-up, and fever.

2217.   The November 24 and 25, 2022, discharge also entered Ingram's residence.

2218.   The trespass by PBF Martinez interfered with Ingram's ability to use and enjoy the residence and caused injury to Ingram and damage to the property.

2219.   Needless to say, the trespass by PBF Martinez to Ingram's real property was unauthorized.

2220.   Ingram was also present at her residence for the July 2023, October 2023, and December 2023 releases.

2221.   In each instance, she was exposed to toxins from the refinery's discharges.

2222.   As a result of her exposure to the 2023 discharges from the refinery, Ingram was physically harmed, including developing and/or worsening symptoms of wheezing, asthma flare up, nausea, chest pain, congestion, sinus issues, and headaches that were directly caused by the reoccurring discharges in 2023.

2223.   The 2023 discharges also entered Ingram's residence.

2224.   The trespasses by PBF Martinez interfered with Ingram's ability to use and enjoy the residence and caused injury to Ingram and damage to the property.

2225.   Needless to say, the trespasses by PBF Martinez to Ingram's real property were unauthorized in each instance.

2226.   Additionally, the health effects on Ingram from the discharges have caused her to suffer lost wages, income, and/or business opportunities.

**39.    Plaintiff Jose Jacinto.**

2227.   At all times relevant to this action, Plaintiff Jose Jacinto was over the age of 18 and was a resident of Martinez, California.

2228.   Plaintiff Jacinto rented a residence, which was approximately 2 miles from the refinery.

2229.   Jacinto was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2230.   Among other things, he recalled a strange odor and seeing dust on his car.

2231.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Jacinto was physically harmed.

2232.   Among other things, Jacinto began experiencing illness and symptoms that were directly caused by the toxic exposure, including coughing, congestion, and difficulty breathing.

2233.   The November 24 and 25, 2022, discharge also entered Jacinto's residence, including dust and a strange odor.

2234.   The trespass by PBF Martinez interfered with Jacinto's ability to use and enjoy the residence and caused injury to Jacinto and damage to the property.

2235.   Needless to say the trespass by PBF Martinez to Jacinto's real property was unauthorized.

2236.   Jacinto was also present at his residence for the July 2023, October 2023, and December 2023 releases.

2237.   In each instance, he was exposed to toxins from the refinery's discharges.

2238.   As a result of his exposure to the 2023 discharges from the refinery, Jacinto was physically harmed, including developing and/or worsening symptoms of coughing, congestion, and difficulty breathing that were directly caused by the reoccurring discharges in 2023.

2239.   The 2023 discharges also entered Jacinto's residence, including a strange odor.

2240.   The trespasses by PBF Martinez interfered with Jacinto's ability to use and enjoy the residence and caused injury to Jacinto and damage to the property.

2241.   Needless to say, the trespasses by PBF Martinez to Jacinto's real property were unauthorized in each instance.

2242.   Additionally, the health effects on Jacinto from the discharges have caused him to suffer lost wages, income, and/or business opportunities.

**40.   Plaintiff Shelnika Jackson.**

2243.   At all times relevant to this action, Plaintiff Shelnika Jackson was over the age of 18 and was a resident of Martinez, California.

2244.   Plaintiff Shelnika Jackson rented a residence, which was approximately 1 mile from the refinery.

2245.   Jackson was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2246.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Jackson was physically harmed.

2247.   Among other things, Jackson began experiencing illness and symptoms that were directly caused by the toxic exposure within a few months after the release, including breathing difficulties, chest pain, memory issues, brain fog, dizziness, vertigo, itchy, watery, burning eyes, headaches, body aches, and stomach pain.

2248.   The November 24 and 25, 2022, discharge also entered Jackson's residence.

2249.   The trespass by PBF Martinez interfered with Jackson's ability to use and enjoy the residence and caused injury to Jackson and damage to the property.

2250.   Needless to say, the trespass by PBF Martinez to Jackson's real property was unauthorized.

2251.   Jackson was also present at her residence for the July 2023 and October 2023 releases.

2252.   In each instance, she was exposed to toxins from the refinery's discharges.

2253.   As a result of her exposure to the 2023 discharges from the refinery, Jackson was physically harmed, including developing and/or worsening symptoms of headaches, brain fog, coughing, and chest pain that were directly caused by the reoccurring discharges in 2023.

2254.   The 2023 discharges also entered Jackson's residence.

2255.   The trespasses by PBF Martinez interfered with Jackson's ability to use and enjoy the residence and caused injury to Jackson and damage to the property.

2256.   Needless to say, the trespasses by PBF Martinez to Jackson's real property were unauthorized in each instance.

**41.    Plaintiff Amie James.**

2257.   At all times relevant to this action, Plaintiff Amie James was over the age of 18 and was a resident of Martinez, California.

2258.   Plaintiff Amie James rented a residence, which was approximately 1 mile from the refinery.

2259.   James was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2260.   Among other things, she recalls dust on her vehicle.

2261.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, James was physically harmed.

2262.   Among other things, James began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, sore throat, coughing, itchy, watery, burning eyes, headaches, sinus pain, pressure, congestion, phlegm, and asthma flare-up.

2263.   The November 24 and 25, 2022, discharge also entered James' residence, including dust.

2264.   The trespass by PBF Martinez interfered with James' ability to use and enjoy the residence and caused injury to James and damage to the property.

2265.   Needless to say, the trespass by PBF Martinez to James' real property was unauthorized.

2266.  James was also present at her residence for the July 2023, October 2023, and December 2023 releases.

2267.  In each instance, she was exposed to toxins from the refinery's discharges.

2268.  As a result of her exposure to the 2023 discharges from the refinery, James was physically harmed, including developing and/or worsening symptoms of breathing problems, coughing, and eye irritation that were directly caused by the reoccurring discharges in 2023.

2269.  The 2023 discharges also entered James' residence.

2270.  The trespasses by PBF Martinez interfered with James' ability to use and enjoy the residence and caused injury to James and damage to the property.

2271.  Needless to say, the trespasses by PBF Martinez to James' real property were unauthorized in each instance.

### 42.  Plaintiff Carrye Joe.

2272.  At all times relevant to this action, Plaintiff Carrye Joe was over the age of 18 and was a resident of Martinez, California.

2273.  Plaintiff Carrye Joe rented a residence, which was approximately 2 miles from the refinery.

2274.  Joe was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2275.  Among other things, she recalls the dust in the air.

2276.  As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Joe was physically harmed.

2277.  Among other things, Joe began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, chest pain, sore throat, coughing, itchy, watery, burning eyes, sinus pain, pressure, congestion, and asthma flare-up.

2278.  The November 24 and 25, 2022, discharge also entered Joe's residence, including dust.

2279.  The trespass by PBF Martinez interfered with Joe's ability to use and enjoy the residence and caused injury to Joe and damage to the property.

2280.  Needless to say, the trespass by PBF Martinez to Joe's real property was unauthorized.

2281.  Joe was also present at her residence for the July 2023, October 2023, and December 2023 releases.

2282.  In each instance, she was exposed to toxins from the refinery's discharges.

2283.  As a result of her exposure to the 2023 discharges from the refinery, Joe was physically harmed, including developing and/or worsening symptoms of difficulty breathing and chest pains that were directly caused by the reoccurring discharges in 2023.

2284.  The 2023 discharges also entered Joe's residence, including the dust and smell.

2285.  The trespasses by PBF Martinez interfered with Joe's ability to use and enjoy the residence and caused injury to Joe and damage to the property.

2286.  Needless to say, the trespasses by PBF Martinez to Joe's real property were unauthorized in each instance.

2287.  Additionally, the health effects on Joe from the discharges have caused her to suffer lost wages, income, and/or business opportunities.

### 43.    Plaintiff ShaRhonda Jackson.

2288.  At all times relevant to this action, Plaintiff ShaRhonda Johnson was over the age of 18 and was a resident of Martinez, California.

2289.  Plaintiff ShaRhonda Johnson rented a residence, which was approximately 1/4 mile from the refinery.

2290.  Johnson was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2291.  As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Johnson was physically harmed.

2292.  Among other things, Johnson began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties,

dizziness, vertigo, nausea, vomiting, itchy, watery, burning eyes, headaches, sinus pain, pressure, congestion, and difficulty sleeping.

2293.   The November 24 and 25, 2022, discharge also entered Johnson's residence.

2294.   The trespass by PBF Martinez interfered with Johnson's ability to use and enjoy the residence and caused injury to Johnson and damage to the property.

2295.   Needless to say, the trespass by PBF Martinez to Johnson's real property was unauthorized.

2296.   Johnson was also present at her residence for the July 2023, October 2023, and December 2023 releases.

2297.   In each instance, she was exposed to toxins from the refinery's discharges.

2298.   As a result of her exposure to the 2023 discharges from the refinery, Johnson was physically harmed, including developing and/or worsening symptoms of coughing, itching throat, itching eyes, headaches, and congestion that were directly caused by the reoccurring discharges in 2023.

2299.   The 2023 discharges also entered Johnson's residence.

2300.   The trespasses by PBF Martinez interfered with Johnson's ability to use and enjoy the residence and caused injury to Johnson and damage to the property.

2301.   Needless to say, the trespasses by PBF Martinez to Johnson's real property was unauthorized in each instance.

**44.     Plaintiff Yohana Kahassai.**

2302.   At all times relevant to this action, Plaintiff Yohana Kahassai was over the age of 18 and was a resident of Martinez, California.

2303.   Plaintiff Yohana Kahassai rented a residence, which was approximately 1/4 mile from the refinery.

2304.   Kahassai was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2305.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Kahassai was physically harmed.

-210-

2306.   Among other things, Kahassai began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, chest pain, itchy, watery, and burning eyes.

2307.   The November 24 and 25, 2022, discharge also entered Kahassai's residence.

2308.   The trespass by PBF Martinez interfered with Kahassai's ability to use and enjoy the residence and caused injury to Kahassai and damage to the property.

2309.   Needless to say, the trespass by PBF Martinez to Kahassai's real property was unauthorized.

2310.   Kahassai was also present at his residence for the July 2023, October 2023, and December 2023 releases.

2311.   In each instance, he was exposed to toxins from the refinery's discharges.

2312.   As a result of his exposure to the 2023 discharges from the refinery, Kahassai was physically harmed, including developing and/or worsening symptoms of difficulty breathing, wheezing, and eye irritation that were directly caused by the reoccurring discharges in 2023.

2313.   The 2023 discharges also entered Kahassai's residence.

2314.   The trespasses by PBF Martinez interfered with Kahassai's ability to use and enjoy the residence and caused injury to Kahassai and damage to the property.

2315.   Needless to say, the trespasses by PBF Martinez to Kahassai's real property were unauthorized in each instance.

2316.   Additionally, the health effects on Kahassai from the discharges have caused him to suffer lost wages, income, and/or business opportunities.

**45.    Plaintiff Markeasha Keeton.**

2317.   At all times relevant to this action, Plaintiff Markeasha Keeton was over the age of 18 and was a resident of Martinez, California.

2318.   Plaintiff Markeasha Keeton rented a residence, which was approximately 1 1/2 miles from the refinery.

2319.   Keeton was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2320.   Among other things, she recalls seeing a cloud of smoke followed by debris and ash on her car.

2321.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Keeton was physically harmed.

2322.   Among other things, Keeton began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, chest pain, dizziness, vertigo, sore throat, coughing, itchy, watery, burning eyes, headaches, sinus pain, pressure, fatigue, congestion, and asthma flare-up.

2323.   The November 24 and 25, 2022, discharge also entered Keeton's residence, including smoke and dust.

2324.   The trespass by PBF Martinez interfered with Keeton's ability to use and enjoy the residence and caused injury to Keeton and damage to the property.

2325.   Needless to say, the trespass by PBF Martinez to Keeton's real property was unauthorized.

2326.   Keeton was also present at her residence for the July 2023, October 2023, and December 2023 releases.

2327.   In each instance, she was exposed to toxins from the refinery's discharges.

2328.   As a result of her exposure to the 2023 discharges from the refinery, Keeton was physically harmed, including developing and/or worsening symptoms of eye irritation, breathing issues, and chest pain that were directly caused by the reoccurring discharges in 2023.

2329.   The 2023 discharges also entered Keeton's residence, including smoke and dust.

2330.   The trespasses by PBF Martinez interfered with Keeton's ability to use and enjoy the residence and caused injury to Keeton and damage to the property.

2331.   Needless to say, the trespasses by PBF Martinez to Keeton's real property were unauthorized in each instance.

2332.   Additionally, the health effects on Keeton from the discharges have caused her to suffer lost wages, income, and/or business opportunities.

**46.    Plaintiff Mary Renee Keeton.**

2333.   At all times relevant to this action, Plaintiff Mary Renee Keeton was over the age of 18 and was a resident of Martinez, California.

2334.   Plaintiff Mary Renee Keeton rented a residence, which was approximately 1 1/2 miles from the refinery.

2335.   Keeton was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2336.   Among other things, she recalled there being dust all over and a bad smell in the air.

2337.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Keeton was physically harmed.

2338.   Among other things, Keeton began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, dizziness, vertigo, sore throat, coughing, itchy, watery, burning eyes, headaches, sinus pain, and pressure.

2339.   The November 24 and 25, 2022, discharge also entered Keeton's residence, including smoke and dust.

2340.   The trespass by PBF Martinez interfered with Keeton's ability to use and enjoy the residence and caused injury to Keeton and damage to the property.

2341.   Needless to say, the trespass by PBF Martinez to Keeton's real property was unauthorized.

2342.   Keeton was also present at her residence for the July 2023, October 2023, and December 2023 releases.

2343.   In each instance, she was exposed to toxins from the refinery's discharges.

2344.   As a result of her exposure to the 2023 discharges from the refinery, Keeton was physically harmed, including developing and/or worsening symptoms of coughing, throat irritability, and allergies that were directly caused by the reoccurring discharges in 2023.

2345.   The 2023 discharges also entered Keeton's residence, including smoke and dust.

2346.   The trespasses by PBF Martinez interfered with Keeton's ability to use and enjoy the residence and caused injury to Keeton and damage to the property.

2347.   Needless to say, the trespasses by PBF Martinez to Keeton's real property were unauthorized in each instance.

### 47.   Plaintiff Leah Keyes.

2348.   At all times relevant to this action, Plaintiff Leah Keyes was over the age of 18 and was a resident of Martinez, California.

2349.   Plaintiff Leah Keyes rented a residence, which was approximately 1/2 mile from the refinery.

2350.   Keyes was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2351.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Keyes was physically harmed.

2352.   Among other things, Keyes began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, chest pain, sore throat, coughing, nausea, vomiting, itchy, watery, burning eyes, and headaches.

2353.   The November 24 and 25, 2022, discharge also entered Keyes's residence.

2354.   The trespass by PBF Martinez interfered with Keyes's ability to use and enjoy the residence and caused injury to Keyes and damage to the property.

2355.   Needless to say, the trespass by PBF Martinez to Keyes's real property was unauthorized.

2356.   Keyes was also present at her residence for the July 2023, October 2023, and December 2023 releases.

2357.   In each instance, she was exposed to toxins from the refinery's discharges.

2358.   As a result of her exposure to the 2023 discharges from the refinery, Keyes was physically harmed, including developing and/or worsening symptoms of stomach pain, chest pain, headaches, difficulty breathing, and headaches that were directly caused by the reoccurring discharges in 2023.

2359.   The 2023 discharges also entered Keyes's residence.

2360.   The trespasses by PBF Martinez interfered with Keyes's ability to use and enjoy the residence and caused injury to Keyes and damage to the property.

2361.   Needless to say, the trespasses by PBF Martinez to Keyes's real property was unauthorized in each instance.

2362.   Additionally, the health effects on Keyes from the discharges have caused her to suffer lost wages, income, and/or business opportunities.

**48.    Plaintiff Dariusz Kniecik.**

2363.   At all times relevant to this action, Plaintiff Dariusz Kniecik was over the age of 18 and was a resident of Martinez, California.

2364.   Plaintiff Dariusz Kniecik rented a residence, which was approximately 1/2 mile from the refinery.

2365.   Kniecik was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2366.   Among other things, he recalls it was smoggy and that there was dust on the cars.

2367.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Kniecik was physically harmed.

2368.   Among other things, Kniecik began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, chest pain, dizziness, vertigo, sore throat, coughing, nausea, and vomiting.

2369.   The November 24 and 25, 2022, discharge also entered Kniecik's residence, including the dust.

2370.   The trespass by PBF Martinez interfered with Kniecik's ability to use and enjoy the residence and caused injury to Kniecik and damage to the property.

2371.   Needless to say, the trespass by PBF Martinez to Kniecik's real property was unauthorized.

2372.   Kniecik was also present at his residence for the July 2023, October 2023, and December 2023 releases.

-215-

2373.   In each instance, he was exposed to toxins from the refinery's discharges.

2374.   As a result of his exposure to the 2023 discharges from the refinery, Kniecik was physically harmed, including developing and/or worsening symptoms of difficulty breathing, chest pain, headaches, dizziness, eye irritation, congestion, and nausea that were directly caused by the reoccurring discharges in 2023.

2375.   The 2023 discharges also entered Kniecik's residence.

2376.   The trespasses by PBF Martinez interfered with Kniecik's ability to use and enjoy the residence and caused injury to Kniecik and damage to the property.

2377.   Needless to say, the trespasses by PBF Martinez to Kniecik's real property was unauthorized in each instance.

**49.    Plaintiff James Lancaster.**

2378.   At all times relevant to this action, Plaintiff James Lancaster was over the age of 18 and was a resident of Martinez, California.

2379.   Plaintiff James Lancaster rented a residence, which was approximately 1 1/2 miles from the refinery.

2380.   Lancaster was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2381.   Among other things, he recalled a strange smell and dust outside.

2382.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Lancaster was physically harmed.

2383.   Among other things, Lancaster began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, nausea, vomiting, rash, hives, headaches, fatigue, congestion, body aches, and phlegm.

2384.   The November 24 and 25, 2022, discharge also entered Lancaster's residence, including smells and dust.

2385.   The trespass by PBF Martinez interfered with Lancaster's ability to use and enjoy the residence and caused injury to Lancaster and damage to the property.

2386. Needless to say, the trespass by PBF Martinez to Lancaster's real property was unauthorized.

2387. Lancaster was also present at his residence for July 2023, October 2023, and December 2023 releases.

2388. In each instance, he was exposed to toxins from the refinery's discharges.

2389. As a result of his exposure to the 2023 discharges from the refinery, Lancaster was physically harmed, including developing and/or worsening symptoms of respiratory issues, brain fog, coughing, nausea, eye irritation, congestion, and fatigue that were directly caused by the reoccurring discharges in 2023.

2390. The 2023 discharges also entered Lancaster's residence.

2391. The trespasses by PBF Martinez interfered with Lancaster's ability to use and enjoy the residence and caused injury to Lancaster and damage to the property.

2392. Needless to say, the trespasses by PBF Martinez to Lancaster's real property were unauthorized in each instance.

### 50.    Plaintiff Christopher Lopez.

2393. At all times relevant to this action, Plaintiff Christopher Lopez was over the age of 18 and was a resident of Martinez, California.

2394. Plaintiff Christopher Lopez rented a residence, which was approximately 2 miles from the refinery.

2395. Lopez was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2396. Among other things, he recalled strong smells in the air.

2397. As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Lopez was physically harmed.

2398. Among other things, Lopez began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, chest pain, memory issues, brain fog, dizziness, vertigo, sore throat, coughing, itchy, watery,

-217-

burning eyes, rash, hives, headaches, sinus pain, pressure, fatigue, congestion, difficulty sleeping, body aches, phlegm, stomach pain, and dehydration.

2399.   The November 24 and 25, 2022, discharge also entered Lopez's residence, including the strong smell.

2400.   The trespass by PBF Martinez interfered with Lopez's ability to use and enjoy the residence and caused injury to Lopez and damage to the property.

2401.   Needless to say, the trespass by PBF Martinez to Lopez's real property was unauthorized.

2402.   Lopez was also present at his residence for the July 2023, October 2023, and December 2023 releases.

2403.   In each instance, he was exposed to toxins from the refinery's discharges.

2404.   As a result of his exposure to the 2023 discharges from the refinery, Lopez was physically harmed, including developing and/or worsening symptoms of headaches and sinus issues that were directly caused by the reoccurring discharges in 2023.

2405.   The 2023 discharges also entered Lopez's residence, including strong smells.

2406.   The trespasses by PBF Martinez interfered with Lopez's ability to use and enjoy the residence and caused injury to Lopez and damage to the property.

2407.   Needless to say, the trespasses by PBF Martinez to Lopez's real property were unauthorized in each instance.

2408.   Additionally, the health effects on Lopez from the discharges have caused him to suffer lost wages, income, and/or business opportunities.

### 51.    Plaintiff Kimberly Lopez.

2409.   At all times relevant to this action, Plaintiff Kimberly Lopez was over the age of 18 and was a resident of Martinez, California.

2410.   Plaintiff Kimberly Lopez rented a residence, which was approximately 2 miles from the refinery.

2411.   Lopez was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2412.    As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Lopez was physically harmed.

2413.    Among other things, Lopez began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, memory issues, brain fog, sore throat, coughing, itchy, watery, burning eyes, headaches, sinus pain, pressure, fatigue, difficulty sleeping, heartburn, dehydration, and liver count elevated.

2414.    The November 24 and 25, 2022, discharge also entered Lopez's residence.

2415.    The trespass by PBF Martinez interfered with Lopez's ability to use and enjoy the residence and caused injury to Lopez and damage to the property.

2416.    Needless to say, the trespass by PBF Martinez to Lopez's real property was unauthorized.

2417.    Lopez was also present at her residence for the July 2023, October 2023, and December 2023 releases.

2418.    In each instance, she was exposed to toxins from the refinery's discharges.

2419.    As a result of her exposure to the 2023 discharges from the refinery, Lopez was physically harmed, including developing and/or worsening symptoms of respiratory issues, headaches and difficulty sleeping that were directly caused by the reoccurring discharges in 2023.

2420.    The 2023 discharges also entered Lopez's residence.

2421.    The trespasses by PBF Martinez interfered with Lopez's ability to use and enjoy the residence and caused injury to Lopez and damage to the property.

2422.    Needless to say, the trespasses by PBF Martinez to Lopez's real property were unauthorized in each instance.

2423.    Additionally, the health effects on Lopez from the discharges have caused her to suffer lost wages, income, and/or business opportunities.

**52.    Plaintiff Roberto Lopez.**

2424.    At all times relevant to this action, Plaintiff Roberto Lopez was over the age of 18 and was a resident of Martinez, California.

2425.   Plaintiff Roberto Lopez rented a residence, which was approximately 2 miles from the refinery.

2426.   Lopez was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2427.   Among other things, he recalled a bad smell and cars were oily.

2428.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Lopez was physically harmed.

2429.   Among other things, Lopez began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, sore throat, coughing, nausea, vomiting, itchy, watery, burning eyes, sinus pain, pressure, fatigue, bloody nose, congestion, difficulty sleeping, earaches, ear infections, phlegm, heartburn, dehydration, and loss of balance.

2430.   The November 24 and 25, 2022, discharge also entered Lopez' residence, including a bad smell.

2431.   The trespass by PBF Martinez interfered with Lopez' ability to use and enjoy the residence and caused injury to Lopez and damage to the property.

2432.   Needless to say, the trespass by PBF Martinez to Lopez' real property was unauthorized.

2433.   Lopez was also present at his residence for the July 2023, October 2023, and December 2023 releases.

2434.   In each instance, he was exposed to toxins from the refinery's discharges.

2435.   As a result of his exposure to the 2023 discharges from the refinery, Lopez was physically harmed, including developing and/or worsening symptoms of breathing difficulties, memory loss, brain fog, dizziness, vertigo, sore throat, coughing, itchy, water and burning eyes, headaches, sinus pain and pressure, fatigue, congestion, and body aches that were directly caused by the reoccurring discharges in 2023.

2436.   The 2023 discharges also entered Lopez' residence, including a bad smell.

2437.   The trespasses by PBF Martinez interfered with Lopez' ability to use and enjoy the residence and caused injury to Lopez and damage to the property.

2438.   Needless to say, the trespasses by PBF Martinez to Lopez' real property were unauthorized in each instance.

### 53.   Plaintiff Manuel Maldonado-Hernandez.

2439.   At all times relevant to this action, Plaintiff Manuel Maldonado Hernandez was over the age of 18 and was a resident of Martinez, California.

2440.   Plaintiff Manuel Maldonado Hernandez rented a residence, which was approximately 2 1/2 mile from the refinery.

2441.   Maldonado Hernandez was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2442.   Among other things, he recalls smelling a bad chemical smell, seeing an oily substance, and smoke in the air.

2443.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Maldonado Hernandez was physically harmed.

2444.   Among other things, Maldonado Hernandez began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, chest pain, dizziness, vertigo, sore throat, coughing, nausea, vomiting, itchy, watery, burning eyes, rash, hives, headaches, sinus pain, pressure, fatigue, congestion, difficulty sleeping, body aches, ear aches, ear infections, phlegm, stomach pain, asthma flare-up, heartburn, dehydration, diarrhea, and loss of balance.

2445.   The November 24 and 25, 2022, discharge also entered Maldonado Hernandez's residence, including dust and a chemical like smell.

2446.   The trespass by PBF Martinez interfered with Maldonado Hernandez's ability to use and enjoy the residence and caused injury to Maldonado Hernandez and damage to the property.

2447.   Needless to say, the trespass by PBF Martinez to Maldonado Hernandez's real property was unauthorized.

2448.   Maldonado Hernandez was also present at his residence for the July 2023, October 2023, and December 2023 releases.

2449.   In each instance, he was exposed to toxins from the refinery's discharges.

2450.   As a result of his exposure to the 2023 discharges from the refinery, Maldonado Hernandez was physically harmed, including developing and/or worsening symptoms of allergies and eye irritation that were directly caused by the reoccurring discharges in 2023.

2451.   The 2023 discharges also entered Maldonado Hernandez's residence, including dust and a chemical smell.

2452.   The trespasses by PBF Martinez interfered with Maldonado Hernandez's ability to use and enjoy the residence and caused injury to Maldonado Hernandez and damage to the property.

2453.   Needless to say, the trespasses by PBF Martinez to Maldonado Hernandez's real property were unauthorized in each instance.

2454.   Additionally, the health effects on Maldonado Hernandez from the discharges have caused him to suffer lost wages, income, and/or business opportunities.

### 54.    Plaintiff Mohmod Mangal.

2455.   At all times relevant to this action, Plaintiff Mohmod Mangal was over the age of 18 and was a resident of Martinez, California.

2456.   Plaintiff Mohmod Mangal rented a residence, which was approximately 3 3/4 miles from the refinery.

2457.   Mangal was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2458.   Among other things, he recalls abnormal smells and dark clouds.

2459.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Mangal was physically harmed.

2460.   Among other things, Mangal began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, memory issues, brain fog, dizziness, vertigo, sore throat, and coughing.

2461.  The November 24 and 25, 2022, discharge also entered Mangal's residence, including abnormal smells.

2462.  The trespass by PBF Martinez interfered with Mangal's ability to use and enjoy the residence and caused injury to Mangal and damage to the property.

2463.  Needless to say, the trespass by PBF Martinez to Mangal's real property was unauthorized.

2464.  Mangal was also present at his residence for the July 2023, October 2023, and December 2023 releases.

2465.  In each instance, he was exposed to toxins from the refinery's discharges.

2466.  As a result of his exposure to the 2023 discharges from the refinery, Mangal was physically harmed, including developing and/or worsening symptoms of difficulty breathing and shortness of breath that were directly caused by the reoccurring discharges in 2023.

2467.  The 2023 discharges also entered abnormal smells residence, including abnormal smells.

2468.  The trespasses by PBF Martinez interfered with abnormal smells ability to use and enjoy the residence and caused injury to Mangal and damage to the property.

2469.  Needless to say, the trespasses by PBF Martinez to Mangal's real property were unauthorized in each instance.

2470.  Additionally, the health effects on Mangal from the discharges have caused him to suffer lost wages, income, and/or business opportunities.

### 55.    Plaintiff Elias Martinez.

2471.  At all times relevant to this action, Plaintiff Elias Martinez was over the age of 18 and was a resident of Martinez, California.

2472.  Plaintiff Elias Martinez rented a residence, which was approximately 1 mile from the refinery.

2473.  Martinez was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2474.  Among other things, he recalls smelling chemicals and ash on his vehicles.

2475.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Martinez was physically harmed.

2476.   Among other things, Martinez began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, dizziness, vertigo, sore throat, coughing, itchy, watery, burning eyes, headaches, sinus pain, pressure, bloody nose, congestion, phlegm, stomach pain, asthma flare-up, liver count elevated, and nasal infections.

2477.   The November 24 and 25, 2022, discharge also entered Martinez's residence, including chemical smells and ash.

2478.   The trespass by PBF Martinez interfered with Martinez's ability to use and enjoy the residence and caused injury to Martinez and damage to the property.

2479.   Needless to say, the trespass by PBF Martinez to Martinez's real property was unauthorized.

2480.   Martinez was also present at his residence for the July 2023, October 2023, and December 2023 releases.

2481.   In each instance, he was exposed to toxins from the refinery's discharges.

2482.   As a result of his exposure to the 2023 discharges from the refinery, Martinez was physically harmed, including developing and/or worsening symptoms of shortness of breath, migraines, and eye irritation that were directly caused by the reoccurring discharges in 2023.

2483.   The 2023 discharges also entered Martinez's residence, including chemical smells and ash.

2484.   The trespasses by PBF Martinez interfered with Martinez's ability to use and enjoy the residence and caused injury to Martinez and damage to the property.

2485.   Needless to say, the trespasses by PBF Martinez to Martinez's real property were unauthorized in each instance.

2486.   Additionally, the health effects on Martinez from the discharges have caused him to suffer lost wages, income, and/or business opportunities.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

### 56. Plaintiff Jose Martinez.

2487. At all times relevant to this action, Plaintiff Jose Martinez was over the age of 18 and was a resident of Martinez, California.

2488. Plaintiff Jose Martinez rented a residence, which was approximately 1 1/2 miles from the refinery.

2489. Martinez was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2490. Among other things, he recalls white dust on the ground and trees. His peach tree no longer grows.

2491. As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Martinez was physically harmed.

2492. Among other things, Martinez began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including dizziness, vertigo, sore throat, coughing, itchy, watery, burning eyes, headaches, congestion, phlegm, stomach pain, and diarrhea.

2493. The November 24 and 25, 2022, discharge also entered Martinez's residence, including white dust.

2494. The trespass by PBF Martinez interfered with Martinez's ability to use and enjoy the residence and caused injury to Martinez and damage to the property.

2495. Needless to say, the trespass by PBF Martinez to Martinez's real property was unauthorized.

2496. Martinez was also present at his residence for the July 2023, October 2023, and December 2023 releases.

2497. In each instance, he was exposed to toxins from the refinery's discharges.

2498. As a result of his exposure to the 2023 discharges from the refinery, Martinez was physically harmed, including developing and/or worsening symptoms of dizziness, headaches, difficulty breathing, sinus pressure, stomach pain, sore throat, coughing, and eye irritation that were directly caused by the reoccurring discharges in 2023.

-225-

2499.   The 2023 discharges also entered Martinez's residence.

2500.   The trespasses by PBF Martinez interfered with Martinez's ability to use and enjoy the residence and caused injury to Martinez and damage to the property.

2501.   Needless to say, the trespasses by PBF Martinez to Martinez's real property was unauthorized in each instance.

2502.   Additionally, the health effects on Martinez from the discharges have caused him to suffer lost wages, income, and/or business opportunities.

### 57.    Plaintiff James Matthews.

2503.   At all times relevant to this action, Plaintiff James Matthews was over the age of 18 and was a resident of Martinez, California.

2504.   Plaintiff James Matthews rented a residence, which was approximately 1 mile from the refinery.

2505.   Matthews was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2506.   Among other things, he recalls seeing smoke and dust on vehicles.

2507.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Matthews was physically harmed.

2508.   Among other things, Matthews began experiencing illness and symptoms that were directly caused by the toxic exposure within a few months after the release, including breathing difficulties, chest pain, memory issues, brain fog, sore throat, coughing, rash, hives, headaches, sinus pain, pressure, fatigue, congestion, phlegm, and dehydration.

2509.   The November 24 and 25, 2022, discharge also entered Matthews' residence.

2510.   The trespass by PBF Martinez interfered with Matthews' ability to use and enjoy the residence and caused injury to Matthews and damage to the property.

2511.   Needless to say, the trespass by PBF Martinez to Matthews' real property was unauthorized.

2512.   Matthews was also present at his residence for the July 2023, October 2023, and December 2023 releases.

2513.   In each instance, he was exposed to toxins from the refinery's discharges.

2514.   As a result of his exposure to the 2023 discharges from the refinery, Matthews was physically harmed, including developing and/or worsening symptoms of trouble breathing, sore throat, and dehydrated that were directly caused by the reoccurring discharges in 2023.

2515.   The 2023 discharges also entered Matthews' residence, including dust.

2516.   The trespasses by PBF Martinez interfered with Matthews' ability to use and enjoy the residence and caused injury to Matthews and damage to the property.

2517.   Needless to say, the trespasses by PBF Martinez to Matthews' real property were unauthorized in each instance.

2518.   Additionally, the health effects on Matthews from the discharges have caused him to suffer lost wages, income, and/or business opportunities.

**58.   Plaintiff James Maxwell.**

2519.   At all times relevant to this action, Plaintiff James Maxwell was over the age of 18 and was a resident of Martinez, California.

2520.   Plaintiff James Maxwell rented a residence, which was approximately 1/4 mile from the refinery.

2521.   Maxwell was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2522.   Among other things, he recalls a siren, a smell, and dust on cars.

2523.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Maxwell was physically harmed.

2524.   Among other things, Maxwell began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, chest pain, memory issues, brain fog, dizziness, vertigo, sore throat, coughing, nausea, vomiting, itchy, watery, burning eyes, rash, hives, headaches, congestion, difficulty sleeping, body aches, phlegm, stomach pain, asthma flare-up, heartburn, dehydration, fever, and diarrhea.

2525.   The November 24 and 25, 2022, discharge also entered Maxwell's residence, including smell and dust.

2526.   The trespass by PBF Martinez interfered with Maxwell's ability to use and enjoy the residence and caused injury to Maxwell and damage to the property.

2527.   Needless to say, the trespass by PBF Martinez to Maxwell's real property was unauthorized.

2528.   Maxwell was also present at his residence for the July 2023, October 2023, and December 2023 releases.

2529.   In each instance, he was exposed to toxins from the refinery's discharges.

2530.   As a result of his exposure to the 2023 discharges from the refinery, Maxwell was physically harmed, including developing and/or worsening symptoms of congestion, coughing, difficulty breathing, headaches, and chest pain that were directly caused by the reoccurring discharges in 2023.

2531.   The 2023 discharges also entered Maxwell's residence, including smell and dust.

2532.   The trespasses by PBF Martinez interfered with Maxwell's ability to use and enjoy the residence and caused injury to Maxwell and damage to the property.

2533.   Needless to say, the trespasses by PBF Martinez to Maxwell's real property were unauthorized in each instance.

2534.   Additionally, the health effects on Maxwell from the discharges have caused him to suffer lost wages, income, and/or business opportunities.

**59.    Plaintiff Richard McDonald, Jr.**

2535.   At all times relevant to this action, Plaintiff Richard McDonald, Jr. was over the age of 18 and was a resident of Martinez, California.

2536.   Plaintiff Richard McDonald, Jr. rented a residence, which was approximately 1 mile from the refinery.

2537.   McDonald was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2538.   Among other things, he recalled seeing a torch-like flame, smoke in the air, and dust.

2539.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, McDonald was physically harmed.

-228-

2540.  Among other things, McDonald began experiencing illness and symptoms that were directly caused by the toxic exposure within a few months after the release, including memory issues, brain fog, dizziness, vertigo, nausea, vomiting, and headaches.

2541.  The November 24 and 25, 2022, discharge also entered McDonalds' residence, including dust.

2542.  The trespass by PBF Martinez interfered with McDonalds' ability to use and enjoy the residence and caused injury to McDonald and damage to the property.

2543.  Needless to say, the trespass by PBF Martinez to McDonalds' real property was unauthorized.

2544.  McDonald was also present at his residence for the July 2023, October 2023, and December 2023 releases.

2545.  In each instance, he was exposed to toxins from the refinery's discharges.

2546.  As a result of his exposure to the 2023 discharges from the refinery, McDonald was physically harmed, including developing and/or worsening symptoms congestion, respiratory issues, difficulty sleeping, itchy throat, headaches, and nose bleeds that were directly caused by the reoccurring discharges in 2023.

2547.  The 2023 discharges also entered McDonalds' residence dust.

2548.  The trespasses by PBF Martinez interfered with McDonalds' ability to use and enjoy the residence and caused injury to McDonald and damage to the property.

2549.  Needless to say, the trespasses by PBF Martinez to McDonalds' real property were unauthorized in each instance.

2550.  Additionally, the health effects on McDonald from the discharges have caused him to suffer lost wages, income, and/or business opportunities.

**60.    Plaintiff Monica Moore.**

2551.  At all times relevant to this action, Plaintiff Monica Moore was over the age of 18 and was a resident of Martinez, California.

2552.  Plaintiff Monica Moore rented a residence, which was approximately 2 miles from the refinery.

-229-

2553.  Moore was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2554.  Among other things, she recalls seeing dust and smelling smoke in the air.

2555.  As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Moore was physically harmed.

2556.  Among other things, Moore began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, dizziness, vertigo, sore throat, coughing, itchy, watery, burning eyes, and headaches.

2557.  The November 24 and 25, 2022, discharge also entered Moore's residence, including dust and smoke.

2558.  The trespass by PBF Martinez interfered with Moore's ability to use and enjoy the residence and caused injury to Moore and damage to the property.

2559.  Needless to say, the trespass by PBF Martinez to Moore's real property was unauthorized.

2560.  Moore was also present at her residence for the July 2023, October 2023, and December 2023 releases.

2561.  In each instance, she was exposed to toxins from the refinery's discharges.

2562.  As a result of her exposure to the 2023 discharges from the refinery, Moore was physically harmed, including developing and/or worsening symptoms of burning eyes, difficulty breathing, nausea, dizziness, congestion and phlegm that were directly caused by the reoccurring discharges in 2023.

2563.  The 2023 discharges also entered Moore's residence, including dust and smoke.

2564.  The trespasses by PBF Martinez interfered with Moore's ability to use and enjoy the residence and caused injury to Moore and damage to the property.

2565.  Needless to say, the trespasses by PBF Martinez to Moore's real property were unauthorized in each instance.

### 61.    Plaintiff Luciana Morris.

2566.    At all times relevant to this action, Plaintiff Luciana Morris was over the age of 18 and was a resident of Martinez, California.

2567.    Plaintiff Luciana Morris rented a residence, which was approximately 2 miles from the refinery.

2568.    Morris was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2569.    Among other things, she recalls the smell.

2570.    As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Morris was physically harmed.

2571.    Among other things, Morris began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, memory issues, brain fog, sore throat, coughing, itchy, watery, burning eyes, sinus pain and pressure.

2572.    The November 24 and 25, 2022, discharge also entered Morris's residence, including smell.

2573.    The trespass by PBF Martinez interfered with Morris's ability to use and enjoy the residence and caused injury to Morris and damage to the property.

2574.    Needless to say, the trespass by PBF Martinez to Morris's real property was unauthorized.

2575.    Morris was also present at her residence for the July 2023, October 2023, and December 2023 releases.

2576.    In each instance, she was exposed to toxins from the refinery's discharges.

2577.    As a result of her exposure to the 2023 discharges from the refinery, Morris was physically harmed, including developing and/or worsening symptoms of eye irritation, coughing, chest pain, and difficulty breathing that were directly caused by the reoccurring discharges in 2023.

2578.    The 2023 discharges also entered Morris's residence, including ash and smell.

2579.   The trespasses by PBF Martinez interfered with Morris's ability to use and enjoy the residence and caused injury to Morris and damage to the property.

2580.   Needless to say, the trespasses by PBF Martinez to Morris's real property were unauthorized in each instance.

2581.   Additionally, the health effects on Morris from the discharges have caused her to suffer lost wages, income, and/or business opportunities.

### 62.    Plaintiff Andree Nattkemper

2582.   At all times relevant to this action, Plaintiff Andree Nattkemper was over the age of 18 and was a resident of Martinez, California.

2583.   Plaintiff Andree Nattkemper rented a residence, which was approximately 1 mile from the refinery.

2584.   Nattkemper was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2585.   Among other things, she recalls dust particles were all over her yard and car.

2586.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Nattkemper was physically harmed.

2587.   Among other things, Nattkemper began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, memory issues, brain fog, dizziness, vertigo, nausea, vomiting, headaches, sinus pain, pressure, fatigue, bloody nose, congestion, body aches, phlegm, heartburn, and loss of balance.

2588.   The November 24 and 25, 2022, discharge also entered Nattkemper's residence, including dust particles.

2589.   The trespass by PBF Martinez interfered with Nattkemper's ability to use and enjoy the residence and caused injury to Nattkemper and damage to the property.

2590.   Needless to say, the trespass by PBF Martinez to Nattkemper's real property was unauthorized.

2591.   Nattkemper was also present at her residence for the July 2023, October 2023, and December 2023 releases.

2592.   In each instance, she was exposed to toxins from the refinery's discharges.

2593.   As a result of her exposure to the 2023 discharges from the refinery, Nattkemper was physically harmed, including developing and/or worsening symptoms of difficulty breathing, chest pain, sinus pressure, and nose bleeds that were directly caused by the reoccurring discharges in 2023.

2594.   The 2023 discharges also entered Nattkemper's residence.

2595.   The trespasses by PBF Martinez interfered with Nattkemper's ability to use and enjoy the residence and caused injury to Nattkemper and damage to the property.

2596.   Needless to say, the trespasses by PBF Martinez to Nattkemper's real property were unauthorized in each instance.

### 63.   Plaintiff Anthony Neal.

2597.   At all times relevant to this action, Plaintiff Anthony Neal was over the age of 18 and was a resident of Martinez, California.

2598.   Plaintiff Anthony Neal rented a residence, which was approximately 1/4 mile from the refinery.

2599.   Neal was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2600.   Among other things, he recalls seeing dust on plants and cars.

2601.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Neal was physically harmed.

2602.   Among other things, Neal began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, chest pain, memory issues brain fog, dizziness vertigo, sore throat coughing, nausea vomiting, itchy watery burning eyes, rash hives, headaches, sinus pain pressure, fatigue, bloody nose, congestion, difficulty sleeping, body aches, ear aches ear infections, phlegm, coughing up blood, stomach pain, asthma flare-up, dehydration, diarrhea, liver count elevated, fainting, and loss of balance.

2603.   The November 24 and 25, 2022, discharge also entered Neal's residence, including dust.

2604.  The trespass by PBF Martinez interfered with Neal's ability to use and enjoy the residence and caused injury to Neal and damage to the property.

2605.  Needless to say, the trespass by PBF Martinez to Neal's real property was unauthorized.

2606.  Neal was also present at his residence for the July 2023, October 2023, and December 2023 releases.

2607.  In each instance, he was exposed to toxins from the refinery's discharges.

2608.  As a result of his exposure to the 2023 discharges from the refinery, Neal was physically harmed, including developing and/or worsening symptoms of headaches, nose bleeds, brain fog, dizziness, eye irritation, and skin irritation that were directly caused by the reoccurring discharges in 2023.

2609.  The 2023 discharges also entered Neal's residence.

2610.  The trespasses by PBF Martinez interfered with Neal's ability to use and enjoy the residence and caused injury to Neal and damage to the property.

2611.  Needless to say, the trespasses by PBF Martinez to Neal's real property were unauthorized in each instance.

2612.  Additionally, the health effects on Neal from the discharges have caused him to suffer lost wages, income, and/or business opportunities.

**64.    Plaintiff Elizabeth Olson.**

2613.  At all times relevant to this action, Plaintiff Elizabeth Olson was over the age of 18 and was a resident of Martinez, California.

2614.  Plaintiff Elizabeth Olson rented a residence, which was approximately 1 mile from the refinery.

2615.  Olson was present at their residence for the July 11, 2023, release from the refinery, and was exposed to the toxic discharge from the refinery.

2616.  Among other things, she recalled seeing dust on her vehicle.

2617.  As a result of her exposure to the toxic discharges from the refinery on July 11, 2023, Olson was physically harmed.

-234-

2618.   Among other things, Olson began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including dryness in nose and throat.

2619.   The July 11, 2023, discharge also entered Olson's residence, including dust.

2620.   The trespass by PBF Martinez interfered with Olson's ability to use and enjoy the residence and caused injury to Olson and damage to the property.

2621.   Needless to say, the trespass by PBF Martinez to Olson's real property was unauthorized.

2622.   Olson was also present at her residence for the October 2023 and December 2023 releases.

2623.   In each instance, she was exposed to toxins from the refinery's discharges.

2624.   Additional developing and/or worsening symptoms of sore throat, watery eyes, dry and burning nose, and breathing difficulty were directly caused by the reoccurring discharges in 2023.

2625.   The 2023 discharges also entered Olson's residence, including dust.

2626.   The trespasses by PBF Martinez interfered with Olson's ability to use and enjoy the residence and caused injury to Olson and damage to the property.

2627.   Needless to say, the trespasses by PBF Martinez to Olson's real property were unauthorized in each instance.

### 65.   Plaintiff Annette Orejuela.

2628.   At all times relevant to this action, Plaintiff Annette Orejuela was over the age of 18 and was a resident of Martinez, California.

2629.   Plaintiff Annette Orejuela rented a residence, which was approximately 1/4 mile from the refinery.

2630.   Orejuela was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2631.   Among other things, she recalls the smells and ash.

2632.  As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Orejuela was physically harmed.

2633.  Among other things, Orejuela began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, memory issues, brain fog, dizziness, vertigo, sore throat, coughing, itchy, watery, burning eyes, headaches, fatigue, congestion, difficulty sleeping, body aches, stomach pain, diarrhea, and loss of balance.

2634.  The November 24 and 25, 2022, discharge also entered Orejuela's residence, including the smell and ash.

2635.  The trespass by PBF Martinez interfered with Orejuela's ability to use and enjoy the residence and caused injury to Orejuela and damage to the property.

2636.  Needless to say, the trespass by PBF Martinez to Orejuela's real property was unauthorized.

2637.  Orejuela was also present at her residence for the July 2023, October 2023, and December 2023 releases.

2638.  In each instance, she was exposed to toxins from the refinery's discharges.

2639.  As a result of her exposure to the 2023 discharges from the refinery, Orejuela was physically harmed, including developing and/or worsening symptoms of headaches and dizziness that were directly caused by the reoccurring discharges in 2023.

2640.  The 2023 discharges also entered Orejuela's residence, including the smell.

2641.  The trespasses by PBF Martinez interfered with Orejuela's ability to use and enjoy the residence and caused injury to Orejuela and damage to the property.

2642.  Needless to say, the trespasses by PBF Martinez to Orejuela's real property were unauthorized in each instance.

2643.  Additionally, the health effects on Orejuela from the discharges have caused her to suffer lost wages, income, and/or business opportunities.

66.    **Plaintiff Barbara Penney.**

2644.    At all times relevant to this action, Plaintiff Barbara Penney was over the age of 18 and was a resident of Martinez, California.

2645.    Plaintiff Barbara Penney rented a residence, which was approximately 2 1/2 miles from the refinery.

2646.    Penney was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2647.    Among other things, recalls a bad odor in the air and dust on vehicles.

2648.    As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Penney was physically harmed.

2649.    Among other things, Penney began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, chest pain, dizziness, vertigo, sore throat, coughing, nausea, vomiting, itchy, watery, burning eyes, rash, hives, headaches, sinus pain, pressure, fatigue, congestion, difficulty sleeping, body aches, stomach pain, asthma flare-up, heartburn, dehydration, fever, and loss of balance.

2650.    The November 24 and 25, 2022, discharge also entered Penney's residence, including bad odors and dust.

2651.    The trespass by PBF Martinez interfered with Penney's ability to use and enjoy the residence and caused injury to Penney and damage to the property.

2652.    Needless to say, the trespass by PBF Martinez to Penney's real property was unauthorized.

2653.    Penney was also present at her residence for the July 2023, October 2023, and December 2023 releases.

2654.    In each instance, she was exposed to toxins from the refinery's discharges.

2655.    As a result of her exposure to the 2023 discharges from the refinery, Penney was physically harmed, including developing and/or worsening symptoms of upset stomach, coughing, vomiting, and difficulty breathing that were directly caused by the reoccurring discharges in 2023.

2656.    The 2023 discharges also entered Penney's residence, including bad odors and dust.

2657.  The trespasses by PBF Martinez interfered with Penney's ability to use and enjoy the residence and caused injury to Penney and damage to the property.

2658.  Needless to say, the trespasses by PBF Martinez to Penney's real property were unauthorized in each instance.

### 67.    Plaintiff Marva Percy.

2659.  At all times relevant to this action, Plaintiff Marva Percy was over the age of 18 and was a resident of Martinez, California.

2660.  Plaintiff Marva Percy rented a residence, which was approximately 2 miles from the refinery.

2661.  Percy was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2662.  Among other things, she could see the fire from her patio, and there was a bad smell.

2663.  As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Percy was physically harmed.

2664.  Among other things, Percy began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including itchy, watery, burning eyes, headaches, and asthma flare-up.

2665.  The November 24 and 25, 2022, discharge also entered Percy's residence, including the smell

2666.  The trespass by PBF Martinez interfered with Percy's ability to use and enjoy the residence and caused injury to Percy and damage to the property.

2667.  Needless to say, the trespass by PBF Martinez to Percy's real property was unauthorized.

2668.  Percy was also present at her residence for the July 2023, October 2023, and December 2023 releases.

2669.  In each instance, she was exposed to toxins from the refinery's discharges.

2670.  As a result of her exposure to the 2023 discharges from the refinery, Percy was physically harmed, including developing and/or worsening symptoms of eye irritation, coughing, headaches, and wheezing that were directly caused by the reoccurring discharges in 2023.

2671.  The 2023 discharges also entered Percy's residence, including a burning smell.

2672.  The trespasses by PBF Martinez interfered with Percy's ability to use and enjoy the residence and caused injury to Percy and damage to the property.

2673.  Needless to say, the trespasses by PBF Martinez to Percy's real property were unauthorized in each instance.

**68.    Plaintiff Frank Perez.**

2674.  At all times relevant to this action, Plaintiff Frank Perez was over the age of 18 and was a resident of Martinez, California.

2675.  Plaintiff Frank Perez rented a residence, which was approximately 1/2 mile from the refinery.

2676.  Perez was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2677.  Among other things, he recalled seeing dust on the vehicles and property.

2678.  As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Perez was physically harmed.

2679.  Among other things, Perez began experiencing illness and symptoms that were directly caused by the toxic exposure within a few weeks after the release, including breathing difficulties, sore throat, coughing, congestion, phlegm, and asthma flare-up.

2680.  The November 24 and 25, 2022, discharge also entered Perez's residence, including dust.

2681.  The trespass by PBF Martinez interfered with Perez's ability to use and enjoy the residence and caused injury to Perez and damage to the property.

2682.  Needless to say, the trespass by PBF Martinez to Perez's real property was unauthorized.

2683.   Perez was also present at his residence for the July 2023, October 2023, and December 2023 releases.

2684.   In each instance, he was exposed to toxins from the refinery's discharges.

2685.   As a result of his exposure to the 2023 discharges from the refinery, Perez was physically harmed, including developing and/or worsening symptoms of coughing, asthma flare up, and phlegm that were directly caused by the reoccurring discharges in 2023.

2686.   The 2023 discharges also entered Perez's residence, including dust.

2687.   The trespasses by PBF Martinez interfered with Perez's ability to use and enjoy the residence and caused injury to Perez and damage to the property.

2688.   Needless to say, the trespasses by PBF Martinez to Perez's real property were unauthorized in each instance.

**69.    Plaintiff Davion Phillips.**

2689.   At all times relevant to this action, Plaintiff Davion Phillips was over the age of 18 and was a resident of Martinez, California.

2690.   Plaintiff Davion Phillips rented a residence, which was approximately 1 1/2 miles from the refinery.

2691.   Phillips was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2692.   Among other things, he recalled seeing dust.

2693.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Phillips was physically harmed.

2694.   Among other things, Phillips began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including eye issues, brain fog, coughing and congestion.

2695.   The November 24 and 25, 2022, discharge also entered Phillips' residence, including dust.

2696.   The trespass by PBF Martinez interfered with Phillips' ability to use and enjoy the residence and caused injury to Phillips and damage to the property.

2697.   Needless to say, the trespass by PBF Martinez to Phillips' real property was unauthorized.

2698.   Phillips was also present at his residence for the July 2023, October 2023, and December 2023 releases.

2699.   In each instance, he was exposed to toxins from the refinery's discharges.

2700.   As a result of his exposure to the 2023 discharges from the refinery, Phillips was physically harmed, including developing and/or worsening symptoms of headaches that were directly caused by the reoccurring discharges in 2023.

2701.   The 2023 discharges also entered Phillips' residence, including dust.

2702.   The trespasses by PBF Martinez interfered with Phillips' ability to use and enjoy the residence and caused injury to Phillips and damage to the property.

2703.   Needless to say, the trespasses by PBF Martinez to Phillips' real property were unauthorized in each instance.

**70.    Plaintiff Vanessa Pipkins.**

2704.   At all times relevant to this action, Plaintiff Vanessa Pipkins was over the age of 18 and was a resident of Martinez, California.

2705.   Plaintiff Vanessa Pipkins rented a residence, which was approximately 1 mile from the refinery.

2706.   Pipkins was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2707.   Among other things, she recalls white dust all over her garden and cars.

2708.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Pipkins was physically harmed.

2709.   Among other things, Pipkins began experiencing illness and symptoms that were directly caused by the toxic exposure within a few months after the release, including nausea, vomiting, headaches, bloody nose, stomach pain, and brain fog.

2710.   The November 24 and 25, 2022, discharge also entered Pipkins' residence, including dust.

2711.   The trespass by PBF Martinez interfered with Pipkins' ability to use and enjoy the residence and caused injury to Pipkins and damage to the property.

2712.   Needless to say, the trespass by PBF Martinez to Pipkins' real property was unauthorized.

2713.   Pipkins was also present at her residence for the July 2023, October 2023, and December 2023 releases.

2714.   In each instance, she was exposed to toxins from the refinery's discharges.

2715.   As a result of her exposure to the 2023 discharges from the refinery, Pipkins was physically harmed, including developing and/or worsening symptoms of breathing difficulties, memory issues, brain fog, dizziness, vertigo, sore throat, coughing, nausea, vomiting, itchy, watery, burning eyes, rash, hives, headaches, sinus pain, pressure, fatigue congestion, difficulty sleeping, body aches, earaches, ear infections, stomach pain, and heartburn that were directly caused by the reoccurring discharges in 2023.

2716.   The 2023 discharges also entered Pipkins' residence, including dust.

2717.   The trespasses by PBF Martinez interfered with Pipkins' ability to use and enjoy the residence and caused injury to Pipkins and damage to the property.

2718.   Needless to say, the trespasses by PBF Martinez to Pipkins' real property were unauthorized in each instance.

2719.   Additionally, the health effects on Pipkins from the discharges have caused her to suffer lost wages, income, and/or business opportunities.

### 71.    Plaintiff Crystal Quarles.

2720.   At all times relevant to this action, Plaintiff Crystal Quarles was over the age of 18 and was a resident of Martinez, California.

2721.   Plaintiff Crystal Quarles rented a residence, which was approximately 2 miles from the refinery.

2722.   Quarles was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2723.   Among other things, she recalls the smell.

2724.  As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Quarles was physically harmed.

2725.  Among other things, Quarles began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including sore throat, coughing, nausea, vomiting, itchy, watery, burning eyes, rash, hives, and headaches.

2726.  The November 24 and 25, 2022, discharge also entered Quarles's residence, including the smell.

2727.  The trespass by PBF Martinez interfered with Quarles's ability to use and enjoy the residence and caused injury to Quarles and damage to the property.

2728.  Needless to say, the trespass by PBF Martinez to Quarles's real property was unauthorized.

2729.  Quarles was also present at her residence for the July 2023, October 2023, and December 2023 releases.

2730.  In each instance, she was exposed to toxins from the refinery's discharges.

2731.  As a result of her exposure to the 2023 discharges from the refinery, Quarles was physically harmed, including developing and/or worsening symptoms coughing, headaches, fatigue, and difficulty sleeping that were directly caused by the reoccurring discharges in 2023.

2732.  The 2023 discharges also entered Quarles's residence.

2733.  The trespasses by PBF Martinez interfered with Quarles's ability to use and enjoy the residence and caused injury to Quarles and damage to the property.

2734.  Needless to say, the trespasses by PBF Martinez to Quarles's real property were unauthorized in each instance.

2735.  Additionally, the health effects on Quarles from the discharges have caused her to suffer lost wages, income, and/or business opportunities.

### 72.    Plaintiff Ariya Quintero.

2736.  At all times relevant to this action, Plaintiff Ariya Quintero was over the age of 18 and was a resident of Martinez, California.

2737.   Plaintiff Ariya Quintero rented a residence, which was approximately 1 mile from the refinery.

2738.   Quintero was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2739.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Quintero was physically harmed.

2740.   Among other things, Quintero began experiencing illness and symptoms that were directly caused by the toxic exposure within a few weeks after the release, including breathing difficulties, sore throat, coughing, headaches, and asthma flare-up.

2741.   The November 24 and 25, 2022, discharge also entered Quintero's residence.

2742.   The trespass by PBF Martinez interfered with Quintero's ability to use and enjoy the residence and caused injury to Quintero and damage to the property.

2743.   Needless to say, the trespass by PBF Martinez to Quintero's real property was unauthorized.

2744.   Quintero was also present at her residence for the July 2023, October 2023, and December 2023 releases.

2745.   In each instance, she was exposed to toxins from the refinery's discharges.

2746.   As a result of her exposure to the 2023 discharges from the refinery, Quintero was physically harmed, including developing and/or worsening symptoms of headaches, coughing, and difficulty breathing that were directly caused by the reoccurring discharges in 2023.

2747.   The 2023 discharges also entered Quintero's residence.

2748.   The trespasses by PBF Martinez interfered with Quintero's ability to use and enjoy the residence and caused injury to Quintero and damage to the property.

2749.   Needless to say, the trespasses by PBF Martinez to Quintero's real property were unauthorized in each instance.

2750.   Additionally, the health effects on Quintero from the discharges have caused her to suffer lost wages, income, and/or business opportunities.

**73.    Plaintiff Vivian Ramirez.**

2751.   At all times relevant to this action, Plaintiff Vivian Ramirez was over the age of 18 and was a resident of Martinez, California.

2752.   Plaintiff Vivian Ramirez rented a residence, which was approximately 2 miles from the refinery.

2753.   Ramirez was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2754.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Ramirez was physically harmed.

2755.   Among other things, Ramirez began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, sore throat, coughing, itchy, watery, burning eyes, sinus pain, pressure, fatigue, bloody nose, congestion, difficulty sleeping, and coughing up blood.

2756.   The November 24 and 25, 2022, discharge also entered Ramirez's residence.

2757.   The trespass by PBF Martinez interfered with Ramirez's ability to use and enjoy the residence and caused injury to Ramirez and damage to the property.

2758.   Needless to say, the trespass by PBF Martinez to Ramirez's real property was unauthorized.

2759.   Ramirez was also present at her residence for the July 2023, October 2023, and December 2023 releases.

2760.   In each instance, she was exposed to toxins from the refinery's discharges.

2761.   As a result of her exposure to the 2023 discharges from the refinery, Ramirez was physically harmed, including developing and/or worsening symptoms of breathing difficulties, sore throat, coughing, nausea, vomiting, headaches, sinus pain, pressure, fatigue, congestion, difficulty sleeping, body aches, earaches, and ear infections that were directly caused by the reoccurring discharges in 2023.

2762.   The 2023 discharges also entered Ramirez's residence.

2763.   The trespasses by PBF Martinez interfered with Ramirez's ability to use and enjoy the residence and caused injury to Ramirez and damage to the property.

2764.   Needless to say, the trespasses by PBF Martinez to Ramirez's real property were unauthorized in each instance.

2765.   Additionally, the health effects on Ramirez from the discharges have caused her to suffer lost wages, income, and/or business opportunities.

### 74.    Plaintiff Oscar Ramos.

2766.   At all times relevant to this action, Plaintiff Oscar Ramos was over the age of 18 and was a resident of Martinez, California.

2767.   Plaintiff Oscar Ramos rented a residence, which was approximately 1/4 mile from the refinery.

2768.   Ramos was present at their residence for the July 11, 2023, release from the refinery, and was exposed to the toxic discharge from the refinery.

2769.   Among other things, he recalls seeing dust and smelling a bad odor in the air.

2770.   As a result of his exposure to the toxic discharges from the refinery on July 11, 2023, Ramos was physically harmed.

2771.   Among other things, Ramos began experiencing illness and symptoms that were directly caused by the toxic exposure within a week after the release, including itchy, watery, burning eyes, and headaches.

2772.   The July 11, 2023, discharge also entered Ramos' residence, including dust and a bad odor.

2773.   The trespass by PBF Martinez interfered with Ramos' ability to use and enjoy the residence and caused injury to Ramos and damage to the property.

2774.   Needless to say, the trespass by PBF Martinez to Ramos' real property was unauthorized.

2775.   Ramos was also present at his residence for the October 2023 and December 2023 releases.

2776.   In each instance, he was exposed to toxins from the refinery's discharges.

-246-

2777.  Additional developing and/or worsening symptoms of hives, skin irritation, sinus pressure, headaches, and earaches that were directly caused by the reoccurring discharges in 2023.

2778.  The 2023 discharges also entered Ramos' residence, including smoke and dust.

2779.  The trespasses by PBF Martinez interfered with Ramos' ability to use and enjoy the residence and caused injury to Ramos and damage to the property.

2780.  Needless to say, the trespasses by PBF Martinez to Ramos' real property were unauthorized in each instance.

### 75.    Plaintiff Nika Ramsey.

2781.  At all times relevant to this action, Plaintiff Nika Ramsey was over the age of 18 and was a resident of Martinez, California.

2782.  Plaintiff Nika Ramsey rented a residence, which was approximately 1 mile from the refinery.

2783.  Ramsey was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2784.  As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Ramsey was physically harmed.

2785.  Among other things, Ramsey began experiencing illness and symptoms that were directly caused by the toxic exposure within a few weeks after the release, including breathing difficulties, chest pain, dizziness, vertigo, sinus pain, pressure, fatigue, bloody nose, difficulty sleeping, phlegm, coughing up blood, asthma flare-up, and heartburn.

2786.  The November 24 and 25, 2022, discharge also entered Ramsey's residence.

2787.  The trespass by PBF Martinez interfered with Ramsey's ability to use and enjoy the residence and caused injury to Ramsey and damage to the property.

2788.  Needless to say, the trespass by PBF Martinez to Ramsey's real property was unauthorized.

2789.  Ramsey was also present at her residence for the July 2023, October 2023, and December 2023 releases.

2790.  In each instance, she was exposed to toxins from the refinery's discharges.

2791.  As a result of her exposure to the 2023 discharges from the refinery, Ramsey was physically harmed, including developing and/or worsening symptoms of asthma exacerbation that were directly caused by the reoccurring discharges in 2023.

2792.  The 2023 discharges also entered Ramsey's residence.

2793.  The trespasses by PBF Martinez interfered with Ramsey's ability to use and enjoy the residence and caused injury to Ramsey and damage to the property.

2794.  Needless to say, the trespasses by PBF Martinez to Ramsey's real property were unauthorized in each instance.

2795.  Additionally, the health effects on Ramsey from the discharges have caused her to suffer lost wages, income, and/or business opportunities.

### 76.  Plaintiff Marcheal Reed.

2796.  At all times relevant to this action, Plaintiff Marcheal Reed was over the age of 18 and was a resident of Martinez, California.

2797.  Plaintiff Marcheal Reed rented a residence, which was approximately 1 1/2 miles from the refinery.

2798.  Reed was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2799.  Among other things, she recalls seeing dust on vehicles.

2800.  As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Reed was physically harmed.

2801.  Among other things, Reed began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including memory issues, brain fog, sore throat, coughing, itchy, watery, burning eyes, headaches, earaches, and ear infections.

2802.  The November 24 and 25, 2022, discharge also entered Reed's residence, including dust.

2803.  The trespass by PBF Martinez interfered with Reed's ability to use and enjoy the residence and caused injury to Reed and damage to the property.

2804.    Needless to say, the trespass by PBF Martinez to Reed's real property was unauthorized.

2805.    Reed was also present at her residence for the July 2023, October 2023, and December 2023 releases.

2806.    In each instance, she was exposed to toxins from the refinery's discharges.

2807.    As a result of her exposure to the 2023 discharges from the refinery, Reed was physically harmed, including developing and/or worsening symptoms of headaches, coughing, sneezing, congestion, eye irritation, and skin irritation that were directly caused by the reoccurring discharges in 2023.

2808.    The 2023 discharges also entered Reed's residence, including strong odors and dust.

2809.    The trespasses by PBF Martinez interfered with Reed's ability to use and enjoy the residence and caused injury to Reed and damage to the property.

2810.    Needless to say, the trespasses by PBF Martinez to Reed's real property were unauthorized in each instance.

**77.    Plaintiff Erick Roach.**

2811.    At all times relevant to this action, Plaintiff Erick Roach was over the age of 18 and was a resident of Martinez, California.

2812.    Plaintiff Erick Roach rented a residence, which was approximately 1 mile from the refinery.

2813.    Roach was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2814.    Among other things, he recalls seeing a cloud of dust coming from the refinery.

2815.    As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Roach was physically harmed.

2816.    Among other things, Roach began experiencing illness and symptoms that were directly caused by the toxic exposure within a few weeks after the release, including breathing difficulties, chest pain, memory issues, brain fog, dizziness, vertigo, sore throat, coughing, nausea, vomiting, and skin irritation.

2817.   The November 24 and 25, 2022, discharge also entered Erick Roach residence, including dust.

2818.   The trespass by PBF Martinez interfered with Roach's ability to use and enjoy the residence and caused injury to Roach and damage to the property.

2819.   Needless to say, the trespass by PBF Martinez to Roach's real property was unauthorized.

2820.   Roach was also present at his residence for the July 2023, October 2023, and December 2023 releases.

2821.   In each instance, he was exposed to toxins from the refinery's discharges.

2822.   As a result of his exposure to the 2023 discharges from the refinery, Roach was physically harmed, including developing and/or worsening symptoms of cloud of difficulty breathing, joint pain, congestion, heartburn, body aches, chest pain, dry and burning eyes, headaches, and sinus issues that were directly caused by the reoccurring discharges in 2023.

2823.   The 2023 discharges also entered Roach's residence, including dust.

2824.   The trespasses by PBF Martinez interfered with Roach's ability to use and enjoy the residence and caused injury to Roach and damage to the property.

2825.   Needless to say, the trespasses by PBF Martinez to Roach's real property were unauthorized in each instance.

2826.   Additionally, the health effects on Roach from the discharges have caused him to suffer lost wages, income, and/or business opportunities.

**78.    Plaintiff Isabel Rodriguez.**

2827.   At all times relevant to this action, Plaintiff Isabel Rodriguez was over the age of 18 and was a resident of Martinez, California.

2828.   Plaintiff Isabel Rodriguez rented a residence, which was approximately 5.12 miles from the refinery.

2829.   Rodriguez was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2830.   Among other things, she recalled there being poor air quality.

2831.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Rodriguez was physically harmed.

2832.   Among other things, Rodriguez began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, chest pain, dizziness, vertigo, sore throat, coughing, nausea, vomiting, itchy, watery, burning eyes, bloody nose, and fainting.

2833.   The November 24 and 25, 2022, discharge also entered Rodriguez's residence, including poor air quality.

2834.   The trespass by PBF Martinez interfered with Isabel Rodriguez ability to use and enjoy the residence and caused injury to Rodriguez and damage to the property.

2835.   Needless to say, the trespass by PBF Martinez to Isabel Rodriguez real property was unauthorized.

2836.   Rodriguez was also present at her residence for the July 2023, October 2023, and December 2023 releases.

2837.   In each instance, she was exposed to toxins from the refinery's discharges.

2838.   As a result of her exposure to the 2023 discharges from the refinery, Rodriguez was physically harmed, including developing and/or worsening symptoms of respiratory issues that were directly caused by the reoccurring discharges in 2023.

2839.   The 2023 discharges also entered Rodriguez's residence, including poor air quality.

2840.   The trespasses by PBF Martinez interfered with Rodriguez's ability to use and enjoy the residence and caused injury to Rodriguez and damage to the property.

2841.   Needless to say, the trespasses by PBF Martinez to Rodriguez's real property were unauthorized in each instance.

2842.   Additionally, the health effects on Rodriguez from the discharges have caused her to suffer lost wages, income, and/or business opportunities.

### 79.   Plaintiff Delia Rubalcava.

2843.   At all times relevant to this action, Plaintiff Delia Rubalcava was over the age of 18 and was a resident of Martinez, California.

-251-

2844.   Plaintiff Delia Rubalcava rented a residence, which was approximately 1/4 mile from the refinery.

2845.   Rubalcava was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2846.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Rubalcava was physically harmed.

2847.   Among other things, Rubalcava began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, chest pain, sore throat, coughing, headaches, sinus pain, pressure, fatigue, difficulty sleeping, phlegm, stomach pain, asthma flare-up, heartburn, fainting, and loss of balance.

2848.   The November 24 and 25, 2022, discharge also entered Rubacava's residence, including the smell.

2849.   The trespass by PBF Martinez interfered with Rubacava's ability to use and enjoy the residence and caused injury to Rubalcava and damage to the property.

2850.   Needless to say, the trespass by PBF Martinez to Rubacava's real property was unauthorized.

2851.   Rubalcava was also present at her residence for the July 2023, October 2023, and December 2023 releases.

2852.   In each instance, she was exposed to toxins from the refinery's discharges.

2853.   As a result of her exposure to the 2023 discharges from the refinery, Rubalcava was physically harmed, including developing and/or worsening symptoms of asthma, headaches, and coughing that were directly caused by the reoccurring discharges in 2023.

2854.   The 2023 discharges also entered Rubacava's residence, including a bad smell.

2855.   The trespasses by PBF Martinez interfered with Rubacava's ability to use and enjoy the residence and caused injury to Rubalcava and damage to the property.

2856.   Needless to say, the trespasses by PBF Martinez to Rubacava's real property were unauthorized in each instance.

**80.    Plaintiff Maria Rubalcava.**

2857.   At all times relevant to this action, Plaintiff Maria Rubalcava was over the age of 18 and was a resident of Martinez, California.

2858.   Plaintiff Maria Rubalcava rented a residence, which was approximately 1/4 mile from the refinery.

2859.   Rubalcava was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2860.   Among other things, she recalls noise, a bad smell, and a lot of smoke.

2861.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Rubalcava was physically harmed.

2862.   Among other things, Rubalcava began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, chest pain, dizziness, vertigo, sore throat, coughing, nausea, vomiting, itchy, watery, burning eyes, headaches, sinus pain, pressure, fatigue, bloody nose, congestion, difficulty sleeping, body aches, ear aches, ear infections, phlegm, asthma flare-up, heartburn, diarrhea, liver count elevated, fainting, and loss of balance.

2863.   The November 24 and 25, 2022, discharge also entered Rubalcava's residence, including noise, smell, and dust.

2864.   The trespass by PBF Martinez interfered with Rubalcava's ability to use and enjoy the residence and caused injury to Rubalcava and damage to the property.

2865.   Needless to say, the trespass by PBF Martinez to Rubalcava's real property was unauthorized.

2866.   Rubalcava was also present at her residence for the July 2023, October 2023, and December 2023 releases.

2867.   In each instance, she was exposed to toxins from the refinery's discharges.

2868.   As a result of her exposure to the 2023 discharges from the refinery, Rubalcava was physically harmed, including developing and/or worsening symptoms of respiratory issues, headaches, phlegm, and coughing that were directly caused by the reoccurring discharges in 2023.

-253-

2869.   The 2023 discharges also entered Rubalcava's residence, including noise, smell, and dust.

2870.   The trespasses by PBF Martinez interfered with Rubalcava's ability to use and enjoy the residence and caused injury to Rubalcava and damage to the property.

2871.   Needless to say, the trespasses by PBF Martinez to Rubalcava's real property were unauthorized in each instance.

2872.   Additionally, the health effects on Rubalcava from the discharges have caused her to suffer lost wages, income, and/or business opportunities.

### 81.    Plaintiff Adrian Scott.

2873.   At all times relevant to this action, Plaintiff Adrian Scott was over the age of 18 and was a resident of Martinez, California.

2874.   Plaintiff Adrian Scott rented a residence, which was approximately 2 miles from the refinery.

2875.   Scott was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2876.   Among other things, he recalls seeing smoke, smelling an odd smell, and dust on his car.

2877.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Scott was physically harmed.

2878.   Among other things, Scott began experiencing illness and symptoms that were directly caused by the toxic exposure within a month after the release, including chest pain.

2879.   The November 24 and 25, 2022, discharge also entered Scott's residence, including an odd smell and dust.

2880.   The trespass by PBF Martinez interfered with Scott's ability to use and enjoy the residence and caused injury to Scott and damage to the property.

2881.   Needless to say, the trespass by PBF Martinez to Scott's real property was unauthorized.

2882.   Scott was also present at his residence for the July 2023, October 2023, and December 2023 releases.

2883.   In each instance, he was exposed to toxins from the refinery's discharges.

2884.   As a result of his exposure to the 2023 discharges from the refinery, Scott was physically harmed, including developing and/or worsening symptoms of chest pain and dry eyes that were directly caused by the reoccurring discharges in 2023.

2885.   The 2023 discharges also entered Scott's residence, including an odd smell and dust.

2886.   The trespasses by PBF Martinez interfered with Scott's ability to use and enjoy the residence and caused injury to Scott and damage to the property.

2887.   Needless to say, the trespasses by PBF Martinez to Scott's real property were unauthorized in each instance.

### 82.    Plaintiff Elizabeth Silvestri.

2888.   At all times relevant to this action, Plaintiff Elizabeth Silvestri was over the age of 18 and was a resident of Martinez, California.

2889.   Plaintiff Elizabeth Silvestri rented a residence, which was approximately 3 1/2 miles from the refinery.

2890.   Silvestri was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2891.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Silvestri was physically harmed.

2892.   Among other things, Silvestri began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, sore throat, coughing, fatigue, and asthma flare-up.

2893.   The November 24 and 25, 2022, discharge also entered Silvestri's residence.

2894.   The trespass by PBF Martinez interfered with Silvestri's ability to use and enjoy the residence and caused injury to Silvestri and damage to the property.

2895.   Needless to say, the trespass by PBF Martinez to Silvestri's real property was unauthorized.

2896.   Silvestri was also present at her residence for the July 2023, October 2023, and December 2023 releases.

2897.   In each instance, she was exposed to toxins from the refinery's discharges.

2898.   As a result of her exposure to the 2023 discharges from the refinery, Silvestri was physically harmed, including developing and/or worsening symptoms of asthma attacks, coughing, chronic body pain, nausea, and eye irritation that were directly caused by the reoccurring discharges in 2023.

2899.   The 2023 discharges also entered Silvestri's residence.

2900.   The trespasses by PBF Martinez interfered with Silvestri's ability to use and enjoy the residence and caused injury to Silvestri and damage to the property.

2901.   Needless to say, the trespasses by PBF Martinez to Silvestri's real property were unauthorized in each instance.

2902.   Additionally, the health effects on Silvestri from the discharges have caused her to suffer lost wages, income, and/or business opportunities. Specifically, I have had to go out on medical leave to ongoing lung issues.

### 83.    Plaintiff Kerry Smith.

2903.   At all times relevant to this action, Plaintiff Kerry Smith was over the age of 18 and was a resident of Martinez, California.

2904.   Plaintiff Kerry Smith rented a residence, which was approximately 2 1/2 miles from the refinery.

2905.   Smith was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2906.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Smith was physically harmed.

2907.   Among other things, Smith began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including breathing difficulties, chest pain, sore throat, coughing, nausea, vomiting, itchy, watery, burning eyes, congestion, and difficulty sleeping.

2908.   The November 24 and 25, 2022, discharge also entered Smith's residence.

2909.   The trespass by PBF Martinez interfered with Smith's ability to use and enjoy the residence and caused injury to Smith and damage to the property.

2910.   Needless to say, the trespass by PBF Martinez to Smith's real property was unauthorized.

2911.   Smith was also present at his residence for the July 2023, October 2023, and December 2023 releases.

2912.   In each instance, he was exposed to toxins from the refinery's discharges.

2913.   As a result of his exposure to the 2023 discharges from the refinery, Smith was physically harmed, including developing and/or worsening symptoms of irritation of the throat, coughing, and burning eyes that were directly caused by the reoccurring discharges in 2023.

2914.   The 2023 discharges also entered Smith's residence.

2915.   The trespasses by PBF Martinez interfered with Smith's ability to use and enjoy the residence and caused injury to Smith and damage to the property.

2916.   Needless to say, the trespasses by PBF Martinez to Smith's real property were unauthorized in each instance.

### 84.    Plaintiff Tiffany Taylor.

2917.   At all times relevant to this action, Plaintiff Tiffany Taylor was over the age of 18 and was a resident of Martinez, California.

2918.   Plaintiff Tiffany Taylor rented a residence, which was approximately 2 1/4 miles from the refinery.

2919.   Taylor was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2920.   Among other things, she recalls seeing a thick layer of something in the air, like ash.

2921.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Taylor was physically harmed.

2922.   Among other things, Taylor began experiencing illness and symptoms that were directly caused by the toxic exposure within a few weeks after the release, including breathing

-257-

difficulties, dizziness, vertigo, sore throat, coughing, itchy, watery, burning eyes, rash, hives, headaches, fatigue, congestion, phlegm, asthma flare-up, and constant coughing.

2923.   The November 24 and 25, 2022, discharge also entered Taylor's residence, including ash.

2924.   The trespass by PBF Martinez interfered with Taylor's ability to use and enjoy the residence and caused injury to Taylor and damage to the property.

2925.   Needless to say, the trespass by PBF Martinez to Taylor's real property was unauthorized.

2926.   Taylor was also present at her residence for the July 2023 releases.

2927.   In each instance, she was exposed to toxins from the refinery's discharges.

2928.   As a result of her exposure to the 2023 discharges from the refinery, Taylor was physically harmed, including developing and/or worsening symptoms of coughing and difficulty breathing that were directly caused by the reoccurring discharges in 2023.

2929.   The July 2023 discharges also entered Taylor's residence.

2930.   The trespasses by PBF Martinez interfered with Taylor's ability to use and enjoy the residence and caused injury to Taylor and damage to the property.

2931.   Needless to say, the trespasses by PBF Martinez to Taylor's real property were unauthorized in each instance.

**85.    Plaintiff Erica Thomas.**

2932.   At all times relevant to this action, Plaintiff Erica Thomas was over the age of 18 and was a resident of Martinez, California.

2933.   Plaintiff Erica Thomas rented a residence, which was approximately 3/4 mile from the refinery.

2934.   Thomas was present at their residence for the July 11, 2023, release from the refinery, and was exposed to the toxic discharge from the refinery.

2935.   As a result of her exposure to the toxic discharges from the refinery on July 11, 2023, Thomas was physically harmed.

2936.   Among other things, Thomas began experiencing illness and symptoms that were directly caused by the toxic exposure, including breathing difficulties, chest pain, memory issues, brain fog, sore throat, coughing, itchy, watery, and burning eyes.

2937.   The July 11, 2023, discharge also entered Thomas' residence.

2938.   The trespass by PBF Martinez interfered with Thomas' ability to use and enjoy the residence and caused injury to Thomas and damage to the property.

2939.   Needless to say, the trespass by PBF Martinez to Thomas' real property was unauthorized.

2940.   Thomas was also present at her residence for the October 2023 and December 2023 releases.

2941.   In each instance, she was exposed to toxins from the refinery's discharges.

2942.   As a result of her exposure to the 2023 discharges from the refinery, Thomas was physically harmed, including developing and/or worsening symptoms of throat irritation, eye irritation, coughing, wheezing, sneezing, headaches, chest pain, skin irritation that were directly caused by the reoccurring discharges in 2023.

2943.   Additionally, the health effects on Thomas from the discharges have caused her to suffer lost wages, income, and/or business opportunities.

### 86.    Plaintiff Tyisha Tillis.

2944.   At all times relevant to this action, Plaintiff Tyisha Tillis was over the age of 18 and was a resident of Martinez, California.

2945.   Plaintiff Tyisha Tillis rented a residence, which was approximately 2 miles from the refinery.

2946.   Tillis was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2947.   Among other things, she recalls smelling a strong odor.

2948.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Tillis was physically harmed.

2949.  Among other things, Tillis began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including chest pain, memory issues, brain fog, sore throat, coughing, itchy, watery, burning eyes, headaches, fatigue, congestion, earaches, ear infections, and stomach pain.

2950.  The November 24 and 25, 2022, discharge also entered Tillis' residence, including a strong smell.

2951.  The trespass by PBF Martinez interfered with Tillis' ability to use and enjoy the residence and caused injury to Tillis and damage to the property.

2952.  Needless to say, the trespass by PBF Martinez to Tillis' real property was unauthorized.

2953.  Tillis was also present at her residence for the July 2023, October 2023, and December 2023 releases.

2954.  In each instance, she was exposed to toxins from the refinery's discharges.

2955.  As a result of her exposure to the 2023 discharges from the refinery, Tillis was physically harmed, including developing and/or worsening symptoms of breathing difficulties, chest pain, skin irritation, headaches, congestion, body aches, stomach pain, and loss of balance that were directly caused by the reoccurring discharges in 2023.

2956.  The 2023 discharges also entered Tillis' residence, including a strong smell.

2957.  The trespasses by PBF Martinez interfered with Tillis' ability to use and enjoy the residence and caused injury to Tillis and damage to the property.

2958.  Needless to say, the trespasses by PBF Martinez to Tillis' real property were unauthorized in each instance.

**87.    Plaintiff Brett Turner.**

2959.  At all times relevant to this action, Plaintiff Brett Turner was over the age of 18 and was a resident of Martinez, California.

2960.  Plaintiff Brett Turner rented a residence, which was approximately 1 mile from the refinery.

2961.   Turner was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2962.   Among other things, he recalls seeing something in the air, heard popping, saw ash falling from the sky, and a bad smell in the air.

2963.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Turner was physically harmed.

2964.   Among other things, Turner began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, chest pain, memory issues, brain fog, dizziness, vertigo, sore throat, coughing, nausea, vomiting, itchy, watery, burning eyes, rash, hives, headaches, sinus pain, pressure, fatigue, bloody nose, congestion, difficulty sleeping, body aches, ear aches, ear infections, phlegm, coughing up blood, stomach pain, asthma flare-up, heartburn, dehydration, diarrhea, fainting, loss of balance, and digestion issues.

2965.   The November 24 and 25, 2022, discharge also entered Turner's residence, including dust and a bad smell.

2966.   The trespass by PBF Martinez interfered with Turner's ability to use and enjoy the residence and caused injury to Turner and damage to the property.

2967.   Needless to say, the trespass by PBF Martinez to Turner's real property was unauthorized.

2968.   Turner was also present at his residence for the July 2023, October 2023, and December 2023 releases.

2969.   In each instance, he was exposed to toxins from the refinery's discharges.

2970.   As a result of his exposure to the 2023 discharges from the refinery, Turner was physically harmed, including developing and/or worsening symptoms of skin irritation, respiratory problem, trouble sleeping, sore throat and cough that were directly caused by the reoccurring discharges in 2023.

2971.   The 2023 discharges also entered Turner's residence, including strange smells and dust.

2972.  The trespasses by PBF Martinez interfered with Turner's ability to use and enjoy the residence and caused injury to Turner and damage to the property.

2973.  Needless to say, the trespasses by PBF Martinez to Turner's real property were unauthorized in each instance.

2974.  Additionally, the health effects on Turner from the discharges have caused him to suffer lost wages, income, and/or business opportunities.

**88.    Plaintiff Kevin Tyson.**

2975.  At all times relevant to this action, Plaintiff Kevin Tyson was over the age of 18 and was a resident of Martinez, California.

2976.  Plaintiff Kevin Tyson rented a residence, which was approximately 1/2 mile from the refinery.

2977.  Tyson was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

2978.  Among other things, he saw dust on his vehicles.

2979.  The November 24 and 25, 2022, discharges also entered Jacinto's residence, including dust.

2980.  The trespass by PBF Martinez interfered with Tyson's ability to use and enjoy the residence and caused injury to Tyson and damage to the property.

2981.  Needless to say, the trespass by PBF Martinez to Tyson's real property was unauthorized.

2982.  Tyson was also present at his residence for the July 2023, October 2023, and December 2023 releases.

2983.  In each instance, he was exposed to toxins from the refinery's discharges.

2984.  As a result of his exposure to the toxic discharges from the refinery on July 11, 2023, Tyson was physically harmed.

2985.  Among other things, Tyson began experiencing illness and symptoms that were directly caused by the toxic exposure, including difficulty breathing, chest discomfort, sinus issues, and headaches.

2986.   Additional developing and/or worsening symptoms of difficulty breathing, chest discomfort, sinus issues, and headaches were directly caused by the reoccurring discharges in 2023.

2987.   The 2023 discharges also entered Tyson's residence, including dust.

2988.   The trespasses by PBF Martinez interfered with Tyson's ability to use and enjoy the residence and caused injury to Tyson and damage to the property.

2989.   Needless to say, the trespasses by PBF Martinez to Tyson's real property were unauthorized in each instance.

### 89.    Plaintiff Damariz Vargas.

2990.   At all times relevant to this action, Plaintiff Damariz Vargas was over the age of 18 and was a resident of Martinez, California.

2991.   Plaintiff Damariz Vargas rented a residence, which was approximately 1/2 mile from the refinery.

2992.   Vargas was present at their residence for the July 11, 2023, release from the refinery, and was exposed to the toxic discharge from the refinery.

2993.   Among other things, she recalls seeing dust and smelling a bad odor.

2994.   As a result of her exposure to the toxic discharges from the refinery on July 11, 2023, Vargas was physically harmed.

2995.   Among other things, Vargas began experiencing illness and symptoms that were directly caused by the toxic exposure within days after the release, including chest pain, headaches, sinus pain, and pressure.

2996.   The July 11, 2023, discharge also entered Vargas' residence, including dust.

2997.   The trespass by PBF Martinez interfered with Vargas' ability to use and enjoy the residence and caused injury to Vargas and damage to the property.

2998.   Needless to say, the trespass by PBF Martinez to Vargas' real property was unauthorized.

2999.   Vargas was also present at her residence for the October 2023 and December 2023 releases.

3000.   In each instance, she was exposed to toxins from the refinery's discharges.

3001.   Additional developing and/or worsening symptoms of shortness of breath, runny nose, itchy eyes, and fatigue were directly caused by the reoccurring discharges in 2023.

3002.   The 2023 discharges also entered Vargas' residence, including dust and a strange odor.

3003.   The trespasses by PBF Martinez interfered with Vargas' ability to use and enjoy the residence and caused injury to Vargas and damage to the property.

3004.   Needless to say, the trespasses by PBF Martinez to Vargas' real property were unauthorized in each instance.

### 90.    Plaintiff Timothy Veite.

3005.   At all times relevant to this action, Plaintiff Timothy Veite was over the age of 18 and was a resident of Martinez, California.

3006.   Plaintiff Timothy Veite rented a residence, which was approximately 1/2 mile from the refinery.

3007.   Veite was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

3008.   Among other things, he recalls there being dust in the air and on his vehicles.

3009.   As a result of his exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Veite was physically harmed.

3010.   Among other things, Veite began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, chest pain, memory issues, brain fog, dizziness, vertigo, sore throat, coughing, nausea, vomiting, itchy, watery, burning eyes, rash, hives, headaches, sinus pain, pressure, fatigue, bloody nose, difficulty sleeping, ear aches, ear infections, phlegm, coughing up blood, stomach pain, fever, and diarrhea.

3011.   The November 24 and 25, 2022, discharge also entered Veite's residence, including dust.

3012.   The trespass by PBF Martinez interfered with Veite's ability to use and enjoy the residence and caused injury to Veite and damage to the property.

-264-

3013.   Needless to say, the trespass by PBF Martinez to Veite's real property was unauthorized.

3014.   Veite was also present at his residence for the July 2023, October 2023, and December 2023 releases.

3015.   In each instance, he was exposed to toxins from the refinery's discharges.

3016.   As a result of his exposure to the 2023 discharges from the refinery, Veite was physically harmed, including developing and/or worsening symptoms of eye irritation, congestions, phlegm and sneezing that were directly caused by the reoccurring discharges in 2023.

3017.   The 2023 discharges also entered Veite's residence, including dust.

3018.   The trespasses by PBF Martinez interfered with Veite's ability to use and enjoy the residence and caused injury to Veite and damage to the property.

3019.   Needless to say, the trespasses by PBF Martinez to Veite's real property were unauthorized in each instance.

3020.   Additionally, the health effects on Veite from the discharges have caused him to suffer lost wages, income, and/or business opportunities.

**91.    Plaintiff Anny Waheed.**

3021.   At all times relevant to this action, Plaintiff Anny Waheed was over the age of 18 and was a resident of Martinez, California.

3022.   Plaintiff Anny Waheed rented a residence, which was approximately 2 miles from the refinery.

3023.   Waheed was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

3024.   Among other things, she recalls a white residue and pungent smell.

3025.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Waheed was physically harmed.

3026.   Among other things, Waheed began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, chest pain, memory issues brain fog, dizziness vertigo, sore throat coughing, nausea vomiting, itchy

-265-

watery burning eyes, headaches, sinus pain pressure, fatigue, congestion, difficulty sleeping, body aches, phlegm, stomach pain, heartburn, dehydration, fever, diarrhea, and loss of balance.

3027.  The November 24 and 25, 2022, discharge also entered Waheed's residence, including white residue and pungent smell.

3028.  The trespass by PBF Martinez interfered with Waheed's ability to use and enjoy the residence and caused injury to Waheed and damage to the property.

3029.  Needless to say, the trespass by PBF Martinez to Waheed's real property was unauthorized.

3030.  Waheed was also present at her residence for the July 2023, October 2023, and December 2023 releases.

3031.  In each instance, she was exposed to toxins from the refinery's discharges.

3032.  As a result of her exposure to the 2023 discharges from the refinery, Waheed was physically harmed, including developing and/or worsening symptoms of difficulty sleeping, coughing, shortness of breath, and headaches that were directly caused by the reoccurring discharges in 2023.

3033.  The 2023 discharges also entered Waheed's residence, including white residue and pungent smell.

3034.  The trespasses by PBF Martinez interfered with Waheed's ability to use and enjoy the residence and caused injury to Waheed and damage to the property.

3035.  Needless to say, the trespasses by PBF Martinez to Waheed's real property were unauthorized in each instance.

**92.    Plaintiff Tiffany Washington.**

3036.  At all times relevant to this action, Plaintiff Tiffany Washington was over the age of 18 and was a resident of Martinez, California.

3037.  Plaintiff Tiffany Washington rented a residence, which was approximately 1 1/2 miles from the refinery.

3038.  Washington was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

3039.   Among other things, she recalls smelling a strange odor in the air and dust.

3040.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Washington was physically harmed.

3041.   Among other things, Washington began experiencing illness and symptoms that were directly caused by the toxic exposure within a week after the release, including breathing difficulties, sore throat, coughing, itchy, watery, burning eyes, headaches, bloody nose, and asthma flare-up.

3042.   The November 24 and 25, 2022, discharge also entered Washington's residence, including a strange odor and dust.

3043.   The trespass by PBF Martinez interfered with Washington's ability to use and enjoy the residence and caused injury to Washington and damage to the property.

3044.   Needless to say, the trespass by PBF Martinez to Washington's real property was unauthorized.

3045.   Washington was also present at her residence for the July 2023, October 2023, and December 2023 releases.

3046.   In each instance, she was exposed to toxins from the refinery's discharges.

3047.   As a result of her exposure to the 2023 discharges from the refinery, Washington was physically harmed, including developing and/or worsening symptoms of tightness of chest, sinus irritation, congestion, difficulty breathing, coughing, and headaches that were directly caused by the reoccurring discharges in 2023.

3048.   The 2023 discharges also entered Washington's residence, including a strange odor and dust.

3049.   The trespasses by PBF Martinez interfered with Washington's ability to use and enjoy the residence and caused injury to Washington and damage to the property.

3050.   Needless to say, the trespasses by PBF Martinez to Washington's real property were unauthorized in each instance.

3051.   Additionally, the health effects on Washington from the discharges have caused her to suffer lost wages, income, and/or business opportunities.

93.    **Plaintiff Darla Wintermantel.**

3052.   At all times relevant to this action, Plaintiff Darla Wintermantel was over the age of 18 and was a resident of Martinez, California.

3053.   Plaintiff Darla Wintermantel rented a residence, which was approximately 1 1/2 miles from the refinery.

3054.   Wintermantel was present at their residence for the November 24 and 25, 2022 release from the refinery, and was exposed to the toxic discharge from the refinery.

3055.   Among other things, she recalls smelling an unusual smell and dust on vehicles.

3056.   As a result of her exposure to the toxic discharges from the refinery on November 24 and 25, 2022, Wintermantel was physically harmed.

3057.   Among other things, Wintermantel began experiencing illness and symptoms that were directly caused by the toxic exposure immediately after the release, including breathing difficulties, memory issues, brain fog, fatigue, difficulty sleeping, and asthma flare-up.

3058.   The November 24 and 25, 2022, discharge also entered Wintermantel's residence, including the unusual smell and dust.

3059.   The trespass by PBF Martinez interfered with Wintermantel's ability to use and enjoy the residence and caused injury to Wintermantel and damage to the property.

3060.   Needless to say, the trespass by PBF Martinez to Wintermantel's real property was unauthorized.

3061.   Wintermantel was also present at her residence for the July 2023, October 2023, and December 2023 releases.

3062.   In each instance, she was exposed to toxins from the refinery's discharges.

3063.   As a result of her exposure to the 2023 discharges from the refinery, Wintermantel was physically harmed, including developing and/or worsening symptoms of cough, allergies, difficulty breathing, headaches, stomach, asthmatic flare up, and congestion that were directly caused by the reoccurring discharges in 2023.

3064.   The 2023 discharges also entered Wintermantel's residence, including the unusual smell and dust.

3065.   The trespasses by PBF Martinez interfered with Wintermantel's ability to use and enjoy the residence and caused injury to Wintermantel and damage to the property.

3066.   Needless to say, the trespasses by PBF Martinez to Wintermantel's real property were unauthorized in each instance.

Dated: November 21, 2024                          Respectfully submitted,

                                                  /s/ C. Brooks Cutter
Reza Torkzadeh, SBN 249550                        C. Brooks Cutter, SBN 121407
Scott King,  SBN 321218                           Wesley M. Griffith, SBN 286390
**TORKLAW**                                       Jennifer S. Domer, SBN 305822
18650 MacArthur Blvd., Ste 300                    **CUTTER LAW P.C.**
Irvine, CA 92612                                  401 Watt Avenue
Telephone:      (949) 313-7733                    Sacramento, CA 95864
Facsimile:      (800) 979-0262                    Telephone:      (916) 290-9400
E-mail:         reza@torklaw.com                  Facsimile:      (916) 588-9330
E-mail:         scott@torklaw.com                 E-mail:         bcutter@cutterlaw.com
                                                  E-mail:         wgriffith@cutterlaw.com
                                                  E-mail:         jdomer@cutterlaw.com

*Attorneys for Plaintiffs*

-269-

# EXHIBIT A

# Independent Investigation of the Catalyst Release from Martinez Refining Company on November 24-25, 2022

Report prepared by

Scott Berger and Associates, LLC

Version 2

March 27, 2024

**Table of Contents**

I.      Foreword .................................................................................................................................. 3

II.     Executive Summary ................................................................................................................ 4

III.    Introduction ............................................................................................................................ 4

    A. Objectives ........................................................................................................................... 4

    B. Scope and Approach ........................................................................................................... 4

    C. Report Format ..................................................................................................................... 4

IV.     Background ............................................................................................................................. 5

V.      Description of the Incident .................................................................................................... 6

    A. Prior to the Incident ............................................................................................................ 6

    B. Shut-down of the CCU ....................................................................................................... 7

    C. Establishing Catalyst Circulation ....................................................................................... 7

    D. CCU Feed Reintroduction: November 24 Day Shift .......................................................... 8

    E. Feed Reintroduction: November 24 Night Shift ................................................................ 9

VI.     Facts ..................................................................................................................................... 10

    A. Sequence of Events .......................................................................................................... 10

    B. Causal Chain .................................................................................................................... 11

    C. Contributing Factors ......................................................................................................... 15

VII.    Root Causes, Contributing Causes, and Recommendations ............................................... 16

VIII.   Review of MRC's Investigation Report and Status of Action Plan ................................... 22

Appendix A: Scope of Work ......................................................................................................... 27

Appendix B: Investigation Team Makeup ..................................................................................... 27

Appendix C: Discussion of Wet Gas Scrubbers vs. Electrostatic Precipitators Functionality During Process Startup Application in Fluid Catalytic Cracking Service ..................................................... 28

Appendix D: Glossary .................................................................................................................... 29

Appendix E: Resolution of Oversight Committee Comments ....................................................... 33

## I.    Foreword

On the night of November 24-25, 2022, the Martinez Refining Company (MRC), which is part of the PBF Energy family of refineries, experienced an incident in which a large amount of catalyst from the Catalytic Cracking Unit (CCU) was released into the City of Martinez, California and surrounding areas. The Contra Costa [County] Health Hazards Materials Programs (CCHHMP) classified this incident as a Community Warning System (CWS) Level 2 or higher incident, which meets the definition of a Major Chemical Accident or Release (MCAR). This investigation was conducted as provided in the Contra Costa County Industrial Safety Ordinance (ISO).[1]

Scott Berger and Associates, LLC was chosen by the MRC Oversight Committee to perform this independent investigation. This report describes the investigation results, including root causes, contributing causes, and human factors. The investigation followed the methodology described in *Guidelines for Investigating Process Safety Incidents*[2]. In performing this investigation, the team relied on both eyewitness and expert testimony of MRC employees, along with documents and data provided by MRC, relevant technical references, and the investigators' experience in the field of process safety.

The investigators believe that the MRC employees interviewed gave true and accurate statements and honest opinions to the best of their abilities, and that employees felt free to provide their input without retribution.

The investigators have confidence that the root causes of the incident described in this report are accurate to the best of their knowledge and experience in engineering and process safety, and that the recommendations are appropriate.

---

[1] Contra Costa County. (2023). § 450-8.016. stationary source safety requirements., Chapter 450-8. risk management, division 450. hazardous materials and wastes, Title 4. health and safety, ordinance code, Contra Costa County. The State of California; Contra Costa County. http://www.contracostaco-ca.elaws.us/code/oc_title4_div450_ch450-8_sec450-8.016

[2] Center for Chemical Process Safety (CCPS), *Guidelines for Investigating Process Safety Incidents* (3rd ed.), AIChE/Wiley, (2019).

## II.  Executive Summary

Shortly after midnight on November 21, 2022, a safety system automatically shut down the MRC CCU due to the failure of control electronics of the Regenerator Air Blower. Repairs were made to the blower and the CCU was brought back online overnight on November 24-25. At about 20:30 on November 24, as the rate of uncracked hydrocarbon feed to the CCU was being returned to normal, the CCU catalyst regenerator vessel (Regenerator) overfilled with catalyst, resulting in a release of catalyst to the City of Martinez, California and surrounding areas. White catalyst powder was found covering horizontal surfaces on the ground and on resident's vehicles and trash cans, southwest, west, and northwest of the refinery. Based on the quantity released (> 20 tons) and the impact to the community, Contra Costa Health Hazardous Materials Programs (CCHHMP) staff identified this incident as a Community Warning System (CWS) Level 2 or higher incident.[3] As a result, it was considered a Major Chemical Accident or Release (MCAR). Based on analysis of samples collected and community complaints, Contra Costa Health Hazards Materials Programs (CCHHMP) staff identified that this incident as a Community Warning System (CWS) Level 2 or higher incident

None of the catalyst fell in the refinery. Refinery personnel were unaware of the release while it was occurring. and only learned of the incident when neighbors reported it the next morning. As catalyst was being released, refinery personnel continued to incrementally increase the rate of feed to the CCU. The release stopped at about 04:00 on November 25, and the start-up was completed at about 06:15. Approximately 24 tons of airborne catalyst powder were released to the community. No injuries or damage to the CCU were experienced with this event. The root causes of this incident and recommendations for addressing them are presented in this report.

## III.  Introduction

A. Objectives

On behalf of the MRC Oversight Committee, CCHHMP hired Scott Berger and Associates, LLC (see Appendix B) to perform an independent root cause analysis incident investigation. This report describes the findings of that investigation and offers recommendations for improving plant operations in the future.

B. Scope and Approach

The scope of this report includes the timeline of events, and causal factors leading up to the release of catalyst. Work was conducted both on-site at the MRC and offsite, and included review of documents and operational data, personnel interviews, and detailed analysis. The reporting of this incident by MRC to Bay Area authorities was specifically excluded from this investigation. Additional details are provided in Appendix A.

C. Report Format

This report describes the process of "cracking" hydrocarbon molecules as the CCU was intended to be operated, the timeline of events leading up to the incident, the root causes, the contributing causes. It identifies gaps in the facility's Process Safety management system along with human factors that contributed to the incident, and offers recommendations to correct these gaps, along

---

[3] See https://cwsalerts.com/about-cws/frequently-asked-questions/

with implementation priorities. This report also provides an evaluation of MRC's investigation report to CCHHMP. The appendices in this report summarize the scope of work, present the investigation team experience, and compare the use of wet gas scrubbers to electrostatic precipitators during process start-up of CCUs.

## IV.    Background

Figure 1 provides an overview of the Catalyst Cracking Unit (CCU) process, the primary focus of this incident. Connected processes mentioned in the figure include the CO Boilers (COBs), the Cracked Gas Plant (CGP), and the Flare Gas Recovery Unit.



**Figure 1:** MRC's Catalytic Cracking Unit

Catalytic cracking was developed and commercialized circa 1940. This technology increases the yield of high-quality products by reducing, or "cracking," larger complex hydrocarbon (HC) molecules[4] into lighter products. Larger HC oils are heated and pumped into the Reactor Riser (RR) where they contact nearly 1300 °F powdered catalyst. In the RR, the larger HC molecules are cracked into smaller molecules such as gasoline, butane, or propane. This reaction also deposits carbon on the catalyst.

---

[4] See glossary entry for "Feed" for more details about hydrocarbon feed to the CCU.

At the top of the RR, cyclonic separators (cyclones) separate the now-spent catalyst from the HC vapor.

The cracked hydrocarbon vapor continues to the Main Fractionator (MF) where liquid products are separated, and the vapor further cooled before being collected in the Overhead Accumulator (OHA). Off-gas from the OHA flows to the Wet Gas Compressor (WGC) which compresses it for processing in the Cracked Gas Plant (CGP). The WGC also functions to regulate the OHA pressure. This in turn controls Reactor pressure and the pressure above the Stripper slide valve (Stripper SV or SSV).

The spent catalyst flows to the Catalyst Stripper, where steam is used to strip HC from the spent catalyst. The SSV maintains a level in the Catalyst Stripper, and then the catalyst flows through that valve, returning to the Regenerator.

The Air Blower provides combustion air to the Regenerator where carbon is burned off the catalyst. This also provides heat to maintain the desired temperature of catalyst flowing to the RR.

The catalyst in the Regenerator is fluidized by the upward flow of air and combustion gases. The catalyst is suspended in a dilute phase near the top of the Regenerator and in a dense phase below. The interface between dilute and dense phases constitutes the "catalyst level." The level indication is calculated from differential pressure (dP) between the bottom and top of the Regenerator.

Regenerator combustion gases (flue gas) entrain fine catalyst (fines). Most of these fines are removed as they pass through the First Stage Cyclones. The catalyst fines fall through the dip leg into the dense phase of the Regenerator. The small quantity of fines remaining in the flue gas continues to the Second Stage cyclones. These and the downstream, external, Third Stage Separator (TSS) and Fourth Stage Separator (FSS) work in a similar manner. Personnel periodically remove catalyst fines from the TSS and FSS for disposal.

If the Regenerator catalyst level is too low, the dip legs lose their seal, allowing catalyst from the dense phase to overload the TSS and FSS. Likewise, if the Regenerator catalyst level is too high, the dip legs become choked, also resulting in catalyst carry-over to the TSS, FSS, and beyond.

The Regenerator pressure is controlled by a pressure control valve, PV-171, routing flue gas to the COBs via the Flue Gas Expander Turbine. Flue gas from the FSS carries the small amount of remaining catalyst fines which are removed by the three (3) Electrostatic Precipitators (ESPs). Each ESP discharges its treated exhaust to atmosphere via an associated COB stack.

## V.   Description of the Incident

A. Prior to the Incident

In 2018, the then-owner of the facility, Shell Oil Products, conducted a process hazard analysis (PHA) of the CCU.[5] Shell's PHA identified a potential process upset scenario involving high-high differential pressure (dP) in the Fourth Stage Separator (FSS) leading to a possible catalyst release. However, they classified the scenario as a consequence severity two (2) according to Shell's five (5) level consequence evaluation scale. Based on Shell's risk decision policy, it was determined that no additional mitigating measures were required.

---

[5] See glossary entry PHA for more information.

In 2022, the current owner of the facility, PBF Energy, conducted a PHA of the Carbon Monoxide Boilers (COBs), a downstream process that receives flue gases from the FSS. That PHA identified a similar potential process upset scenario. Like Shell, MRC classified it as consequence severity two (2), with no additional mitigating measures needed.

As learned from the experience of this release, the consequences of these upset conditions should have been classified as a consequence severity three (3), based on the need to clean-up the released catalyst. If this had been recognized at the time of these PHAs, Shell's and MRC's risk management policies would have led them to implement additional measures to prevent this type of incident.

B. Shut-down of the CCU

At approximately 01:06 on November 21, 2022, an instrument failure within the CCU Air Blower (J-123) triggered a safety system that shut down the CCU and diverted CCU feed away from the Reactor Riser (RR). It also de-energized the Electrostatic Precipitators (ESPs)[6] and performed other safety functions.[7] Shortly after the ESPs were de-energized, the continuous opacity monitors on the COB stacks sounded an alarm indicating high opacity (a reading greater than 4 Ringelmann). It is important to note that while this represented an exceedance of the refinery's air permit condition, the high opacity condition is not the incident being investigated.

Following the CCU shutdown, the Wet Gas Compressor (WGC; J-125) continued to operate. As the quantity of wet gas grew smaller, the WGC total discharge flow control valve (5FC340; WGC spillback valve) automatically opened in an attempt to prevent compressor surge and potential damage to the WGC. Shortly thereafter, this valve was placed in Manual.

C. Establishing Catalyst Circulation

The Air Blower (the equipment that failed, causing the CCU to shut down) was repaired and restarted at around 10:40 on November 21. CCU feed can be reintroduced only after establishing stable catalyst circulation. Before starting catalyst circulation, the Regenerator bed must first be heated with hot air to about 1000 °F. However, the next step, igniting the gas-fired Air Preheater (F-65) was initially unsuccessful. As cooler air flowed through the Regenerator, the catalyst bed temperature continued to drop.

Meanwhile, the WGC operation was unstable, operating at or near surge conditions.[8] At around 11:30 on November 21, personnel opened valves to route propane from storage to the WGC via the Main Fractionator (MF) Overhead Accumulator (OHA). This stabilized WGC operation. Propane continued to flow, gradually reducing refinery propane inventory. Propane flow would not be stopped until much later.

---

[6] The final stage of cleaning CCU flue gases to remove remaining catalyst fines.

[7] See process diagram in Figure 1.

[8] Like all compressors, the Wet Gas Compressor is designed to handle gases with a set range of physical properties. Operating outside this range can damage the compressor, in some cases causing catastrophic failure. Surge is one such condition. It occurs when the molecular weight and density of the gas is too low. In the WGC, the gas being pumped can flow backwards around the turbine blades in an oscillating manner. In severe cases the oscillation can result in severe equipment damage and loss of process containment.

Troubleshooting and repair of the Air Preheater ignitor involved a Production Specialist who had expertise in CCU operation and systems, as well as a deep commitment to the success of the refinery. From the time this Specialist began working on the ignitor until after the incident, this individual followed a pattern of working 22–25 hours, resting at home for a few hours, and then returning to work another similarly long period. This individual served in a key decision-making role during this period.

The Air Preheater ignitor was repaired, and the pre-heater burner was ignited at about 09:00 November 22. Heating the Regenerator bed and establishing catalyst circulation continued until about noon on November 24.

D. CCU Feed Reintroduction: November 24 Day Shift

A step in the startup procedure prior to re-introducing feed to the Reactor Riser (RR) involved placing the Stripper Slide Valve (SSV) in Auto (although it did not explain why). Per the procedure, personnel put the SSV into automatic control mode (Auto) at 04:45 on November 24. Then at 06:29 on the day shift, personnel reverted the SSV to manual control mode (Manual)[9] to address a transient condition that occurred while establishing stable catalyst circulation. After the transient condition was resolved around 07:30, the SSV should have been returned to Auto, but this was not done. Nonetheless, feed reintroduction began shortly after noon on November 24 with the SSV in Manual. The SSV remained in Manual until well into the night shift.

Around the time that feed reintroduction began, the refinery inventory of propane had dropped to a level at which Refinery Logistics was required by refinery policy C(A)-20 to notify operating units of impending low propane inventory. Following this policy, Logistics and CCU personnel evaluated the rate of propane consumption compared to the minimum required inventory. Personnel considered that as feed increases, the CCU would start to make propane and heavier hydrocarbons and ultimately relieve the need for propane to the WGC. Therefore, they decided to continue drawing propane at the same rate. As feed was slowly increased, personnel manually cut back on propane to the OHA, and simultaneously worked the WGC spillback valve closed in Manual. The WGC spillback valve was placed in Auto at 23:10 on November 24. Monitoring and managing the propane inventory and flow to the OHA required additional operator attention.

With the initial reintroduction of feed, a pressure surge occurred. Because the WGC spillback valve was in Manual, it did not automatically respond to the increased pressure. The brief pressure rise automatically opened a pressure control valve from the OHA to the flare system. Normally, two compressors in the flare system would redirect the released gases to a location in the refinery where those gases could be recovered. However, one of the two compressors was down for maintenance, so a portion of those gases were briefly released to the flare. This was the second flaring event experienced by the day shift. The Cracked Gas Plant (CGP), the unit that receives cracked products from the CCU and shares a control console with the CCU, was also opened to flare earlier that day.

---

[9] When starting up a process unit, changing conditions can require personnel to temporarily take manual control (Manual) from time-to-time, because automatic controls (Auto) are tuned preferentially to operate under normal reaction conditions.

E. Feed Reintroduction: November 24 Night Shift

Normally, the feed reintroduction procedure would be conducted by two Console Operators, one focused on operating the Compressed Gas Plant (CGP) while the other focused on the CCU. However, on the night shift, the fatigued Production Specialist took charge of some of the CGP and CCU console operations. This changed the dynamics and situational awareness of operating the CCU console.

When the night shift personnel started their shift at 18:00 on November 24, they found the SSV still in Manual. This reinforced to them a preconception that this valve was sticky and balky. Among the personnel working that evening, there was a general belief that the SSV could be given a series of small manual input changes to valve position without a response, and then the valve would move suddenly, potentially more than desired. The SSV remained in Manual until 23:25.

Between 19:10 and 20:20 on November 24, the SSV remained at 37.0% open. During this period, the dP across the SSV increased from 2.9 to 5.9 psi, significantly increasing the rate of catalyst flowing from the Stripper to the Regenerator. As a result, by 20:07 the Regenerator Catalyst Bed level rose steadily from about 30 feet to above the critical high alarm level of 34 feet, where it remained until 20:57. The high catalyst level overwhelmed the first and second stage cyclones, sending a much higher than normal load of catalyst fines to the third stage separator (TSS) and fourth stage separator (FSS). The FSS high dP alarm sounded at a 20:32, and the high-high alarm sounded at 20:34, indicating that the FSS was too full with catalyst.

Other than for a ten-minute period after midnight around 02:45, the FSS remained at high-high dP until shortly after 04:00 on November 25. During this period, catalyst passed on to the CO Boilers (COBs), from there to the ESPs (that were de-energized[10]), and then out the stack.

It is clear that the rate of release of the catalyst was highest from about 20:32 until at least 20:56 when the Regenerator Catalyst Bed dropped below the critical high alarm level. It is not known at what time the First and Second Stage Cyclones returned to full function. A doorbell camera of a person living near the refinery captured catalyst falling from about 20:40 until about 23:30. Because the FSS remained in high-high dP alarm (and therefore was impaired) until shortly after 04:00 on November 25, the release of catalyst could be expected to have continued until then, albeit at a rate too low to have been detected by the camera. It is expected that the rate of catalyst emission returned to the high opacity condition that existed before the incident. As discussed above, the high opacity condition is not considered part of this incident.

The WGC spillback valve was placed in Auto at 23:10 on November 24 and the SSV was placed in Auto at 23:26. Full feed rate to the RR operation was reached at approximately 06:15 on November 25, and the ESPs were re-energized shortly afterward.

---

[10] The release rate was well in excess of the capacity of the ESPs. Had they been energized, the quantity of catalyst released would have been only somewhat less.

**VI. Facts**

A. Sequence of Events

Table 1 describes the timeline and sequence of events for the catalyst release incident as described in Section V. The key events, shown in **bold**, are discussed further below.

**Table 1:** Sequence of Events

| Day | Time (Approx.) | Event |
|---|---|---|
| 2018, 2022 | | **Related scenarios considered in PHAs. Conclusion: no action required** |
| November 21 | 01:06 | Air Blower Vane Controller tripped; feed diversion; ESP tripped, shut down |
| | Morning | Air Blower Controller repairs began and blower restarted |
| | All day | Air Preheater (F-65) Ignitor problems |
| | 11:01 | WGC Spillback valve placed in Manual |
| November 22 | 09:00 | Air Preheater burner ignited |
| November 24 Day Shift | 01:20 | Catalyst circulation established |
| | 04:45 | Stripper SV partially opened to start catalyst circulation |
| | | Stripper Bed level controller (SSV) placed in Auto mode |
| | 06:29 | **Stripper SV placed in Manual mode** |
| | 07:30 | Condition requiring Stripper SV to be placed in Manual resolved, but Stripper SV not returned to Auto |
| | 08:00 | Delay, Debutanizer bottoms, Cracked Gas Plant (CGP) pressure |
| | 12:15 | Torch oil increased to raise catalyst bed temp to 1100 °F |
| | | Gasoline column depressurizing valve was still open to flare (CGP) |
| | 12:42 | Opened one feed nozzle to RR about 25% |
| | | MF OHA PC to flare (in Auto) opens 1-2 minutes with initial introduction of feed |
| | | Approximately six incremental feed rate increases over 8-1/2 hours |
| | Soon after | **Decision that additional flaring was off-limits** |
| | 12:50 | Open remaining RR feed nozzles to 25% |
| | 13:00 | Apparent time of propane inventory alert |
| | Soon after | Decision to not increase rate at which propane was being drawn |
| November 24 Night Shift | 20:00-20:30 | **Regenerator bed high-high level** |
| | 20:02 | RR outlet temp dropped from 950 °F to 900 °F over five minutes; sour water to the riser cut from 24 to 9 GPM; presumed decrease in wet gas production |
| | 20:03 | **Apparent feed change event continuing until 20:08** |
| | 20:12 | FSS dP dropped (catalyst dumped) |
| | 20:26 | **FSS dP increased rapidly (20 minutes)** |
| | 20:30 | **Fourth Stage Separator (FSS) high-high dP, release began** |
| | 23:00 | WGC spillback flow control valve placed in Auto (already closed at this point) |
| | | Place WGC J-125 Recycle Gas flow controller 5FC-364 valve CV-364 in Auto |
| | 23:30 | SSV placed in Auto; FSS level begins to drop |
| | | Regenerator Air Blower rate adjusted |
| | | **FSS remained at high-high dP three hours, release continued** |
| November 25 | 02:45 - 03:00 | FSS apparently emptied twice |
| | 03:00 - 04:00 | **High-high FSS dP (again)** |
| | 04:00 - 04:15 | **FSS dP returned to normal, catalyst release apparently ended** |
| | 06:15 | CCU began operating stably at full rate; ESP re-energized |

## B. Causal Chain

The causal tree for this incident is shown below (Figure 2). The key links in the causal chain are described in this section.



**Figure 2:** Causal tree of November 24-25, 2022, Catalyst Release Incident

11

**Evaluation of PHA scenarios as "No Action Required":** Long before this incident, two separate process hazards analyses (PHAs) had been conducted. Each considered causes that could lead to catalyst carryover: the Shell Oil Products CCU PHA in 2018, and the MRC/PBF CO Boilers PHA in 2022. Each PHA team identified scenarios with a potential for a severity two (2) environmental consequence (meaning, minor or no lasting environmental effect, a quantity of release requiring agency notification, or short duration remediation). After evaluating the 2022 catalyst release, CCHHMP determined that the event was a Community Warning System (CWS) Level 2 or higher MCAR due to the need to clean up the released catalyst. The Shell and MRC/PBF systems assign a consequence category of 3 if environmental cleanup is required.

**Stripper SV not in Auto for feed re-introduction:** Operating procedures call for the Stripper SV to be placed in Auto before introduction of feed. Additionally, an Engineer had earlier advised personnel not to put the feed in until the SSV was in Auto, not to introduce feed unless the valve could be run in Auto, and if it couldn't be managed then to call out an Instrument Tech. The valve was placed in Auto at 04:45 on November 24 while catalyst circulation was being established. However, at 06:29, together with a procedural step to adjust Regenerator and OHA pressures for correct dP's across the SV's, the Stripper SV was placed in Manual. Process data shows that the condition requiring the Stripper SV to be placed in Manual was resolved by 07:30, at which point it should have been placed back in Auto. However, the SSV remained in Manual until 23:25, well after the release began. Instead of operating in Auto per procedure, personnel manually adjusted the SSV position in response to process conditions.

According to the same Engineer, if the SSV had been in Auto mode according to the procedure, there may have been a brief period in which catalyst circulation stalled, but the regenerator level would not have gone high, and therefore the release would not have occurred.

**Practice of accepting excessive deviation from procedures:** In discussions with MRC's operating and professional personnel, it was learned that the refinery broadly expects Operators to address process problems by using their training to operate the process however they feel necessary to achieve operational objectives. By contrast, good operating practices would define clear expectations on how the process should be operated and what transient changes could be made in the field. Any changes beyond those limits should be evaluated and approved at the appropriate level. MRC personnel investigating this incident focused on personnel operating the SSV too slowly, rather than on the fact that they did not follow either the procedure or the verbal feedback about operating in Auto that were given prior to feed re-introduction.

Procedures exist to drive consistency in performance and to identify the safest way to operate. Therefore, if automatic controls are specified, it is because that is the safest way to operate. Automatic controls are not perfect, though. Sometimes personnel must take manual control. For example, if automatic controls are overreacting or reacting too slowly, manual control would be used to correct the situation. Once the situation is corrected, personnel need to restore automatic control as soon as possible. Or, if the problem with automatic control is more serious, personnel need to bring in an Instrument Technician or Engineer to troubleshoot and correct the problem. And if the procedure needs to be changed during execution, there is a process by which the proposed

"redlined" changes are analyzed and approved by the Process Engineer and possibly others. During this incident, none of these actions occurred.

It's worth noting that the reason for operating the SSV in Auto was not given in the feed reintroduction procedure (CCU-1110), nor in the CCU Unit Console Operator Task Training Workbook Rev. 1. Lacking a specific written basis regarding the rationale for needing the SSV in Auto prior to the introduction of feed, and with a "tribal belief" that the SSV was unreliable ("sticky and balky"), the valve was not returned to Auto prior to the introduction of feed to the RR. It is not known how personnel came to view the SSV as sticky and balky, even though instrument data indicate that it worked adequately. This view was broadly held.

The failure to ensure the SSV was in Auto before introducing feed is a deviation from procedures that had a direct causal link to the incident. Several other deviations from procedures (discussed in section VI.C) served as distractions to personnel and therefore contributed to the incident.

**Inadequate training of personnel:** MRC policy requires that prior to executing infrequently used procedures, personnel must receive "just-in-time training," as specified in a note in the CCU Console operator training workbook[11]. This training is needed to familiarize operators with the challenges they are likely to encounter while executing the procedures and how to respond if those challenges should arise.

Since the publication of version 1.2 of this report, MRC has stated that training on this procedure is included in the refresher training that is conducted every three years (i.e., not "just-in-time" as specified in the training manual). At the time of the catalyst release, the CCU Console was being operated by the Production Specialist and a Shift Supervisor. While the Specialist certainly had deep knowledge of all aspects of CCU operation, that individual did not routinely run the CCU and a corresponding refresher training record for that person was not provided to inform this investigation. The Shift Supervisor became qualified as a CCU console operator in 2018 but subsequently was promoted to Shift Team Leader. That individual's training records were quite extensive but did not document either Just-in Time training or CCU console operator refresher training in the past three years.

**Excessive work hours for key personnel:** For each refinery unit, MRC recognizes key personnel as Specialists due to their experience and deep knowledge. These individuals are highly respected by other refinery personnel and management. Specialists believed that they had to be "superheroes," coming to the rescue to resolve any difficulty that arose in their units.

---

[11] *"Just-In-Time" Training: Any procedure that is used infrequently (would not be expected to be used at least once a year) will be trained "just-in-time." Just-in-time training is usually associated with operating procedures that are used for special events like normal startups & normal shutdowns for scheduled turnarounds, temporary operations, non-routine tasks, non-routine maintenance events, project work, etc. Just-in-time training would only be required for those individuals that would be involved in the execution of the procedure. Any operator using a procedure that requires just-in-time training will be trained to a Skill Level (as described above) to assure the operator 1) understands their responsibilities with the procedure and 2) can safely execute the procedure as written prior to starting the procedure activities.*

When the initial Air Blower trip occurred, a CCU production specialist began working extremely long hours. Each day, the specialist worked 22–25 hours straight, went home for a short rest, then worked another 22–25 hours, repeating this pattern until the CCU reintroduction of feed process was complete. The specialist's excessive hours in performing the safety-sensitive work would have been against refinery fatigue policy G(A)-34[12], but it applied only to hourly personnel. Additionally, the policy focuses more on equalizing overtime than on fatigue management.

On the night shift of November 24, this individual decided to work the control board alongside the two personnel required to perform the feed reintroduction procedure. Including an additional person as a console operator blurred console responsibilities, contributing to the temporarily overlooked FSS high-high dP alarm. The Production Specialist operated the controls for the WGC, leaving the rest of the CCU to another individual. The Production Specialist directed this other Operator to avoid flaring and not ask for additional propane for the WGC. The Specialist also reinforced that the SSV should be kept in Manual and moved in small increments. Later, when the Operator realized that they had missed the FSS high-high dP alarm, the Specialist told them they hadn't missed it, when they clearly had.[13]

The excessive work hours of this individual between November 21 and 24 was not unique to this individual. In discussing this situation with a MRC representative, it was disclosed that after the catalyst release incident, refinery leadership intervened to prevent another refinery specialist from working excessive hours. As described by this representative, this second specialist was reported to have taken this intervention as a criticism.

There are several reasons why the Production Specialist may have deviated so far from operating procedure and didn't heed the Engineer's advice to keep the SSV in Auto and contact the instrument technician if it could not be run that way. Fatigue played a role in these decisions. That fatigue resulted from the specialist's perception of needing to personally be involved in resolving every difficulty. In addition to fatigue, the Production Specialist was faced with multiple distractions due to the concurrent operational changes. Meanwhile, although they were tasked with performing complex, non-routine start-up procedures, neither was a regular Console Operator. And finally, there are no records that the Specialist (or the other Console Operators) completed the required just-in-time training. It would be appropriate, in the face of these factors, to have paused reintroduction of

---

[12] The Refinery Scheduling and Hours of Service Limits Policy G(A)-34 (referred to here as the fatigue policy policy), places strict limits on working more than 14 hours consecutively and limits unavoidable workdays longer than 18 hours. The fatigue policy is informed by Recommended Practice (RP) 755, published by the American Petroleum Institute (API) to help companies avoid having workers whose abilities and judgements are compromised by fatigue. However, API RP 755 specifically prohibits greater than 18 consecutive work hours, while MRC's G(A)-34 does not.

[13] Note that when an alarm sounds, the console operator can silence the alarm. The alarm notification remains on the alarm screen until the alarm condition is corrected. The alarm will not sound again unless the condition is corrected and then re-occurs.

the feed. The implementation of the refinery stop-work authority policy (or other policy that would address such a situation)[14] did not consider difficulties in running the process in the way intended.

C. Contributing Factors

**Distractions:** Four deviations from procedures occurred that, although not strictly causes of the catalyst release, occupied personnel's attention, slowing or delaying the manual adjustments to SSV position needed to prevent the release.

- *Operating the WGC spillback valve in manual*: Evaluation has shown that the WGC should have been run in Auto mode, requiring less attention from personnel. The procedure called for the WGC to be run in Auto from the beginning of feed reintroduction. However, this didn't happen until approximately 23:00, 2.5 hours into the catalyst release. It appears that the decision to remain in Manual mode was influenced, at least in part, by the call from Refinery Logistics regarding low propane inventory. That call, in turn, was premature in view of the slow and decreasing consumption of propane by the WGC.
- *Decision that flaring was off-limits*: The flare system is a critical safety system for relieving excessive pressure excursions in the Reactor and MF systems. No Operator wants to rely solely on the activation of a critical safety system to prevent an incident. This is especially true when that critical safety system is a flare (a release of gas) that irks members of the local community. However, operating the controls with the specific aim of avoiding flaring is contrary to procedures and is an added distraction to personnel.
- *Sticky Regenerator Slide Valve*: While this valve rarely needed to be moved, it required periodic adjustment during start-up, and would sometimes stick, requiring operator attention.
- *Coordination with the CGP and MF start-up*: These units tied to the CCU were experiencing additional operational difficulties.

**Engineering design**: Two engineering designs common to other refinery's CCUs may have helped MRC avoid the incident:

- *Cascade control of the Reactor/Regenerator dP to the Regenerator Pressure Controller*: In MRC's CCU, operators manage this dP by changing the Regenerator pressure setpoint. In similar refineries, the Regenerator pressure control valve setpoint is determined in Cascade[15] from the Reactor/Regenerator dP indication, helping to more consistently control the SSV dP. In 2018, then-owner Shell had planned to implement this control system upgrade during the CCU turnaround, but ultimately decided not to do so.
- *Direct measurement and control of Reactor feed rate during feed reintroduction*: MRC measures the feed rate to the reactor with a flow meter and controller located upstream of the point of feed diversion. As a result, as feed begins to be introduced, an unknown fraction of the measured flow rate goes to the Reactor, while the rest remains diverted. Without a measurement of flow rate

---

[14] Feedback received from MRC following report version 1.2 indicates that this scenario would have been covered by a different policy than their Stop Work Policy. Nonetheless, it would have been appropriate to stop/pause work at this time, and that policy, or implementation thereof, did not lead to that decision.

[15] Cascading is a control scheme in which the setpoint for an automatic control is derived from another process variable. As that process variable changes, the controller setpoint automatically adjusts.

during feed reintroduction, it is possible for a larger than intended increment of feed to be introduced. Indirect evidence indicates this may have happened in the 20:00–20:30 time frame, providing personnel with an added challenge in controlling dP and Regenerator level. This was not a causal factor for the catalyst release, however, because if the SSV had been in Auto, it would have responded adequately.

**The Holiday:** November 24, 2022, was Thanksgiving. While MRC personnel stated that holidays were like any other operating day, this was clearly not the case. Instead of console operators, a Shift Supervisor and a Production Specialist were operating the CCU. MRC personnel denied that personnel were reluctant to call an Instrument Technician or Process Engineer for support when the incident started because of the holiday, but such reluctance would be understandable.

## VII.  Root Causes, Contributing Causes, and Recommendations

This section summarizes the root causes and contributing causes of the incident and the supporting evidence for these classifications. It also puts forward recommendations regarding safer operations in the future and the priority for addressing these recommendations.

Root and contributing causes are identified in four categories, pertaining to the Process Safety management system (MS), to Engineering Design (ED), or to human factors (HF). Table 2 lists the root causes of the incident along with recommendations for MRC. Table 3 lists the contributing causes, also with recommendations for MRC. Additional recommendations for MRC and for CCHHMD follow the tables.

A priority is suggested for each recommendation, as follows:

- Short term (ST): A recommendation that should be addressed as soon as possible
- Routine (R): A short term recommendation that should be repeated regularly so that the refinery continues to follow the recommendation over time.
- Long range (LR): A recommendation in which work should be started in the short term but can be expected to take time to implement across the refinery
- Next Turnaround (NT): A recommendation which should be addressed as part of the next CCU unit turnaround.

**Table 2:** Root Causes and Recommendations for MRC

| # | Type[16] | Root Cause | Evidence | Recommendations | Priority[17] |
|---|---|---|---|---|---|
| 1 | MS | The PHA system did not provide adequate guidance concerning how catalyst releases affect the community. | PHA scenarios evaluated in the 2018 CCU PHA and the 2022 COB PHA related to this incident were classified as consequence severity two (2), rather than consequence severity three (3); as a result, additional mitigation measures were not recommended. | a. Clarify scenario consequence assessment guidance in corporate risk assessment policy to provide more accurate guidance regarding environmental consequences of catalyst releases. | ST |
| | | | | b. Review relevant refinery PHAs for similar scenarios where environmental consequences of PHA scenarios may be underestimated. | ST |
| 2 | MS | MRC's policies/programs did not lead workers to pause to re-evaluate work instructions when pre-planned conditions changed (lack of situational awareness, gap(s) in Stop Work or other appropriate policy/program did not address). | MRC proceeded with non-normal startup:<br>• on a holiday<br>• with technical personnel who are not normally console operators<br>• some of whom didn't complete required just-in-time training<br>• while operating multiple dynamic process conditions in manual control<br>• with multiple operational challenges and while executing a complex, non-routine procedure<br>• with highly fatigued key personnel<br>• while addressing other distracting and challenging factors | a. Add consideration of situational factors to Pre-startup Safety Review/Prepare to Operate instructions in refinery start-up procedures. | ST, R |
| | | | | b. Update stop-work policy/program or other appropriate policy/program and associated training to include evaluation of complex situations in non-routine work. | ST, R |

---

[16] ED = Engineering Design, MS = Management System
[17] LR = Long range effort which should start soon but can be expected to continue, NT = Next Turnaround, R = Routine, ST = Short Term

**Table 2 (Continued):** Root Causes and Recommendations for MRC

| # | Type[18] | Root Cause | Evidence | Recommendations | Priority[19] |
|---|---|---|---|---|---|
| 3 | MS | A practice existed of deviating from written procedures without managing ad-hoc changes (i.e., making "redline" field changes which include review and approvals). | • MRC's MCAR investigation focused on adequate control of SSV in Manual, instead of why SSV was operated in Manual when the procedure and training said it should be in Auto.<br>• Procedure also was not followed for WGC control and feed reintroduction. | a. Review and revise the site procedure for managing operating procedure changes made during procedure execution (i.e., "field changes") as needed to ensure that the means for 'redlining' changes, ad-hoc review, approvals, and training for subsequent shifts are addressed.<br>b. Affected personnel are educated as needed for compliance.<br>c. That the system provides prompt review and revision of executed procedures to incorporate approved changes.<br>d. That the system includes metrics which provide management oversight of adherence to written procedures. | ST |
| 4 | MS | The operating procedure development and change system failed to adequately ensure that cautionary statements in the startup procedure were adequate. | The operating procedure to Startup from Unplanned Feed Outages (CCU-1110) did not address the rationale and importance of operating the SSV in Auto during feed introduction to prevent high regenerator catalyst level. | a. In the operating procedure development and change system, review criteria for the use of cautionary statements prior to critical procedural steps. Revise the procedure review checklist to confirm that cautionary statements are included when appropriate.<br>b. Update operating procedure CCU-1110 to include a caution statement explaining the rationale for ensuring that the SSV is in Auto mode when feed is introduced to the RR. | ST<br><br>ST |

---

[18] ED = Engineering Design, MS = Management System
[19] LR = Long range effort which should start soon but can be expected to continue, NT = Next Turnaround, R = Routine, ST = Short Term

**Table 2 (Continued):** Root Causes and Recommendations for MRC

| # | Type[20] | Root Cause | Evidence | Recommendations | Priority[21] |
|---|---|---|---|---|---|
| 5 | MS | Gaps in training program: Either the training program did not ensure that just-in-time training was being completed as prescribed, or gaps in CCU console operator refresher training. | • There is no record to document completion of just-in-time training on an infrequently used procedure (CCU-1110) by personnel involved with performing the procedure.<br>• There is no record of 3-year refresher training for individuals running the CCU on the 11/24 night shift | a. As appropriate, modify the training management system to ensure that "just-in-time" training for this and other relevant procedures is conducted (per the CCU Unit Console Operator Task Training Workbook and other refinery task training workbooks,) or to ensure that 3-year refresher training is provided to all personnel who will operate relevant processes.<br>b. Correct or clarify the text referring to Just-in-Time training in the CCU Console Operator Training Manual, if appropriate. | ST |
| 6 | MS | The operator training system did not include rationale for process alarms which could lead to a process safety event without proper operator response. | • The CCU Console Operator Task Training Workbook did not address the following:<br>  ○ The rationale and importance of maintaining the regenerator catalyst bed level below 30 feet<br>  ○ The rationale and importance for the high-high dP alarm on the FSS, particularly when the ESPs are de-energized.<br>• Personnel involved in starting up the CCU did not recognize the potential catalyst release as serious; thus, they were merely dealing with the symptom of high-high dP on FSS. | Develop or update the criteria for operator training and conduct a review of materials to ensure that the basis for each alarm involved as a safeguard in process PHA scenarios is included in the training materials. | LR |

---

[20] ED = Engineering Design, MS = Management System
[21] LR = Long range effort which should start soon but can be expected to continue, NT = Next Turnaround, R = Routine, ST = Short Term

**Table 2 (Continued):** Root Causes and Recommendations for MRC

| # | Type[22] | Root Cause | Evidence | Recommendations | Priority[23] |
|---|---|---|---|---|---|
| 7 | MS | The operator training system did not include the information needed to understand how instruments fail, simple troubleshooting methods, and when to call an instrument technician. | Personnel involved in starting up the CCU incorrectly believed the SSV (and other instruments) to be sticky and balky yet did not call out an instrument technician to resolve the balky valve. | Standardize the approach for response to malfunctioning instrumentation and educate affected operations personnel. Address basic types of instruments, how they malfunction, simple troubleshooting methods, instrument criticality, when to ask for instrument technician assistance. Include a reference to the MRC program for bypassing a safety device. | ST |
| 8 | MS | The site policy for managing fatigue does not include salaried personnel performing safety sensitive work. | • The intent of the fatigue policy is to "distribute overtime as equally and as reasonably practical among eligible employees while remaining in compliance with company and legal requirements limiting hours of service."<br>• The fatigue policy does not apply to non-hourly personnel, even for safety-sensitive work.<br>• A non-hourly individual working the CCU console during startup worked significantly more than fatigue management requirements prescribed in the fatigue and scheduling policy.<br>• The non-hourly individual's excessively long shifts continued unchallenged throughout the incident. | a. Modify the fatigue and scheduling policy to include both all hourly and all salaried personnel performing safety-sensitive activities. | ST |
| | | | | b. Educate affected individuals who weren't previously covered by the policy. | ST |
| | | | | c. Provide leadership oversight of fatigue policy, supported by relevant metrics. | ST |

---

[22] ED = Engineering Design, MS = Management System
[23] LR = Long range effort which should start soon but can be expected to continue, NT = Next Turnaround, R = Routine, ST = Short Term

**Table 3**: Contributing Causes and Recommendations for MRC

| # | Type[24] | Contributing Cause | Evidence | Recommendations | Priority[25] |
|---|---|---|---|---|---|
| 1 | ED | Personnel had difficulty managing the dP between the Reactor and the Regenerator during CCU startup. | This contributing cause is documented in operational data from startup performed in November 2022. | Consider upgrading the control scheme of Reactor/Regenerator dP to Cascade control of the Regenerator pressure setpoint. | NT |
| 2 | ED | Lack of flow indication of feed to the RR increased the difficulty of managing the WGC suction pressure / Reactor pressure / SSV dP. | This contributing cause is documented in operational data from startup performed in November 2022. | Consider adding a flow meter to inform operators of actual feed flow rate to the RR. | NT |

---

[24] ED = Engineering Design, MS = Management System

[25] LR = Long range effort which should start soon but can be expected to continue, NT = Next Turnaround, R = Routine, ST = Short Term

Additional Recommendations to MRC

The system that MRC used to manage fatigue, Policy G(A)-34, did not specify how to monitor performance of a fatigued individual, or the means to ensure that performance was monitored. The exceedance form reviewed in this investigation merely indicated "Increased monitoring," and there was no means of indicating that this was done. The following changes to this policy are recommended:

- Update Attachment B, *Critical Exceedance Form* for fatigue management, to clearly identify the nature of the exceedance.
- Specify in the policy specific management actions to be used monitor the performance of the fatigued individual to prevent mishap.
- Require documentation that the required management actions were conducted.

**VIII. Review of MRC's Investigation Report and Status of Action Plan**

MRC delivered their investigation report to CCHHMP on February 3, 2023. In the report MRC, identified two root causes and one contributing factor, along with a Human Factors analysis, and presented eleven corrective actions. In this section the MRC report is reviewed, taking into account the information assembled through the independent investigation. MRC also included in their report an analysis of their incident reporting. MRC's reporting of this incident was outside the scope of this independent investigation and therefore is not discussed here.

In general, this investigation found that MRC's MCAR investigation did not identify root causes. That is, MRC did not identify the management system gaps or failures. While the corrective measures described by MRC were generally in the right areas, their failure to identify root causes resulted in proposed corrective measures that fell short of correcting the management system gaps.

**MRC's Root Cause 1**[26]: *As the Reactor pressure increased, the set point changes to Regenerator pressure control valve PV-171 were being made manually and did not effectively offset the increased Reactor pressure and the resulting flow of catalyst from the Reactor and Stripper into the Regenerator.*

Analysis: The result of this investigation shows that manual adjustment of control valve PV-171 may have been a contributing cause. If this valve's control system had been designed according to common industry practice and operated in the appropriate mode, it would have helped prevent the incident.

**MRC's Root Cause 2**: *As the Regenerator catalyst bed level increased, the changes to the position of the Stripper slide valve were being made manually and were insufficient to prevent the Regenerator catalyst bed level from continuing to increase.*

Analysis: This investigation found that the Stripper slide valve was supposed to have been placed in Automatic prior to the first reintroduction of feed. However, it remained in Manual in the time leading up to the incident and for several hours into it. If it had been operated in Automatic, the incident would not have occurred. Therefore, while it may have been possible for personnel to have made

---

[26] This and the other root causes, contributing causes, and human factors were excerpted from MRC's MCAR report.

more aggressive changes to the valve position to control Regenerator catalyst bed level, the root cause was the deviation from the procedure by not operating the valve in Auto.

**MRC's Contributing factor**: *During the re-introduction of feed to the CCU, the Wet Gas Compressor (WGC) was near surge conditions and required the injection of propane into the Main Fractionator (MF) Overhead Accumulator to increase the molecular weight of the gas and prevent flaring. The MF overhead pressure, which ultimately controls the Reactor pressure, could not be reduced to help balance Reactor and Regenerator pressures because of low propane inventory in the refinery.*

Analysis: The result of this investigation showed that the propane situation may have been somewhat of a distraction to operating personnel.

**MRC's Human Factor Analysis**: *This analysis [MRC's's MCAR Report] revealed two (2) instances in which MRC personnel did not comply with refinery policy and procedure during the incident. First, there was a deviation from the refinery's Work Schedule Expectations for Staff (Exempt and Non-Exempt) policy regarding an individual who exceeded his hours limitation. Second, some End of Shift Reports were not properly completed pursuant to the refinery's Roles and Responsibilities SOSO procedure.*

*However, it was concluded that these deviations do not appear to have directly contributed to the root causes of the incident because the individual who exceeded his hours limitation was not directly involved in the pressure and catalyst bed regulations discussed above.*

Analysis: This investigation determined that one worker was so far in excess of hours-of-service requirements that it was almost inevitable that bad decisions would be made. This worker did not have direct control over the SSV but sat next to and was a significant influence on the worker operating those controls. This individual was in a role that was not covered by the refinery fatigue policy G(A)-34. As such, this investigation found root causes in the refinery's Work Schedule Expectations for Staff policy.

The absence of end of shift reports was confirmed in this investigation. While it does not appear to have been a root cause, the lack of reports hindered the investigation and represents a lack of operational discipline that may carry into other activities.

**MRC's Corrective Action No. 1:** *Based on the learnings from this incident, develop a control strategy for automating the differential pressure control between the Regenerator and Reactor during startup and feed re-introduction.*

Analysis: The control strategy envisioned by MRC for this scenario would bring MRC's CCU up to date with common industry practice. If the update control strategy from this corrective action had previously been implemented, it would have helped prevent this incident.

Status of MRC's Action: As of July 31, 2023, MRC had developed the strategy, and plans to implement it during the 2025 turnaround. It was also learned that this modification was planned by Shell for the 2018 turnaround but was deferred for economic reasons.

**MRC's Corrective Action No. 2:** *Based on the learnings from this incident, CCU Operator alarm actions for Regenerator/Reactor differential pressure and Regenerator catalyst bed level will be updated to provide additional alarms and response guidance to MRC personnel in the event of such alarms.*

Analysis: This investigation recommends providing additional response guidance for alarms, especially the FSS high-high dP alarm.

23

<u>Status of MRC's Action:</u> As of July 31, 2023, MRC stated that the response guidance for these alarms had been added to the console.

**MRC's Corrective Action No. 3:** *Based on the learnings from this incident, develop additional operator training on steps to take to address high Reactor/Regenerator differential pressure as well as high or low Regenerator catalyst bed level.*

<u>Analysis</u>: As described in section VI.B., this investigation found that MRC had a practice of deviating from procedures. MRC's Corrective Action No. 3 supports that finding. While this finding is necessary, it is more important to reinforce through training the importance of following procedures, the need to return controls to Auto after correcting process deviations in Manual, and the need to evaluate and approve redline changes to procedures.

<u>Status of MRC's Action:</u> As of July 31, 2023, MRC stated that the training materials were developed. As of November 13, 2023, training was in progress.

**MRC Corrective Action No. 4:** *Based on the learnings from this incident, modify Operating Procedure CCU-1110 and other relevant procedures to provide additional instructions on when to put the Stripper slide valve into level control to regulate the flow of catalyst to the Regenerator.*

<u>Analysis</u>: The procedure as it existed on November 24, 2022, did specify when to put the SSV into level control. It was learned in this investigation that Corrective Action No. 4. was intended to mean that additional explanation of the rationale for placing the SSV in Auto level control should be provided in the procedure. This is consistent with Root Cause 4 of this investigation, which also recommends a broader evaluation of procedures across the refinery to review, and if necessary, define criteria for when cautionary statements are required.

<u>Status of MRC's Action:</u> As of July 31, 2023, MRC stated that warnings were added to procedure CCU-1110, with the added requirement that if the SSV cannot be put in Auto, approval of either of two (2) supervisors was required to run in Manual.

**MRC Corrective Action No. 5:** *Based on the learnings from this incident, evaluate options to increase the molecular weight of wet gas sent to the WGC during CCU startup and feed re-introduction.*

<u>Analysis</u>: This is a worthwhile option to consider for various operational reasons. However, this investigation concluded that propane limitation did not affect WGC operation during this incident, other than through being an added distraction.

<u>Status of MRC's Action:</u> As of July 31, 2023, MRC stated that the inventory requirements of procedure C(A)-20 had been updated. As of November 13, 2023, a strategy for using butane as an alternative to propane was in the engineering evaluation stage.

**MRC Corrective Action No. 6:** *Based on the learnings from this incident, reiterate to MRC personnel the expectations and requirements to comply with the refinery's Work Schedule Expectations for Staff (Exempt and Non-Exempt) policy.*

<u>Analysis</u>: This investigation concluded that the refinery fatigue policy addressed only hourly workers, even though some salaried workers do perform safety-sensitive work, such as occurred in this incident. Root Cause 8 of this investigation provides deeper recommendations, one of which is covered in MRC Corrective Action No. 8.

24

Status of MRC's Action: As of July 31, 2023, MRC stated that the policy was updated. As of November 13, 2023, training was being implemented.

**MRC Corrective Action No. 7:** *Based on the learnings from this incident, reiterate to MRC personnel the expectations and requirements to complete End of Shift Reports and audit to ensure compliance with the refinery's Roles and Responsibilities SOSO [sic: Start of shift operations] procedure.*

Analysis: This certainly should have been happening, and the missing day shift report made this investigation more challenging. While the missing report did not appear to have a direct or indirect impact on this incident, it reflects a potential issue that should be addressed, for example by management tracking the metrics related to End of Shift Reports.

Status of MRC's Action: As of July 31, 2023, MRC stated that this had been reiterated to personnel and that a new required learning module on this topic had been implemented.

**MRC Corrective Action No. 8:** *Based on the learnings from this incident, develop additional tools to increase the effectiveness of oversight of staff employee work schedules and fatigue management.*

Analysis: This corrective action goes hand-in-hand with MRC Correction No. 6 and this investigation's Root Cause 8. Having better tools is helpful, but the tools must be routinely used by refinery leadership to manage compliance with the fatigue management policy.

Status of MRC's Action: As of July 31, 2023, MRC stated that the reporting tool had been implemented.

**MRC Corrective Action No. 9:** *Based on the learnings from this incident, add an indication of the CCU FSS pressure differential to the Utilities Console with the appropriate alarm and response guidance to MRC personnel to better assess the potential for release.*

Analysis: This would help increase awareness of a potential catalyst release. Additionally, actions for CCU operations personnel to take when this alarm sounds on the CCU Console should be defined.

Status of MRC's Action: As of July 31, 2023, MRC stated that the indication had been added.

**MRC Corrective Action No. 10:** *Based on the learnings from this incident, update the MRC community monitoring procedures to include activation and MRC personnel response for defined opacity events.*

Analysis: This investigation concluded that the high-high dP condition in the fourth stage separator should be one trigger for community monitoring.

Status of MRC's Action: As of July 31, 2023, MRC stated that the procedure was updated. A copy of the updated procedure was provided to the investigators and verified on November 13, 2023.

**MRC Corrective Action No. 11:** *Based on the learnings from this incident, evaluate Operating Procedure CCU-1110 and other relevant procedures to determine if the ESPs can be safely activated in the CCU startup process.*

Analysis: Even if MRC's ESPs had been operating at the time of the incident, the quantity of catalyst released would not have been substantially reduced. Furthermore, because of the 2006 Shell-affiliated FCC Unit incident and the 2015 ExxonMobil Torrance incident, both of which involved HC flowing into an ESP during shutdown/startup and resulting in explosions, the refining industry has determined that it is important to deactivate ESPs during shutdown and startup procedures to preventing similar incidents.

<u>Status of MRC's Action:</u> As of July 31, 2023, MRC concluded that it was important to continue following industry guidance, which continues to recommend against this.

**Appendix A: Scope of Work**

The focus of this report is the events leading up to the release of catalyst (in the form of a white powder) into the City of Martinez sometime between 20:00 on November 24, 2022, and 04:00 on November 25, 2022. Within the refinery, the scope includes the CCU, the COB unit, and the bulk propane storage facility, as well as the oversight and support functions for these units located elsewhere in the refinery.

The scope of this investigation excluded reporting by MRC of the release of catalyst to the relevant agencies, as this is being handled via other channels.

The information and conclusions described in this report were obtained through:

- Review and analysis of documents and data provided by the refinery
- Interviews of employees directly running the CCU at that time
- Interviews of other refinery employees who oversaw or supported CCU operations
- Experience in Process Safety and refinery operations of the investigators

Most of the interviews were conducted on the MRC site, in the presence of the refinery attorney and outside counsel representing the individuals being interviewed. Nonetheless, the scope of this investigation focused on identifying causes related to Process Safety management systems and intentionally avoided assigning blame to any individual.

**Appendix B: Investigation Team Makeup**

The independent investigation team included Scott Berger, President of Scott Berger and Associates, LLC. Working with Tim Mullowney, Founder of Petrochor, LLC under subcontract. Their distribution of labor during the investigation is shown in table 4.

**Table 4:** Investigation Team Members and Roles

| Role | Performed by |
|---|---|
| Team Leader | Scott Berger |
| FCC Process Operator | Tim Mullowney |
| FCC Technology Expert | Tim Mullowney |
| Process Engineer | Scott Berger |
| Process Safety Specialists | Both |
| Human Factors Specialists | Both |
| Mechanical Integrity Specialist | Tim Mullowney |

Scott Berger, CCPSC has forty-five years of experience in process safety, environment, health, and safety (EHS) management, chemical engineering, chemical manufacturing, process engineering, and human factors. Since 2015 he has worked as a consultant in process safety with focus on process safety leadership, process safety management systems, training for basic process safety competency, incident investigation, and litigation support. During this period, he also co-authored three books on process safety for the Center for Chemical Process Safety (CCPS), *Driving Process Safety Improvement from Investigated Incidents, Process Safety Leadership from the Boardroom to the Frontline,* and *Essential Practices for Creating, Strengthening, and Sustaining Process Safety Culture.*

From 2001 to 2015 he served as Executive Director of CCPS. He is a CCPS-Certified process safety professional (CCPSC), a Fellow of the American Institute of Chemical Engineers, and a Fellow of the Center for Chemical Process Safety.

Tim Mullowney has more than thirty-five years of broad experience in oil and gas, production, refining, and process safety. Following twelve years operating a Fluidic Catalytic Cracking unit (console and field) and other processes, Tim worked in the Mechanical Integrity / Reliability group, and for three years was responsible for the site Incident Investigation program where he began leading major investigations. His final roles at Phillips 66 were in the corporate HSE group where he was Process Safety Director and Senior Process Safety Consultant, roles which included responsibility for the global refining incident investigation program.

He founded Petrochor, an independent process safety consulting firm, in 2017. His practice includes development of process safety management systems for refining companies, providing a variety of process safety competency trainings, risk assessments, and incident investigations.

**Appendix C: Discussion of Wet Gas Scrubbers vs. Electrostatic Precipitators Functionality During Process Startup Application in Fluid Catalytic Cracking Service**

Electrostatic precipitators (ESPs) have become a common tool for preventing the emission of any catalyst fines that have not already been removed and recovered by the cyclones and separators used to clean CCU Regenerator flue gas. In general, ESPs work well and are quite reliable. The primary challenge of operating any ESP is to prevent flammable vapors from flowing to them, because these vapors are a potential source of ignition. It is also important to keep flammable vapors out of the Regenerator; the measures that accomplish this also keep flammables out of the ESP.

The ExxonMobil Torrance ESP explosion in 2015 demonstrated how some abnormal, upset conditions can lead to hydrocarbon vapors reaching the ESP and causing an explosion. Learning from Torrance, companies across the industry now provide for automatic de-energizing of ESPs during upsets. Feed diversion, such as occurred at MRC on November 21, 2022, is one example of how this works. Refineries do not re-energize their ESPs until the CCU is back to full, stable operation.

An alternative to the use of ESPs for controlling catalyst emissions, is to install wet scrubbers. Like ESPs, wet scrubbers are designed to remove catalyst fines at the rate of pounds per hour. These have the advantage of not providing an ignition source, and therefore can be left running during times when ESPs cannot. A properly designed wet scrubber system would prevent the high opacity condition that occurs during times the ESP has to be de-energized. Wet scrubbers are used in a few refineries, but they have several potential drawbacks. They occupy a large footprint, so many refineries don't have space in which to locate them. They also can be large consumers of water, which is in limited supply in many areas.

More importantly, a wet scrubber designed to handle the same emission load as an ESP (pounds per hour) would be equally ineffective in addressing the overload conditions (many tons per hour) experienced in this incident. As noted earlier in this report, even if MRC's ESP had been in service during the catalyst release event on November 24-25, 2022, the release would have overwhelmed the ESP's capacity. Similarly, if MRC had been using a wet scrubber instead of an ESP during the November 24 incident, the wet scrubber would also have been overwhelmed, and the quantity of release would have been reduced only slightly.

**Appendix D: Glossary**

| Term | Definition |
|------|-----------|
| AIChE | American Institute of Chemical Engineers. |
| API | American Petroleum Institute; a trade and standards organization supporting the petroleum industry. |
| Automatic (Auto) | A control mode where a component (e.g., a valve) is automatically adjusted to maintain a process parameter (e.g., a level) at a set value. |
| C(A)-20 | A policy of MRC that controls minimum and maximum inventory levels of products, by-products, and intermediates. |
| Cascade | A control mode in which a controller set point is obtained based on some other process variable or condition. |
| Causal factors | A factor that contributed to the incident, and that, if eliminated, would have prevented the incident or reduced its severity or probability. |
| Causal Tree | A diagram used to determine root causes; in general, causes lower in the tree drive events higher in the tree, leading to the incident (top event). |
| Catalyst | For the CCU process, a proprietary material that facilitates the chemical reactions that "crack" large hydrocarbon molecules into smaller ones. |
| Catalyst Stripper | A section of the CCU Converter where hydrocarbon is removed from catalyst with steam. |
| CCHHMP | Contra Costa Health Hazards Materials Programs. |
| CCPS | Center for Chemical Process Safety; a global technical organization operated by AIChE that supports the petroleum, chemical, and related industries with guidance and training for managing Process Safety. |
| CCU | Catalytic Cracking Unit; a grouping of refinery equipment that converts (cracks) high molecular weight hydrocarbons into hydrocarbons with lower molecular weight. |
| CCU-1110 | The procedure used by MRC to re-introduce feed to the CCU. |
| COB | CO Boiler; a boiler in which carbon monoxide in the Regenerator flue gas is oxidized to carbon dioxide, reducing the toxicity of CCU emissions and producing heat that is used to generate steam. |
| Console | A group of computer screens and keyboards used to control the process and monitor process conditions and alarms. |
| Contributing cause | A factor that contributed to the incident. |
| CWS | Community Warning System, an all-hazards community notification system of Contra Costa County, intended to alert residents about any potential health hazards and emergencies that may be occurring. |

| Term | Definition |
|------|-----------|
| Cyclone | A conical device that separates particles from air streams by a swirling action that pushes the particles to the wall and then down to the bottom of the cone, while cleaner air exits the top. |
| Day shift | Work hours starting 06:00 and ending 18:00. |
| dP | Differential pressure; the difference between the pressures as measured at two different points. |
| ESP | Electrostatic Precipitator; a pollution control device that uses static electricity to remove small particles from process exhausts. |
| Feed | Feed of uncracked hydrocarbon to the CCU. Various uncracked hydrocarbon streams may be fed, depending on production needs. These may include flashed distillates, light, heavy and extra heavy gas oils, and diesel hydrotreater products |
| Fines | Particles of catalyst that are much smaller than the average particle size. |
| Flare | A device in which emergency hydrocarbon releases from refinery processes are safely burned in a controlled fashion, generally at a high elevation and far away from occupied areas. |
| Flue Gas | Combustion gases from the Regenerator. |
| FSS | Fourth Stage Separator; the fourth stage in a series of devices that remove catalyst fines from the flue gases of the Regenerator. |
| G(A)-34 | MRC's "Scheduling and Hours of Service Limits Policy." The policy by which MRC manages worker fatigue (fatigue policy). |
| GPM | Gallons per minute. |
| HC | Hydrocarbons; chemicals made up of carbon and hydrogen. |
| Hot standby | A phase of CCU operation where feed is diverted, either with or without catalyst circulation. |
| Human factors | The evaluation of how people interact with equipment, controls, and their work environment. |
| ISO | The Industrial Safety Ordinance of Contra Costa County. |
| Management system | Policies, procedures and standards that describe how specific functions are to be carried out, performance is verified, and performance is improved. |
| Manual | A control mode in which control devices (e.g., valves) respond only to operator input. |
| MCAR | Major Chemical Accident or Release, as defined by CCHHMP. |
| MF | Main Fractionator; the column that receives product from the Reactor. |
| MRC | Martinez Refining Company, a unit of PBF Energy. |

30

| Term | Definition |
|---|---|
| MW | Molecular weight. |
| NDA | Non-disclosure agreement; an agreement binding two parties to protect each other's confidential business information. |
| Night shift | Work hours starting 18:00 on one day and ending 06:00 the next day. |
| OHA | Overhead Accumulator; a tank which receives the two-phase overhead flow from the CCU Main Fractionator (MF). The pressure of the Reactor depends upon the pressure of the MF, which depends on the pressure of this tank. |
| Opacity | The degree to which visibility of a background (i.e., blue sky) is reduced by particulates, measured either in % or Ringelmann. |
| Operating procedures | Written, step-by-step instructions and information necessary to operate equipment, compiled in one document including operating instructions, process descriptions, operating limits, chemical hazards, and safety equipment requirements. |
| Operator | An individual who is trained and qualified to operate a process or some portion of a process. |
| PHA | Process Hazard Analysis; a study in which process hazards are identified and a wide range of deviation scenarios are analyzed to determine if the unit's safeguards are adequate. |
| Reactor | A vessel where the catalytic cracking reaction occurs and hot catalyst is disengaged from HC vapor. |
| Redlined changes | Field changes made during execution of a procedure that have been reviewed and approved by the appropriate personnel. |
| Regenerator | A vessel in the CCU system in which coke is burned off spent catalyst, reheating catalyst. |
| Ringelmann | A unit of opacity. 1 Ringelmann is approximately 20% opacity. |
| Root causes | Gaps in Process Safety management systems, including human factors. |
| RR | Reactor Riser; the section of the CCU Reactor where the cracking reaction takes place. |
| Slide valve | A valve that operates by sliding a paddle over an opening to control the flow of catalyst from one vessel to another. |
| SOSO | Start of shift operations; a procedure with formal reporting used at MRC to handover operations from one shift to the next. |
| Spillback valve | A valve which routes compressor discharge back to the suction to maintain minimum flow through the machine, preventing compressor surge. |
| Stripper | A vessel in the CCU system in which residual hydrocarbon is removed from catalyst with steam. |

31

| Term | Definition |
|---|---|
| SSV | Stripper slide valve; the valve which regulates the flow of catalyst from the Stripper to the Regenerator. |
| Surge | A condition that can exist in centrifugal compressors when they handle a gas lower in molecular weight than they were designed to handle. Surge occurs when the gas being pumped flows backwards around the turbine blades in an oscillating manner. In severe cases the oscillation can result in significant equipment damage and loss of process containment. |
| Top event | The release event being investigated. |
| TSS | Third Stage Separator; the third of four devices that removes catalyst from Regenerator flue gases. |
| Wet gas scrubber | A system where exhaust gases are contacted with water to remove particles and water-soluble gases. |
| WGC | Wet Gas Compressor; a multi-stage centrifugal compressor designed for condensable hydrocarbons which takes suction on the OHA and increases the pressure of the gaseous vapor allowing it to flow to the Cracked Gas Plant. |

**Appendix E: Resolution of Oversight Committee Comments**

Comments from the Oversight Committee were provided via a Microsoft Excel® table, with spaces provided for the investigators' responses and actions. This table is presented starting on the following page.

| | Commenter Name | Organization | Comment | Page of Report | Section of Report | Scott Berger & Assoc. Response | Report Modifications Made |
|---|---|---|---|---|---|---|---|
| 1 | Kent Hull | Community Member of OC | My main concern is that the authors state that people should be commended for doing what is expected of them.  When is that worthy of a commendation?  I feel that establishes that cooperation and honesty are not expected/required and thus the process is flawed. | General Report Comment | | In this paragraph, we are thanking the individuals for speaking openly. This intent can be accomplished with the second sentence of this paragraph only. | Deleted the first sentence of page 3, paragraph 3 |
| 2 | Ben Therriault | Community Member of OC | What is the adherence to procedure and culture. The deviation from standard procedures, especially concerning the Stripper Slide Valve (SSV), appears to be a significant factor. The culture of 'objective-based' operation over strict procedural adherence could be a systemic issue that needs to be addressed. | General Report Comment | These comments were submitted in a single cell. They have been broken up for ease of responding | This comment restates key points of the report and does not appear to request any changes. | None needed |
| 3 | Ben Therriault | Community Member of OC | What can be done about training and fatigue management? The report highlights lapses in 'just-in-time' training and issues with fatigue management, particularly in key personnel. How can training be made more effective and adherence ensured? What steps can be taken to avoid overworking, which may lead to critical errors? | General Report Comment | | These points were identified in the report as root causes with recommendations for MRC to address. | None needed |
| 4 | Ben Therriault | Community Member of OC | The report points out possible improvements in reactor-regenerator differential pressure management and feed flow measurement. How can these technical enhancements be implemented effectively to prevent future incidents?  What can be done about communication and alarm management? There seems to be a gap in response to critical alarms and communication during the incident. What measures can be implemented to improve situational awareness and responsiveness during critical operations? | General Report Comment | | These points were identified in the report as contributing causes with recommendations for MRC to address. | None needed |

| | Commenter Name | Organization | Comment | Page of Report | Section of Report | Scott Berger & Assoc. Response | Report Modifications Made |
|---|---|---|---|---|---|---|---|
| 5 | Ben Therriault | Community Member of OC | The report lists root causes and recommendations in categories like process safety management, workplace culture, engineering design, and human factors. How can MRC prioritize and implement these recommendations to mitigate risks in future operations? | General Report Comment | These comments were submitted in a single cell. They have been broken up for clarity in responding | Suggested prioritization was included with all recommendations in this report. | None needed |
| 6 | Ben Therriault | Community Member of OC | It's also important to compare the findings and recommendations of this independent report with those from MRC's internal investigation. Are there discrepancies or areas that MRC overlooked? | General Report Recommendations MRCs Recommendations | | This is discussed in Section VIII of the report. What may not have been clear was that in general, MRC's MCAR investigation did not identify root causes, and their corrective measures fell short of correcting management system gaps. | Added text to the introductory paragraphs of Page 22, Section VIII explaining this. |
| 7 | Ken Axe | PBF | I spoke with both operations support engineers on December 14, and neither gave this instruction. See series of comments on topic 2 starting on page 12. | Page 6 (CCH will provide word document received from PBF as well for all of Ken Axe's comments) | | This comment was recorded in Tim Mullowney's notes from a meeting with an engineer that occurred on 9/25/2023. Version 1.2 erred in stating that this engineer was an operations support engineer. In verbal comments at the oversight meeting on 2/1/24, a PBF representative also noted that "instructions" come from operating supervision, not engineers. | Changed "unit process engineer" to "an engineer" on page 8, section D, paragraph 1. Changed "instructed" to "advised" on page 8, section D, paragraph 1. Note that this comment was repeated in lines 11 and 14, applying to different parts of this report. The same changes were made in each location. |
| 8 | Ken Axe | PBF | Series of Xs and ? Over causal tree elements (all xs see word doc) and root/contributing causes numbers 1,2,3,5 (x) and 4,6,7 (?) | Page 11 | | Based on the independent investigation, these causal tree elements are appropriate and need to be retained. | None needed. |

| | Commenter Name | Organization | Comment | Page of Report | Section of Report | Scott Berger & Assoc. Response | Report Modifications Made |
|---|---|---|---|---|---|---|---|
| 9 | Ken Axe | PBF | This is not a root cause, and did not present an opportunity to add IPL's and prevent occurrence of the November 2022 incident. The guide word HAZOP technique does not provide a PHA team with knowledge of consequences that are unknown to them. The 2018 and early 2022 PHA teams were not aware that a catalyst release could result in catalyst deposition in the community. Only after the November 2022 incident were MRC personnel aware of this phenomenon. MRC also learned (anecdotally) after November 2022 that there have been other occasions (four of them) in industry like the November 2022 incident at MRC, resulting in aggregation of catalyst particles and deposition at ground level. The 2023 CCU PHA does take this consequence into account, and does acknowledge the need for additional IPL's. | Page 12 in reference to PHA root caust | | The definition of a root cause is "A failure or gap in the process safety management system." This comment acknowledges that the guidance in the management system documents used to guide the 2018 and 2022 PHAs had a gap in recognizing the consequences of this event scenario. It is a proper root cause. | None needed |
| 10 | Ken Axe | PBF | Neither operations support engineer (the one on days, or the one on nights) instructed anyone that the stripper slide valve must be in auto: I spoke with both of them on December 14 specifically about this claim, which did not appear in Draft 1.1 of this report. Only one of them spoke with Berger and Mullowney, and she didn't say this to them (Nam and I were present for all interviews). | Page 12 in reference to Stripper Slide Valve root cause | | Same comment as line 7 | See resolution of line 7 comment and page 12, paragraph 2. |
| 11 | Ken Axe | PBF | Operations did not "disregard" the procedure, and the engineer gave no such instruction. Operations placed the valve in Manual in order to control process parameters that it appeared to them were not being sufficiently controlled in automatic. Operators are trained and authorized to do this. | Page 12 in reference to Stripper Slide Valve root cause | | The stripper slide valve was placed in manual at 06:29 on 11/24 to address a transient upset. Data trends suggest this transient was resolved by 07:30. At this point, it should have been placed back into automatic. | Added this clarification in 3 places, to emphasize how long the deviation from the procedure lasted. See page 8, Section 2, paragraph 1. |

| | Commenter Name | Organization | Comment | Page of Report | Section of Report | Scott Berger & Assoc. Response | Report Modifications Made |
|---|---|---|---|---|---|---|---|
| 12 | Ken Axe | PBF | MRC does not consider operations to be "objective-based." Nobody at MRC indicated this. This was a label inferred erroneously by Berger and Mullowney, along with all of the presuppositions that come along with their understanding of this label. It is also false to portray this as a feature of MRC's culture. | Page 12 in reference to Culture of deviating from procedures | | On three separate occasions, a senior, knowledgeable MRC employee told investigators that operators were trained and authorized (see line 12) as well as expected (see MRC MCAR report Root Cause 2) to use their training to take whatever means necessary to meet process objectives, and to do so without review or oversight. While the specific term "objective-based" was not used by this employee, the actions taken by operators on 11/24/22 demonstrated that they were following this approach. Furthermore, MRC's MCAR report root causes focused on how the operator manually controlled the stripper slide valve (and regenerator pressure control), and not on the long duration of time the procedure was deviated from without evaluation and approval. Note also that MRC's actions to address their self-identified corrective measures included adding review and oversight related to the stripper slide valve to the procedure CCU-1110, which is an acknowledgement by MRC that their oversight of field changes was inadequate. | Edited the text to remove the term "objective based", and added text explaining the good operating practice of defining action limits and properly managing field changes.<br><br>See page 12, paragraph 4. |
| 13 | Ken Axe | PBF | Again, operations did not "disregard" the procedure, and the engineer gave no such instruction. | Page 12 in reference to Culture of deviating from procedures | | Same comment as line 7. | See page 14, last paragraph |

| | Commenter Name | Organization | Comment | Page of Report | Section of Report | Scott Berger & Assoc. Response | Report Modifications Made |
|---|---|---|---|---|---|---|---|
| 14 | Ken Axe | PBF | We agree with this statement. We believe that this is the explanation for the stripper slide valve being in manual, NOT that there is a "culture of accepting deviation from procedures.: | Page 12 in reference to Culture of deviating from procedures | | Nonetheless, after the transient condition that required the operator to take manual control of the stripper slide valve was resolved, it was left in manual instead of being returned to auto. Considering that the culture survey will follow this investigation, it is appropriate for "culture" to be replaced by "practice" in this report, and evaluation of culture deferred to the culture survey. | Replaced "culture" with "practice" in discussing this topic. See pages 12, 18, and 24.<br><br>Changed Root Cause "Type" of "Culture" to "Management System" on pages 16-20. |
| 15 | Ken Axe | PBF | Per the training SME, training on the two Hot Standby procedures, CCU-3305 and -3310, as well as reintroduction of feed, CCU-1110, are not administered "just-in-time. CCU-3305 and -3310 are administered as "skill" level refresher training every three years, and CCU-1110 is administered as "awareness" level training every three years. Just-in-time training is applied to *predictably* infrequently used procedures, like those associated with turnarounds. Use of 3305, 3310, and 1110 can come up at any time, and are therefore refreshed every three years. | Page 13 in reference to inadequate training of personnel | | The text about refresher training was excerpted from the MRC document indicated in the report. However, if training for feed reintroduction is instead covered in the 3-year refresher training, then the training record of the individual controlling the stripper slide valve shows no refresher training in the last 3 years. Training records we received did not show any training for the fatigued individual. | Expanded text to include both just-in-time and refresher training.<br><br>Expanded recommendation to correct the gap, whether it was in just-in-time training or in refresher training.<br><br>Moved text excerpt to a footnote at request of CCHHMP. See page 13, section "Inadequate training of personnel." |

| | Commenter Name | Organization | Comment | Page of Report | Section of Report | Scott Berger & Assoc. Response | Report Modifications Made |
|---|---|---|---|---|---|---|---|
| 16 | Ken Axe | PBF | Berger and Mullowney spoke with <u>one</u> operations specialist, who did not (and could not) provide a basis for what specialist<u>s</u> believe. The operations specialist provided answers to leading questions about "superhero" performance, rather than applying the term to himself or others. It is a reach to infer that responsible, committed subject matter experts indicate a negative aspect of culture. The fatigue issue does not require "superhero culture" as a root cause, and in fact is not depicted that way on the causal tree. | Page 13 in reference to excessive work hours | | It is true that we spoke only to one operations specialist. However, while discussing the issue of fatigue management, a PBF SME made a point of telling us that based on MRC's learning from the incident, refinery management had to intervene to prevent another specialist from working excessive hours. In this conversation, this SME used the "Superhero" designation. | Inserted text referencing a second case that a MRC representative described during the investigation. See page 14, paragraph 3. |
| 17 | Ken Axe | PBF | I don't recall this statement being made by the "operator," and it was not corroborated by the operations specialist. | Page 14 | | This came from interviewing the shift team leader who was filling in as operator. As recorded in our notes: STL: "How could I have missed that, [Op spec's name]? Do you remember if I got the alarm? "OS: "Of course you did. I didn't want to bother you. I told the outside operator to drop the cat fines out of the FSS." Since this did not result in a root cause, the original text is suitable. | None needed |
| 18 | Ken Axe | PBF | See comments associated with topic 2 on page 12. | Page 14 | | Repeat of Mr. Axe's comment in line 10. | See resolution of line 7 comment and page 12, paragraph 2. |
| 19 | Ken Axe | PBF | Is "almost certainly" a fact, or speculation? | Page 14 | | Fatigue played a role. | Deleted "almost certainly". See page 14 paragraph 4. |

| | Commenter Name | Organization | Comment | Page of Report | Section of Report | Scott Berger & Assoc. Response | Report Modifications Made |
|---|---|---|---|---|---|---|---|
| 20 | Ken Axe | PBF | Stop work authority applies to situations that "could reasonably result in death or serious physical harm" or are associated with "a process safety hazard." There was not such a situation. MRC has other processes for intervening in other situations, but the operating team did not know that they were having a community impact while it was occurring. The other factors listed here would not necessarily require intervention. | Page 14 | | Mr. Axe appears to be citing the narrow language of the CalOSHA regulation related to Stop Work Authority. He notes that the refinery has other "processes" for intervening in such situations. In our investigation, we considered a broader definition of Stop Work Authority which would include this situation. Regardless, personnel did not pause work when they should have. If MRC covers this situation in a different policy, then the root cause and recommend would apply to that policy instead. Recognizing that MRC uses the term "Stop Work Authority" in the narrower sense, it is appropriate to clarify the wording of this root cause accordingly.<br><br>Nonetheless, a release of 24 tons of catalyst fines containing various metal contaminants is a notable event. If it does not meet the definition of a process safety incident, it is at minimum a high potential near miss event. | Added footnote 14 explaining that if this situation is covered by another policy/program, a gap existed in that policy/program instead of in the Stop Work policy/program. See page 15 footnote.<br><br>Added "or other appropriate policy/program" to recommendation 2b. See page 17. |
| 21 | Ken Axe | PBF | "Potentially." Again, fact, or speculation? | Page 14 | | It is clear from discussion with the console operator, that he was overwhelmed, and he was unaware that FSS HH dP meant a release was occurring. | Removed "potentially" and adjusted remaining text to read well. See page 16, section C, first paragraph. |
| 22 | Ken Axe, CCH noted the same comment | PBF | MRC's MCAR report | Page 22, correction of typo | | Thank you. | Corrected typo. See page 23, paragraph 3. |

| | Commenter Name | Organization | Comment | Page of Report | Section of Report | Scott Berger & Assoc. Response | Report Modifications Made |
|---|---|---|---|---|---|---|---|
| 23 | Ken Axe | PBF | ISA 18.2 defines alarm floods in terms of <u>annunciation</u> rates. Shelved alerts did not annunciate, but were included in the data, showing adjacent 10-minute totals of 13 and 12. ISA 18.2 also defines alarm floods as annunciation rates "likely to exceed the operator response capability." Total operator response capability is dependent on the number of responding operators. Typically, when rates are calculated, the number of annunciations is divided by the number of responding operators. MRC concludes that alarm flood did not occur. | Page 22 in relation to discussion of MRC action 2 | | MRC continues to reduce excessive alarms as per ISA 18.2 and this was not a root cause, so the statement was removed | Statement removed. See page 23, analysis of MRC Corrective Action No. 2. |
| 24 | Steven Devine | City of Martinez | replace current language to state "chosen by the ISO Oversight Committee" to give credit to that group.  NH comment:  suggest MRC Oversight Committee instead of ISO Oversight Committee | Page 3 | Foreword | Thank you. | Changed to "chosen by the MRC Oversight Committee". See page 3 paragraph 2. |
| 25 | Steven Devine | City of Martinez | Consider … "and surrounding areas" | Page 4 | | Thank you. | Text added. See page 3 paragraph 1 and page 4 paragraph 1. |
| 26 | Steven Devine | City of Martinez | Of what? Catalyst or crude oil? | Page 4 | | The hydrocarbon feed to the CCU. | Added footnote clarifying that this is hydrocarbon feed to CCU. See page 5 footnote 4.  Added a description of "feed" to the glossary. See page 29. |
| 27 | Steven Devine | City of Martinez | Seems odd to be commenting on the controversial wet gas scrubbers… when the report makes clear other areas in which the firm | Page 4 | | Evaluating this topic was specified in the scope of work given by the MRC oversight committee. | None needed. |

| | Commenter Name | Organization | Comment | Page of Report | Section of Report | Scott Berger & Assoc. Response | Report Modifications Made |
|---|---|---|---|---|---|---|---|
| | | | is not commenting on... as it would be out of scope. | | | | |
| 28 | Steven Devine | City of Martinez | Consider inserting ... "theoretical" | Page 5 | | This report should have used the term "Scenario" instead of "Condition," which has the same meaning in this context as "Theoretical". | Changed "Condition" to "Scenario". See page 6, section V.A., paragraph 1. |
| 29 | Steven Devine | City of Martinez | Consider inserting ... "theoretical" | Page 5 | | See line 28 | See line 28. |
| 30 | Steven Devine | City of Martinez | Crude or Catalyst? | Page 5 | | See line 26 | See line 26. |
| 31 | Steven Devine | City of Martinez | What does this mean in layperson terms. | Page 5 | | Agree that this should be explained. | Added a footnote that explains surge. See page 7 footnote 8.Added a definition of surge to the glossary. See page 31. |
| 32 | Steven Devine | City of Martinez | Consider: "Unit Process Engineer" | Page 6 | | Agree that it is appropriate to capitalize all role titles throughout the report. | Globally capitalized all role descriptions/titles. |
| 33 | Steven Devine | City of Martinez | Consider moving "Following this policy" to later in sentence | Page 6 | | After reviewing this recommendation, we concluded that the original phrasing works better. | No change. |
| 34 | Steven Devine | City of Martinez | Consider capitalizing "Production Specialist" | Page 7 | | See line 32 | See line 32. |
| 35 | Tom Lang | Community Member | It is a pretty difficult read, and I am not sure that once it is published, a layman will be able to really understand what happened on Thanksgiving of last year. There is a lot of slang and much of the narrative is quite indirect, raising more questions than it answers. The tables and graphics are not instructive, and the table of priorities pretty much has everything as priority one. | General Report Comment | | The PowerPoint presentation recommended by Mr. Lang in line 36 was developed, and should help address this comment as well.

Based on this comment, we agree that the descriptions of the priorities should be explained better. | Added text clarifying the meanings of the priority designations. Replaced "Priority Implementation" with "Short Term". See bottom of page 16. |

| | Commenter Name | Organization | Comment | Page of Report | Section of Report | Scott Berger & Assoc. Response | Report Modifications Made |
|---|---|---|---|---|---|---|---|
| 36 | Tom Lang | Community Member | I would recommend that when this is released to the public, there should be a PowerPoint with some critical bullets, starting with the general practices (departure from protocols, override of automated settings, superhero culture) and indicating how that led to the key specific technical failures resulting in the release.  This should be in simple, easy to understand language. | General Comment | | A PowerPoint presentation was developed and presented to the Oversight Committee on February 1, 2024. | PowerPoint presentation will be available through the CCHHMP Martinez Refining web page. The PowerPoint will be updated for the community meetings. |
| 37 | Tony Semenza | Community Member | 1.There is still the question of why the FCC start-up was being done manually. I have always maintained that a big part of this problem was that the MRC was using non-FCC operators to help in the startup. This goes to the Culture of accepting deviation from procedures discussed on page 12. | Page 12 | | The report identifies the use of Manual mode counter to procedure, as a root cause and makes appropriate recommendations to correct this root cause. | None needed. |
| 38 | Tony Semenza | Community Member | 2.Another issue is the superhero culture that seems to be accepted as MRC. I did not find anything addressing this in any of the tables pages 16 thru 20. | Pages 16-20 | | The superhero "culture" was not itself identified as a root cause. Indeed, strong support of the refinery mission and goals should be a positive. It becomes a problem only when it leads to unmanaged fatigue. The report found a root cause related to fatigue management | None needed. |
| 39 | Tony Semenza | Community Member | 3.On page 21 MRC's Root Cause 1 analysis seems to say that valve pv 171 that the valves control system is not designed according to common industry practice. If true that's a serious problem | Page 21 | | We reached the same conclusion as MRC that if this valve and its control scheme are upgraded, it will be easier to prevent this incident in the future. | None needed. |

| | Commenter Name | Organization | Comment | Page of Report | Section of Report | Scott Berger & Assoc. Response | Report Modifications Made |
|---|---|---|---|---|---|---|---|
| 40 | Nick Plurkowski | PBF USW | Did the Regen Pressure control valve have previous issues of being stuck? Were maintenance records or reports of issues looked into? | General Report Comment | | We did receive feedback regarding a number of supposedly "sticky" valves, but we did not find that the Regen pressure valve performance was a root cause of the incident. | None needed. |
| 41 | Nick Plurkowski | PBF USW | The mixed message about flaring – I'm not sure I understand the safety aspect of flaring as described, combined with the public outcry against flaring, or what options the Company really has to prevent or plan for flaring.  I understand that assuming you cannot flare might lead to a more complicated startup procedure, but shouldn't the procedure be correct?  Shouldn't flare minimization be the goal?  I don't want operators to get instructions not to use a safety device, but I also don't want it to become a regular thing… | General Report Comment | | Agreed. Flare minimization should be the goal, but the flare is an important safety device that should be used when needed. | None needed. |
| 42 | Nick Plurkowski | PBF USW | On P.10 in the table between 13:00 on Nov 24 and '20:00-20:30' there is a 'Soon after' line item that is not clear when reading through the details of that on p.6.  Basically, p.6 makes it sound like the decision to continue using propane was made, but doesn't describe the conditional approach to the use of propane, due to curtailment. | Page 10 | | The decision was to continue drawing propane at the same rate, but not any faster, even if needed. | Edited this text to match wording on page 6. See page 10. |
| 43 | Nick Plurkowski/ CCH noted the same comment | PBF USW | The footnote on p.13 that continues to p.14 is confusing – could it just fit on one page? | Page 13 | | Thank you. | Footnote now fits completely on page 13. |

| | Commenter Name | Organization | Comment | Page of Report | Section of Report | Scott Berger & Assoc. Response | Report Modifications Made |
|---|---|---|---|---|---|---|---|
| 44 | Nick Plurkowski | PBF USW | P.14, 1st sentence is misleading as the Staff employee did not complete the 'two personnel' required to perform the feed introduction.  It should have been two qualified, hourly, operators. | Page 14 | | The procedure requires two qualified operators, but does not specify hourly. The relevant issue is training, whether just-in-time training or appropriate refresher training.  Evidence of either type of training for the individuals focused on operating the CCU was not found in the investigation. | Training issue clarified in reply to line 15. |
| 45 | Nick Plurkowski | PBF USW | P.14, paragraph 2 – last two sentences:<br>-Why isn't the DECISION to continue being challenged?<br>    -Stop Work Authority is a worker's last line of defense, we should be challenging the systems and decisions that allow risk to reach the last line of defense | Page 14 | | Challenging a worker decision, i.e. blaming the worker, is generally inappropriate in an incident investigation. If an operator did not pause or stop operation when appropriate, the root cause lies in how the stop/pause work policy was written, trained, implemented, and/or monitored. | See line 20. |
| 46 | Nick Plurkowski | PBF USW | P.15 'The Holiday' The tone of the 2nd sentence: "The console operators who normally would have worked the evening shift took time off, leaving a shift supervisor and a production specialist to operate the CCU.<br>-While this is factually true, I believe the tone of this sentence can be misinterpreted as blame on the workers who took time off, missing the fact that they were approved to take time off and the decision to continue without them was made.  Whose decision was it to use the Operations Specialist and Team Leader as board operators? This goes back to #5 above, as well as #6- there was a decision made to go forward | Page 15 | | We did not in any way intend to suggest workers who took earned time off were to blame. | Deleted reference to workers taking time off. See page 16, "The Holiday". |

| | Commenter Name | Organization | Comment | Page of Report | Section of Report | Scott Berger & Assoc. Response | Report Modifications Made |
|---|---|---|---|---|---|---|---|
| 47 | Nick Plurkowski | PBF USW | Table 2: Root Causes... p16 Could we include an example along the lines of "(ex. More operators)" | Page 16 | | There were sufficient people (maybe even too many people) available in the control room. The key issues were (a) training, (b) fatigue, (c) not following procedures, and (d) not pausing work when appropriate. It is conceivable that as part of addressing these issues, MRC could decide they need more operators, but it is not seen as a root cause. | None needed. |
| 48 | CCH Hazmat | CCH | "The reporting of this incident to Bay Area authorities was specifically excluded from this investigation..."  Suggest adding by MRC before this | Page 4 | | Thank you. | Insertion made on pages 4, 22, and 26. |
| 49 | CCH Hazmat | CCH | "This report describes the process of "cracking" hydrocarbon as the CCU was intended to be operated..." Suggest adding molecules after hydrocarbon | Page 4 | | Thank you. | Insertion made on pages 4 and 5, with reference to new glossary item on page 29 describing hydrocarbon feed to the CCU. |
| 50 | CCH Hazmat | CCH | Suggest moving section V (background) before section IV (Description of Incident) | Overall report | | Agreed. | Reordering of sections done. |
| 51 | CCH Hazmat | CCH | Suggest after the first sentence, a statement be added that clarifies what a PHA is or add a footnote to the definition. | Page 5 | | Thank you. | Added footnote reference to PHA glossary item |
| 52 | CCH Hazmat | CCH | "As the quantity of wet gas grew smaller, the WGC total discharge flow control valve (5FC340; spillback valve) automatically opened in an attempt to prevent compressor surge and potential damage to the WGC."  Suggest that clarifying language be added to explain the consequences of a compressor surge and function of spill back valve | Page 5 | | Thank you. | Explained surge in a footnote related to this text and also in the Glossary. See page 7 footnote and page 31. |

| | Commenter Name | Organization | Comment | Page of Report | Section of Report | Scott Berger & Assoc. Response | Report Modifications Made |
|---|---|---|---|---|---|---|---|
| 53 | CCH Hazmat | CCH | "light-off"  Suggest this is clarified for the general public or a definition added to  Appendix D. | | | Thank you. | Text was changed to "igniting the burner". See page 7, section C, paragraph 1. |
| 54 | CCH Hazmat | CCH | SSV when first used is not defined.  Suggest changing to Stripper Slide Valve (SSV) | Page 6 | | Thank you. | Done. See page 8, section D, paragraph 1. |
| 55 | CCH Hazmat | CCH | Page 6:  General comment for paragraphs 1,2, and 3.  Clarify for general public where feed was reintroduced. | Page 6 | | Thank you. | Changed sentence on of this paragraph to "reintroducing feed to the Reactor Riser (RR)". See page 8, section D, paragraph 1. |
| 56 | CCH Hazmat | CCH | CCH acknowledges that acronyms are mostly defined on first use and again in Appendix D Glossary, however consider redefining some key terms like SSV, RR, HC and dp in report. | General Report | | SSV noted (and corrected) per line 54. The other 3 terms were defined on first use. Verified that other terms were defined on first use. | See line 54. |
| 57 | CCH Hazmat | CCH | Figure 1: Catalytic Cracking Unit, suggest adding MRC before Catalytic | Page 8 | | Thank you. | Done. See page 5 Figure 1 caption. |
| 58 | CCH Hazmat | CCH | consistently refer to WGC spillback control valve as such (in current draft this is stated as WGC or WGC spillback. | Pages 6 and 7 | | Thank you. | Done. Multiple changes on pages 8, 9, 10, and 15. |
| 59 | CCH Hazmat | CCH | "The vapor continues to the Main Fractionator (MF) where liquid products are separated, and the vapor is further cooled before being collected in the Overhead Accumulator (OHA)."  Suggest adding HC before vapor | Page 8 | | Thank you. | Done. See page 6 paragraph 1. |
| 60 | CCH Hazmat | CCH | Figure 1:  Suggest labeling air compressor as air blower for report consistency | Page 8 | | Thank you. | Done. See page 5 figure 1. |

| | Commenter Name | Organization | Comment | Page of Report | Section of Report | Scott Berger & Assoc. Response | Report Modifications Made |
|---|---|---|---|---|---|---|---|
| 61 | CCH Hazmat | CCH | "Table 1 describes the timeline and sequence of events for the catalyst release incident. As detailed above in section III.C."  If Section Iv and V are switched as suggested above this reference needs to change to IV. | Page 10 | | Thank you. | Done. |
| 62 | CCH Hazmat | CCH | General Comment, to be consistent with the presentation from 2/1/24 and as stated on the presentation slides, replace the word culture with practice from root causes in Figure 2 and update corresponding report language to clarify as necessary (including in tables). | Pages 11 and 12, 16-20, 23-24 | | Thank you. | Done. |
| 63 | CCH Hazmat | CCH | Figure 2, define PS | Page 11 | | Thank you. | Relabeled figure replacing PS with Process Safety. See page 11, Figure 2. |
| 64 | CCH Hazmat | CCH | Clarify what is meant by "Objective based" | Page 12 | | Thank you. | Resolved in response to line 12. |
| 65 | CCH Hazmat | CCH | "MRC personnel denied that personnel were reluctant to call an instrument technician or process engineer for support when the incident started because of to the holiday, but such reluctance would be understandable". Suggest removing the "to" highlighted in red. | Page 15 | | Thank you. | Typo corrected. See page 16, "The holiday" paragraph. |
| 66 | CCH Hazmat | CCH | Suggest labeling tables 2-5 all as Table 2 and relabel Table 6 to Table 3. | Pages 16-20 | | Thank you. | Done; also changed "Table 7" to "Table 4." |
| 67 | CCH Hazmat | CCH | "Develop or update the criteria for operator training and conduct a review of materials to ensure that the bases for alarms involved as safeguards in process PHA scenarios are included in the training materials."  Correct bases to basis. | Page 18 | | Original text was grammatically correct. Each alarm has a basis, so multiple alarms have multiple bases. However, we understand this can be confusing, so text clarified. | "ensure that the basis for each alarm involved…". See page 19, recommendation 6. |

| | Commenter Name | Organization | Comment | Page of Report | Section of Report | Scott Berger & Assoc. Response | Report Modifications Made |
|---|---|---|---|---|---|---|---|
| 68 | CCH Hazmat | CCH | "Community Warning System of the Contra Costa Industrial Safety Ordinance". CCH suggest changing this to Community Warning System. The CWS is an all-hazards community notification system intended to alert residents about any potential health hazards and emergencies that may be occurring | Page 27 | Appendix D | Thank you. | Corrected. See page 28. |
| 69 | CCH Hazmat | CCH | MCAR is defined as Major Chemical Accident or Release | Page 28 | Appendix D | Thank you. | Corrected. See page 29. |
| 70 | CCH Hazmat | CCH | Define RQ when used on page 12 | Page 12 | | Noted | Since this is the only usage, replaced RQ with "a quantity of release requiring agency notification". See page 12, paragraph 1. |
| 71 | CCH Hazmat | CCH | CCH suggest that the following sections be reviewed and language clarified in more general terms to help aid with readability for the general public:  Paragraphs 3 page 7, Table 1, Paragraph 9 of page 8, Distractions and Engineering Design section on pages 14 and 15, and reactor definition in Appendix D | General Report | | No suggested edits were provided with this comment. Note, there were only 3 paragraphs on page 8. Upon review of the indicated paragraphs, it appears they are acceptable as originally written. | Specific edit suggestions would be welcomed for the final version of the report. |
| 72 | CCH Hazmat | CCH | "An individual working the CCU console during startup worked significantly more than fatigue management requirements prescribed in the fatigue and scheduling policy."  Suggest clarifying this individual was non-hourly. | Page 19 | Table 5 | Noted | Done. See page 20, third bullet under "Evidence". |
| 73 | CCH Hazmat | CCH | "The excessively long shifts continued unchallenged throughout the incident." Suggest clarifying this statement to state whose long shifts were unchallenged | Page 19 | Table 5 | Noted | Done. See page 20, fourth bullet under "Evidence". |

| | Commenter Name | Organization | Comment | Page of Report | Section of Report | Scott Berger & Assoc. Response | Report Modifications Made |
|---|---|---|---|---|---|---|---|
| 74 | | | Suggest replacing 4 stage with multiple stage | Page 26 | Appendix C | Expanding on the spirit of this comment, it wasn't necessary to specify the number of stages in this paragraph | Deleted "four (4) stages of ". See page 27, Appendix C, first paragraph. |
| **The following comments were made by the Oversight Committee during the 2/1/24 presentation** | | | | | | | |
| 75 | Tom Lang | Community Member | So the question that I have. It's really a general observation that leads to a few questions. And thinking of the stripper slide valve, which is a very important part of the process right? It just sort of boggles my mind that there isn't a big blinking red light that says: Hey, this is either open or closed and if either open or closed, whether I'm in automatic or manual, and if that is the case, and it is so important, why isn't that status interlocked with the settings on these feed valves that are feeding gas into the reactor? | | These comments were submitted in a single cell. They have been broken up for clarity in responding | The operator console does show whether the valve is being controlled in manual or auto. We believe this concern was captured and addressed by the recommendation made both in this investigation and MRC's investigation about providing appropriate warning statements in the procedure. | None needed. |
| 76 | Tom Lang | Community Member | And the you know, the other thing that kind of surprised me is the idea of well, hey, you know, maybe we better have a differential pressure sensor between the reactor and the you know the other containment units. | | These comments were submitted in a single cell. They have been broken up for clarity in responding | As clarification, add to the Engineering Design part of Section VI.C. that Shell had intended to implement this change at the 2018 turnaround, but ultimately did not. Shell's motives for this deferral were not investigated. | Clarification added. See pages 15 (Engineering Design) and 23 (Status of MRC's Corrective Action No. 1. |
| 77 | Tom Lang | Community Member | And II just don't understand why that full plan would not be absolutely full of sensors with the appropriate interlocks. | | | The plant is indeed full of sensors and interlocks. The specific interlock issue is described in root cause 1 of this report. That is, in Shell's and MRC's PHAs, the potential consequence of the catalyst carry-over scenario was understated, and therefore the need for a specific additional safeguard designed to address this scenario was not identified. | None needed. See page 17, Table 2, Root Cause 1. |

| | Commenter Name | Organization | Comment | Page of Report | Section of Report | Scott Berger & Assoc. Response | Report Modifications Made |
|---|---|---|---|---|---|---|---|
| 78 | Tom Lang | Community Member | Does this reflect a systematic under investment by Pbf in the plan? Because you would think that a you know, a plant with such a high potential environmental impact would have a design where there would be a fundamentally automated control system that human operators would have to consciously override, you know, in order to do things that sort of fell outside the normal range. | | | Evaluating the financial aspects of this incident fell beyond the scope of the investigation. | None needed. |
| 79 | Tom Lang | Community Member | And so this lack of kind of an automated framework, and a modern system of sensors and interlocks makes me think that it leads to this idea that you know, as you pointed out in your report that the operation of the plant sort of relies on these sort of super workers, and there's a tendency of the staff to deviate from procedures. You know things like that? And does that represent kind of an underlying sort of lack of faith in the operational integrity of the plant. And so I guess what in the end, I'm wondering. You know, these recommendations are all about sort of procedures and processes on how to properly operate a manually controlled plan when in reality, you know, there's a fundamental problem that things that should be automatically sensed and controlled and interlocked aren't done that way. So I'm sorry if this has been more of a rant than a you know specific question. But that's my general impression. | | These comments were submitted in a single cell. They have been broken up for clarity in responding | This paragraph summarizes Mr. Lang's verbal comments noted above in lines 77-80. | None needed. |

| | Commenter Name | Organization | Comment | Page of Report | Section of Report | Scott Berger & Assoc. Response | Report Modifications Made |
|---|---|---|---|---|---|---|---|
| 80 | Ben Therriault | Community Member | Start off about the slide valve and then basically was the unit shut down? Was it open? Was it inspected for damage? Was there some type of erosion? Or, you know, other type of damage. When, how often did that happen? | | These comments were submitted in a single cell. They have been broken up for clarity in responding | The stripper slide valve (SSV) can only be inspected when the entire CCU is down for maintenance. This last happened in 2018 and will happen again until 2025. It was not necessary to inspect the SSV for this investigation because operational data showed that it could have restricted the flow rate of catalyst sufficiently to have prevented the incident, if it had been operated in automatic. | None needed. |
| 81 | Ben Therriault | Community Member | Then just another issue I wanted raise was, you know, a lot of people understand that the air district found that the wet gas scrubber was feasible in its own air, quality, rule, analysis and decision. A lot of people in the community want to know. You know, we're pointing out the fact that replacing the Esps with a wet scrubbing would eliminate source of ignition. That is an explosion hazard. And this was one of the issues in the incident, you know. Does the report, you know, talk about whether it be inherently safer to have equipment solution? Or you know this company? Do any adequate, inherent safety analysis? And or did report, you know, talk about this this feasibility? | | These comments were submitted in a single cell. They have been broken up for clarity in responding | This report agrees that a wet gas scrubber could be safely operated under conditions where an ESP would have to be de-energized. This would have prevented the opacity condition that preceded the catalyst release. However, both ESPs and Wet Gas scrubbers are intended to remove relatively small quantities of catalyst per hour (i.e., pounds per hour), while the incident released catalyst at a rate of tons per hour, well above the capacity of either device. In conclusion, it is valid for the air district to consider wet gas scrubbers for routine conditions, however, the absence or presence of a wet gas scrubber was not a factor in the release of 24 tons of catalyst. | Clarification added that wet gas scrubbers can prevent the opacity condition that is typical when ESPs are de-energized. However, like ESPs they are designed to remove pounds per hour of catalyst fines, and would not be effective against the tons per hour being emitted during this incident. See page 27, Appendix C. |

| | Commenter Name | Organization | Comment | Page of Report | Section of Report | Scott Berger & Assoc. Response | Report Modifications Made |
|---|---|---|---|---|---|---|---|
| 82 | Ben Therriault | Community Member | And you know the investigation. Investigation can't just be, you know, based on, you know, interviews and documents needs to be people who like took a look and actually looked at the slide valve in particular, and so need to know, like, has that actually occurred, that people actually looked at the equipment? Etc. and you know, on the process hazard analysis. | | | See line 80. | See line 80. |
| 83 | Ben Therriault | Community Member | The Pha of shell you know.It doesn't seem like Mrc, you know, really did a good job of identifying, you knowthe issues of of that unit. And you know, how is that? Gonna get addressed, you know. Will there be a safety analysis for that? | | | We understand that MRC repeated the PHA in 2023, and in that PHA they properly quantified the consequences of this scenario. However, we did not verify this as it was outside the scope of our investigation. | None needed. |
| 84 | Tony Semenza | Community Member | Yeah, just a couple of questions, Nick asked the question about flaring. I wanna make sure we follow up on that, because I'm not sure I understand whether or not the flaring would have prevented the incident if they flared again. | | These comments were submitted in a single cell. They have been broken up for clarity in responding | Opening the valve to the flare system when the reactor pressure rose around 8:30 PM, might have helped prevent the release. | None needed. |
| 85 | Tony Semenza | Community Member | So you know the follow up on Nick's comment. also on the fourth stage separator. I guess the question is the alarms, were the alarms going off, were they silenced the how? | | | It is our understanding that the alarms were acknowledged, but the console operator did not remember having done so. Once an alarm has been acknowledged, it won't sound again unless the alarm condition clears and then reappears. | A clarifying footnote was added to the relevant text in section VI.B. See page 14, footnote 13. |
| 86 | Tony Semenza | Community Member | How often are the 4 State separator drained? | | | Under normal situations, the FSS is drained as needed, perhaps 1-2 times a day. Once the release began, the FSS was being drained almost continuously until near the end of the release. | None needed |

| | Commenter Name | Organization | Comment | Page of Report | Section of Report | Scott Berger & Assoc. Response | Report Modifications Made |
|---|---|---|---|---|---|---|---|
| 87 | Tony Semenza | Community Member | And then I have a question to follow up on what Ken said and this goes to maybe you Nicole, and your team, what's the were you part of the interview process when the interviews were taking place? And if it wasn't said, how did it get into the report? You know, I mean, are you guys involved in the in the interviewing process so that there's a third party, or and then for Scott. Was there anybody who you wanted to interview that that wasn't available to you. And let's see, just those kind of questions. I'll look for answers from either Scott or you, Nicole, or your team, that's all. I had | | | We took notes of what the individuals said. A few changes were made based on Mr. Axe's comments. | Please see lines 7, 10, and 13. |
| | *CCH notes that Ken Aex and Nick Plurkowski commented but they both indicated they were reading their written comments submitted and noted above* | | | | | | |
| 88 | CCH | CCH | Please clarify if the call from Refinery Logistics was following current MRC policies.  Page 14 Distractions Bullet 1 | | | Yes, the policies as current at the time. | None needed |
| 89 | CCH | CCH | Please clarify which industry standard is being referenced to determine maximum of 10 alarms per 10 minute  period for two consecutive periods.  Page 22  MRC Corrective Action #2. | | | ISA 18-2. However, please note that this investigation did not find alarm flooding as a root cause, and related text was removed. | See line 23. |